**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal Case No.** |
| **v.** | 1:22-cr-00015-APM |
| **KELLY MEGGS** | |
| **ACCUSED** | |
| *Styled as <u>USA v. STEWART RHODES, et al.</u>* *incorporating cases against multiple Defendants* | Assigned to the Honorable Amit Mehta, District   Court Judge |

**<u>ACCUSED'S MEMORANDUM OF LAW IN SUPPORT OF KELLY MEGGS' MOTION FOR DISCLOSURE OF MATTERS  OCCURRING BEFORE THE GRAND JURY</u>**

The Accused, Kelly Meggs, through counsel, pursuant to  pretrial discovery under Rules 6(e)(3)(C) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure, Rule 16 of the same, and *Brady v. Maryland,* 373 U.S. 83 (1963) and progeny, moves this Court for entry of an Order disclosing to the Accused the following information pertaining to the Grand Jury which returned eight (8) different versions of Indictments against him as it relates to this case, and for his grounds states as follows:

## I.      INTRODUCTION

The U.S. Attorney's Office for the District of Columbia already produced the transcripts of witness testimony of some – but apparently not all– of the witnesses before the Grand Jury. Having disclosed some of this information, there remain important gaps.

The Government's disclosures included computer sub-folders for Grand Jury proceedings for the following dates, with transcripts of the following witnesses.

1

January 27, 2021
February 10, 2021
February 19, 2021
March 12, 2021
March 17, 2021
March 31, 2021
May 26, 2021
July 21, 2021
August 4, 2021
October 20, 2021
December 1, 2021
January 12, 2022

The transcripts clearly cannot be all of the witnesses who testified, because the scope of very extensive information and allegations presented in each of the original indictment and seven superseding indictments is broader, more detailed, and beyond the scope of the testimony of the witnesses whose transcripts have been provided.

If the transcripts represent the only witnesses who testified before the Grand Jury on those dates, then the indictments including the later superseding indictments based upon the earlier witnesses, may be subject to dismissal by the Court.  There would be allegations from the Grand Jury that are not supported by testimony from the few witnesses whose testimony transcripts have been produced.  A lack of further witnesses would suggest that the Grand Jury rubber stamped a draft indictment written for them.  Any instructions, arguments, introductory remarks, charge to the Grand Jury, etc., might also explain whether the Grand Jury issued allegations and indicted for crimes beyond what the witnesses testified to.

Furthermore, the Government has not produced – as Kelly Meggs, by counsel, requested – additional information – as to the minutes, notes, argument from prosecutors, exhibits, etc.

The identity of witnesses who testified before the Grand Jury and what they testified

2

about may lead to witnesses that Defendant Kelly Meggs will need to call at trial and information

needed to cross-examine and impeach the credibility of witnesses who previously testified

inaccurately, and/or in a misleading way, whether by distortions, evasions, improper inference or

omission.

## II.    GOVERNING LAW

As grounds for the foregoing, Accused states the following:

A.  He now stands indicted by the Grand Jury in question (indeed 8 times
now).

B.  The Indictment covers activities alleged to have occurred over a lengthy
period of time.

C.  The Accused is entitled to due process of law which includes the right to a
proper Indictment properly obtained.

D.  That without the above-requested information to which he is entitled, the
Accused will be unable to protect his constitutional right to due process,
equal protection of the law, and such other rights as obtained.

### A.    GOVERNING LAW:  BRADY obligations

Seeking grand jury material discoverable under **BRADY** is one of the few exceptions at a

defendant's disposal to pierce the "indispensable secrecy of grand jury proceedings." **UNITED**

**STATES V. SITZMANN**, 74 F.Supp.3d 128, 133 (D.D.C. 2014). "[S]uppression by the

prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of

the prosecution." **Id**. at 134 (*quoting* **BRADY V. MARYLAND**, 373 U.S. 83, 87 (1963)). And courts in this jurisdiction disfavor narrow readings by prosecutors as to their obligations under **BRADY**.  **UNITED STATES V. SAFFARINIA**, 424 F.Supp.3d 46, 57 (D.D.C.), *supported by* **UNITED STATES V. PAXSON**, 861 F.2d 730, 737 (D.C. Cir. 1988).

When the Defendant requests **BRADY** materials for all grand jury notes/minutes/etc.

> **"The government cannot meet its *Brady* obligations by providing the defendant with access to 600,000 documents and then claiming that the defendant should have been able to find the exculpatory information in the haystack."**

**SAFFARINIA**, 424 F.Supp.3d at 85.

If the court determines the suppressed evidence is material, that there is a reasonable likelihood the evidence could have impacted the jury's judgment, then a new trial is required. **SITZMANN**, 74 F.Supp.3d at 134. However, the defendant must raise at least a colorable claim that the material contains evidence "favorable to him and material to his claim of innocence." **Id**.

A successful **BRADY** claim to over-turn a conviction after trial requires that favorable evidence to the accused for exculpatory or impeachment purposes was suppressed by the government which prejudiced the accused. **Id**.  Favorability to the accused requires exculpatory or impeachment value. **Id**. Suppression by the government can be an intentional or inadvertent failure to disclose the evidence. **Id**. at 137.

Moreover, prejudice requires a "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different."  **Id.** at 134 (*citing* **STRICKLER V. GREENE**, 527 U.S. 263, 280 (1999)).

Under **BRADY**, evidence may still be material and favorable despite being inadmissible,

provided it could lead to admissible evidence. **SAFFARINIA**, 424 F.Supp.3d at 91.

