IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KELLY MEGGS**<br><br>ACCUSED<br><br>*Styled as* <u>USA v. STEWART RHODES, et al.</u> | **Criminal Case No.**<br>1:22-cr-00015-APM<br><br><br>Assigned to the Honorable Amit Mehta, District Court Judge |

# REPLY
## IN SUPPORT OF KELLY MEGGS' MOTION FOR DISCLOSURE OF MATTERS OCCURRING BEFORE THE GRAND JURY

    The Accused, Kelly Meggs, through counsel, pursuant to pretrial discovery under Rules 6(e)(3)(C) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure, Rule 16 of the same, and *Brady v. Maryland,* 373 U.S. 83 (1963) and progeny, files his REPLY in support of his motion for entry of an Order disclosing to the Accused the specific information identified pertaining to the Grand Jury which returned eight (8) different versions of Indictments against him as it relates to this case, and for his grounds states as follows:

    Defendant Kelly Meggs is also filing a companion Supplemental Motion to this Motion to further document additional problems and reasons and need for this disclosure, which have become clear since the original filing of this motion.

I.   **INTRODUCTION**

The U.S. Attorney's Office's (USAO's) Opposition (ECF Dkit # 49) presents us now with five points against the motion, and – as a sixth point -- Kelly Meggs reminds the Court that one solution is to review some or a subset of the material *in camera.*

1) *Someone else filed a motion* which "had not 'made out a 'compelling need for disclosure' of the grand jury minutes.''"  ECF DKT #49 at 1, referring to (ECF No. 382 in case 1:21-cr-00028, brought by Donovan Crowl).  The Government thus sidesteps and ignores that this Movant did in fact "make out a compelling need."

2) The USAO argues that "The government has already disclosed the grand jury transcripts of the law enforcement witnesses who testified before the grand jury in this case, along with the exhibits introduced to the grand jury by those law enforcement witnesses."  (That is, ***not*** all the witnesses, ***only*** the law enforcement witnesses.)

3) "[T]he government will be completing discovery of all grand jury transcripts and exhibits in the near future."  No specifics or time line are provided, more than one year after the opening of the case and with trial looming in July 2022.

4) Incoherently, the USAO simultaneously argues exactly opposite positions in the same 3 page pleading, arguing that

   a. "the instant motion is not the proper forum for resolving such complaints" [about false statements]  [note the misdirection and legerdemain of a forum for "resolving" complaints rather than for *DISCLOSING Brady* information.]

   b. while arguing against the Defendant's right to obtain that very *Brady v. Maryland* information that would establish the knowingly-false statements

2

unlawfully presented to the Grand Jury.  Thus, as usual, the prosecution seeks to prevent the "proper forum" -- ***any*** forum -- from ***ever*** hearing or resolving such complaints about prosecutorial negligence or prosecutorial misconduct.

**5)** "[T]here is nothing inconsistent or improper with alleging that a defendant damaged the doors at 2:15 pm and that Meggs (and those whom he aided and abetted) also damaged those same doors at around 2:39 pm."

## II.   ADDITIONAL GOVERNING LAW IN REPLY

> "A matter occurring before a grand jury may not be disclosed unless there is a "particularized need" therefor; that is, only if the "material [sought] is needed to avoid a possible injustice in another judicial proceeding ...the need for disclosure is greater than the need for continued secrecy, and  ...  the[] request is structured to cover only material so needed."

**IN RE SEALED CASE**, 250 F.3d at 771 *(alterations in original) (quoting* **DOUGLAS OIL CO. OF CALIF. V. PETROL STOPS NW**., 441 U.S. 211, 222 (1979)).

> **"Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them."**

**GREGORY V. UNITED STATES**, 369 F.2d 185, 188 (D.C. Cir. 1966). See also, MODEL CODE OF PROF'L RESPONSIBILITY Rule 3.8(d).

