**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KELLY MEGGS**<br><br>**ACCUSED**<br><br>*Styled as <u>USA v. STEWART RHODES, et al.</u> incorporating cases against multiple Defendants* | **Criminal Case No.**<br><br>1:22-cr-00015-APM<br><br><br>Assigned to the Honorable Amit Mehta, District Court Judge |

## DEFENDANT KELLY MEGGS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNT I OF THE INDICTMENT

COMES NOW Defendant Kelly Meggs, by counsel, and hereby moves the Court with these additional arguments supplemental to the Defendant's Thomas Caldwell's "MOTION TO DISMISS COUNTS 1, 2, 3, & 4 OF THE INDICTMENT" by David Fischer, Esq., in which Kelly Meggs joins with regards to Thomas Caldwell's motion to dismiss Count I of the Seventh Superseding Indictment (hereinafter "7thS.I.").

With a looming April 15, 2022, deadline for Rule 12 motions and uncertainty as to when he will be able to file this Notice, Counsel for Meggs has been able to review the Motion to Dismiss being filed, and determine Meggs' position thereon.

### I.   BACKGROUND AND CONTEXT

Defendant Kelly Meggs joins in and incorporates by reference as if fully set forth herein the procedural and factual background and context presented in Defendant Thomas Caldwell's

1

"MOTION TO DISMISS COUNTS 1, 2, 3, & 4 OF THE INDICTMENT" by David Fischer, Esq., in which Kelly Meggs joins.

## II.     GOVERNING LAW

Defendant Kelly Meggs joins in and incorporates by reference as if fully set forth herein the Governing Law presented in Defendant Thomas Caldwell's "MOTION TO DISMISS COUNTS 1, 2, 3, & 4 OF THE INDICTMENT," in which Kelly Meggs joins. Kelly Meggs further presents as Governing law that:

A defendant may move to dismiss an indictment on the grounds that, *inter alia*, it fails to state an offense or contains multiplicitous counts. Fed. R. Crim. P. 12(b)(3)(B). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d. 125, 128 (D.D.C. 2007). An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. Id.

Before trial, a defendant in a criminal case may move to dismiss the charging document for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). See *United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016)(Citations omitted). The operative question is whether the allegations in the 7thS.I., if proven, permit a jury to conclude that the defendant committed the criminal offense as charged. *Ankinyoyenu* at 9-10. See *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C.2012) ; *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C.2011). Moreover, in analyzing this, "a district court is limited to reviewing the face of the charging document and, more specifically, the language used to charge the crimes." *United States v. Sharpe*,

438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis original).

A valid charging document must set out "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Pickett*, 353 F.3d 62,67 (D.C. Cir. 2004). The Government must state the essential elements of the crime and allegations of "overt acts [constituting the offense] with sufficient specificity." *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995).

A criminal complaint is also meant to satisfy at least two constitutional provisions. First, it gives Sixth Amendment notice of the nature and circumstances of the alleged crime so the accused may meet the charge and defend himself. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, a valid indictment fulfills the Fifth Amendment's edicts that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Martinez,* 764 F.Supp.2d 166, 170 (D.D.C.2011) (quotations and citations omitted).  That is, the allegations must be sufficiently clear, complete, thorough enough, non-generic, and specific to the particular Defendant to identify if the Defendant were later charged with the same offense that double jeopardy applies to bar a second prosecution of the same offense.

A criminal complaint fulfills these fundamental constitutional provisions when it sets out both the elements of the crime and the factual circumstances that would satisfy those elements when assumed true. *Hamling*, 418 U.S. at 118-19. A criminal complaint may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. See *Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017); (Jackson, D.J.).

The Supreme Court spoke to this requirement many years ago:

3

> "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone."

*United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

The Supreme Court also noted:

"It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, `includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, — it must descend to particulars.'" *Id.*

Special notice should be paid to the descriptor "generic" as being inadequate. Allegations that are generic and not specific to a particular Defendant are not sufficient.

The D.C. Circuit has ruled on the necessity of factual allegations. *United States v. Nance*, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing where the indictment failed to make necessary factual allegations).

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the Circuit Court examined an indictment that alleged that the defendants had "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful-assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding and obstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw. As stated by the *Hunter* Court:

4

> [i]t is elementary that an information or indictment must set out the facts constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the *exact* crime which he is alleged to have committed.

