UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22-cr-15 (APM)-7 |
| ) | |
| JOSEPH HACKETT, ) | Oral Argument Requested |
| ) | |
| Defendant. ) | |
| ) | |

**MOTION TO DISMISS COUNTS ONE, TWO, THREE, AND FOUR OF THE INDICTMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Rule 7(c) of the Federal Rules of Criminal Procedure, and pursuant to the Sixth Amendment of the United States Constitution, Defendant Joseph Hackett, by and through undersigned counsel, hereby moves this Court to dismiss Counts One through Four of the Indictment for lack of specificity and for failing to inform Mr. Hackett of the nature and cause of the accusation against him.[1]  This motion is based on the following Memorandum of Law and any other authorities the Court may consider.  Mr. Hackett respectfully requests oral argument on his Motion to Dismiss Counts One, Two, Three, and Four of the Indictment.

---

[1] Mr. Hackett joins Co-defendant Thomas E. Caldwell's Motion to Dismiss Counts 1, 2, 3, & 4 of the Indictment pursuant to Fed.R.Cr.Pro. 12(b)(3)(B)(v) for failure to state an offense. Doc. 84, 4/12/22.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOSEPH HACKETT'S MOTION TO DISMISS COUNTS ONE, TWO, THREE, AND FOUR OF THE INDICTMENT**

I.  **INTRODUCTION AND BACKGROUND**

The Sixth Amendment guarantees a criminal defendant "the right . . . to be informed of the nature and the cause of the accusation.[]" As will be discussed in greater detail below, the instant indictment fails to meet this constitutionally-guaranteed standard, and Counts One, Two, Three, and Four must be dismissed.

The instant indictment is not the first charging document to identify Mr. Hackett as a defendant. By way of a Fourth Superseding Indictment, returned on or about May 26, 2021, Joseph Hackett was first charged as a defendant in U.S. v. Caldwell, *et al*, Crim. No. 21-cr-28. Subsequently, the government obtained Fifth and Sixth Superseding Indictments on August 4, 2021 and December 1, 2021, respectively. For the most part, the Fourth through Sixth Superseding Indictments charge the same violations of U.S. Code and allege substantially similar conduct, but against additional defendants with each additional Superseding Indictment. Between May 26, 2021 and January 12, 2022, Mr. Hackett was on notice that the government alleged violations of 18 U.S.C. §§ 371 (conspiracy), 1512(c)(2) (obstruction of an official proceeding), 1361 (destruction of government property), 1752(a)(1) (entering and remaining in a restricted building), and 1512(c)(1) (tampering with documents). In each of the Fourth through Sixth Superseding Indictments, the government alleged that Mr. Hackett, with others, conspired "to corruptly obstruct, influence, and impede an official proceeding, that is, the Certification of the Electoral College vote." *See* Sixth Super. Indictment, ¶ 37, Doc. No. 513, Crim. No. 21-

cr-28.[2] Thus, preparation of Mr. Hackett's defense naturally centered around and focused on the allegation that he intended to corruptly obstruct and/or impede Certification of the Electoral College vote on January 6, 2021.

On or about January 12, 2022, the government obtained a Seventh Superseding Indictment in criminal matter 21-cr-28, but only named six of the defendants charged in the Sixth Superseding Indictment returned on or about December 1, 2021. Mr. Hackett is no longer a defendant in that criminal matter. Instead, he is charged in a new criminal matter, number 22-cr-15, with several of his previous co-defendants and two new co-defendants ("the Rhodes Indictment"). Mr. Hackett now stands charged with violations of 18 U.S.C. §§ 2384 (seditious conspiracy), 1512(k) (conspiracy to obstruct an official proceeding), 1512(c)(2) (obstruction of an official proceeding), 372 (conspiracy to prevent an officer from discharging any duties), 1361 (destruction of government property), and 1512(c)(1) (tampering with documents or proceedings).

The Rhodes Indictment is problematic for several reasons.

