UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Criminal No. 22-cr-15 (APM) |
| **ELMER STEWART RHODES, III et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

### MEMORANDUM OPINION AND ORDER

**I.**

Before the court are three motions seeking dismissal of the Superseding Indictment or certain counts. The court denies each motion for the reasons explained below.

**II.**

First up is a motion filed by Defendants Roberto Minuta, Thomas Caldwell, Kenneth Harrelson, Jessica Watkins, David Moerschel, and Kelly Meggs to dismiss the Superseding Indictment. Defs.' Mot. to Dismiss the Superseding Indictment, ECF No. 170 [hereinafter Defs.' Mot.]. The basis of that motion is two-fold: they contend that (1) the grand jury that returned the Superseding Indictment was not unbiased because it acted in the midst of congressional hearings concerning the events of January 6th, *id.* at 2–4, and (2) securing a new indictment while congressional hearings are ongoing constitutes prosecutorial misconduct, *id.* at 5–6.

As to their first argument, Defendants assume they have the right to assert a challenge based on grand jury bias, but that is not necessarily true. "[S]everal courts have held that a defendant cannot challenge a grand jury or individual grand jurors for bias at all," including the sole case in this District to address the issue. *United States v. Menendez*, No. 15-cr-155, 2015 WL

5703236, at *1 (D.N.J. Sept. 28, 2015) (citing, among other cases, *United States v. Knowles*, 147 F. Supp. 19, 20–21 (D.D.C. 1957) ("[T]he status of a member of a grand jury may not be questioned except for lack of legal qualifications.")). Courts that have permitted such challenges have set a very high bar: the defendant must demonstrate though proof "*actual* grand juror prejudice." *Menendez*, 2015 WL 5703236, at *2.[1] Here, Defendants offer no evidence, only speculation, that the grand jury lacked unbiased jurors. *See* Defs.' Mot. at 2–4. They presume that media coverage of the January 6th congressional hearings must have prejudiced the grand jurors against them, but "the fact alone of such publicity [does] not in itself constitute a sufficient showing of bias and prejudice." *Estes v. United States*, 335 F.2d 609, 613 (5th Cir. 1964) (citing *Beck v. Washington*, 369 U.S. 541 (1962)). Defendants' first argument fails.

As for their second, Defendants cite not a single case for the proposition that the government acts improperly when it seeks criminal charges during ongoing, highly publicized congressional hearings. That is not surprising. Such a rule makes little sense, as it would hamstring prosecutors in investigating wrongdoing simply because Congress acts in parallel. In any event, as the sole evidence of misconduct, Defendants point to the government's non-opposition to postponing the trial of a different set of January 6th defendants, a group known as the "Proud Boys" in *United States v. Nordean*, 21-cr-175 (TJK) (D.D.C.), due to the congressional hearings. Defs.' Mot. at 5–6. But the government's position with respect to *when* a trial should

---

[1] *See United States v. Smith*, 424 F.3d 992, 1003–04 (9th Cir. 2005) (holding that "[s]ubstantial proof of grand jury bias is required to overturn an indictment" and rejecting challenge where the defendant made "no factual allegation of actual bias on the part of any grand juror in his case" (internal quotation marks omitted)); *United States v. Two Eagle*, 318 F.3d 785, 793 (8th Cir. 2003) ("Dismissal of an indictment based on grand-jury bias is an extreme remedy, and the party seeking relief carries a heavy burden. A grand-jury indictment will only be dismissed upon a showing of actual prejudice to the accused."(internal citations omitted)); *United States v. Burke*, 700 F.2d 70, 82 (2d Cir. 1983) ("The grand jury need not deliberate in a sterile chamber . . . and a criminal conviction appealed on grounds of adverse preindictment publicity will not be overturned unless the moving party can bear the heavy burden of demonstrating that he has suffered actual prejudice as a result of the publicity." (internal citations and quotations omitted)).

occur sheds no light on whether it was improper to go before a grand jury and seek a superseding indictment.

