UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 22-cr-15 (APM) |
| v. | : |
| ELMER STEWART RHODES III, | : |
| KELLY MEGGS, | : |
| KENNETH HARRELSON, | : |
| JESSICA WATKINS, | : |
| ROBERTO MINUTA, | : |
| JOSEPH HACKETT, | : |
| DAVID MOERSCHEL, | : |
| THOMAS CALDWELL, and | : |
| EDWARD VALLEJO, | : |
| Defendants. | : |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY**

On June 23, 2022, the government provided notice pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) that the government may call certain expert witnesses to testify at trial, to include Dr. Sam Jackson, an expert on antigovernment movements.[1]  *See* Gov't Expert Notice (Exh. 1).  Defendant Edward Vallejo has moved to exclude the testimony of Dr. Jackson.  ECF No. 218.  For the reasons stated herein, Vallejo's motion should be denied.

---

[1] As the government stated at the August 2, 2022 hearing, the government will likely call Dr. Jackson as a rebuttal expert witness, not in its case-in-chief.

## LEGAL BACKGROUND

Federal Rule of Evidence 702 provides that an individual qualified as an expert may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of act to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Expert testimony must be "both relevant and reliable." *United States v. H & R Block*, 831 F. Supp. 2d 27, 30 (D.D.C. 2011). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding on the subject involved in the dispute." Advisory Committee Notes to Fed. R. Evid. 702.

Under the traditional Daubert standard, the court may consider the following factors to determine whether expert testimony is admissible under Rule 702:

> (1) whether the expert's technique or theory can be or has been tested;
>
> (2) whether the expert's technique or theory has been subject to peer review and publication;
>
> (3) the known or potential rate of error of the technique or theory when applied;
>
> (4) the existence and maintenance of standards and controls; and
>
> (5) whether the technique or theory has been generally accepted in the scientific community.

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993). "However, Courts frequently encounter situations where these Daubert factors do not readily apply." *Barnes v. District of*

*Columbia*, 924 F. Supp. 2d 74, 94 (D.D.C. 2013). *Daubert*'s "list of factors was meant to be helpful, not definitive." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). "In matters where [the Daubert ] factors do not apply, reliability concerns may focus on personal knowledge or experience." *Groobert v. President and Directors of Georgetown College*, 219 F. Supp. 2d 1, 9 (D.D.C. 2002) (quoting *Kumho*, 526 U.S. at 141–42).

**ARGUMENT**

Dr. Jackson's testimony, as outlined in the government's June 23, 2022 notice, is the proper subject of expert testimony. In its notice, the government stated that Dr. Jackson will testify regarding, inter alia, the history of the Oath Keepers, to include its founding, organizational structure, and the role Stewart Rhodes serves within the organization. Exh 1 at p.12. The government further stated that Dr. Jackson would detail "how Oath Keepers have described their ideology, and that central to this ideology is the concept that the government in America is tyrannical, violating the rights of everyday Americans in dramatic and systemic ways." *Id*. He is further expected to discuss that following President Donald Trump's election, "Rhodes articulated the most urgent threat to be not the government, but those entities and individuals, within or outside the government, that would oppose President Trump." *Id.* Finally, Dr. Jackson will describe how Rhodes adapted his messaging based on his intended audience. *Id.*

Vallejo moves to exclude Dr. Jackson on two primary bases, both of which are without merit. First, Vallejo argues that "Dr. Jackson's testimony fails Rule 702's requirement that it be helpful to the jury." Motion at 5. Principally, Vallejo argues that "the meaning of the Oath Keepers' statements is within the juror's common knowledge and experience" and that Dr. Jackson's testimony will "tell the jury what result to reach." *Id.* (internal quotations omitted). Courts, however, have consistently held that testimony regarding the operation of organizations and criminal entities is the appropriate purview of expert testimony. *See United States v.*

*Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014) (Gang-expert testimony was helpful to the jury where expert would provide "expertise about [the gang's] structure, insignia and history," "[a]nd the district court could have assumed that a typical juror would lack knowledge of the gang terminology and the significance of [the] insignia."); *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000) ("[E]vidence regarding the inner-workings of organized crime has been held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average layman.'").

While the government does not analogize the Oath Keepers to other criminal enterprises, courts' approval of expert testimony in the context of gang-related offenses is instructive. In the instant matter, it is reasonable to assume the typical juror will lack familiarity with the broader militia movement, and the Oath Keepers specifically. It is also reasonable to assume a jury will lack insight into the Oath Keepers ideology, some of which may be counterintuitive. For example, while the organization recruits from former law enforcement and military, it is at its core an antigovernment organization, which views the federal government, and particularly a federal government headed by someone other than President Trump, Likewise, Rhodes's role in the organization and his status as President for life would be "generally beyond the understanding of the average layman." *Tocco*, 200 F.3d at 419. Expert testimony on these topics will therefore be helpful to the jury in understanding the context and significance of other evidence in this case.

Moreover, "[w]hen an expert's understanding of the inner workings of a criminal organization stems in significant part from ... activities like interviews and interrogations, courts have agreed that it is the process of amalgamating the potentially testimonial statements to inform an expert opinion that separates an admissible opinion from an inadmissible transmission of testimonial statements." *United States v. Sandoval*, 6 F.4th 63, 87 (1st Cir. 2021) (citation

omitted). Dr. Jackson's study of Oath Keepers statements and communications is the precise amalgamation that courts have elsewhere permitted. Dr. Jackson would be asked to testify about his conclusions and opinions, based on his review of years of public statements by Rhodes and the Oath Keepers, about the strategies and techniques employed by Rhodes and the Oath Keepers in articulating and framing their public messaging. Such testimony would be directly relevant and helpful to the jury in interpreting and placing into context the statements by Rhodes and other co-conspirators that will be introduced into evidence in this case, particularly as rebuttal evidence.

Second, Vallejo argues that Dr. Jackson's testimony would be unfairly prejudicial. Motion at 6. In support of this claim, Vallejo cites, inter alia, Dr. Jackson's anticipated testimony that the Oath Keepers believed the government in America to be "tyrannical." This opinion, however, is replete throughout the statements by Vallejo and other co-conspirators that have been provided in discovery and that are likely to be introduced as evidence at trial. *See, e.g.*, Superseding Indictment, ECF No. 167, at ¶ 71 (citing Vallejo's and a co-conspirator's statements on a podcast on the morning of January 6 about the possible need for the possibility of "armed conflict" and "guerilla war" against the government); ECF No. 105 at 9 (describing how, on that same podcast, Vallejo said: "I'm the guy that everybody said, 'No Ed, you can't shoot them yet, it's too soon. No Ed, you can't shoot the bastards yet, it's too soon.' Well, I've been telling them for [years but] about five, six months ago, they quit telling me."). Dr. Jackson's testimony should not be excluded on this basis. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983). Dr. Jackson's testimony would not create an impermissible risk of a "decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes to Fed. R. Evid. 403. Instead, Dr.

Jackson's testimony is relevant, reliable, and a jury would undoubtedly benefit from his "specialized understanding on the subject involved in the dispute." Advisory Committee Notes to Fed. R. Evid. 702.

## CONCLUSION

For the foregoing reasons, Vallejo's motion to exclude testimony from Dr. Jackson should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/
Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530

         /s/
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division,
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20004