# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELMER STEWART RHODES, et al,<br><br>Defendant. | Criminal No. 22-cr-00015-APM<br><br>**EMERGENCY MOTION TO SUBSTITUTE COUNSEL AND CONTINUE TRIAL** |

**EVIDENTIARY HEARING REQUESTED (Sealed and ex parte to the extent necessary to discuss matters of privilege and/or work product.)**

NOW comes Defendant, ELMER STEWART RHODES III ("Rhodes"), by and through his counsel of record, Edward L. Tarpley, Jr., Esq., and respectfully notifies the Court of his substitution of counsel, and requests this Honorable Court for an order continuing the trial for an additional 90 days so that the Court can adequately address and review necessary pretrial motions. The continuance is also necessary so that Counsel can acquaint himself with the case, the evidence, and the witnesses.

Defendant Rhodes has had a complete, or near-complete breakdown of communication between himself and his prior counselors, Mr. Linder and Mr. Bright, as explained below. Mr. Rhodes has relieved and terminated Linder and Bright and hired undersigned counsel, Edward L. Tarpley, Jr. of Louisiana as his

defense counsel. Attorneys Linder and Bright are aware of this motion and do not object.  Undersigned counsel is seeking to obtain transfers of legal files, documents and evidence from prior counselors.

Undersigned counsel prays for at least an additional 90 days to prepare for trial, inclusive of time to file necessary motions, discover necessary evidence, and identify and locate witnesses including expert witnesses. Undersigned counsel needs this time to read and research the court filings and supporting and related case law and discovery, as well as to acquaint himself with necessary witnesses, exhibits and evidence.

Rhodes expects to file a motion to sever his case and trial from the codefendants in this case.  Codefendants have had almost a year more than Rhodes with which to prepare for trial.  Rhodes is not prepared for trial on September 26; and neither Rhodes' prior counselors nor the attorneys for codefendants are prepared for trial.  The United States is still processing needed discovery, most of which has not been delivered to Rhodes.

### UNDER THE PRESENT TRIAL SCHEDULE, RHODES IS BEING DEPRIVED OF HIS 5th AMENDMENT RIGHT TO DUE PROCESS AND HIS 6TH AMENDMENT RIGHT TO A FAIR TRIAL.

Mr. Rhodes, unlike his codefendants, was only arrested in mid-January of this year.  While most of Rhodes' codefendants were indicted almost a year earlier, and have had the better part of two years to to review discovery, consult with

counsel, and prepare for trial, Rhodes has had less than eight months. (In fact, Rhodes did not obtain significant discovery until just a couple months ago. And Rhodes' first weeks of incarceration were dedicated to finding and introducing himself to counsel and seeking pretrial release.)

While Rhodes' codefendants in the D.C. jail have near-constant access to discovery videos, Rhodes is incarcerated in a jail in Alexandria, Virginia where he gets only two days per week to examine electronic discovery; by being transported to the District Court to use computers for only six hours per visit. The discovery hard drive Rhodes is allowed to use <u>has not been updated in three months</u>.

Defendant Stewart Rhodes is the <u>prime defendant</u> (of 9), in <u>the most high-profile, significant, complex, and complicated</u> case (with massive, potentially global, political implications), amid the entire array of 850-plus Jan. 6 defendants.[1] Yet Rhodes' case has been <u>fast-tracked onto a faster schedule than any other Jan. 6 case</u>. Rhodes faces a multi-count, multi-codefendant trial in the most complex case of all Jan. 6 cases, in which prosecutors have openly said they seek life imprisonment for Rhodes. *Even the misdemeanor Jan. 6 defendants* have been allowed more time to prepare for trial. <u>Every</u> <u>single</u> <u>one</u> <u>of</u> <u>them</u>.

---

[1] See "Oath Keepers leader, 10 other Capitol rioters hit with serious charges in escalation of federal case,"
Joseph Wilkinson, *New York Daily News*, Jan 13, 2022 (saying Rhodes and "10 of his followers were charged with seditious conspiracy Wednesday, the most serious charges yet connected to the Jan. 6 Capitol riot").