The scope of the requirements of **BRADY V. MARYLAND,** 373 U.S. 83 (1963),  is

very broad.  *See* United States Justice Manual (USJMM) § 9-5.001.  For instance, a "prosecutor

must disclose information that is inconsistent with any element of any crime charged" and --

> "… must disclose information that either casts a substantial
> doubt upon the accuracy of any evidence---including but not
> limited to witness testimony—the prosecutor intends to rely
> on to prove an element of any crime charged, or might have
> a significant bearing on the admissibility of the evidence.
> This information must be disclosed regardless of whether it
> is likely to make the difference between convictions and
> acquittal of the defendant for a charged crime."

**Id.**

The disclosure requirement, "applies to information regardless of whether the

information subject to disclosure would itself constitute admissible evidence."  **Id.**

It is highly relevant that the Defendant is explicitly asking for specific information, not

passively hoping that the prosecution will notice and think to disclose information on its own

initiative.

> "The test of materiality in a case like *Brady* in which specific
> information has been requested by the defense is not necessarily the
> same as in a case in which no such request has been made...." [4]

**UNITED STATES V. AGURS**, 427 U.S. 97, 106, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

> " The heart of the holding in *Brady* is the prosecution's suppression of
> evidence, in the face of a defense production request, where the
> evidence is favorable to the accused and is material either to guilt or
> to punishment. Important, then, are (a) suppression by the prosecution
> after a request by the defense, (b) the evidence's favorable character
> for the defense, and (c) the materiality of the evidence.  * * * "

**MOORE V. ILLINOIS**, 8212 5001, 408 U.S. 786,794-795,  92 S.Ct. 2562, 33 L.Ed.2d 706

(1972)

> "If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor. But if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. Whether we focus on the desirability of a precise definition of the prosecutor's duty or on the potential harm to the defendant, we conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all. The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "Brady material" has been made."

**UNITED STATES V. AGURS**, 427 U.S. 97, 107, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976).

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.20 Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed."

**Id**. at 112.  To extend this point, the U.S. Supreme Court is saying that the requirement that an accused be presumed innocent until proven guilty beyond a reasonable doubt is a principle that applies to all aspects of the case, including whether a failure to disclose potentially exculpatory information violates the Due Process Clause.

> "Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an accused," *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying

6

falsely that a defendant's life or liberty may depend")."

**UNITED STATES V. BAGLEY**, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

### B.    GOVERNING LAW:  Release of Grand Jury Information

The District of Columbia Circuit agrees with the Sixth Circuit that release of grand jury material is governed by Rule 6 of the Federal Rules of Criminal Procedure. **MCKEEVER V. BARR,** 920 F.3d 842, 850 (D.C. Cir. 2019).

Once the grand jury's functions have been completed, "disclosure is wholly proper where the ends of justice require it." **DENNIS V. UNITED STATES**, 384 U.S. 855, 870 (1966) (quoting **UNITED STATES V. SOCONY-VACUUM OIL CO.**, 310 U.S. 150, 234 (1940)).

A prosecutor is not required to provide the grand jury with all evidence favorable to the accused. **MILES V. UNITED STATES**, 483 A2.d 649, 655 (D.C. 1984).

But where the prosecutor knows of "substantial evidence negating a defendant's guilt which might reasonably be expected to lead a grand jury not to indict, his failure to disclose such evidence to a grand jury may lead to dismissal of the indictment." **Id.**

"Secrecy for secrecy's sake should no longer be the rule.... Rather, the maintenance of the wall of secrecy around grand jury testimony should be grounded on sound reason." **PARPLIANO V. DISTRICT COURT**, 176 Colo. 521, 527, 491 P.2d 965, 968 (1971). *See* also, **UNITED STATES V. MARION**, 404 U.S. 307 (1972); ***IN RE* PROCEEDINGS BEFORE THE GRAND JURY SUMMONED** October 12, 1970, 321 F.Supp. 238 (N.D. Ohio 1970).

Fed. R. Crim. Pro. Rule 12(b)(3). "A criminal defendant may move to dismiss an

indictment prior to trial based on 'an error in the grand-jury proceeding,' Fed. R. Crim. P. 12(b)(3)(A)(v), but the defendant seeking such relief 'faces a very heavy burden,' **UNITED STATES V. TRIE**, 23 F. Supp. 2d 55, 61 (D.D.C. 1998)." **SAFFARINIA**, 424 F.Supp.3d at 80.

Defendants can request disclosure of grand jury materials after showing there is grounds for dismissing the indictment due to matters that occurred before the grand jury pursuant to Rule 6(e)(3)(E)(ii). **UNITED STATES V. MECHANIK**, 475, U.S. 66, 80 (1986) (Marshall, J., dissenting). However, defendants are commonly incapable of making the necessary showing without the aid of the materials sought in discovery. **Id.** Any claim for abuse or defect of the grand jury must be remedied prior to trial because the Court held that a guilty verdict insulates such a claim from appellate review by finding the error harmless. **Id.** at 73.

And refusing to "reverse convictions for demonstrated grand jury misconduct" relegates the law to "pretend-rules," enables prosecutors to freely engage in prohibited conduct, and imposes an unacceptable cost on defendants. **Id**. at 83 (Marshall, J., dissenting).

"Particularized need" is the appropriate standard to gain access to grand jury materials pursuant to Rule 6(e)(3)(E)(ii), "conclusory or speculative allegations of misconduct" are insufficient; a factual basis is required. **UNITED STATES V. SITZMANN**, 74 F.Supp.3d 128, 138 (D.D.C. 2014)

Prosecutions alleging conspiracies carry the "inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants." **DENNIS**, 384 U.S. at 873. Under these circumstances, it is imperative the defense, the judge, and the jury be assured "the doors that may lead to truth have been unlocked." **Id.**

In our adversarial system rarely is the prosecution justified in

> having "exclusive access to a storehouse of relevant fact"
> and exceptions to this notion must be justified by the
> "clearest and most compelling of considerations."