> **"The prosecutor in a criminal case shall: make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense..."**

**Id.** *(Model Code)*

> **"Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from 'disclos[ing] a matter occurring before the grand jury.' Fed. R. Crim. P. 6(e)(2)(B). This is not to say that Rule 6(e) draws "a veil of secrecy ... over all matters occurring in the world that happen to be investigated by a grand jury."**

**SEC V. DRESSER INDUSTRIES, INC.**, 628 F.2d 1368, 1382 (D.C.Cir.) (en banc), cert. denied, 449 U.S. 993, 101 S. Ct. 529, 66 L. Ed. 2d 289 (1980).

Quite the contrary: "[t]here is no per se rule against disclosure of any and all information which has reached the grand jury chambers." See, **UNITED STATES V. LOPEZ**, 393 F.3d 1345, 1349 (D.C. Cir. 2005).

When the Defendant requests **BRADY V. MARYLAND**, 373 U.S. 83, 87 (1963)). materials for all grand jury notes/minutes/etc.

> **"The government cannot meet its *Brady* obligations by providing the defendant with access to 600,000 documents and then claiming that the defendant should have been able to find the exculpatory information in the haystack."**

*UNITED STATES V. SAFFARINIA*, 424 F.Supp.3d 46, 58 (D.D.C.), supported by *UNITED STATES V. PAXSON*, 861 F.2d 730, 737 (D.C. Cir. 1988).

Fed. R. Crim. Pro. Rule 12(b)(3) provides: "A criminal defendant may move to dismiss an indictment prior to trial based on 'an error in the grand-jury proceeding,' Fed. R. Crim. P. 12(b)(3)(A)(v)' **UNITED STATES V. TRIE**, 23 F. Supp. 2d 55, 61 (D.D.C. 1998)."

**SAFFARINIA**, 424 F.Supp.3d at 80.  Defendants can request disclosure of grand jury materials after showing there is grounds for dismissing the indictment due to matters that occurred before the grand jury pursuant to Rule 6(e)(3)(E)(ii). **UNITED STATES V. MECHANIK**, 475, U.S. 66, 80 (1986) (Marshall, J., dissenting).

4

The Court may disclose a grand jury matter "preliminarily to or in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii).

And refusing to "reverse convictions for demonstrated grand jury misconduct" relegates the law to "pretend-rules," enables prosecutors to freely engage in prohibited conduct, and imposes an unacceptable cost on defendants. **UNITED STATES V. MECHANIK**, 475, U.S. 66, 83 (1986) (Marshall, J., dissenting).

Closely associated with the federal rule are several U.S. Supreme Court decisions which hold that a defendant has a right to the testimony of witnesses appearing before a federal grand jury when he can show a particular need for this testimony. *See,* **UNITED STATES V. DENNIS**, 384 U.S. 855 (1966); **UNITED STATES V. PROCTOR & GAMBLE**, 356 U.S. 677 (1958).

Prosecutions alleging conspiracies carry the "inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants." **DENNIS**, 384 U.S. at 873. Under these circumstances, it is imperative the defense, the judge, and the jury be assured "the doors that may lead to truth have been unlocked." **Id.**

> In our adversarial system rarely is the prosecution justified in having "exclusive access to a storehouse of relevant fact" and exceptions to this notion must be justified by the "clearest and most compelling of considerations."

**Id.** at 873-874.

Under **BRADY**, evidence may still be material and favorable despite being inadmissible,

provided it could lead to admissible evidence. **SAFFARINIA**, 424 F.Supp.3d at 91.

The scope of the requirements of **BRADY V. MARYLAND,** 373 U.S. 83 (1963), is very broad. *See* United States Justice Manual (USJMM) § 9-5.001. For instance, a "prosecutor must disclose information that is inconsistent with any element of any crime charged" and --

> "… must disclose information that either casts a substantial doubt upon the accuracy of any evidence---including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of the evidence. This information must be disclosed regardless of whether it is likely to make the difference between convictions and acquittal of the defendant for a charged crime."

**Id.**

The disclosure requirement, "applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." **Id.**

If the court determines the suppressed evidence is material, that there is a reasonable likelihood the evidence could have impacted the jury's judgment, then a new trial is required. **UNITED STATES v. SITZMANN**, 74 F.Supp.3d 128, 134 (2014). A defendant must raise at least a colorable claim that the material contains evidence "favorable to him and material to his claim of innocence." **Id.**

> "Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an accused," *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying

6

falsely that a defendant's life or liberty may depend")."