*Id.* at 409, 410 (emphasis added) (internal quotation marks and citation omitted).

The *Hunter* Court also helpfully observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the requirements of the established rules of criminal pleading," which in turn rendered it "insufficient in law." *Id.* at 410.

Federal courts "traditionally exercise restraint in assessing the reach of a federal criminal statute." *United States v. Aguilar*, 515 U.S. 593, 600 (1995).  The Supreme Court has urged this restraint "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'" Id at 600 (citations omitted); *cf Sessions v Dimaya*, 139 S. Ct. 1204, 1223-28 (2018) (Gorsuch, J., concurring in part and concurring in judgement).  This "prudent rule of construction" continues with force today. *Dowling v. United States*, 473 U.S. 207, 214 (1085); see *Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018)(endorsing the rule).

In addition, under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant so long as doing so would not "conflict with the implied or expressed intent of Congress" *Liparota v. United States*, 471 U.S. 419, 427 (1985).

"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the

5

first essential of due process of law." *Connally v. General Construction Company,* 269 U.S. 385, 391, 46 S.Ct 126, 127, 70, L.Ed. 322 (1926). "[A] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries…pursue their personal predilections.'" *U.S. v. Poindexter*, 951 F.2d 369, 378 (D.C. Cir. 1991) (Citing *Kolender v. Lawson,* 461 U.S. 352, 357-58, 103 S. Ct 1855, 1858, 75 L.Ed. 2d 903 (1983).

**III.      SUPPLEMENTAL ARGUMENT**

**A.      Count I Must be Dismissed under Rule 12 of the Federal Rules of Criminal Procedure ("F.R.Crim.P.") for Failure to State an Offense**

Defendant Kelly Meggs joins in and incorporates by reference as if fully set forth herein the Argument presented in Defendant Thomas Caldwell's "MOTION TO DISMISS COUNTS 1, 2, 3, & 4 OF THE INDICTMENT" with regard to Count I of the 7thS.I. in which Kelly Meggs joins.  Kelly Meggs further presents as supplemental argument establishing his Motion to Dismiss Count I that:

In the status conference held on April 8, 2022, the Honorable Amit Mehta, District Court Judge, to the best of counsel's recollection, [1] defined the scope of the case with more precision, reminding and instructing the Defendants and counsel and prosecutors – without contradiction by prosecutors -- that:

- These Defendants are not charged with damaging any property.
- The case will turn upon the intent of the Defendants, impliedly suggesting that the conspiracy counts are crucial and that mainly the group chats are determinative of that intent and therefore

---

[1]     Preparation of the transcript is pending and counsel can only paraphrase from recollection.

In fact, these Defendants are not charged with committing any violence. (An unnamed person near Kenneth Harrelson is alleged to have jostled a police officer at the entrance of the Columbus Doors / East Rotunda Doors although counsel is informed that video will this unnamed person being shoved by the surging crowd into a police officer.)

In counsel's analysis, the 7thS.I. repeats over and over the threadbare allegation, unsupported by any actual allegations of fact, that the Rhodes Defendants acted or committed thought crimes "**to oppose the lawful transfer of presidential power.**" The repetition of this conclusory statement, devoid of supporting factual allegations, becomes almost a parody of itself.

Among other reasons, this central claim of Count I fails because nothing alleged involves or relates to **opposing the lawful transfer of presidential power.**

The Constitution makes clear that it is a Constitutional *IMPOSSIBILITY* to "oppose the transfer of presidential power." Not only could such a goal not be accomplished, but beyond that it is an irrational concept lacking in any basis in fact, law, or common sense. This is not a case in which conspirators might attempt to do something they are unable to successfully achieve. It is an irrational concept like dividing by zero. There can be no such thing in law or fact.