## II.     THE RHODES INDICTMENT

Despite alleging that 11 individuals participated in one conspiracy, the Rhodes Indictment clearly describes multiple distinct conspiracies in Count One. What is more problematic, however, is the use of ambiguous terminology and the failure to specifically describe which law

---

[2] Hackett incorporates herein all arguments presented by various co-defendants in criminal number 21-cr-28 in support of the argument that the Indictment fails to allege facts to support all elements of section 1512(c)(2); section 1512(c)(2) is unconstitutionally vague; and, as applied, section 1512(c)(2) violates the First Amendment. Furthermore, Mr. Hackett does not concede that Certification of the Electoral College vote constitutes an "official proceeding" for the purposes of section 1512(c)(2); however, he acknowledges the Court's ruling to the contrary, (Doc. 558, 12/20/21) and accordingly sets forth the arguments contained herein.

the government contends meets the elements of the seditious conspiracy statute. Mr. Hackett will address each, in turn.

      A.     <u>The Rhodes Indictment Alleges Multiple Conspiracies in Count One.</u>

At this juncture, the Court must accept all allegations set forth in the Rhodes Indictment as true. Mr. Hackett will therefore present and discuss the allegations as accepted fact for the purposes of this motion while noting that he looks forward to rebutting and defending the accusations against him at trial. In Count One, the government charges all 11 defendants with violation of 18 U.S.C. §2384, and the alleged acts in furtherance of the conspiracy are set forth at paragraphs 18 - 134. A fair reading of the charging documents demonstrates at least two, but perhaps three, distinct alleged conspiracies.

Paragraphs 18-28 describe acts taken between November 2020, and mid-to-late December 2020, that are characterized as plans to "oppose by force the lawful transfer of presidential power." Rhodes Indictment at ¶¶ 18, 19, and 25. Paragraph 20 references getting recruits "fighting fit by innaugeration [sic]." The indictment alleges that 10 of the 11 charged defendants (Mr. Vallejo is not referenced in these paragraphs) took actions in furtherance of a conspiracy to stop "the lawful transfer of presidential power," up to and including the inauguration.

Paragraphs 29-124 pertain to all 11 defendants and make reference to numerous actions or communications occurring between approximately December 21, 2020 to January 6, 2021. The communications cited and acts alleged pertain exclusively to January 6, 2021, in and around Washington D.C., particularly as they relate to the January 6, 2021 certification of the Electoral College vote. It is clear from reading these paragraphs that the government contends each

defendant participated in a conspiracy to engage in conduct aimed at hindering or disrupting the certification of the Electoral College vote on January 6, 2021[3], which is different in scope from the alleged conspiracy involving nine defendants described in paragraphs 18-28. The scope of that conspiracy, according to this indictment, was to oppose the transfer of presidential power, up to and including the January 20, 2021 inauguration.

Paragraphs 125-134 allege yet another separate conspiracy, one aimed at the "need to continue fighting to stop the lawful transfer of presidential power" after the January 6, 2021 riots and breach of the Capitol building. *See id.* at ¶ 126. The government alleges that five of Mr. Hackett's co-defendants continued to "plot" after January 6, 2021, up to approximately January 20, 2021. The government does not allege that Mr. Hackett engaged in any conduct or made any statements after January 6, 2021, regarding an ongoing "plot."

B.  The Indictment Uses Ambiguous Terminology that Deprives Mr. Hackett of Fair Notice as Required by the Sixth Amendment.

The phrase, "the lawful transfer of presidential power," is not found in the Twelfth or Twentieth Amendments to the United States Constitution, nor does it appear in 3 U.S.C. § 15. The phrase - or some iteration of it - is likewise not included in any of the titles, subheadings, or

---

[3] Of all the paragraphs between 29 and 124, only paragraph 30 makes reference to stopping the lawful transfer of presidential power. Specifically, that paragraph reads, in part, "[Rhodes] urged President Trump to use military force to stop the lawful transfer of presidential power, describing January 6, 2021, as 'a hard constitutional deadline' to do so." As will be discussed at length below, the ambiguity of the phrase "the lawful transfer of presidential power" is problematic in this indictment. As it is used in ¶ 30, it is unlikely that it was a direct quote from Mr. Rhodes, but rather the government's choice to insert the phrase in place of an actual summary of the interview described therein. The direct quote attributed to Mr. Rhodes makes clear that the government contends this statement was made in furtherance of a conspiracy to disrupt certification of the vote on January 6, 2021 (as opposed to a conspiracy where the larger scope is aimed at the entire process of the transfer of presidential power).

text of all 21 subsections of Title III, Chapter 1 regarding "The President." It is nonetheless a phrase the Grand Jury has chosen to use throughout the indictment; in fact, it is the stated purpose of the conspiracy alleged in Count One. *See id.* at ¶ 16. The indictment is replete with references to the "transfer of presidential power" as though it has independent legal import, without acknowledging that the commonsense understanding of that phrase reflects a process. In this country, the actual transfer of presidential power occurs following a process that begins with the November 3 election and ends with inauguration on January 20 of the following year. The Grand Jury must understand this, as it articulated the whole process in each of the Superseding Indictments returned in criminal number 21-cr-28.