### III.

Mr. Meggs, represented by new counsel, asserts various grounds for dismissal that supplement the motions to dismiss of other Defendants he already has joined. Def. Meggs's Mot. to Dismiss Counts 1–3 and 5, ECF No. 188 [hereinafter Meggs's Mot. to Dismiss]. His arguments are directed to Counts One through Three and Five only. The court already has rejected some of his arguments, which he simply adopts from other motions. *See, e.g.*, *id.* at 13–17 (arguing that members of Congress do not "execute" any law for purposes of the seditious conspiracy statute, 18 U.S.C. § 2384); *id. at* 17 (asserting that 18 U.S.C. § 1512(c)(2) does not reach the alleged conduct).[2] To the extent he makes new arguments, they are not easy to identify. The motion largely consists of characterizing the indictment in the light most favorable to him (as opposed to in favor of the government, as is required at this stage) and citing to cases without explaining how they specifically apply here. Regardless, the court rejects the arguments it can discern.

*First*, Mr. Meggs asserts that the indictment does not allege facts to support the charge of seditious conspiracy. Meggs's Mot. to Dismiss at 11–12. Mr. Meggs advanced a species of this argument previously, when represented by different counsel, but the court rejected it. *See* Mem. Op. & Order, ECF No. 176 [hereinafter Mem. Op. & Order], at 23. Newly reframed, the contention fares no better. The Superseding Indictment contains a host of factual allegations directed at Mr. Meggs: (1) he was part of an encrypted group chat and online meeting in the days after the

---

[2] The court rejected these arguments in various prior opinions in both the instant matter and the predecessor *Caldwell* indictment: (1) Mem. Op. & Order, ECF No. 176, at 13–18 (holding that members of Congress "execute" laws for purposes of 18 U.S.C. § 2384); (2) *United States v. Caldwell*, No. 21-cr-28 (APM), 2021 WL 6062718, at *11–19 (D.D.C. Dec. 20, 2021) (construing § 1512(c)(2) to reach the conduct alleged); and (3) *United States v. Caldwell*, 2022 WL 203456, at *2 (D.D.C. Jan. 24, 2022) (same).

2020 presidential election with other Defendants in which Mr. Rhodes referenced "civil war," urged copying the template used in Serbia to overthrow the government, and "outlined a plan to stop the lawful transfer of presidential power," including with force (Superseding Indictment, ECF No. 167 [hereinafter Superseding Indictment], ¶¶ 18–19); (2) participated in "a training on 'unconventional warfare'" (*id.* ¶ 22); (3) stated in an online chat, "We need to make those senators very uncomfortable with all of us being a few hundred feet away" (*id.* ¶ 34); (4) said on a chat, when asking about the "Ammo situation," that he had a "few thousand" (*id.* ¶ 56); (5) supplied and unloaded weapons at a hotel in Ballston, Virginia, for the Quick Reaction Force (*id.* ¶¶ 65–69); (6) entered the Capitol Building on January 6th in a "stack" formation with other Defendants (*id.* ¶ 97); (7) walked toward House Speaker Nancy Pelosi's office but "did not find Speaker Pelosi" (*id.* ¶ 106); and (8) after the events of January 6th, told another alleged co-conspirator that "FL stays home until shots fired!" (*id.* ¶ 131). These allegations, viewed in the light most favorable to the government, are sufficient to support the charge of seditious conspiracy against Mr. Meggs.