Upon information and belief, no defendant facing potential life imprisonment in the history of the U.S. District of the District of Columbia has ever been forced to face trial within such a short time span with such a lack of preparation, discovery, and communication with his counsel.  <u>Rhodes is being utterly deprived of a fair trial—one of the most basic human and constitutional rights.</u>

### BREAKDOWN IN COMMUNICATION BETWEEN RHODES AND ATTORNEYS LINDER AND BRIGHT

Defendant Rhodes, facing potential life imprisonment in the most serious case among all 850+ Jan. 6 cases, is scheduled to begin trial just three weeks from now, by a hostile jury pool that is some 95% Democrat.  Rhodes has not heard from his attorneys in over three weeks. Rhodes has not been visited by his attorneys in almost two months.  Rhodes has called his prior attorneys repeatedly but they do not answer.

The necessity of a continuance is due to <u>no fault</u> of Defendant Rhodes, and no fault of undersigned counsel.  Due to lack of communication with Rhodes' prior counselors, Rhodes was uninformed that required motions, subpoenas and appeals—which Rhodes' prior attorneys promised to file—had not been filed.

Rhodes is entitled to zealous advocates who follow through with stated plans to advance defense strategy, and who communicate regularly with Rhodes in order to help Rhodes defend himself.

Rhodes did not know until the past week that deadlines had been missed by his attorneys. Rhodes has been unable to communicate with Linder and Bright since an August 10 phone call. The Court had denied a number of important motions on August 2, and Rhodes knew that deadlines for filing interlocutory appeals were looming. Linder and Bright had promised to appeal and to connect Rhodes with their appellate counsel to facilitate the appeal. At the end of Rhodes' recent August 23 hearing, in desperation, Rhodes asked over his Zoom connection for Mr. Bright to please call him. Mr. Bright responded via Zoom that he would call Rhodes; but he never did.

Rhodes' prior attorneys admitted on the public record at the most recent hearings that they (along with all other defense lawyers in this case) are being rushed and are not prepared for trial. Bright and Linder have other major time-consuming trials and hearings in other cases which will take up their time, focus and energy in the next couple weeks. And both are either taking or planning to take vacations prior to the scheduled Sept. 26 trial.

## LACK OF COMMUNICATION REGARDING DEFENSE METHODS AND STRATEGY

One of Rhodes' attorneys, Mr. Bright, has reportedly been on an extended vacation in Montana. The other attorney, Mr. Linder, is reportedly preparing to take or returning from a vacation out of the country.

Rhodes has been denied information, including even the court filings in his case, except on rare occasions when Linder and Bright visit Rhodes in his Virginia jail. Rhodes doesn't know what motions the government (or even his own attorneys) have filed and hears about government arguments for the first time at hearings. Rhodes gets no mailings from his attorneys and has had no visits in almost two months.

Rhodes has requested that Bright and Linder file a number of necessary motions and seek necessary specific discovery. These include a motion to sever from the other codefendants, motions to compel specific discovery, and a motion for leave to depose a necessary but unavailable key defense witness, Colonel John Siemens, who is now in nurses' care due to two recent strokes and two heart attacks. Siemens was Rhodes' most important organizer for many Oathkeeper operations and events. Prior attorneys promised to depose Siemens but did not do so.

Rhodes is a Yale Law School graduate with legal training, experience and education. Yet Rhodes' prior two counselors do not materially communicate with Rhodes regarding trial preparation, witness discovery, evidence selection, or even basic defense strategy. Now the clock has run out on Rhodes's defense plans with Bright and Linder. Without additional time for Rhodes' new defense counsel to

prepare for trial, Rhodes' fundamental 5th and 6th amendment rights will be violated.