**Id.** at 873-874.

Determining usefulness can only be made by an advocate for the defense. **DENNIS** at 875. The trial judge's function is limited to determining if a case for production has been successful and supervising the process. **Id**.

Therefore, the Court found it could not rely on the assumption that inconsistencies would have been overlooked had the grand jury testimony been examined.

The Court may disclose a grand jury matter "preliminarily to or in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii).

A strong showing of a "particularized need" is required before grand jury materials "preliminarily to or in connection with a judicial proceeding" may be disclosed by the court. **UNITED STATES V. SELLS ENGINEERING, INC.**, 463 U.S. 418, 442-443 (1983). A particularized need requires that the requested material be needed to avoid possible injustice, the need for disclosure exceeds the need for secrecy, and the request is limited to the material directly pertinent to the needed disclosure. **Id.** at 443. Disclosure is only appropriate when the need for it exceeds the public interest in secrecy, and the burden rests with the party seeking disclosure. **Id.**

From its inception in the United States, the grand jury has been regarded as security to the accused against oppressive prosecution and as protector of the community against public

malfeasance and corruption.

The grand jury serves to determine if there is probable cause a crime was committed and to protect citizens from unfounded criminal prosecutions. **UNITED STATES V. COACHMAN**, 752 F.2d 685, 689-690 (D.C. Cir. 1985).

Historically, it has been viewed "as a primary security to the innocent against hasty, malicious and oppressive prosecution[.]"  **WOOD V. GEORGIA**, 370 U.S. 375, 390 (1962).

Standing between the accuser and the accused, it is invaluable for determining whether a charge is based on reason "or was dictated by an intimidating power or by malice and personal ill will." **Id.**

Where the indictment mechanism is employed, it must be through a grand jury which is unbiased. A tendency to prejudice may be presumed when, in presenting cases to the grand jury, the trial court finds that the prosecutor or his deputies have engaged in words or conduct that will invade the province of the grand jury or tend to induce actions other than that which the jurors in their uninfluenced judgment deems warranted on the evidence fairly presented before them.  *See e.g.* **UNITED STATES V. WELLS**, 163 F. 313 (D. Idaho 1908), where the motion to dismiss the indictment was supported by affidavits of grand jurors alleging that the prosecutor made statements to the grand jury about the strength of his case against the defendant, the court dismissed the indictment, holding that when the prosecutor not only expresses his opinion but urges the finding of an indictment and it is clearly shown that the grand jurors must necessarily have been influenced, then prejudice will be presumed.

The court in supporting that decision stated *(emphasis added)*:

"[T]o sustain such an indictment would be to establish a precedent to

which <u>political</u> partisanship, religious intolerance for the latter is quite
apt to exist as the former could point as a justification for upholding
the return of an indictment through popular demand, public
excitement, persecution, or personal ill will."

**Id**. at 327.

In the instant case, the disclosure of the requested grand jury material clearly outweighs the need for secrecy. Kelly Meggs is charged with crimes which, if he is convicted, carries a sentence of up to twenty years' incarceration for each of two counts. He was indicted in a highly charged, politicized atmosphere where error, speculation, and misinformation was broadcast nightly on the news and on-line social media.

Closely associated with the federal rule are several U.S. Supreme Court decisions which hold that a defendant has a right to the testimony of witnesses appearing before a federal grand jury when he can show a particular need for this testimony. *See,* **UNITED STATES V. DENNIS**, 384 U.S. 855 (1966); **UNITED STATES V. PROCTOR & GAMBLE**, 356 U.S. 677 (1958).

Similarly, the United States Supreme Court's holding in **UNITED STATES V. MECHANIK**, 475 U.S. 66 (1986), and its progeny, have firmly established that any claim for abuse or defect of the grand jury must be remedied prior to trial because in **MECHANIK**, the Supreme Court held that a verdict of guilty insulates such a claim from appellate review by finding such error harmless.

In other words, these issues cannot be procrastinated nor cured at trial.

Therefore, it is essential that Kelly Meggs be provided disclosure of the specific grand jury material requested in order that he be given a realistic opportunity to file a motion to dismiss

the indictment based upon any abuse or defect of the grand jury proceeding he may uncover.

Rule 6(e) of the Federal Rules of Criminal Procedure allows virtually anyone associated with the grand jury to give testimony about what happened at the proceedings upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

## III.    SPECIFIC DEMANDS FOR DOCUMENTS AND CIRCUMSTANCES

Please note that while this might seem like a burdensome project, in fact the presentations have already been submitted to the various, multiple  sessions of the Grand Jury – which have already occurred – should simply be filed and stored in an expanding file in the file cabinet and should be easy to just pull out from the file room.

### A.    SPECIFIC REQUESTS FOR DOCUMENTS

The Accused respectfully demands the following notes, minutes, transcripts, recordings, and/or exhibits occurring before any session of the Grand Jury in connection with this case or the previous case *USA v. Thomas Caldwell*, Case 1:21-cr-00028.

1. Any and all opening remarks to the Grand Jury, including for each session upon which the Grand Jury was reconvened.

2. Any and all explanations about the case to the Grand Jury.

3. Any and all argument made to the Grand Jury.

4. Any and all instructions given to the Grand Jury.

5. Any and all opinions expressed to the Grand Jury other than by sworn witnesses, including any extraneous persons present in the room.

6.   The transcripts, and if none were made, then the substance of the testimony of each witness who appeared before any session of the Grand Jury.

7.   All minutes and notes of all proceedings before each session of the Grand Jury.

8.   Any and all questions asked by any member of the Grand Jury.

9.   A list and copy and description of all exhibits, tangible evidence, and physical objects presented to or to which reference was made by witness appearing before said Grand Jury.