**UNITED STATES V. BAGLEY**, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

"Secrecy for secrecy's sake should no longer be the rule.... Rather, the maintenance of the wall of secrecy around grand jury testimony should be grounded on sound reason."
**PARPLIANO V. DISTRICT COURT**, 176 Colo. 521, 527, 491 P.2d 965, 968 (1971). *See* also, **UNITED STATES V. MARION**, 404 U.S. 307 (1972); ***IN RE* PROCEEDINGS BEFORE THE GRAND JURY SUMMONED** October 12, 1970, 321 F.Supp. 238 (N.D. Ohio 1970).

Where the indictment mechanism is employed, it must be through a grand jury ***which is unbiased***. A tendency to prejudice may be presumed when, in presenting cases to the grand jury, the trial court finds that the prosecutor or his deputies have engaged in words or conduct that will invade the province of the grand jury or *tend to induce actions other than that which the jurors in their uninfluenced judgment deems warranted on the evidence fairly presented before them*. *See e.g.* **UNITED STATES V. WELLS**, 163 F. 313 (D. Idaho 1908), where the motion to dismiss the indictment was supported by affidavits of grand jurors alleging that the prosecutor made statements to the grand jury about the strength of his case against the defendant, the court dismissed the indictment, holding that when the prosecutor not only expresses his opinion but urges the finding of an indictment and it is clearly shown that the grand jurors must necessarily have been influenced, then prejudice will be presumed.

### III.     ARGUMENT:

#### A)     *Someone else filed a motion* which "had not 'made out a 'compelling need for disclosure' of the grand jury minutes.'""

It should be self-evident that whether someone else established a "compelling need for disclosure" of the Grand Jury's minutes, notes, charge to the jurors, arguments by prosecutors, etc. is irrelevant to whether Kelly Meggs has presented a compelling need on many different topics and in many details.

The USAO does not actually provide any reason to deny Kelly Meggs' motion except that *someone else's motion* did not establish a compelling need.

But, here, of course, Defendant Kelly Meggs has made out a compelling need, and indeed proven that this criminal case must be dismissed based merely upon what is known already. Indeed, this and other motions come after considerable time of investigation, not quickly.

Therefore, the information demanded must be provided because of the concerns raised and documented. Defendant Kelly Meggs' right to the information is substantiated and established by the fact that dismissal of the case is already required but the Grand Jury information will further convince with greater certainty the U.S. District Court for the District of Columbia, U.S. Court of Appeals for the District of Columbia Circuit and/ or the U.S. Supreme Court. Defendant Meggs is not required nor well-advised to use the minimum, rather than maximum, support for his multiple pending motions to dismiss. The USAO has engaged in "prosecutorial negligence" at the least (to coin a phrase, meaning that precedents indicate clearly that even unintentional prosecutorial misconduct can demand the dismissal of a count or an entire case; intentional bad acts are not required to mandate the dismissal of the case).   As we know:

### *If The Timeline Doesn't Fit*
### *…. You Must Acquit*

Among other severe, fatal defects, the case depends upon the Oath Keepers owning a time machine, which to the best of counsel's knowledge they do not have.

But this will be further substantiated by the information demanded from the Grand Jury proceedings.

In the instant case, the disclosure of the requested grand jury material clearly outweighs the need for secrecy. (This motion involves disclosure only to counsel, of course.)

Kelly Meggs is charged with crimes which, if he is convicted, carry a sentence of up to twenty years' incarceration for each of two counts. He was indicted in a highly charged, politicized atmosphere in which error, speculation, and misinformation was broadcast nightly on the news and on-line social media, and also proclaimed by the Attorney General of the United States, the President of the United States, Members of Congress, and even some Judges.

It is clear by now that the Government has known since at least May of 2021 that its case against these Defendants is a fabrication and that these Defendants are in fact innocent of the preposterous charges against them. This case must be dismissed, in whole or in part, based upon what we already know.