The **U.S. Constitution** requires that:

**Amendment XX (20th Amendment – Terms of President, Vice President, Members of Congress: Presidential Vacancy)**

> 1: The terms of the President and Vice President shall end at noon on the 20th day of January, and the terms of Senators and Representatives at noon on the 3d day of January, of the years in which such terms would have ended if this article had not been ratified; and the terms of their successors shall then begin.
>
> 2: The Congress shall assemble at least once in every year, and such meeting shall begin at noon on the 3d day of January, unless they shall by law appoint a different day.
>
> 3: If, at the time fixed for the beginning of the term of the President, the President elect shall have died, the Vice President elect shall become President. If a President shall not have been chosen before the time fixed for the beginning of his term, or if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified.
>
> 4: The Congress may by law provide for the case of the death of any of the persons from whom the House of Representatives may choose a President whenever the right of choice shall have devolved upon them, and for the case of the death of any of the persons from whom the Senate may choose a Vice President whenever the right of choice shall have devolved upon them.

Therefore, presidential power will unavoidably be transferred every four years. A president's term "shall" end at noon on January 20 every four years. Not maybe. Not if. It "shall" end. This Constitutional requirement is self-executing. A president at 11:59 P.M. ceases to be President at 12:01 P.M. (technically 12:01 P.M. plus 1 second) on the fourth January 20 (counting the first January 20 inclusively) since his or her term began.

There is nothing in heaven or Earth that can stop the transfer of presidential power, nothing in the universe, that can add 1 minute to a President's term of office. Not even God making the sun (appear) to stand still would keep a President in office 1 second longer because even if the Earth stopped rotating, it would still be 12:01 P.M. one minute after noon.

Read without the gloss of false assumptions and emotionalism super-imposing what is not actually written in the 7thS.I., there are no allegations of fact in the 7thS.I. capable of setting forth an offense that any of the Oath Keepers ever thought of, imagined, hallucinated, planned, or acted upon any idea "**to oppose the transfer of presidential power**."

Instead, if we actually read the actual allegations of the 7$^{th}$S.I., rather than imagine what we want it to say or expect it to say, just as in the *Bush v. Gore*, 531 U.S. 98 (2000), controversy, attended by approximately **fifty (50) lawsuits** litigated in the year 2000 following the presidential election of 2000, the question presented by the allegations of the 7thS.I. exclusively speak to ***TO WHOM*** the Defendants believed should be President.

But this necessarily makes the efforts, non-plans, and intent of the Oath Keepers *Rhodes* Defendants into protected First Amendment activity protected under the First Amendment to the U.S. Constitution. The question of **how** Congress – what we are commanded to believe and recite was a purely "ceremonial" meeting and photo-op of Congress on January 6, 2021 – ***ought to*** apply the laws to the facts, amidst unprecedented, massive alterations. Those are political opinions.

Someone would become President at 12:01 P.M. on January 20, 2021. The question is ***WHOM***.

Furthermore, the transfer of presidential power on January 20, 2021, would unavoidably be diffuse and decentralized. Every person or official subject to the authority of the President of the United States anywhere in the country would understand that the President had changed at noon.

9

There is no place or method by which the transfer of presidential power could ever be opposed.

This is not that the Defendants attempted something they could not achieve. This means that in the absence of any clear evidence that any such plan was ever agreed to by these Defendants, the ability of prosecutors or the Court to merely ***guess*** what the Defendants intended is sharply constrained.

But this is Earth shattering.

This necessarily makes everything in this case the political beliefs and political activism of these Defendants and hundreds of others, concerning ***TO WHOM*** the laws and facts properly and correctly assigned the transfer of presidential power.

This is unavoidably a difference of opinion as to how the laws operate, whether Article II, Section 1, of the U.S. Constitution gives the State legislatures (not State judges, election officials, etc.) exclusively authority to determine the method of choosing Electors to the Electoral College in presidential elections, how radical changes

It is immaterial whether the Court, the U.S. Attorney's Office, the Congress, the media, or John Q. Public agrees or disagrees. Disagreements are a fundamental feature of politics.

It is immaterial who is correct.

What is material is that these and other Defendants are charged with holding political views different from the U.S. Attorney's Offices political beliefs.

***Again, these Defendants are not charged with any violence or damaging any property.***

They are charged with not believing the correct things about the 2020 election.

These Defendants are charged with "thought crimes" as described by George Orwell.

Obviously, this cannot transform the violence or damage perpetrated ***by others*** into acceptable or protected by the First Amendment.

***But these Defendants are not charged with violence or damage to property.***

For those who committed no violence or damage to any property, asking Congress to follow certain methods and analyses and come to certain conclusions is protected First Amendment activity.