For example, the Sixth Superseding Indictment (Doc. 513, 12/1/21), at paragraphs one through four, sets forth almost all of the steps in the process of transferring presidential power:

Paragraph 1: "The 2020 United States Presidential Election occurred on November 3, 2020."

Paragraph 2: "The United States Electoral College is a group required by the Constitution to form every four years for the sole purpose of electing the president and vice president, with each state appointing its own electors in a number equal to the size of that's state's Congressional delegation."

Paragraph 3: "On December 14, 2020, the presidential electors of the Electoral College met in the state capitol of each state and in the District of Columbia and formalized the result of the 2020 U.S. Presidential Election: Joseph R. Biden, Jr. and Kamala D. Harris were declared to have won sufficient votes to be elected the next president and vice president of the United States."

Paragraph 4. "On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate ("the Joint Session") convened in the United States Capitol ("the Capitol") building.  The purpose of the Joint Session was to open, count, and resolve any objections to the Electoral College vote of the 2020 U.S. Presidential Election, and to certify the results of the Electoral College vote [] as set out in the Twelfth Amendment of the Constitution of the Untied States and 3 U.S.C. §§ 15-18.

The first step of the process of transferring presidential power is the November election.  If a new president is not elected, it goes without saying that there will be no transfer.  If, however, the vote results in the election of a new president that will succeed the incumbent, there are multiples steps that must be taken before the transfer is complete on the January 20 inauguration.  The Rhodes Indictment acknowledges this in paragraph 1: "The Twentieth Amendment provides that the terms of the President and Vice President shall accordingly end at noon on the 20th day of January, 'and the terms of their successors shall then begin.'"

Prior to the inauguration on January 20, however, the Twelfth Amendment of the United States Constitution and U.S. Code set forth the remaining prerequisite procedures.  To characterize an entire process that spans from November 3 to January 20 through the use of a phrase that suggests a singular event creates ambiguity that undermines Mr. Hackett's right to fair notice and frustrates preparation of his defense.

Separate and apart from the ambiguity so far described, the indictment further confuses and frustrates Mr. Hackett's defense preparation by using the phrase inconsistently throughout the indictment.  For example, there are points in the indictment where the phrase "lawful transfer

of presidential power" is seemingly used interchangeably with the intent to corruptly disrupt an official proceeding, that is the Electoral College vote certification on January 6; at other points in the indictment, the phrase is used in such a way as to connote two separate processes. *See id.* at. ¶¶ 1-12.  Paragraphs two through four repeat the stated purpose of planning "to stop the lawful transfer of presidential power."  In fact, paragraph 4 specifically alleges that "Rhodes and *certain* co-conspirators . . .planned to stop the lawful transfer of presidential power *by January 20, 2021* . . ." (emphasis added), i.e., above and beyond the alleged intent to disrupt the certification of the Electoral College vote on January 6, 2021.

     Paragraphs five through 11, however, are anchored to conduct occurring on January 6, 2021, specifically the breach of the Capitol building and alleged conspiracy to obstruct an official proceeding.  There is no use of the phrase regarding transfer of presidential power in paragraphs five through 11.  However, paragraph 12, alleges that "QRF teams were prepared to rapidly transport firearms and other weapons into Washington, D.C., in support of operations aimed at using force to stop the lawful transfer of presidential power." *Id.*  The entirety of paragraph 12 involves alleged conduct from January 6, 2021, specifically in relation to breach of the Capitol; thus, to use the phrase in this way, in this paragraph, suggests that breaching the Capitol in an attempt to obstruct an official proceeding is the same thing as stopping the lawful transfer of presidential power.  However, that cannot be.  First, because the indictment does not say that, and second, because the inclusion of paragraphs 125-134 make clear that the events on

January 6, 2021, alone did not - and could never have[4] - ended the process of the transfer of presidential power. ("Throughout the evening of January 6, 2021, the co-conspirators discussed the need to continue fighting to stop the lawful transfer of presidential power[.]" *Id.* at ¶126).