*Second*, without elaboration, Mr. Meggs insists that the seditious conspiracy statute is "constitutionally vague as applied." Meggs's Mot. to Dismiss at 13; *see also id.* at 22 (arguing that "neither Mr. Meggs nor any other defendant[] were on notice that the conduct with which they are alleged to have engaged would violate the sedition statute, as applied"). But the court already has held that the statutory terms, understood by their ordinary meaning, reach the conduct alleged, including that members of Congress do execute the laws for purposes of the statute. Mem. Op. & Order at 13–18. The conduct alleged when applied to the plain statutory text therefore presents no vagueness problem. *See United States v. Barnes*, 295 F.3d 1354, 1366 (D.C. Cir. 2002) (rejecting vagueness challenge where the statutory text was "sufficiently clear"). Strangely, Mr. Meggs makes much of the fact that the court stated during oral argument that "I wish we did" have

4

members of Congress from 1861 present to shed light on the seditious conspiracy statute. *See* Def. Meggs's Reply Mem. of P. & A. in Further Supp. of Meggs's Mot. to Dismiss, ECF No. 228 [hereinafter Meggs's MTD Reply], at 3. But a quip made during oral argument is just that, a quip; it does not constitute the court's holding or reasoning. Mr. Meggs also cites as proof of ambiguity the court's drawing from Reconstruction-Era dictionaries to interpret the words of the seditious conspiracy statute. *See id.* That is an odd criticism: The Supreme Court routinely relies on dictionaries from the time of a criminal statute's enactment to interpret undefined terms. *See, e.g.*, *Muscarello v. United States*, 524 U.S. 125, 128 (1998); *Smith v. United States*, 508 U.S. 223, 228–29 (1993). The court did the same here.[3]

*Third,* Mr. Meggs contends that his alleged conduct is protected under the First Amendment. Meggs's Mot. to Dismiss at 13. The court previously rejected that same argument with respect to the charge under § 1512(c)(2). *See United States v. Caldwell*, No. 21-cr-28 (APM), 2021 WL 6062718, at *22 (D.D.C. Dec. 20, 2021). The same reasoning holds with respect to the seditious conspiracy count. The seditious conspiracy statute, as relevant here, criminalizes agreements to use "force" either to oppose the authority of the United States government or to prevent, hinder, or delay the execution of any law. 18 U.S.C. § 2384. Thus, the statute prohibits certain agreements to use force. It does not impinge on protected First Amendment activities. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."); *Dennis v. United States*, 341 U.S. 494, 590 (1951) (Douglas, J., dissenting)

---

[3] Mr. Meggs also faults the court for not citing to a dictionary definition of the term "Execution of the Law." Meggs's MTD Reply at 3. But Mr. Meggs does not identify any dictionary or other source containing a definition of that phrase from the Reconstruction Era that would convey any different meaning than the ordinary one the court found applicable. Mr. Meggs also argues that the term "the Government" "always means the Executive" and that "Congress is always Congress." *Id.* If by this argument Mr. Meggs means that Congress falls outside of "the Government of the United States" for purposes of the seditious conspiracy statute, he provides no support for that proposition other than his own understanding of those words. He also misreads the indictment. The object of the seditious conspiracy is not an attack on Congress but opposing the lawful transfer of presidential power.

("Seditious conduct can always be punished."). Mr. Meggs seems to suggest that the seditious conspiracy statute must "be justified by the substantial showing of need that the First Amendment requires." Meggs's MTD Reply at 5 (quoting *Texas v. Johnson*, 491 U.S. 397, 406–07 (1989)). These defendants are not, however, indicted purely for their speech or assembly. *Compare Edwards v. South Carolina*, 372 U.S. 229, 237–38 (1963) (reversing conviction for breach of the peace where the defendants did no more than march peacefully on a sidewalk).[4] They are charged with a seditious conspiracy, which is not protected by the First Amendment.

*Fourth*, Mr. Meggs suggests that the rule of lenity must be applied when interpreting the seditious conspiracy statute because "the statute at a minimum is unclear in its application to congress." Meggs's Mot. to Dismiss at 22. Not so. "The rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, [a court is] left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17 (1994). The court already has held that the ordinary meaning of the terms used in the seditious conspiracy statute reaches the actions of the Vice President and members of Congress with respect to the laws governing the transfer of power, namely, the Twelfth Amendment and the Electoral Count Act of 1887. Mem. Op. & Order at 13–18. Therefore, resort to the rule of lenity is not needed.