## NECESSARY MOTIONS WHICH HAVE NOT BEEN FILED

Rhodes expects undersigned counsel to file the following pretrial defense motions which are necessary for his defense:

1. **Motion to obtain the electronic discovery of Rhodes' codefendants who have pled out.**

Rhodes' codefendants Joshua James, Brian Ulrich, and William Wilson, all maintained their innocence until threatened with potential life imprisonment by the United States, whereupon all three apparently accepted deals to admit 'sedition' and agreed to testify against Rhodes and others in exchange for leniency.  Rhodes has information that the communications and posts of these codefendants contain exculpatory evidence, including information that these codefendants are knowingly falsely claiming to be guilty of sedition.

Rhodes is entitled to "be given maximum opportunity to impeach the credibility of" key witnesses, which might impeach them at trial. *United States v. Williams*, 668 F.2d 1064, 1070 (9th Cir. 1981).  The government may not keep evidence from jurors that would help them assess the defense presented by the defendant. *Green v. Georgia*, 442 U.S. 95 (1979), reaffirmed in *Crane v. Kentucky*, 476 U.S. 683 (1986).  In *Crane*, a 16-year-old defendant attempted to suppress his

confession due to circumstances under which it was obtained: after being placed in a windowless room and questioned over a protracted period of time by six officers who refused to let him to call his mother. The trial judge refused to allow the jury to hear this evidence, ruling that he had already made a determination on the voluntariness of the confession. The Supreme Court overturned Crane's conviction, holding that it was error to prevent jurors from hearing testimony about the environment in which the confession was taken by the police, because the manner in which it was taken was relevant to the reliability and credibility of the confession. The court found that the "Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Id*. at 690.

In spite of Rhodes' instructions, defense counsel Linder and Bright have not pursued discovery of the exculpatory evidence to be found in James, Ulrich, and Wilson's communications. This places Rhodes at extreme prejudice in the forthcoming trial.

There are other Oathkeepers who have also pled guilty and who are reportedly being used by prosecutors to provide testimony against others. These include Graydon Young, Mark Grods, Caleb Berry, and Jason Dolan. Rhodes has a right to discovery of exculpatory evidence in their communications, posts, and texts in order to prepare for trial.

**2. A motion to obtain discovery regarding Ray Epps.**

Of all "Oathkeepers," Ray Epps is <u>the most famous for telling the public about plans to enter the Capitol on Jan. 6</u>.  Mr. Epps was recorded on viral videos—viewed tens of millions of times by the public, doubtlessly including many members of the jury pool—telling protestors on Jan. 5 and 6 of a plan to go inside the Capitol.  Any reasonable person could conclude that Mr. Epps, seen wearing Oathkeeper patches and other insignia, was speaking or acting on behalf of the Oathkeepers organization or Rhodes.

It is thus imperative that Rhodes' counsel obtain discovery relating to Mr. Epps.  Yet Rhodes' prior defense counsel have not done so.  Rhodes is in jeopardy of suffering extreme prejudice at trial without such discovery.

3. **Motion to sever from codefendants.**

Rhodes' codefendants have had almost a year more than Rhodes with which to review discovery, photos and videos and to prepare for trial.  Rhodes will be prejudiced (and may prejudice his codefendants) by being subjected to a trial in which prosecutors focus on Rhodes but in which Rhodes has little ability to put on a defense.

4. **Motion to compel Jan 6 committee to turn over interviews of key Oathkeepers and witnesses in this case:**

Significantly, several key witnesses in Rhodes' trial, including Roger Stone, Ali Alexander, Kellye SoRelle, Rudy Giuliani, Bianca Gracia and Michael Greene, were witnesses before the U.S. House of Representatives' Select

Committee on Jan. 6. Rhodes has a right to transcripts of this testimony; but Rhodes' counsel have not obtained the transcripts.

This information is highly relevant and material to the allegations in the indictment of this case. Indeed the Jan. 6 Committee <u>has publicly proclaimed that Oathkeepers were *leaders*</u> in the Jan. 6 "attack" on the Capitol. In fact, *Rep. Benny Thompson—the very chairman of the Jan. 6 Committee—actually <u>sued Oathkeepers</u>*, Proud Boys, Rudy Giuliani, and President Donald Trump on February 16, 2021, claiming that Oathkeepers and Proud Boys conspired with Trump to subvert the transfer of power from Trump to Biden and thus to overthrow the United States government. Rhodes and his codefendants are entitled to all discovery and information in the hands of the Committee that support the Committee's claims and proclamations. Failure to acquire this evidence may lead to Rhodes' and others' wrongful convictions for crimes they did not commit.