10.  A copy of any and all exhibits presented to the Grand Jury.

11.  A copy of any and all exhibits presented to which reference was made by witness appearing before the Grand Jury.

12.  The names, addresses, including but not limited to, street address and building, apartment, room or like number of all persons present in the room or appearing before the Grand Jury in any capacity *other than as a witness*.

13.  The identity of each Grand Juror who is, was, or has been, connected with any state or federal law enforcement agency.

14.  A verbatim copy of the charge given by the Court to the Grand Jurors upon their being initially convened, and at the time they were reconvened for this case each time, or at any time prior thereto.

15.  Any explanation to the Grand Jury as to why an additional session related to this case or its prior incarnation was being convened and/or necessary.

16.  A verbatim copy of the charge given by the Court to the Grand Jurors upon their being initially convened, and at the time they were reconvened for this case, or at

any time prior thereto.

## B.    SPECIFIC REQUESTS FOR CIRCUMSTANCES

The Accused respectfully demands the following notes, minutes, transcripts, recordings, and/or exhibits occurring before any session of the Grand Jury in connection with this case or the previous case *USA v. Thomas Caldwell*, Case 1:21-cr-00028.

1. The number of witnesses presented to the Grand Jury by the Government, in each session in which it met.

2. The number of witnesses requested by the Grand Jury or by any of its members.

3. The number of witnesses actually summoned upon request of the Grand Jury or any of its members.

4. The number of Grand Jurors requesting witnesses in addition to those originally presented by the Government.

5. The number of Grand Jurors concurring in each count of the Indictment, including for each superseding indictment, separately.

6. Whether any counts of the Indictment were not presented to, or were not voted upon, by the entire Grand Jury.

7. The length of time the Grand Jury spent hearing evidence in this case, in each session in which it met.

8. The identity of any agents appointed by or to the Grand Jury and by whom, at whose request and under what authority such appointment was made, as well as what disclosures were made to such persons and by what authority and procedure.

9. The length of time spent deliberating on the case.

10. The names and addresses as to where each **_witness_** could be served with a subpoena to testify at trial, including but not limited to, street address and building, apartment, room or like number, of each witness appearing before the Grand Jury.

11. Whether any Grand Juror was absent during any portion of the Grand Jury proceedings including voting upon any Count of the indictment.

13. The names, addresses, including but not limited to, street address and building, apartment, room or like number of all persons appearing before the Grand Jury in any capacity **_other than as a witness_** or prosecutor.

14. The identity of each Grand Juror who is, or was, connected with any state or federal law enforcement agency.

## IV.    ARGUMENTS:  SPECIFIC NEEDS FOR GRAND JURY INFORMATION

Although the Defendant does not limit his reasons or requests to the specifically-identified, proven falsehoods presented by the Government to the Grand Jury, the Government has had to begrudgingly admit that the allegations of the many versions of the indictments are false and the Government knew the allegations to be false when asking the Grand Jury to issue new superseding indictments.  The case is subject to immediate dismissal.

The question is:  How did false information make its way before the Grand Jury?

### A.    JUDGE MCFADDEN RULES GRAND JURY MISLED BY PROSECUTORS

The Honorable Judge Trevor N. McFadden of this Court ruled that the Grand Jury was misled by the U.S. Attorney's Office for the District of Columbia, in *United States of America v.*

*Nicholas Rodean*, U.S. District Court for the District of Columbia, Criminal Case No. 1:21-cr-

00057-TNM, on February 10, 2022, ECF Dkt. # 36.  See attached.

Judge McFadden of this Court explained in his order denying in *Rodean* the

Government's motion for an order *in limine*:

> But the Government has a problem. The superseding indictment says that
> then Vice President-elect Harris was at the Capitol when Rodean entered it.
> See Superseding Indictment at 2–3, ECF No. 12 (Counts Three, Four, and
> Five). She was not. News outlets reported this mere days after January 6.
> 1 And recognizing that fact, the Government has, in other cases, filed a
> superseding indictment to correct its error.
>
> For example, in *United States v. Secor*, 21-cr-00157-TNM, Count Four of
> the indictment charged Secor with violating 18 U.S.C. § 1752(a)(1). See
> *Secor*, ECF No. 7 at 3. The indictment stated that the "Vice President and
> Vice President-elect were temporarily visiting" the Capitol when Secor
> broke in. See id. The superseding indictment changed Count Four to state
> that only the Vice President was visiting the Capitol during the riots. See
> Secor, Superseding Indictment at 3, ECF No. 28; see also United States v.
> Matthew Council, 21-cr-00207-TNM, Indictment at 2–3, ECF No. 11
> (referencing the Vice President-elect in Counts Three and Four),
> Superseding Indictment at 2–3, ECF No. 35 (referencing only the Vice
> President in Counts Three and Four). Yet here, over a year after first
> charging Rodean under § 1752(a) and nearly a year after misleading the
> grand jury about the whereabouts of the Vice President-elect, the
> Government has still not explained or remedied its mistake. The
> Government compounds this error by repeatedly referring to the presence of
> the Vice President-elect in the Capitol in its motion in limine. See Motion at
> 1 and 5.
>
> This all suggests a certain lack of attention and care in the prosecution of
> this case, undermining any confidence the Court can have in the
> Government's representations. Because of the misleading charges the
> Government has brought against Rodean, the Court will not allow Secret
> Service witnesses to testify generally about the presence of protected
> individuals. Section 1752(a) requires the presence of an individual under
> Secret Service protection. If the Government wishes to continue to pursue
> this misdemeanor charge, it must be prepared to fully prove it.