Therefore, it is essential that Kelly Meggs be provided disclosure of the specific grand jury material requested in order that he be given a realistic opportunity to file a motion to dismiss the indictment based upon any abuse or defect of the grand jury proceeding he may uncover.

As is typical in litigation, the USAO argues that the motion lacks sufficient detail to prove the need and propriety of the relief requested. Yet the Court complains about too much

detail.  The correct amount of explanation, factors, details, arguments, and reasons is that amount necessary to ensure – with a margin to spare – that the Court is convinced that the motion must be granted.  Clearly, the Court cannot argue the case.  Here, the USAO seeks to have the motion denied for providing not enough reasons to support it while the Court has complained about counsel providing ***too many reasons*** to grant Defendant's motions.   The Government thus sidesteps and ignores that this Movant did in fact "make out a compelling need."

> **B)** **The USAO argues that "The government has already disclosed the grand jury transcripts of the law enforcement witnesses who testified before the grand jury in this case, along with the exhibits introduced to the grand jury by those law enforcement witnesses."**

The Government inadvertently admits that the Government *has not* provided transcripts or information by actual witnesses, who might actually know something from personal experience.  The non law-enforcement witnesses which the Government has withheld would of course be testifying from their personal knowledge, not as mere clerks reciting the prosecution's notes handed to them to read  (because they merely summarize documents about things that they have no first-hand knowledge of).

The Government admits that it has only provided information about and transcripts of testimony from law enforcement witnesses, who clearly have no knowledge themselves, except for summation testimony of hearsay upon hearsay upon hearsay upon hearsay.

*At the very least, Defendant is entitled to know what witnesses to call at trial from among these and other Grand Jury witnesses.*  Kelly Meggs has a right to call the actual, knowledgeable witnesses – not just mere "news readers" reading from scripts written by prosecutors.  Kelly Meggs also has a right to call at trial the law enforcement "news reader"

10

witnesses to expose the contradictions in the case and what the Government does not know.

The three or four FBI agents who testified did not testify from any first-hand knowledge whatsoever, but merely delivered inaccurate and misleading tales of what other people think might have been true and misleading snippets of documents which were withheld as full documents from the Grand Jury.

. And of course, they engage in the flagrant common abuse of free-associating about what their "training" suggests, which has absolutely no evidentiary value whatsoever, and is inadmissible and not probative. They offer random speculation and opinion untethered from any actual facts.

(The only exception is a U.S. Capitol Police Investigator who drops an atom bomb on the myths of the prosecution, destroying the case in its entirety.)

Thus, the Opposition admits that they have withheld any witnesses (except the USCP Investigator) with any actual knowledge of the events covered in the indictment.

For the reasons established in his motion, Kelly Meggs demands production of all of these witness transcripts, as well as all minutes, notes, argument, charges, etc.

### C)     "[T]he government will be completing discovery of all grand jury transcripts and exhibits in the near future."

This is unacceptable.

Please note that counsel for Kelly Meggs inquired about this motion to the USAO before filing it, and the Government did not offer to supply the information sought. The Government responded that other than the grand jury transcripts of witnesses already provided, the Government refused to provide any further information.

Secondly, transcripts alone are not sufficient.

The case is scheduled to go to trial in July. It was previously scheduled to go to trial in January, then April. Yet material from up to one (1) _**year**_ ago have not yet been provided, we now learn.

This response is vague, non-commital, astonishing in terms of getting ready for trial, and simply unacceptable.

If this were only in the third or fourth month of the investigation, such a vague response might be suffered with frustration.

The Government was not obligated to rush these cases to the Grand Jury. The statutes of limitations involved are likely to be five years. But the Government chose to rush to the Grand Jury without being properly prepared, and made many negligent mistakes, including charging Thomas Caldwell as an Oath Keeper when he never was and as the leader which he never was, etc., etc.

But a year later with trial pending, this is not an acceptable response. We are now approaching 13 months since the start of the Grand Jury process.

Vague assurances that there might be something more coming would at least require a list of the witnesses that are yet to be disclosed. And again, these are disclosures to counsel under the Protective Order, likely designated as Highly Sensitive.