Again, no violence is remotely First Amendment activity.

Damaging property is not First Amendment activity, despite being commonly associated with political protests, regrettably.

But in the absence of either, demonstrators who were non-violent and broke nothing were petitioning Congress to decide issues a certain way.

> **Amendment I, U.S. Constitution**
>
> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and ***to petition the government for a redress of grievances***.

*U.S. Constitution, First Amendment (emphasis added).*


**B.     Allegations of What Other People Did or Said Cannot State an Offense against Kelly Meggs and Must be Ignored**

Overwhelmingly, the 7thS.I. is flooded with irrelevant and immaterial allegations about what other people said or did, with no indication that any of the Oath Keepers' Defendants ever heard those comments or saw the actions of others, much less ever agreed with those statements. It is just as likely that if Kelly Meggs did hear what other people said, such as unidentified members of the crowd or even other Oath Keepers, his reaction was to reject such statements categorically. The 7thS.i. does not adequately state an offense by alleging that Kelly Meggs actually agreed with or acted upon statements made by others. The vast majority of the 7thS.I. is simply irrelevant to stating any offense

11

against Kelly Meggs. Surely this Court will not be taken in by surplusage.

**C.    Count I Must be Dismissed under Rule 12 of the Federal Rules of Criminal Procedure ("F.R.Crim.P.") for Failure to State an Offense Because A Conspiracy Cannot Exist to Pursue a Lawful act.**

Specifically, *<u>no conspiracy can exist to do what is lawful</u>* or to make a constitutionally-protected request for a lawful act to be done by another.

At root, these Defendants are alleged to have talked on November 9, 2020, ahead of a protest held on November 12, 2020, during such time when January 6, 2021, was not even on anyone's mind.

And Stewart Rhodes is alleged to have called upon the President then Donald Trump to invoke the Insurrection Act. The Defendants are alleged to have legally brought legal firearms legally to the Commonwealth of Virginia where they were legally entrusted to a man described in the messages among these as unable to walk long distances due to either feeling unwell or being out of shape. The allegations are clear that because the President then Donald Trump did not invoke the Insurrection Act, therefore the Defendants took no action upon any such idea.

There can be no seditious conspiracy asking the President to lawfully use in a lawful way a power entrusted to the President by a statute properly enacted by the U.S. Congress:

> "Rather, the court explained, the conspirators must have had 'a mutual understanding ... to cooperate with each other ***to accomplish an unlawful act***,' and petitioner must have joined the conspiracy 'with the intention of aiding in the accomplishment of those unlawful ends.' Id., at 192, 195."

*Ocasio v. United States,* 136 S. Ct. 1423, 194 L.Ed.2d 520 (2016) *(emphasis added)*. The Court also added:

> " see 2 J. Bishop, Commentaries on the Criminal Law § 175, p. 100 (rev. 7th ed. 1882) ('Conspiracy, in the modern law, is generally defined as a confederacy of two or more persons to

12

>accomplish some unlawful purpose')..." Ocasio v. United States, 136 S. Ct. 1423, 194 L.Ed.2d 520 (2016)

*Id.*

>"The rule is derived from the nature of the conspiracy prohibition. Conspiracy requires an agreement—***and in particular an agreement to do an unlawful act***—between or among two or more separate persons."

**ZIGLAR V. ABBASI**, 137 S. Ct. 1843, 198 L.Ed.2d 290 (2017) *(emphasis added).*

Asking the U.S. President to invoke the [Anti] Insurrection Act of 1807 ***is a lawful act.*** Asking the President to lawfully invoke a valid law is agreeing to do a lawful act lawfully. The trouble is that most people are unfamiliar with this law. But it is an actual law, like it or not.

Petitioning the President to lawfully invoke an actual law cannot support a charge of conspiracy, including seditious conspiracy.