      C.      <u>The Indictment Fails to Specify Which Law of the United States was Violated.</u>

The government charges Mr. Hackett with knowingly conspiring, confederating, and agreeing, with other persons to "prevent, hinder, and delay the execution of *any law* of the United States" by force in violation of 18 U.S.C. § 2384. *See* Rhodes Indictment, ¶ 15 (emphasis added). Paragraph 16 of the Rhodes Indictment sets forth three options, the Twelfth and Twentieth Amendments of the United States Constitution and 3 U.S.C. § 1.[5] Each law addresses a different aspect of the process of transitioning from one presidential administration to another. Due process demands that the government prove, beyond a reasonable doubt, which United States law is the subject of the seditious conspiracy statute. It is inconceivable that the jury will be allowed to pick and choose among three different laws for each defendant; it is likewise inconceivable that the Court will allow the government to pursue multiple and alternative paths to reach a single conviction.

Paragraph 17 sets forth the "Manner and Means" of the alleged conspiracy in Count One, seditious conspiracy in violation of 18 U.S.C. § 2384. Within subsections (a) through (j), the

---

[4] The Twelfth Amendment allows for possibility that no president will be selected at the certification process ("And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President . . .").
3 U.S.C. § 15 sets forth the requirements of the certification process and outlines a procedure for lodging and resolution of objections.

[5] The full text of each is set forth in Exhibit A, attached hereto.

government cites to both the alleged "use of force to stop the lawful transfer of presidential power," and "an effort to prevent, hinder, and delay the Certification of the Electoral College vote[.]" *See id.* at ¶¶ 17(a) and 17(g), respectively. Both concepts are cited in furtherance of the government's allegation that Mr. Hackett committed seditious conspiracy. It is at this point in the analysis that the ambiguity triggered by internally inconsistent use of the phrase "the lawful transfer of presidential power" is particularly problematic. As written, the Rhodes Indictment allows for alternatives - multiple pathways - for the government to argue they have proven each and every element of the seditious conspiracy statute beyond a reasonable doubt. The following sets forth an example of two of the options available to the government:

    1) The "lawful transfer of presidential power" and "certification of the Electoral College vote" are one and the same. Therefore, the government can streamline its burden by focusing only on allegations relating to breach of the Capitol and obstruction of an official proceeding. The government can then claim that it has proven that Mr. Hackett conspired to stop the lawful transfer of presidential power as charged by the Grand Jury in the indictment; or,

    2) The "lawful transfer of presidential power" and "certification of the Electoral College vote" are two separate concepts. The transfer refers to the process that begins with the November 3 election and continues through the final step at the inauguration on January 20 of the following year, and certification of the Electoral College vote is one step of that process. The government could argue to the jury there are multiple pathways to find Mr. Hackett guilty of seditious conspiracy. If the jury is not persuaded that he corruptly obstructed an official proceeding, the government could still argue that his conduct was nonetheless intended to stop the transfer of presidential power at any other stage of the process.

### III.   LEGAL ARGUMENT

The Sixth Amendment guarantees a criminal defendant "the right . . . to be informed of the nature and the cause of the accusation.[]" Moreover, Federal Rule of Criminal Procedure 7(c) states, in part, that the "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Because the Rhodes Indictment lacks specificity and fails to adequately inform Mr. Hackett of the nature and cause of the accusation as required by the Sixth Amendment of the U.S. Constitution, each of Counts One through Four[6] must be dismissed.

### A.   Counts One Through Four of the Rhodes Indictment Fail to Inform Mr. Hackett of the Nature and Cause of the Accusation.

An indictment will only withstand a challenge to its sufficiency if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *See Hamling v. U.S.,* 418 U.S. 87, 117 (1974). The second requirement is grounded in the guarantee of the Sixth Amendment that "i[i]n all criminal proceedings, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]" *See Russell v. U.S.*, 39 U.S. 749, 763 (1962)(quoting U.S. Const., amend. VI). However, an indictment will not satisfy those requirements by merely parroting the language of the statute alleged to have been violated. The indictment must "sufficiently apprise[] the defendant of what he must be prepared to meet." *Id.*

---

[6] Counts Two, Three, and Four of the Indictment incorporate by reference all paragraphs contained in Count One. Those counts must be dismissed along with Count One, as they are rendered defective for the same reasons Count One is defective.