*Fifth*, according to Mr. Meggs, the indictment violates the Double Jeopardy Clause because it charges him with both seditious conspiracy and conspiracy to obstruct an official proceeding. Meggs's Mot. to Dismiss at 24–28. He claims that, because the two offenses "do not require proof

---

[4] Mr. Meggs quotes *Edwards* as saying that "[a] three step analysis is required for resolving free speech claims on public property." Meggs's MTD Reply at 5. But *Edwards* says nothing of the sort; the quotation does not even appear in the case. *Edwards* is a criminal case in which the court held that "[t]hese petitioners were convicted of an offense so generalized as to be, in the words of the South Carolina Supreme Court, 'not susceptible of exact definition.' And they were convicted upon evidence which showed no more than that the opinions which they were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitate police protection." 372 U.S. at 237. That is not this case. And, Mr. Meggs's reference to a "three step analysis" concerns restrictions on speech in public versus nonpublic fora, a legal construct that plainly does not apply here. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

of a unique fact as to each other," the Clause is violated. *Id.* at 25. But he is wrong. "[T]he [*Blockburger*] test focuses on the statutory elements of the offense, not on the proof offered in a given case." *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998). "Hence if each provision requires proof of an element that the other does not, the *Blockburger* test is satisfied." *Id.* Here, the two conspiracy charges contain elements unique to each. Seditious conspiracy requires an agreement to use "force"; conspiracy to obstruct an official proceeding does not. Conspiracy to obstruct an official proceeding requires that its object be an official proceeding; seditious conspiracy has no such requirement. Accordingly, there is no double jeopardy bar to proceeding against Mr. Meggs on both conspiracy charges.[5]

*Finally*, Mr. Meggs maintains that Count Five, charging him with aiding and abetting in the destruction of government property, fails to state an offense. The court rejected that argument previously, and it does so again for the same reasons. *See* Omnibus Order, *United States v. Caldwell*, 21-cr-28 (APM) (D.D.C.), ECF No. 415, at 5–6.

## IV.

Mr. Meggs has filed a separate motion seeking dismissal of the Superseding Indictment on the grounds of selective prosecution. Def. Meggs's Mot. to Dismiss on the Basis of Selective Prosecution, ECF No. 189 [hereinafter Meggs's Selective Prosecution Mot.]. It, too, is without merit.

The standard applicable to a claim of selective prosecution "is a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). A presumption of regularity supports prosecutorial decisions, and only when presented with "clear evidence to the contrary" can that presumption be

---

[5] In his reply brief, to advance his Double Jeopardy argument, Mr. Meggs emphasizes that the government likely will use certain evidence (e.g., the Quick Reaction Force) to prosecute both conspiracy charges. Meggs's MTD Reply at 6. That argument, however, confuses the Double Jeopardy inquiry: the focus is on the *elements* of the offenses, not the proof offered by the prosecution. *See McLaughlin*, 164 F.3d at 8.

overcome. *Id.* at 465 (internal quotation marks omitted). A defendant must show that the decision to prosecute "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* (internal quotation marks omitted). The former element requires the defendant to show that others were similarly situated but not prosecuted. *See id.* at 469. "When a person's circumstances 'present no distinguishable legitimate prosecutorial factors that might justify' different prosecutorial decisions between him and the defendant, that person is similarly situated to the defendant." *United States v. Judd*, No. 21-cr-00040 (TNM), 2021 WL 6134590, at *2 (D.D.C. Dec. 28, 2021) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000)).