**5. Motion to suppress the Nov. 9, 2020 'GoToMeeting' conference call.**

The indictment indicates the prosecution relies on a Nov. 9, 2020 GoToMeeting conference call that was partially secretly (and probably illegally) recorded by some unknown person. The prosecution claims that "During the meeting RHODES outlined a plan to stop the lawful transfer of presidential power, including preparations for the use of force, and urged those

listening to participate." Conveniently, however, the recording is purportedly just a portion of the alleged recording; and the portion allegedly containing such remarks by Rhodes is missing.

Rhodes contests the government's description of the Nov. 9 phone call; but in any case, Rhodes' attorneys Bright and Linder have not followed through with motions in limine or to suppress this apparently unlawfully recorded (partial) conversation. Failure to have such a motion considered and ruled upon will lead to an unfair trial and potentially a wrongful conviction.

### 6. Motions in limine regarding Rhodes' innocent firearm purchases prior to and after Jan. 6.

Similarly, the indictment emphasizes various firearm and ammunition purchases by Rhodes, contending such firearm purchases support the exaggerated imaginary claims in the indictment. Rhodes is an avid competitive target shooter and gun hobbyist who spends many hours and many dollars annually in shooting sports and at family-friendly target shooting ranges. Additionally, Rhodes is a certified firearm safety instructor and he provides security at countless rallies and events, including at least one Congressman's birthday party.

Rhodes' alleged gun and ammo purchases were entirely lawful, innocent, and irrelevant to the events of Jan. 6. But Rhodes' lawyers have not followed through with filing motions to keep such irrelevant evidence out of trial. If this evidence is

allowed, it will be extremely prejudicial to Rhodes and could lead to a wholly unfair trial and wrongful convictions for crimes Rhodes did not commit.

### 7. Motions and submittal of expert witnesses

Rhodes intends to use expert witnesses regarding protest activities, history and culture, application of the anti-insurrection act, firearm safety and compliance, and militia history to help the jury understand Rhodes' defense and properly assess Rhodes' innocence.

In the event the Court denies Rhodes' suppression and limine motions, Rhodes intends to use an expert witness to inform the jury and the Court regarding Virginia and D.C. firearm policies, enforcement and practices. Astoundingly, federal prosecutors are seeking to use Oathkeepers' <u>100% perfect compliance</u> with onerous D.C. firearm ordinances and safekeeping of arms at Virginia motels (evidence of *innocent* behavior) as supposed proof of Oathkeepers' alleged lawlessness! An expert witness will help inform the jury regarding Rhodes and other Oathkeepers' proper, near-model, safe storage of arms. Yet Rhodes' prior attorneys have not followed through with promised discussions with expert witnesses. Without expert witnesses, Rhodes and codefendants are in danger of being wrongly convicted of crimes they did not commit.

8. **Motions to compel discovery or subpoenas regarding communications between Oathkeepers and Secret Service, Capitol Police, and FBI.**

The Oathkeepers have provided lawful security for official speakers at permitted events around the Capitol and the White House on November 14, 2020, December 12, 2020, as well as January 5 and 6, 2021. In doing so, Oathkeepers have innocently coordinated with Secret Service, Capitol Police, D.C. Metropolitan Police and other law enforcement agencies in order to escort important speakers and lecturers to and from vehicles and podiums, and have provided security for parking and staging equipment and individuals. There are many exculpatory phone, email, and text records which would substantiate innocent explanations for much of the alleged conduct described in the indictment. Yet Rhodes' prior counsel appear to have done very little to locate and develop such exculpatory evidence.

9. **Motions regarding the necessity of recessing Congress on Jan. 6.**

The alleged actions of Rhodes and codefendants did not contribute to any disruption of Congress on Jan. 6. Yet Rhodes has not obtained all discovery relating to decisions to adjourn or recess Congress or any vote counting on Jan. 6. This lack of discovery is extremely prejudicial and could lead to wrongful convictions for Rhodes and others.