Here, the Seventh Superseding Indictment for *United States of America v. Crowl*, et al,

also includes as Count V allegations of a violation of 18 U.S.C. 1752(a)(1) "Entering and Remaining in a Restricted Building or Grounds," just like *USA v. Rodean.*

Curiously, the Seventh Superseding Indictment in *USA v Stewart. Rhodes, et al.* deletes the Count IV under 18 U.S.C. 1752(a)(1) "Entering and Remaining in a Restricted Building or Grounds" from the Sixth Superseding Indictment from *USA v. Thomas Caldwell, et al.*

Nevertheless, the current Seventh Superseding Indictment builds upon the testimony presented to the Grand Jury for the original indictment, the First Superseding Indictment, the Second Superseding Indictment, the Third Superseding Indictment, the Fourth Superseding Indictment, the Fifth Superseding Indictment, and the Sixth Superseding Indictment.

The Fifth Superseding Indictment in paragraph 183 alleged the same false allegation as in *USA v. Rodean*, that the Defendants

> "did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, or otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, without lawful authority to do so."

Therefore, the USAO presented false information to the Grand Jury here in this case just as Judge McFadden found it did in *USA v. Rodean*.

The current indictment depends upon and builds upon the testimony and evidence before the Grand Jury from the previous superseding indictments, and the facts alleged were not again re-presented to the Grand Jury, the false information presented to the Grand Jury raises concerns.

Defendant Kelly Meggs is entitled to inspect the Grand Jury minutes, notes, exhibits, arguments from the prosecution, and full testimony of all witnesses in light of these irregularities and questions about the accuracy and credibility of the USAO's presentations to the Grand Jury.

**B.    PROSECUTION ACTIVELY MISLED GRAND JURY ON OATH KEEPERS' PURPOSE OF PROVIDING**

On May 26, 2021, an FBI Special Agent once again testified before the Grand Jury in the presence of several Assistant U.S. Attorneys working on this case here.

As transcribed on pages 37 through 41, an alert member of the Grand Jury asked the FBI Special Agent witness what "PSD" stands for in the exhibits presented.  The FBI Special Agent witness explained that PSD stands for Personal Security Detail.  When the Grand Juror asked what that means, the FBI Special Agent witness explained that that the Oath Keepers were protecting a VIP.  When the Grand Juror asked who was the VIP, the FBI Special Agent witness explained that there were multiple VIPs that the Oath Keepers protected throughout the day.

Thereupon, the lead Assistant U.S. Attorney intervened by questioning the FBI Special Agent witness so as to redefine the Grand Juror's question.  The witness then gave the false impression that the Oath Keepers were only protecting one another.

This goes to the very heart of the charged Counts of Seditious Conspiracy (Count I), Conspiracy (Count II) and obstruction of an official proceeding (Count III).

The Government's actual knowledge that the Oath Keepers did not come to Washington, D.C. to interfere with the January 6 quadrennial Joint Session of Congress for the hearing and resolution of disputes about the votes from each State and territory in the Electoral College, nor to attack anyone, directly defeats the counts alleged against Kelly Meggs and requires the dismissal of the case due to USAO's misconduct.

**Counts I, II, and III of the Seventh Superseding Indictment must now be dismissed.**

Due to the testimony of "Person One" and "Person Ten" to the FBI, the AUSAs present had actual knowledge that this impression was false.  The USAO had actual knowledge that the

18

Oath Keepers' Protective Security Detail volunteer services were protecting speakers at various permitted, lawful and peaceful rallies and other VIPs – ___NOT protecting each other___.

The FBI Special Agent witness misled the Grand Jury by testifying that the Oath Keepers were protecting VIP's "within the Oath Keepers' orbit," leading the Grand Jury to falsely believe and conclude that the Oath Keepers were protecting each other, rather than coming to Washington, D.C. for the purpose of providing security for the permitted and peaceful rallies for speakers at the rallies and/or VIPs attending the rallies.

**This is the difference between guilt or innocence, acquittal or conviction.**

And, again, the Grand Jury was actually actively challenging the purpose for why the Oath Keepers came to D.C. on January 5-6, 2021. The Grand Jury was assertively questioning what the Oath Keepers were doing in Washington, D.C.

And faced with the Grand Jury's attempt to discover what the Oath Keepers' actual plans in D.C. were, the USAO actively sought to deceive and mislead the Grand Jury.

Defendant Kelly Meggs is entitled to inspect the Grand Jury minutes, notes, exhibits, arguments from the prosecution, and full testimony of all witnesses in light of these irregularities, to establish the fraudulent nature of the accusations against Kelly Meggs and others at and during the trial, or to dismiss the case before trial.

**C.    PROSECUTION ACTIVELY MISLED GRAND JURY ON PSD BACK STAGE PASSES**

As the U.S. Attorney's Office for the District of Columbia and relevant FBI officials and agents know very well by now, and have known for 9 to 10 months, the Defendants Oath Keepers planned a trip to the District of Columbia for the purpose of providing logistical support,

PSD (Protective Security Detail), support services, and first-aid for 100% peaceful, 100% legal, permitted rallies at the Ellipse area.  A permit was issued for the Ellipse rally by the U.S. Park Police.  And to provide such services later in the day at Lot 8 of the U.S. Capitol Grounds where a permit was issued by the U.S. Capitol Police.

The FBI seized from Kelly Meggs and most other, probably all, Oath Keepers who were in Washington, D.C., on or about January 5-6, 2021, the back-stage passes issued to them by the rally organizers of the private rally at the Ellipse area near the South lawn of the White House.

On March 17, 2021, the FBI Special Agent witness inadvertently confirmed all of the above and inadvertently confirmed the fraud of the instant criminal prosecution, in testimony before the Grand Jury.

On page 3, lines 3 through 23, of the FBI Special Agent witness's Grand Jury testimony transcript, upon the questioning of the AUSA, the FBI Special Agent witness testified that Oath Keepers Defendant Kelly Meggs and Robert Minuta arranged a Protective Security Detail to protect a person shown to the Grand Jury in a photograph.