**D)** **The USAO simultaneously argues exactly opposite positions in the same 3 page pleading, arguing that "the instant motion is not the proper forum for resolving such complaints" (about false statements) while arguing against the Defendant's right to obtain the *Brady v. Maryland* information that would establish the knowingly-false statements unlawfully presented to the Grand Jury.**

Let us try to be clear:

The correct forum for obtaining the information that *Brady* and Rule 16 command to be revealed under these circumstances and this showing is here, now, in this motion.

The correct forum for

- ***employing*** the information disclosed
- is different from the forum for ***obtaining*** the information.

Once that information is excavated out of the Government's root cellar, then the proper forum to *APPLY* that information obtained will be in several motions to dismiss various counts off the indictment and the entire case as a whole.

Once again, the question is not whether we should prejudge or anticipate the information that is being sought, but whether sufficient grounds exist *to take it to the next level* and *investigate further*. As is epidemic in current U.S. society, the USAO confuses the process of investigating further with guessing what we think we might find.

Counsel would already be filing several motions to dismiss today but for the information that review of the Grand Jury minutes, notes, argument, charge, etc. might add to the record. The disclosure of what happened will almost certainly further document and buttress the forthcoming motions to dismiss. There is a slight possibility that the information would modify or contradict the planned motions to dismiss. But the correct and prudent thing is to *check* not to

*guess.*

As the Supreme Court explained in **DENNIS**, 384 U.S. at 875, determining usefulness *[of information sought]* can only be made by an advocate for the defense. The trial judge's function is limited to determining if a case for production has been made and in supervising the process. **Id**.  And courts in in this jurisdiction disfavor narrow readings by prosecutors as to their obligations under *Brady*.  **SAFFARINIA**, 424 F.Supp.3d at 57.

Withholding evidence of irregularities in the Grand Jury proceedings, "prosecutorial negligence" to coin a phrase (inadvertent, unintentional, or without bad faith prosecutorial misconduct), or information that could be used to impeach a witness at trial or support a motion to dismiss ahead of trial or a motion for a directed verdict during or after trial, even as to a single Count, would create prejudice to Kelly Meggs. Prejudice means a "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Id.** at 134 (*citing* **STRICKLER V. GREENE**, 527 U.S. 263, 280 (1999)).

This is exactly the forum for having the irregularities of the Grand Jury proceedings examined and the information disgorged.  How that information is put to use is indeed in a different forum – motions to dismiss.

**E)** **"[T]here is nothing inconsistent or improper with alleging that a defendant damaged the doors at 2:15 pm and that Meggs (and those whom he aided and abetted) also damaged those same doors at around 2:39 pm.**

Yes, of course, it is both (a) directly inconsistent and self-contradictory and (b) improper to mislead the Grand Jury that these Oath Keeper Defendants [1] damaged a window at 2:39 PM that Hunter Ehmke damaged at 2:15 PM. [2]

How did Kelly Meggs "aid and abet" at 2:39 PM the damage to the window at 2:15 PM?

Ah, there is that time machine again.

*If The Timeline Doesn't Fit*
*…. You Must Acquit*

While it is often repeated that the prosecution is not required to provide the Grand Jury with all available information or information exculpatory to the Defendant, neither prosecutors nor government witnesses may lie to the Grand Jury directly or mislead the Grand Jury so as to

---

[1] To an astonishing, remarkable degree the Oath Keeper Defendants are all very similarly situated. Even though some Oath Keepers, legally authorized to be on the U.S. Capitol Grounds by the six (6) demonstration permits issued by the U.S. Capitol Police, arrived at different times, the timeline admitted to by the Government destroys the Government's case. While there are some important factual and legal distinctions among the Defendants, the Government ignores those distinctions and all of the Defendants are conceptually – in the Government's misguided view – all guilty or innocent together as a group for the same (misguided) alleged reasons. For example, the Defendants are charged with guilt from shouts by unknown people in the crowd at the Capitol from people they do not know and never met before, during or after. Thus, it is almost impossible not to discuss the Oath Keepers' common circumstances.