The [Anti] Insurrection Act of 1807 -- obviously, the *ANTI* Insurrection Act -- now codified at 10 U.S.C. §§ 251 through 255, is a valid law which is on the books and is good law today. For example:

>In the wake of George Floyd's death in Minneapolis, MN, thousands have taken to the streets across the United States in protest against systemic racial injustice in the American Criminal Justice system. While the majority of protests are peaceful, a small percentage of the demonstrators are looting. In response, President Trump threatened to deploy the United States military against the protestors and looters to defend the life and property of the residents of cities or states who refuse to "take the actions that are necessary." The President's statement, delivered from the White House Rose Garden on June 1, left many asking whether the President possessed the requisite legal authority to deploy active duty soldiers against U.S. citizens. If so, where does he derive his authority? What are the limits of those powers, if any? The answer to these questions lies in the Insurrection Act of 1807.
>
>First, the President's Constitutional authority as Commander in Chief grants him the power to send American troops anywhere in the United States. The President's authority to use the military to enforce domestic law, however, is limited. The ability of the military to search, seize assets, and arrest protestors and looters is hindered by the law of *posse comitatus*. This bars any authority

13

from willfully using the military to enforce domestic law, except "in cases and under circumstances expressly authorized by the Constitution or Act of Congress." In short, the President may not act without express statutory authority.

The Insurrection Act legally authorizes the President to use active duty soldiers to enforce the laws of the United States in a few circumstances.

First, if there is "insurrection" in any state, at the request of the state's governor or legislature, the President may use the armed forces, "as he considers necessary to suppress the insurrection." Without the consent of the state, the President cannot invoke this provision.

Second, where the President believes "unlawful obstructions, combinations, or assemblages, or rebellion against the authority of the United States" make the enforcement of law unfeasible, he may deploy the military to enforce the law. The statute makes clear that the authority of the soldiers is restricted, for example to the enforcement of federal law. Another authorized use is for the protection of federal property. It is important to note: the provisions hinge on the President's subjective evaluation of the prevailing circumstances. The language of the Act provides broad room for interpretation.

The Act was used in 1992 at the request of then California Governor, Pete Wilson. During the Los Angeles protests following the acquittals of officers charged with the beating of Rodney King, the Governor sought assistance from then President George H.W. Bush who assumed control of the California National Guard and sent active duty army and marine soldiers. In the 1950s, President Dwight Eisenhower invoked the Insurrection Act without consent of the states to send troops to Arkansas to enforce federal civil rights legislation. In the 1960s, President John F. Kennedy invoked the Insurrection Act for similar purposes of protecting civil rights, and he deployed troops to Oxford, Mississippi. President Kennedy's order afforded military protection to James Meredith, a black student attempting to enroll at the University of Mississippi. In the two latter cases, both Presidents used the military for the enforcement of federal law.

Legal experts say that the President likely could invoke the law under the current circumstances. Opponents of the action could challenge in court whether the current conditions rose to the level of necessity to deploy the military. If President Trump did desire to use the military against the protestors, he would first have to issue a proclamation to disperse, under 10 U.S.C. §254. Which states: "whenever the President considers it necessary to use the militia or the armed forces under this chapter, he shall, by proclamation, immediately order the insurgents to disperse and retire peaceably to their abodes within a limited time." This proclamation prevents

14

>the President from secretly deploying the military, thus, preventing those involved in civil unrest an opportunity to retreat. Of course, even if the Act is invoked, it does not provide the military the ability to go in and start shooting. The rules for the use of force restricts force as a last resort, however, it does not limit the right of self-defense.

*Joseph Tantillo,* "**Peaceful Protest, Insurrection, & Military Force: The laws that regulate President Trump's authority to use active duty soldiers to quell civil unrest in America**," *Syracuse Law Review,* June 11, 2020, accessible at: **https://lawreview.syr.edu/peaceful-protest-insurrection-military-force-the-laws-that-regulate-president-trumps-authority-to-use-active-duty-soldiers-to-quell-civil-unrest-in-america/** *See, also*, Dylan Springer, "A Brief History of the Insurrection Act," St. Andrews Law Review, June 30, 2020, accessible at: **https://www.standrewslawreview.com/post/a-brief-history-of-the-insurrection-act**