The *Russell* Court explained that "[i]t is an elementary principle of criminal pleading, that where the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, — it must descend to particulars." *Id.* at 765 (quoting *U.S. v. Cruishank*, 92 U.S. 542, 558 (1875)). The D.C. Circuit has also stressed that although "[t]he generally applicable rule is that the indictment may use the language of the statute[,] that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *U.S. v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980).

In *Russell*, the defendants were charged with violating 2 U.S.C. § 192, which prohibited any person who was summoned as a witness before Congress from refusing to answer "any question pertinent to the question under inquiry." *Russell*, 39 U.S. at 751. Because the indictment failed to allege facts that put the defendants on notice as to what the subject of the inquiry was, the indictment was constitutionally deficient. *Id.* at 766. Furthermore, the Court articulated that "[w]hat the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 764.

In *U.S. v. Murphy*, the defendant was charged with violation 18 U.S.C. § 1512(a)(1), which prohibited, among other things, threatening another person "with intent to influence the testimony of any person in an official proceeding." 72 F.2d 1151, 1153 (1st Cir. 1985). The First Circuit held that the indictment was insufficient because it did not identify any proceeding in which the defendants were allegedly attempting to influence a witness's testimony. *Id.* at 1154.

12

"Crucial to preparation of any defense to a charge under the statute is at least some indication of the identity of the proceeding in which the defendant tried to influence testimony." *Id.*

Unlike *Russell* and *Murphy*, the government does allege a great deal of factually specific conduct in the Rhodes Indictment, including specific dates, times, individuals and locations. Fatal to this indictment, however, is the failure to give Mr. Hackett notice which law he has allegedly violated as a result of the specifically-described conduct. The *Russell* and *Murphy* cases are instructive because those Courts articulate the importance of understanding precisely how specific conduct violates a specific law. Knowing which U.S. law is the subject of the seditious conspiracy statute is crucial information for the preparation of Mr. Hackett's defense. The Rhodes Indictment is constitutionally deficient.

      B.      <u>The Rhodes Indictment Lacks Specificity as Required by Fed.R.Cr.P. 7(c)</u>

As set forth more fully above, the Rhodes Indictment uses the phrase "the lawful transfer of presidential power" in different and contradicting ways throughout the indictment. As such, ambiguities exist that demonstrate this charging document does not comply with the requirements of the contents of an Indictment pursuant to Federal Rule of Criminal Procedure 7(c). The Rhodes Indictment does not contain a "plain, concise, and definite" statement regarding how the alleged conduct violates the statutes presented.

**IV.**      **CONCLUSION**

For the reasons set forth more fully herein, Mr. Hackett respectfully moves the Court to dismiss Counts One, Two, Three, and Four of the Indictment. Mr. Hackett requests oral argument and he reserves the right to supplement his Motion to Dismiss as appropriate or necessary.

          Respectfully submitted,

          _____/s/ Angela Halim_____
          Angela Halim, Esq.,
          Counsel for Joseph Hackett
          3580 Indian Queen Lane
          Suite 10A
          Philadelphia, PA  19129
          (215) 300-3229
          angiehalim@gmail.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, a copy of the foregoing Motion to Dismiss Counts One, Two, Three, and Four of the Indictment was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF. The same is available for viewing and downloading upon the following:

AUSA Jeffrey Nestler<br>
AUSA Kathryn L. Rakoczy<br>
Office of the United States Attorney<br>
555 4th Street, NW<br>
Washington D.C. 20001

                                                /s/ Angela Halim
                                                Angela Halim, Esq.

Dated: April 15, 2022

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. 22-cr-15 (APM)-7 |
| | ) |
| **JOSEPH HACKETT,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

**AND NOW**, this _____ day of _____, 2022, upon consideration of Defendant's Motion to Dismiss Counts One, Two, Three, and Four of the Indictment, the government's reply thereto, and oral argument, it is hereby **ORDERED** that the motion is **GRANTED**. Counts One, Two, Three, and Four of the Indictment shall be dismissed.

_____
**The Honorable Amit P. Mehta**
**United States District Court Judge**