According to Mr. Meggs, he has been prosecuted for the "content of [his] message." Meggs's Selective Prosecution Mot. at 4. He compares his prosecution primarily to persons who, in the summer of 2020, attacked both the federal courthouse in Portland, Oregon, and the law enforcement officers protecting it. *See id.* Mr. Meggs does not identify any particular person that he claims is similarly situated but instead points out that none of those persons were charged with either seditious conspiracy or obstruction of an official proceeding, and to the extent they were charged, the charges against nearly all were dropped. *See id.* at 8–9. He also cites as comparators persons who protested outside the White House in the summer of 2020 and demonstrators arrested during the hearings of now-Justices Brett Kavanaugh and Amy Coney Barrett. *See id.* at 10–11. They, too, were not charged with seditious conspiracy or obstruction of an official proceeding.

Mr. Meggs fails to show that his comparators' "circumstances present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions." Starting with those charged in the Portland courthouse attacks, Judge McFadden has rejected a similar selective prosecution challenge on the grounds that the Portland attacks occurred primarily at night and therefore put fewer people in danger. *Judd*, 2021 WL 6134590, at *5. By contrast, he reasoned:

8

"[T]he January 6 rioters attacked the Capitol in broad daylight. And many entered it. . . . [T]heir actions endangered hundreds of federal officials in the Capitol complex. . . . The action in Portland, though destructive and ominous, caused no similar threat to civilians." *Id.* That is a key difference, and in this case there are even more. The government's charges against Mr. Meggs and other Defendants here are based upon their involvement in a concerted plan to use force to oppose the authority of the United States government and to obstruct an official proceeding through, among other measures: (1) extensive planning and preparation through encrypted communications; (2) training for unconventional warfare; (3) traveling to Washington, D.C., with weapons, ammunition, and tactical gear; (4) storing weapons and ammunition across the Potomac River as part of a Quick Reaction Force; (5) entering the U.S. Capitol in a military-style formation wearing tactical gear; (6) attempting to force their way past law enforcement to move deeper into the Capitol Building; (7) targeting an official proceeding; and (8) in the particular case of Mr. Meggs, walking towards the Speaker of the House's offices but not finding her. Mr. Meggs identifies no one, either individually or collectively, who engaged in comparable conduct in Portland, and he identifies no official proceeding at all.

      For these same reasons, any comparison to those who protested outside the White House in the summer of 2002 fails. And, although those who interfered with recent Supreme Court confirmation hearings could be viewed as having sought to obstruct, influence, or impede an official proceeding, their actions far more closely resemble genuine protest than the actions of which Mr. Meggs stands accused. Mr. Meggs's selective prosecution claim fails.

      Mr. Meggs also points to the chronology of events leading up to the seditious conspiracy charges, suggesting that public statements by the President and the Attorney General about the events of January 6th show that viewpoint bias was what motivated the new charge. Def. Meggs's

9

Reply Mem. of P. & A. in Supp. of Meggs's Selective Prosecution Mot., ECF No. 229 [hereinafter Meggs's Selective Prosecution Reply], at 6–9, 11 (asserting that the political pressure to bring a seditious conspiracy charge was "palpable"). This assertion, however, is mere conjecture. The fact that the President and the Attorney General have made general public statements—not statements specifically about these Defendants—is not evidence of a discriminatory motive.[6]

### IV.

For the foregoing reasons, the court denies: (1) Defendants' Motion to Dismiss the Second Superseding Indictment, (2) Mr. Meggs's Motion to Dismiss Counts 1-3 and 5, and (3) Mr. Meggs's Motion to Dismiss on the Basis of Selective Prosecution.

Dated: August 2, 2022

_Amit P. Mehta_
Amit P. Mehta
United States District Court Judge

---

[6] Mr. Meggs's reply brief makes various arguments about the weakness of the government's evidence. *See* Meggs's Selective Prosecution Reply at 9 (arguing that the absence of Signal chats making preparations to storm the Capitol "is a significant deficiency for the predicate of the government's case"), *id.* at 14 (noting that Mr. Meggs is not accused of possessing firearms or other weapons). Such arguments are better made to the jury.