10. **Motions regarding the role played by pipe bombs on Jan. 6.**

Along similar lines, Rhodes is entitled to have all discovery in the hands of federal prosecutors and agencies regarding the role that the pipe bombs planted and discovered around the Capitol played in decisions to delay proceedings before Congress.

11. **Motions regarding the testimony of "whistleblower" Cassidy Hutchinson.**

The most startling and famous witness before the Jan. 6 Committee, Cassidy Hutchinson, reportedly testified to the Committee that President Trump regularly mentioned and spoke about the Oathkeepers in the Oval Office. "I recall hearing the word 'Oath Keeper' and hearing the word 'Proud Boys' closer to the planning of the January 6 rally, when Mr. Giuliani would be around," Hutchinson said in one of her depositions.[2] Rhodes has a right to discovery regarding Hutchinson's claims, including a possible deposition of Hutchinson, to determine if, when, where, and under what circumstances President Trump made such remarks.

12. **Motions to suppress and/or dismiss based on prosecutorial misconduct before the grand jury.**

Among the limited discovery thus far available to the defense are snippets of grand jury testimony. Within these transcripts are evidence of prosecutorial misconduct in pursuit of obtaining the indictments in this case. For example, when

---

[2] See Adrienne Vogt, et al, "Jan. 6 committee holds sixth hearing," CNN News, June 29, 2022, (https://edition.cnn.com/politics/live-news/january-6-hearings-june-28/h_37c452ccf83dbef0ab95246cc98d5ad4) (accessed 9/6/2022).

a grand juror asked federal prosecutors to explain why videos showed Oathkeepers were wearing V.I.P. identification lanyards around their necks, prosecutors misled the grand jury by claiming the Oathkeeper lanyards were insignia that Oathkeepers used to protect each other.

The true explanation—and an entirely innocent explanation, known to prosecutors—is that the Oathkeepers were lawfully performing permitted security for V.I.P. speakers at speaking events. Prosecutors hid from the grand jury their knowledge that Oathkeepers were in D.C. to provide security, staff, and support for four permitted events at the Capitol, including events for permittees Latinos For Trump, VA Women For Trump, Jericho March, and Stop The Steal. And prosecutors knew they might not be able to trick the grand jury into indicting Rhodes and others if grand jurors became aware of such exculpatory information.

This and other prosecutorial misconduct and deception before the grand jury could lead to dismissal of this entire case.

**13. Motions to dismiss on 1st amendment grounds.**

Defendant Rhodes is falsely accused of seditious conspiracy based mostly on his 1st amendment protected speech, advocacy and right to petition for redress of grievances. When Rhodes wrote letters, public statements, messages and emails indicating that the 2020 presidential election was marred by illegalities and improprieties, prosecutors allege Rhodes was plotting to "overturn" the election of

Joe Biden.  When Rhodes publicly called upon President Trump to invoke the anti-insurrection act to have federal authorities take custody of apparently-fraudulent voting machines, Rhodes was engaging in the most protected thing an American citizen can do: petition officials for redress of grievances.  Yet federal prosecutors accuse Rhodes of seditious conspiracy to overturn the 2020 election.

Rhodes has a constitutional right to petition, advocate, persuade and lobby the president, Congress, or any other public official regarding civic and public affairs.  On January 6, 2021, Rhodes was engaging in the time-honored tradition and protected right of public advocacy and petitioning.  Rhodes has a right to challenge the indictment on 1st amendment grounds; and if his challenge is denied, to appeal to the highest courts in the land.

14. **Motions to obtain or compel discovery regarding undercover paid informants among Oathkeepers organization.**

Upon information and belief, agencies of the federal government including FBI and/or BATFE, have paid and cultivated associates of Oathkeepers and Rhodes before and after Jan. 6. to be undercover informants.   Rhodes will be filing a motion to compel all communications between paid informants (not just 302s) and their handlers and Rhodes and/or other Oathkeepers.