On page 3, lines 24 through page 5 line 5, of the transcript of the FBI Special Agent witness's testimony before the Grand Jury on March 27, 2021, the AUSA refers to the backstage pass for the rally at the Ellipse which Edwards refers to as a "placard" around Oath Keeper Minuta's neck.

This testimony was in response to a direct, explicit question from the Grand Jury.

The Grand Jury was actively involved in seeking clarification, yet the FBI witness and USAO actively deceived the Grand Jury.  The transcript is being filed under seal.

The USAO would have been content to conceal the truth from the Grand Jury, had a

member of the Grand Jury not been alert enough to inquire what the pass or placard was.

Upon the AUSA's questioning, the FBI Special Agent witness then describes the FBI's investigation of the VIP pass to the rally at the Ellipse by asking if the backstage rally pass for a private rally would be accepted by three different government agencies _as government-issued identification_.

Thus, the Government knew that the Grand Jury was seeking to understand. Yet instead of admitting that the pass or "placard" is hard proof that the Oath Keepers came to District of Columbia to provide Protective Security Details not to storm the Capitol, The FBI Special Agent witness sought to confuse the Grand Jury by talking about whether the passes would be acceptable to government agencies government ID's. The rally organizers had issued backstage passes for the Oath Keepers logistical support and Protective Security Detail services, **_which the grand jury wanted to know about and was trying to find out about._** Answering the Grand Jury's questions by misdirecting the Grand Jury was an intentional deception by the USAO.

### D. LATEST INDICTMENT DOES NOT ALLEGE OBSTRUCTION OF OFFICIAL PROCEEDING

Curiously, the Seventh Superseding Indictment in the new group in _USA v. Stewart Rhodes_, split from _USA v. Thomas Caldwell_, no longer contains any allegation that any of these Defendants ever obstructed, delayed, stopped, or interfered with any official proceeding.

The latest indictment still contains a charge under Count IV of violating 18 U.S.C. 1512(c)(2) or aiding and abetting the same under 18 U.S.C. 2 of obstruction of an official proceeding. Yet there is no allegation that any official proceeding was ever obstructed, delayed, stopped, or hindered. (There was in prior indictments, but not the current one, unless counsel is

somehow experiencing a mental block after re-reading the indictment carefully four times.)

How the Grand Jury managed to indict Kelly Meggs of obstructing an official proceeding without alleging any official proceeding that was ever obstructed is curious enough to require a close examination of the proceedings before the Grand Jury held between October 10, 2021 through January 12, 2022.

### E.    INDICTMENTS FALSE ABOUT COLUMBUS DOORS

Various versions of the indictment falsely allege that the Defendants here violently shoved police officers aside and broke into the "Columbus Doors" (also called the "Rotunda Doors") at the landing on the top of the broad main staircase in the center on the East (Supreme Court / Library of Congress) side of the U.S. Capitol Police.

Two U.S. Capitol Police officers during the tour of the Capitol on January 22, 2022, sponsored by the U.S. Attorney's Office for defense counsel, confirmed to counsel for Kelly Meggs face to face that the 20,000 pound, solid bronze, 17-feet high, Columbus Doors cannot be opened from the outside.  (The photograph posted on the website of the Architect of the Capitol shows that the Columbus doors do not even have door handles on the outside.)

On August 25, 2021, the FBI interviewed an official of the U.S. Capitol Police who also told the FBI that (a) the Columbus Doors were in fact closed and locked on January 6, 2021, and (b) the Columbus Doors cannot be opened from the outside.

So the allegations of the Seventh Superseding Indictment issued on January 12, 2022, were known by the Government to be false as of August 25, 2021.

How did the Grand Jury issue allegations that are clearly false?  Where did the Grand

Jury come up with these ideas?

### F.     INDICTMENTS FALSE ABOUT COUNT V – "DEPREDATION"

The Grand Jury provides a meticulous time-line, step by step of when these Defendants allegedly did various things.  The quadrennial Joint Session of Congress on January 6, 2021, recessed at **2:18 PM** according to the Congressional Record.[1]

According to the Grand Jury, Kelly Meggs arrived at the U.S. Capitol building (as opposed to the grounds) **around 2:32 PM EST** [2] on January 6, 2021, at the bottom of the broad center East side stairs and walked up the East-side, central stairs [3] starting **at around 2:35 PM**, [4] and reached the landing at the top of the stairs **at around 2:39 PM**. [5] The doors opened (from the inside) **at 2:40 PM** [6] and Kelly Meggs allegedly entered through the open doors.  (Note that this is confirmed by a video obtained from the French government of raw (that is, continuous for 2 ½ hours) video of a television journalist from French TV.

But in COUNT V the latest Seventh Superseding Indictment alleges that Defendant Kelly

---

[1]     The court may take judicial notice that the House was recessed by the presiding officer at 2:18 PM, pursuant to standing Rule I, Clause 12(b) (allowing for immediate recess without a vote upon notice of a threat).  **Congressional Record House Articles | Congress.gov | Library of Congress,** Counting Electoral Votes--Joint Session Of The House And Senate Held Pursuant To The Provisions Of Senate Concurrent Resolution 1; Congressional Record Vol. 167, No. 4 (House of Representatives - January 06, 2021) **https://www.congress.gov/congressional-record/2021/01/06/house-section/article/H76-4**

[2]     Seventh Superseding Indictment, ¶ 91

[3]     The USAO and the Grand Jury seem to have some weird fixation with stacks of pancakes, and keep referring to a nonsensical crazy idea of a stack.

[4]     Seventh Superseding Indictment, ¶ 95.

[5]     Seventh Superseding Indictment, ¶ 97 (about 1 minute after 2:39 PM).

[6]     Seventh Superseding Indictment, ¶ 97 (about 1 minute after 2:39 PM).