[2] Recall that the indictment presents misleading snippets of sentences or phrases ripped violently from the original documents. The original documents have been withheld. Yet those deceptive snippets portray the Oath Keepers as talking ***TO EACH OTHER.*** There has been no hint of any words or actions **prior to 2:39 PM** by which Kelly Meggs could have "aided and abetted" someone else in any depredation of federal property. **It's 2:39 PM or never.** Thus, the Oath Keepers here neither depredated any property nor aided and abetted anyone else in doing so. Hunter Ehmke has pled guilty to doing so **at 2:15 PM.**

15

effectively lie by omission or implication.[3]

Could there be some convoluted, improbable explanation?

Doubtful.

Yet, that is not an answer.  The question is whether the Grand Jury was misled.  Was the Grand Jury given false information?  On its face, yes, the Grand Jury was misled.

### *The contradiction raises substantial grounds for suspicion requiring further inquiry.*

How many Defendants is the Government charging with breaking the same window?

Merely imagining that Kelly Meggs could have broken the same window at 2:39 PM that Hunter Ehmke already broke at 2:15 PM is insufficient.  This raises considerable questions about the indictment which requires the disclosure to counsel of what was actually presented to the Grand Jury.

Presenting the Grand Jury with the claim that Kelly Meggs broke a window **at around 2:39 PM** without informing the Grand Jury that Hunter Ehmke already broke the same window **at 2:15 PM** would constitute a lie by omission or implication.

Even if it were not preposterous for Kelly Meggs to break an already-broken window, it would certainly require a bit more of an explanation to the Grand Jury.  Kelly Meggs is entitled to that information – or more precisely the flaws in that information – as *Brady* material that would be exculpatory.  It is extremely unlikely that such a strange explanation would not be riddled with misinformation, lack of logic, and misinformation, particularly when there is no indication that Kelly Meggs was ever anywhere near the broken window or any other damaged property.

---

[3]   A prosecutor obviously cannot subporn perjury of a non-government witness, of course.

Our task at hand consists of probabilities. A 0.0000001% probability that Kelly Meggs could have broken a window that he was never anywhere near that someone else had already broken 25 minutes earlier justifies further inquiry and disclosures under *Brady*.

Was this the same session of the Grand Jury in both cases?

We don't know.   Should we know? Yes.

Did the USAO tell one Grand Jury that the window was broken by Hunter Ehmke **at 2:15 PM** but tell a different Grand Jury that Kelly Meggs did it **at 2:39 PM**?

### F)   *In Camera* Viewing and Highly Sensitive Designation

The Court ought not forget that one valid approach to dealing with these issues is to view some or all of the Grand Jury material *in camera* as needed to assure the Court that disclosure is appropriate.

Furthermore, Meggs, by counsel, assumes that the disclosed material would be presumptively designated as "Highly Sensitive" under the Protective Order, because it is from the Grand Jury. Providing the information to counsel, including for filing as an exhibit under seal to motions, would not mean public revelation of the Grand Jury proceedings.

## IV.   CONCLUSION

The Accused requests this Court to grant this Motion and such other relief as may be deemed just. Defendant Kelly Meggs, demands to discover what was argued and stated to the Grand Jury other than formal witnesses, including any instructions not to listen to the news or disregard news reports and outside statements. In support thereof, Defendant attaches his detailed proposed order.

Dated:  March 1, 2022                    RESPECTFULLY SUBMITTED
                                         KELLY MEGGS, *By Counsel*

*Jonathon A. Moseley, Esq.*

USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
**Contact@JonMoseley.com**
**Moseley391@gmail.com**

*Jonathon Moseley, Esq.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Jeffrey S. Nestler**
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
**jeffrey.nestler@usdoj.gov**

**Kathryn Leigh Rakoczy**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928

(202) 305-8537 (fax)
**kathryn.rakoczy@usdoj.gov**

**Justin Todd Sher**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
**justin.sher@usdoj.gov**

**Troy A. Edwards, Jr**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
202-252-7081
**troy.edwards@usdoj.gov**

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
**Alexandra.Hughes@usdoj.gov**

**Louis J. Manzo**
DOJ-CRM
1400 New York Ave NW
Washington, DC 20002
202-616-2706
**louis.manzo@usdoj.gov**

**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
**ahmed.baset@usdoj.gov**