>In the wake of Hurricane Katrina, Congress amended the Insurrection Act of 1807. The Act enables the President to deploy the military "to suppress, in any State, any insurrection, domestic violence, unlawful combination, or conspiracy." The amended Act expands the language of the original Act to include natural disasters, epidemics, or other serious public health emergencies, terrorist attacks or incidents, or other conditions. Opponents of the amendment, most notably all fifty governors, criticize the amendment as a presidential power grab aimed at suppressing the power of the states and increasing the role of the military in domestic affairs.
>
>This paper argues that the amendment to the Insurrection Act does not affect the President's existing powers to deploy the military domestically. Instead, this paper argues that the amendment merely clarifies the situations that justify the use of the military to respond to domestic disorder. An analysis of the historical use of the Act and the Act's language indicates that justification for presidential action prior to the amendment focused on the extent, rather than the source of the domestic disorder. The changes made in October of 2006 provide explicit examples of situations that may lead to events of public disorder justifying the President's invocation of the Act's authority. In addition, political and historical limitations, along with limitations in the Act itself, will restrict presidential abuse of the power. Thus, the uproar over the recent changes to the Insurrection Act and the fears of martial law are unfounded.

Danielle, Crockett, "The Insurrection Act and Executive Power to Respond with Force to Natural Disasters," Berkelely Law Review, accessible at: **https://www.law.berkeley.edu/library/resources/disasters/Crockett.pdf**

Therefore, these Defendants' ideas of urging the lawfully President at the time to lawfully invoke an actual law cannot be the basis of a charge of criminal conspiracy or seditious conspiracy.

**D.      CONCLUSION**

Therefore, Kelly Meggs moves the Court to dismiss Count I for seditious conspiracy from the 7thS.I.

At the status conference April 8, 2022, the Honorable Amit Mehta, District Court Judge, specifically gave instructions as to how co-Defendants should note their joining in other motions by simple notice rather than by motion or otherwise, and that it would be important for co-Defendants to actually do so to make the record clear as to who was moving the Court by joining in co-Defendants' motions.

Meggs, by counsel, joins in the motion to dismiss being filed by Thomas Caldwell.

However Meggs by counsel is also filing this supplemental arguments to add to Caldwell's motion to dismiss. [2]

Dated:  April 10, 2022                              RESPECTFULLY  SUBMITTED
                                                                    KELLY MEGGS, *By Counsel*

*[signature]*

Jonathon A. Moseley, Esq.

USDCDC Bar No. VA005
Virginia State Bar No. 41058

---

[2]     Although Kelly Meggs is seeking successor counsel, until such time or until relieved, counsel still has the duty to advance and preserve Kelly Meggs' legal rights and position, including to make sure that no deadlines or opportunities are sacrificed during a transition, including when a successor counsel has to take over.  The Court has evidently set a deadline for motions under Rule 12 of the Federal Rules of Criminal Procedure for this Friday, April 15, 2022.  However, this does necessitate filing this pleading while or before Thomas Caldwell is filing his own Motion to Dismiss.

16

                                       Mailing address only:
                                       5765-F Burke Centre Parkway, PMB #337
                                       Burke, Virginia 22015
                                       Telephone:  (703)  656-1230
                                       **Contact@JonMoseley.com**
                                       **Moseley391@gmail.com**

## CERTIFICATE OF SERVICE

        I hereby certify that on April 10, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

                 **Jeffrey S. Nestler**
                 U.S. ATTORNEY'S OFFICE
                 555 Fourth Street NW
                 Washington, DC 20530
                 202-252-7277
                 **jeffrey.nestler@usdoj.gov**

                 **Kathryn Leigh Rakoczy**
                 U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
                 555 Fourth Street, NW
                 Washington, DC 20530
                 (202) 252-6928
                 (202) 305-8537 (fax)
                 **kathryn.rakoczy@usdoj.gov**

                 **Justin Todd Sher**
                 U.S. DEPARTMENT OF JUSTICE
                 950 Pennsylvania Avenue NW
                 Washington, DC 20530
                 202-353-3909
                 **justin.sher@usdoj.gov**

                 **Troy A. Edwards, Jr**
                 U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
                 555 4th Street, NW
                 Washington, DC 20001
                 202-252-7081
                 **troy.edwards@usdoj.gov**

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
**Alexandra.Hughes@usdoj.gov**

**Louis J. Manzo**
DOJ-CRM
1400 New York Ave NW
Washington, DC 20002
202-616-2706
**louis.manzo@usdoj.gov**

**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
**ahmed.baset@usdoj.gov**

_/s/ Jonathon Moseley_
Jonathon Moseley, Esq.