### ISSUES RELATING TO IMPORTANT MATERIAL WITNESSES WHO HAVE RECENTLY BEEN ARRESTED.

One of the most evil and unconstitutional tactics of prosecutors is to arrest or indict friends, family, or key defense witnesses with the purpose of intimidating and thereby removing such witnesses from a defense witness list. Federal prosecutors have done this in this very case.

Two months ago, federal prosecutors indicted a group of friends and family members of the Oathkeeper defendants in this case. See *United States v. Crowl*, et al., Case # 2 1-cr-28-APM (filed June 22, 2022) (8 defendants, including family members of Oathkeeper defendants). Then, last week, on August 30, 2022, prosecutors indicted Oathkeeper general counsel (and Rhode's former girlfriend) Kellye SoRelle on charges relating to Jan. 6.

These additional indictments effectively remove these important, key, defense witnesses from being able to provide material testimony in defense of Rhodes at Rhodes' trial. The arrests of SoRelle, Michael Green, and others increases the likelihood that they will plead the 5th amendment and be unavailable if summoned as witnesses—which highlights the necessity of Rhodes having access to these witnesses' testimony before the January 6 Committee. Additionally, the arrests of Green and SoRelle effectively removes Green's and SoRelle's cell phones from being available to Rhodes for use at trial. Their cell phones contain exculpatory images and texts from before and after January 6 which are necessary for Rhodes' defense.

It is a cardinal proposition that "the constitutional right of a criminal defendant to call witnesses in his defense mandates that they be free to testify without fear of governmental retaliation." *United States v. Blackwell*, 694 F.2d 1325, 1334 (D.C.Cir. 1982). See also *United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir. 1980) ("Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant.").

Until these arrests, these witnesses were primary and key witnesses for Rhodes and other defendants in this case. The arrest of SoRelle represents a monumental change in how Rhodes expected to defend himself at trial. Cf, *United States v. Torres-Rodriguez*, 930 F.2d 1375 (9th Cir. 1991) (reversing conviction where defendant was prejudiced by the denial of a continuance which deprived her of an opportunity to prepare to respond to new developments). SoRelle, in fact, was one of the closest people to Rhodes during Rhodes' planning and participation in events prior to, during and after Jan. 6, and SoRelle would have been a key witness through whom Rhodes would have informed the jury of Rhodes' demeanor, state of mind, and intentions. Cf, *United States v. Mejia*, 69 F.3d 309, 316 (9th Cir. 1995) (reversing trial court where "the outcome turned on the credibility" of important witnesses who were not able to testify in court due to denial of a continuance).

The removal and alteration of Rhodes' trial strategy and defense agenda fundamentally upsets Rhodes' ability to prepare and defend himself at trial. And the fact that Rhodes' attorneys Mr. Linder and Mr. Bright have been unreachable by Rhodes during this period has meant that Rhodes is needing to wholly rewrite his defense *en toto*. See *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985), amended, 764 F.2d 675 (holding that appellant was prejudiced by the district court's refusal to continue hearing, undermining appellant's sole defense). See also *Armant v. Marquez*, 772 F.2d 552 (9th Cir. 1985) (finding prejudice where denial of continuance effectively denied defendant the opportunity to prepare his defense).

## CONCLUSION

For all of the reasons described above, defendant Rhodes requests an order continuing trial by at least 90 days so that Rhodes' counsel can draft and file the motions described, and can prepare for trial.

Respectfully submitted,

/s/ Edward L. Tarpley Jr.

Edward L. Tarpley, Jr.
A Professional Law Corporation
819 Johnston St, Alexandria, LA 71301
Phone: (318) 487-1460
Fax: (318) 487-1462
edwardtarpley@att.net
Attorney for Defendant Elmer Stewart Rhodes III

CERTIFICATE OF SERVICE

I, hereby certify and attest that on September 6, 2022, I used this Court's electronic filing system to serve a true and correct copy of this document to the counsels of record of all parties in this case.

By: /s/ Edward L. Tarpley Jr    Dated: 09/06/2022