Meggs either committed "depradation" [7] of Property of the United States in violation 18 U.S.C. 1361 or aided and abetted others such depradation in violation of 18 U.S.C. 2.

However, in the indictment of HUNTER EHMKE issued on January 27, 2021, the same U.S. Attorney's Office for the District of Columbia induced the same Grand Jury to indict HUNTER EHMKE for causing that same damage to federal property **at 2:15 PM** at the top of the center East-side stairs near the Columbus Doors.  See, *United States of America v. Hunter Ehmke*, Case No.  1:21-cr-00029-TSC-1., ECF Dkt. # 6, attached.

Not only does the USAO charge HUNTER EHMKE with committing the depredation that Kelly Meggs is charged with committing **at 2:40 PM**, but the USAO alleges that this happened at **2:15 PM**.  *United States of America v. Hunter Ehmke*, Case No.  1:21-cr-00029-TSC-1., ECF Dkt. # 11.

How many people are charged with breaking the same window?

Kelly Meggs could not have aided and abetted any one **at 2:39 PM** to depredate the window or anything in that area which occurred **at 2:15 PM** when he was not yet in the vicinity.

Not unless Kelly Meggs owns a time machine we don't know about.

So what was the Grand Jury told to induce it to indict Kelly Meggs?  The documents would show that Kelly Meggs is innocent of the charges against him.

---

[7] Curiously, "depradation" is not defined in the statute.  Various dictionary definitions of "depradation[s]" are inconsistent and mostly unrelated to what is alleged here.  The few federal precedents referencing "depradation" are mostly inconsistent with the allegations here. Understanding what the Grand Jury was told to induce it to charge Kelly Meggs with "depradation" is more serious by uncertainty over what "depradation" actually means.

### G.     INDICTMENTS FALSE AS TO MISREPRESENTED STATEMENTS TO ONE ANOTHER

Upon counsel's investigation and on information and belief, it will be exculpatory to see the actual statements that the Grand Jury relied upon, in full context.

The Seventh Superseding Indictment consists almost entirely in substance and about half in page length of the Oath Keepers talking to each other.  The Grand Jury falsely portrays statements among the Oath Keepers that in some cases have nothing to do with the January 6, 2021, events in Washington, D.C., specifically relate to events in other parts of the country and/or on other dates, are clearly observations lamenting the state of the country – not plans by the Oath Keepers to do anything – describe what other people are doing, not the Oath Keepers, and/or are severely misrepresented.

It will be exculpatory for the Government to produce any and all exhibits that were submitted to the Grand Jury embodying these statements.

### H.     INDICTMENTS FALSE ABOUT KELLY MEGGS DISRUPTING CONGRESSIONAL JOINT SESSION

All of the versions of the indictments allege that Congress was recessed and evacuated **at 2:20 PM EST**  on January 6, 2021, which the Congressional Record says was **at 2:18 PM EST**.

But the Grand Jury also alleges that Kelly Meggs arrived at the U.S. Capitol building **at 2:32 PM EST,** [8] at the bottom of the broad center East-side stairs and started walking up the East, central stairs **at 2:35 PM**, [9] and reached the landing at the top **at 2:39 PM**. [10] The doors

---

[8]     Seventh Superseding Indictment, ¶ 91
[9]     Seventh Superseding Indictment, ¶ 95.
[10]    Seventh Superseding Indictment, ¶ 97.

opened from the inside **at 2:40 PM** [11] and Meggs allegedly entered through the open doors.

How was the Grand Jury induced to indict Kelly Meggs for obstructing or delaying an official proceeding before he got there?  Again, this is based on the Grand Jury's allegations.

### I.    INDICTMENTS FALSE ABOUT INTENT OR CONSPIRACY TO OBSTRUCT JOINT SESSION OF CONGRESS

"PERSON TEN's" FBI interviews in May 2021 informed the Government that there never was any conspiracy, any plan, or any intention to obstruct any official proceeding, or go to the Capitol, or attack the Capitol or anything of the sort.

How could the Grand Jury repeatedly issue several superseding indictments alleging what the Government knew to be false at least as early as May 2021 if not March 2021?

The FBI interview for 3 hours with Stewart Rhodes on May 7, 2021, confirmed to the FBI that:   (a) PERSON TEN was in charge of everything that happened on the ground in and around Washington, D.C., on or about January 5-6, 2021 [and therefore his testimony is authoritative].  (b) Everything PERSON TEN told the FBI is accurate.  (c) There was no plan or conspiracy to obstruct, stop or delay the January 6 Joint Session of Congress.  (d) As stated under penalty of perjury by PERSON TEN to the FBI in May 2021, the OATH KEEPERS came to Washington, D.C. to assist with security, escorting VIPs and speakers through the crowds and to the stage, protect against attacks from Left-wing counter-demonstrators, and be prepared to provide first aid, for the 100% peaceful and 100% legal rally at the Ellipse area and.

Therefore, it would be *Brady* material exculpatory at trial to rebut unfounded argument and cross-examine witnesses who engaged in and furthered rampant speculation for the

---

[11]    Seventh Superseding Indictment, ¶ 97 (about 1 minute after 2:39 PM).

Defendant to receive documentation presented to the Grand Jury to show that Kelly Meggs never had the intent claimed.

### J. CONFUSION AMONG DEFENDANTS AND OTHERS IN OMNIBUS INDICTMENTS

Similarly, the omnibus nature of the indictment, alleging what others did, unknown people did, the crowd did, what someone posted or messaged, etc. clearly misleads and confuses the Grand Jury into indicting Kelly Meggs for things that Kelly Meggs had nothing to do with. Defendant demands information on what the Grand Jury was told *specifically about him* or utterly confusing what other people did as being done by Kelly Meggs.

### K. GUILT BY GROUP MEMBERSHIP

Did the Grand Jury indict Kelly Meggs and does Kelly Meggs stand accused merely for belonging to a group?  Clearly, yes.

The USAO has admitted (outside of the indictments) that none of these Defendants ever *personally* committed any violence, brawled with any police officers, or damaged any property. [12]  Rather they are alleged to have aided and abetted others.

Punishing or criminalizing merely belonging to an organization has long ago joined the ranks of contemptible practices no longer tolerated in a modern, decent society. **DOMBROWSKI V. H PFISTER**, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) tackled these issues from the standpoint of vagueness, but illustrates the concerns.

The landmark case of **NAACP V. ALABAMA**, 357 U.S. 449 (1958) of course came to

---

[12]    The Grand Jury alleges that Kenneth Harrelson brushed past or lightly touched an officer on the way in, when that is not what the videos show.  He apparently lightly patted out of respect a police officer on his way out of the building.

this question from the angle of a demand for the National Association for the Advancement of Colored People (NAACP) to disclose its membership lists.  However, the interest being invaded by these demands was that mere membership in a group was being used to punish members and/or presume them to be guilty purely from membership alone.  People who belonged to the NAACP but had committed no other "wrong" would be prejudiced.

### L.    EVACUATION OF JOINT SESSION OF CONGRESS CAUSED BY DISCOVERY OF PIPE BOMBS AND DECIDED LONG BEFORE KELLY MEGGS ARRIVED AT THE U.S. CAPITOL

Similarly, the Defendant demanded as *Brady* material all records from the U.S. Capitol Police as to why the U.S. Capitol Police interrupted the Joint Session of Congress **at 2:18 PM** (according to the Congressional Record, **2:20 PM** according to previous indictments).

What information presented to the Grand Jury – being clearly false – would justify inducing the Grand Jury to indict Kelly Meggs for obstructing an official proceeding?

Being a major step at any time, a threat assessment and decision-making process must have been underway probably as early as 2:00 PM, maybe 1:00 PM.  But Kelly Meggs did not arrive at the Capitol  until around 2:32 PM and walk calmly to the top of the center East stairway until 2:39 PM.  This is exculpatory evidence that Kelly Meggs neither did nor intended to nor aided and abetting anyone in disrupting the Joint Session of Congress which recessed at 2:18 PM to 2:20 PM.

Furthermore, pipe bombs were discovered only a few blocks from the U.S. Capitol **at 12:52 PM** on January 6, 2021, which does not seem to excite the Government's interest much. The continuing search for any other pipe bombs was clearly a major reason or the only major

reason for the USCP to advise Congress to recess and evacuate their respective Chambers.

So, what was the Grand Jury told to blame all of this on Kelly Meggs?

### M.     INDICTMENTS FALSE ABOUT TRAINING

Similarly, in the attempt to allege action by the Defendants instead of Defendants just saying extreme things to one another, the Grand Jury alleged that Kelly Meggs attended "paramilitary" training and subpoenaed COMBAT ART TRAINING in Leesburg, Florida.

That training company then made it clear that they don't offer "paramilitary training," have never given any such training, and did not train these Defendants on it, and it is illegal to provide such training under Florida law.  Then the Seventh Superseding Indictment quietly downplayed that allegation without admitting that the Government's allegation was wrong. Clearly the Government had failed to investigate the facts before making the allegation.

So how did the Grand Jury find facts and make allegations of matters easily-checked-out ahead of time by the FBI?  How could the FBI or USAO assert as fact to the Grand Jury much less at trial allegations that they could have easily determined to be false?

Now, the Seventh Superseding Indictment alleges that the Defendants attended "unconventional warfare" training sessions.  On information and belief after investigation, a session which may have had an invitation under a name like that was held warning the Oath Keepers not to get tricked or set up by unconventional warfare being waged *AGAINST THEM*.

Therefore, Kelly Meggs demands all information to support these allegations, because Kelly Meggs is absolutely, completely certain that any such information will be exculpatory and prove that the allegations against him are actually totally false.  Kelly Meggs contends that the actual documents and actual allegations claimed will show as evidence at trial precisely the

opposite of what Kelly Meggs is accused of.

## V.    CONCLUSION

The Accused requests this Court to grant this Motion and such other relief as may be deemed just. Defendant Kelly Meggs, demands to discover what was argued and stated to the Grand Jury other than formal witnesses, including any instructions not to listen to the news or disregard news reports and outside statements. In support thereof, Defendant attaches his detailed proposed order.

Dated: February 13, 2022             RESPECTFULLY SUBMITTED
                                     KELLY MEGGS, *By Counsel*


                                     Jonathon A. Moseley, Esq.

                                     USDCDC Bar No. VA005
                                     Virginia State Bar No. 41058
                                     Mailing address only:
                                     5765-F Burke Centre Parkway, PMB #337
                                     Burke, Virginia 22015
                                     Telephone:  (703) 656-1230
                                     **Contact@JonMoseley.com**
                                     **Moseley391@gmail.com**


                                     Jonathon Moseley, Esq.

### CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants. From my review of the PACER / ECF docket rec-

ords for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Jeffrey S. Nestler**
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
**jeffrey.nestler@usdoj.gov**

**Kathryn Leigh Rakoczy**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
**kathryn.rakoczy@usdoj.gov**

**Justin Todd Sher**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
**justin.sher@usdoj.gov**

**Troy A. Edwards, Jr**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
202-252-7081
**troy.edwards@usdoj.gov**

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
**Alexandra.Hughes@usdoj.gov**

**Louis J. Manzo**
DOJ-CRM
1400 New York Ave NW
Washington, DC 20002

31

202-616-2706
**louis.manzo@usdoj.gov**

**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
**ahmed.baset@usdoj.gov**

Jonathon Moseley, Esq.