**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 1:22-cr-00015-APM** |
| **v.** ) | |
| ) | |
| **KELLY MEGGS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DEFENDANT KELLY MEGGS'S OMNIBUS MOTION TO COMPEL DISCOVERY

Defendant Kelly Meggs, by and through the undersigned counsel, and pursuant to Rules

5(f) and 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963),

*Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), and Rule

5.1 of the Local Criminal Rules of the District Court for the District of Columbia, respectfully

moves this Court for an Order compelling the government to comply with its obligations and

provide discovery that is material to the preparation of Mr. Meggs's defense.

## I.    BACKGROUND

The government has been nothing if not consistent in its allegations against the Oath

Keepers.  Just days after the events at the Capitol on January 6, 2021, the government began

filing sealed complaints against members of the Oath Keepers, whom the government initially

described as, "a large but loosely organized collection of militia who believe that the federal

government has been co-opted by a shadowy conspiracy that is trying to strip American citizens

of their rights."  Aff at 3 ¶12, Complaint, *United States v. Watkins*, 21-mj-86 (Jan. 16, 2021)

(ECF No. 1-1).  Members of the organization, the government alleged, "have been arrested in

connection with a wide range of criminal activities, including various firearms violations,

conspiracy to impede federal workers, possession of explosives, and threatening public

officials." *Id.* at 5, Complaint, *United States v. Watkins*, 21-mj-86 (Jan. 16, 2021) (ECF No. 1-1). And despite the events of January 6, 2021, giving rise to what the government has described, as early as March 2021, "one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence," Mot. Continue at 2, *United States v. Caldwell*, No. 21-cr-28 (March 12, 2021) (ECF No. 73), the government had concluded that the Oath Keepers had, *inter alia*, "conspired together and with others known and unknown to obstruct the United States Congress's affirmation of the Electoral College vote regarding the results of the 2020 U.S. Presidential Election." Aff. at 2, Complaint, *United States v. Meggs*, No. 21-mj-225 (Feb. 11, 2021) (ECF No. 1-1). In the more than eighteen (18) months that have followed, the government's investigative focus has been unwavering. The operative indictment as against Mr. Meggs describes the Oath Keepers as, "a large but loosely organized collection of individuals [--] some of whom are associated with militias [--] [with a] focus on recruiting current and former military, law enforcement, and first-responder personnel," and charges various members with, *inter alia*, having participated in a scheme – seditious conspiracy – to illegally oppose the lawful transition of presidential power leading up to and on January 6, 2021. Superseding Indictment at 3 ¶ 3 (ECF No. 167). Throughout this case, the government has produced a plethora of evidence relating to the Oath Keepers, but so too has it expressly declined to produce evidence concerning the Oath Keepers, concluding either that it is "*not discoverable.*"

Specifically, there are four distinct, but related, categories of evidence the government has recently refused to provide. These include, (i) the identities of those alleged to have participated in the scheme, or conspiracy, to stop the certification of the electoral college, (ii) evidence related to ██████████████████████████ (iii) evidence related to the FBI's monitoring and assessment of the Oath Keepers (whether related to a confidential human source

or otherwise), and (iv) evidence related to knowledge and assessment of the Oath Keepers by the United States Secret Service. This information is all directly relevant – material – to Mr. Meggs's defense in this action. Of note, nowhere in the operative indictment does the government acknowledge (and presumably the Grand Jury was unaware) that the Oath Keepers, including Mr. Meggs, had provided security services at numerous events including for Roger Stone in Florida, at protests surrounding the death of Breonna Taylor in Louisville, Kentucky, and *in Washington, DC.* Similarly, nowhere does the indictment acknowledge (and presumably the Grand Jury was unaware) that Mr. Meggs was summoned to Washington, DC on January 6 for *the purpose of providing security* for the Save America rally speakers and members of their family, that Mr. Meggs was given access to a secure area protected by the Secret Service, or that after the riot unexpectedly erupted at the Capitol that members of the Oath Keepers *provided assistance to law enforcement* as captured on video at the time.

And while the government's rush to indictment members of the Oath Keepers, including Mr. Meggs, could have explained the dearth of such discovery, we now know that the government long has monitored the Oath Keepers, including through enlisting so-called confidential human sources within the Oath Keepers. We also know that the government was well aware that the Oath Keepers provided a variety of security services across the country. And we now know that the Secret Service was aware of the Oath Keepers, including their intent to participate in the Save America rally on January 6, 2021, which precipitated the events that occurred at the Capitol that day.

## II.     Legal Standard

In its passage of the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020), "Congress was concerned about 'inadequate safeguards in Federal law' to ensure

prosecutorial compliance with disclosure obligations." *United States v. Hossain*, No. 19-cr-606, 2020 U.S. Dist. LEXIS 219232, at *18 (S.D. NY Nov. 23, 2020) (quoting 166 Cong. Rec. H4,582-83 (daily ed. Sept. 21, 2020) (Statement of Rep. Jackson Lee)).  Thus, although it has long been settled law that under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), the government, pursuant to the Due Process Clause, must disclose evidence favorable to the defendant, the Due Process Protections Act "*expanded*" the government's *Brady* obligations.  *United States v. Steward*, No. 19-cr-435, 2021 U.S. Dist. LEXIS 177449, at *10 (Ga. N.D. Feb. 19, 2021).  Accordingly, Rule 5(f) of the Federal Rules of Criminal Procedure was amended to provide that, "[i]n all criminal proceedings, on the first scheduled court date when both the prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such an order under applicable law."

Government disclosure of exculpatory and impeachment evidence is essential to the constitutional guarantee to a fair trial.  *See Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154.  The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment.  *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154.  Because *Brady* and *Giglio* are constitutional obligations, *Brady/Giglio* evidence must be disclosed regardless of whether the defendant makes a request for the information.  *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995).  Since it is sometimes difficult to assess the materiality of evidence before trial, prosecutors must err on the side of disclosure.  *Kyles*, 514 U.S. at 439.  *See also* Local Rule Crim. P. 5.1(b); Justice Manual § 9-5.001.

The government's obligation to produce exculpatory evidence is supplemented by the requirements of Rule 16, which establishes, "the minimum amount of discovery to which the parties are entitled [and] is not intended to limit the judge's discretion to order broader discovery in appropriate cases.  Advisory Committee Note to Fed. R. Crim. P. 16, *quoted in United States v. Apodaca*, 287 F. Supp. 3d 21, 39 (D.D.C. 2017); *United States v. Karak*e, 281 F. Supp. 2d 302, 306 (D.D.C. 2003).  Thus, Rule 16 of the Federal Rules of Criminal Procedure provides that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)     the item is material to preparing the defense;
>
> (ii)    the government intends to use the item in its case-in-chief at trial; or
>
> (iii)   the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  The D.C. Circuit has emphasized that the prosecution must disclose evidence which is material "to the preparation of the defendant's defense." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998).  The government must disclose both inculpatory and exculpatory evidence.  *Id.*  "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence" because "it is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths."  *Marshall*, 132 F.3d at 67; *accord United States v. O'Keefe*, No. 06-cr-249, 2007 U.S. Dist. LEXIS 31053, at *6 (D.D.C. Apr. 27, 2007) ("[E]vidence that is 'material' . . . is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence form disclosure." (citing *Marshall*, 132 F.3d at 67)).

The government's discovery obligations are "intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" *O'Keefe*, 2007 U.S. Dist. LEXIS 31053, at *6-7 (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard "is not a heavy burden" – information is material and must be disclosed if it has the potential to play an "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal"); *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (discovery materiality hurdle "is not a high one").  And "the government cannot take a narrow reading of the term material in making its decisions on what to disclose under Rule 16." *O'Keefe*, *supra*, 2007 WL 1239204, at *2.  Rather, "disputes should be resolved in the defendants' favor, for 'the language and the spirit of the Rule are designed to provide to a criminal defendant, in the interests of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case.'" *Karake*, 281 F. Supp. 2d at 306 (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)).

### III.    Argument

With just weeks before the trial as against the alleged leaders of the Oath Keepers set to commence (and days before the parties are to exchange witness and exhibit lists), there are four distinct, but related, categories of evidence the government has recently refused to provide. These include, (i) the identities of those alleged to have participated in the scheme, or conspiracy, to stop the certification of the electoral college, (ii) evidence related to ███████████ ███████████████████ (iii) evidence related to the FBI's monitoring and assessment of the

Oath Keepers (whether related to a confidential human source or otherwise), and (iv) evidence related to knowledge and assessment of the Oath Keepers by the United States Secret Service.

   *a. The Identities of Unknown Co-Conspirators*

The operative indictment in this case alleges that, "[a]fter the Presidential Election, ELMER STEWART RHODES III conspired with his co-defendants, introduced below, *and other co-conspirators, known and unknown* to the Grand Jury, to oppose by force the lawful transfer of presidential power."  Superseding Indictment at 2-3, ¶3 (June 22, 2022) (ECF No. 167) (emphasis added).  *See also id*. at 8 ¶15 (COUNT ONE).  The indictment further alleges, "RHODES and *certain co-conspirators*, to include selected regional leaders, planned to stop the lawful transfer of presidential power by January 20, 2021, which included multiple ways to deploy force."  *Id.* at 3, ¶4.

At a motions hearing last Tuesday, August 30, 2022, the Court remarked that, undoubtedly, the government had disclosed all unknown co-conspirators to defense counsel.  In fact, the government had not, and despite the request of defense counsel, has still refused to not. In correspondence on August 31, 2022, the government advised that, "[w]e provided the defense with (a) the true identities of the individuals identified by number in the various indictments in *Rhodes* and *Crowl*, (b) a spreadsheet with *the vast majority* of statements we intend to introduce at the trial, showing the name of the of the declarant, and (c) a spreadsheet showing the 150+ witnesses that have been interviewed in connection with the investigation.  Those materials *should* provide you with the basis to determine the individuals alleged to have participated in the conspiracies charged in the *Rhodes* indictment."  (emphasis added).

The identification of exculpatory evidence, however, is not to be a game of chance.  As Judge Kessler long ago observed, in this District, the "disclosure of the names of alleged co-

conspirators is not uncommon in conspiracy cases, and particularly in cases alleging non-violent offenses." *United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007).  And although courts in this District have questioned whether a bill of particulars is, "the proper procedure for discovering the names of unindicted co-conspirators," such requests have been granted in atypical cases with conspiracies involving numerous individuals and volumes of discovery. *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp. 3d 69, 75 (D.D.C. 2019).

Here, Mr. Meggs does not ask this Court to order the public disclosure of those alleged to be co-conspirators in this action – only the disclosure to Mr. Meggs, through defense counsel, subject to whatever protections the government deems necessary (and that are approved by the Court).  *See Karake*, 281 F. Supp. 2d at 308 (requiring the disclosure of "any information that reflects that defendants are equally or less culpable than other co-conspirators . . . [which,] [o]bviously . . . can be disclosed to counsel subject to a protective order so as to prevent unnecessary publication of sensitive information").  Thus, unlike the admonition that a bill of particulars may be limited only to the disclosure of those co-conspirators whom the government "plans to identify . . . at trial," *accord Concord Mgmt.*, 385 F. Supp. 3d, at 75; *see also Palfrey*, 499 F. Supp. 2d at 51 ("[T]here is no basis for disclosure of particulars that need not be proven at trial."), in this unique case, Mr. Meggs seeks the disclosure of co-conspirators whom may – indeed likely will – posses information that is both material to Mr. Meggs's defense and likely exculpatory as to Mr. Meggs.

Consider, for example, the late disclosure of information concerning a confidential human source who served as the Vice President of the Oath Keepers.  That individual provided the government with general information concerning the organization and/or structure of the Oath Keepers, as well as various activities of the Oath Keepers, including their effort to provide

security at numerous rallies, protests, and/or events held prior to January 6, 2021.  Specifically, the confidential human source informed the government that the Oath Keepers were to provide security to various speakers and/or attendees at the rally, including Ali Alexander and Roger Stone, as well as members of the media.

That individual also provided to the government, among other things, a threat assessment form for a restaurant in Louisville, Kentucky.  The threat assessment was commissioned by the Vice President of the Oath Keepers and conducted by an Army veteran who served in the Iraq War, an Oath Keepers member, and an individual that has been separately charged with respect to the events of January 6, 2021.  *See* Eighth Superseding Indictment, *United States v. Crowl*, No. 21-cr-28 (June 22, 2022) (ECF No. 684).  The threat assessment form is clearly just that – a form – four pages in length and with numerous questions about the security of the target premises, including sections for "threat reported," "findings from interviews," "analysis of findings," and a summary section to detail the "basis for determination" and the "imminent threat response."  This form which was very clearly not created for the Louisville threat assessment, demonstrates that one of the core functions of the Oath Keepers is to provide security, including by conducting threat assessments, and not a violent organization whose purpose was to "illegally oppose the lawful transition of presidential power."

Similarly, only on August 12, 2022, and only after the defendants moved the Court to compel the disclosure of additional confidential human source information, did the government disclose additional exculpatory information concerning the Oath Keepers' provision of security at numerous events.  For example, in a disclosure of information obtained from the former leader of the Florida state chapter of the Oath Keepers, who now serves as a confidential human source, the government provided information concerning, *inter alia*, the Oath Keepers' provision of

security for events in Florida, including for Roger Stone.[1]  According to the FBI serial documenting the government's receipt of this information, it has been in the government's possession since *October 4, 2021*.  In addition, the government also produced information disclosed by a confidential human source related to the provision of security by the Oath Keepers at an Atlanta Stop the Steal rally in November of 2020 as well as at a rally in Washington, DC, on December 12, 2020.  According to the FBI serial documenting the government's receipt of this information, it has been in the government's possession since *October 19, 2021*.  And in this late disclosure of exculpatory evidence, the government also provided photographs of Oath Keepers members providing security at an event in Washington, DC, on January 5, 2021.

Finally, the information provided in this late disclosure alone rebuts the government's assertion that its means of discovery production, "*should* provide you with the basis to determine the individuals alleged to have participated in the conspiracies charged in the *Rhodes* indictment."  Consider for example, the late disclosure of information about the former leader of the Florida state chapter of the Oath Keepers.  That individual is purported to have vetted and/or screened applications to join the Oath Keepers.  The information disclosed by the government on August 12, 2022, reveals that on November 22, 2021, the individual was asked by the FBI for information concerning a Kenneth Rucker.  Kenneth Rucker, however, does not appear in the discovery produced by the government thus far, nor does he appear in the "spreadsheet showing the 150+ witnesses that have been interviewed in connection with the investigation."  Mr. Rucker may very well be an alleged  co-conspirator in this action who posses information about the *security services* long offered by the Oath Keepers.  Similarly, the government's August 12,

---

[1] In its late disclosure, the government observed that it had previously produced to defense counsel an FBI 302 documenting an interview of this confidential human source.  Nowhere within that 302, however, is there any mention *of the Oath Keepers' provision of security for Roger Stone.*

2022, late disclosure reveals that on February 16, 2021, the government sought information about an individual named Louis Wetzel, "believed to be associated with the Oath Keepers." And in the government's August 12, 2022, late disclosure of exculpatory information concerning the Oath Keepers, the government also provided information from a confidential human source relating to ties between the Oath Keepers, the Proud Boys and the 1st Amendment Praetorians noting that close associates of Ali Alexander, Daniel Bostic and Michael Coudrey, were:

> "part of the Oath Keepers stack approaching the U.S. Capitol on January 6th, 2021, [and] [g]iven how closely Alexander has worked with Coudrey and Bostic for the better part of a decade with numerous businesses launched together, their apparent collaboration with the Oath Keepers on January 6th, 2021 is unlikely to have occurred without Alexander's knowledge."

* * *

In short it is clear beyond cavil that the government believes the "scheme" – here charged as seditious conspiracy – to illegally oppose the lawful transition of presidential power leading up to and on January 6, 2021, included a number of individuals.  But it is also clear that there is a history of the Oath Keepers providing security-related services in a variety of contexts.  The government cannot shield the identities of those believed to have participated in the government's alleged scheme based on their arbitrary determination of whether the statements of those individuals are needed for the government to establish the existence of the alleged scheme.  Indeed, those individuals may have contradicting accounts of how the overt acts alleged to be in furtherance of the conspiracy were carried out.  In this unique case – "one of the largest in American history" – the government should be compelled to disclose the identities of all those alleged to have participated so that defense counsel can have available the exculpatory evidence of the Oath Keepers' undisputed function as a private security apparatus at the trial in this case.









*iv.  Oath Keepers Threat Assessment Form*

As noted, on July 18, 2022, the government disclosed that ███████████████ had commissioned a threat assessment of a restaurant in Louisville, Kentucky, and paid another member of the Oath Keepers to conduct the assessment.  That member, who has now separately been charged for his alleged participation in the government's alleged scheme conducted the threat assessment on or after August 1, 2020, and the Oath Keeper completing the assessment handwrote notes in a computer-generated form four (4) pages in length.  On September 3, 2022, the government advised that the form, whether completed or blank, had not previously been provided to defense counsel in this case.  Defense counsel subsequently requested that the government confirm it had not obtained the form from any of the sources of its investigation, whether completed or blank, and the government has refused to do so:  "I cannot confirm that right now."  Accordingly, defense counsel requests the Court order the government to confirm that this form does not exist in any of its databases connected with the government's investigation of the events at the Capitol on January 6, 2021, or of the Oath Keepers generally.

*c.  The Government's Production of Oath Keepers Discovery*

On August 5, 2022, Mr. Meggs, through counsel made a formal request for all materials responsive under Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), and Rule 5.1 of the Local Criminal Rules of the District Court for the District of

Columbia.  Mr. Meggs's request was broken down into specific categories of information sought by Mr. Meggs pursuant to Rule 16 and stated that the Government should identify where responsive materials had already been fully produced.  On August 9, 2022, the government confirmed that it would, "respond shortly to some of the specific requests in your letter," but to date no response has been provided.



---

[3] *Available at* https://www.washingtonpost.com/nation/2022/08/12/fbi-cincinnati-ricky-shiffer.

████████████████████████████████████████████████████████████

Here, the government cannot blanketly allege that the Oath Keepers are "a large but loosely organized collection of militia who believe that the federal government has been co-opted by a shadowy conspiracy that is trying to strip American citizens of their rights," Aff at 3 ¶12, Complaint, *United States v. Watkins*, 21-mj-86 (Jan. 16, 2021) (ECF No. 1-1); that members of the organization, "have been arrested in connection with a wide range of criminal activities, including various firearms violations, conspiracy to impede federal workers, possession of explosives, and threatening public officials," *Id.* at 5; and then use this knowledge to accuse the group of having, "conspired together and with others known and unknown to obstruct the United States Congress's affirmation of the Electoral College vote regarding the results of the 2020 U.S. Presidential Election." Aff. at 2, Complaint, *United States v. Meggs*, No. 21-mj-225 (Feb. 11, 2021) (ECF No. 1-1). As the instant motion makes clear, the Oath Keepers have a history of providing security-related services demonstrating a clear ulterior motive for being present in Washington, DC on January 6, 2021. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Mr. Meggs therefore respectfully requests this Court order the government to produce all reports the FBI received about the Oath Keepers as well as any record of any follow up taken from such reports.

d. *Records in the Possession of the Secret Service*

As early as February 9, 2022, on behalf of Mr. Meggs's wife, Connie Meggs, defense counsel first requested "[a]ny records related to secret service clearance obtained by any member of the Oath Keepers related to their attendance at any rally on January 5 or 6, 2021." To date,

defense counsel has received no response to this request and no records responsive to the request have been received in discovery. Most recently, on August 25, 2022, defense counsel wrote the government to confirm, "that the government has not produced any secret service records as part of its discovery." Again, no response was received. Although the government has advised that it does not consider the Secret Service part of the prosecution team, it has also advised that it intends to call as a witness at trial a Secret Service agent, has filed a motion *in limine* on behalf of the Secret Service seeking to limit examination of that agent, and has produced to defense counsel Secret Service CCTV footage.

Whether information is within the Government's possession, custody, or control is a fact-intensive inquiry that must be resolved on a case-by-case basis. *United States v. Libby*, 429 F. Supp. 2d 1, 9 (D.D.C. 2006) citing *United States v. Brazel*, 102 F.3d 1120, 1150 n. 19 (11th Cir. 1997). In determining whether records in the possession of other Executive Branch offices are discoverable, this Court has examined the extent to which those "different arms of the government" contributed to the criminal investigation and are closely aligned with it.

In *Libby*, Judge Reggie Walton held that the defendant in that case was entitled to information from both the Office of the Vice President and the CIA in an obstruction and false statements prosecution arising from the defendant's alleged disclosure of a CIA officer's identity. There, the White House Counsel's office directed all personnel to cooperate with the investigation and produce information to the Office of Special Counsel. In addition to producing documents to the Special Counsel, the CIA "undertook internal deliberations regarding whether to refer the alleged unauthorized disclosure of classified information to the Department of Justice for criminal investigation, created "pre-decisional preliminary evaluations and recommendations of government officials and also a legal analysis and opinion prepared by a CIA attorney, as well

as communications between the CIA attorney and the Department of Justice." *Id*. at 10 (internal

quotations omitted).  The Court determined that the Office of the Vice President and the CIA

"contributed significantly to the investigation" and were "closely aligned with the prosecution"

based on the nature of their relationship with the Office of Special Counsel.  *Id*. at 15.

    In reaching his decision in *Libby,* Judge Walton considered decisions by other courts in

similar cases. The Fifth Circuit, for example, held that a defendant accused of bribing a U.S.

Postal Service employee was entitled to the personnel file of that employee, who was a

prosecution witness.  *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973).  The Ninth

Circuit required the Government to provide a defendant charged with murdering a fellow prison

inmate with the files of several government witnesses from the Bureau of Prisons.  *United States

v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995).  A defendant in the W.R. Grace prosecution in the

District of Montana was entitled to "documents that were in the physical possession of

government agencies that were not part of a criminal investigation jointly undertaken by the

Department of Justice and the Environmental Protection Agency, but who had provided files to

the prosecution team and allowed their employees to be interviewed by the prosecution as part of

that investigation."  *United States v. W.R. Grace*, 401 F. Supp. 2d 1065, 1078-79 (D. Mont.

2005).  Judge Paul Friedman of this District similarly held, in the prosecution of David Safavian,

that, "'the government' includes any and all agencies and departments of the Executive Branch

or the government and their subdivisions, not just the Justice Department, the FBI … and other

law enforcement agencies."  *United States v. Safavian*, 233 F.R.D. 12 at *2 (D.D.C. 2005),

*quoted in Libby*, 429 F. Supp 2d at 6 n.10.  *See also United States v. Safavian*, 233 F.R.D. 205 at

*2 n.1 ("While, in this Court's view, the term "government" encompasses all Executive Branch

agencies and departments and the obligation to search files extends beyond agencies "closely

aligned" with the prosecution, it should be apparent that prosecutors are not required to search, or cause to be searched, the files of all Executive Branch agencies and departments in every criminal case. Both the duty to search and the imputation of knowledge necessarily are bounded by a rule of reason.").

Here, the Secret Service authorized Mr. Meggs's attendance at the Save America rally on the Morning of January 6, 2021. After passing through security, Joshua James took a picture of the security he had just passed through (which also depicts Alex Jones). Indeed, the security was so stringent, a witness at a hearing held by the Select Committee to Investigate the January 6th Attack on the United States Capitol testified that President Trump is purported to have said: "I don't . . . care if they have weapons. They're not here to hurt me. Take the . . . mag[nometers] away. Let my people in. They can march to the Capitol from here. Let the people in. Take the . . . mags away." Mica Soellner, *Ex-White House Aide: Trump Urged Removal of Metal Detectors at Jan. 6 Rally, The Washington Times* (June 28, 2022).[4] James's picture is below:

---

[4] *Available at* https://www.washingtontimes.com/news/2022/jun/28/white-house-aide-trump-urged-removal-magnetometer/.



*Figure 1*

Videographic evidence *produced by the Secret Service*,[5] shows Mr. Meggs and other

Oath Keepers taking their security positions at the back of the first group of "VIPs" attending the

rally, including those speaking at the rally as well as their family members.  Figure 2 depicts the

rally stage and the surrounding VIP area, with a red box around where the Oath Keepers would

stand during the rally:

---

[5] In February, the government acknowledged having produced, "[t]housands of hours of surveillance footage from the USCP, MPD, the United States Secret Service ('USSS'), and the Senate and House floors, and body-worn-camera ('BWC') footage from multiple law enforcement agencies that responded on January 6, 2021."  Status Report at 1 n.2, *United States v. Crowl*, No. 21-cr-28 (Feb. 10, 2022) (ECF No. 620).



*Figure 2*

Figure 3 depicts the overall crowd before the rally hadbeg un (including non-VIP areas).



*Figure 3*

Figure 4 depicts the Oath Keepers entering the VIP area where they take up their security positions in the red box area from Figure 2.



*Figure 4*

Figure 5 depicts the Oath Keepers' reserved seats with the rally stage visible in the background.



*Figure 5*

At one point, the Oath Keepers are enlisted to pass out the signs that can be seen depicted in boxes above:



*Figure 6*

Thus, prior to the government charging Mr. Meggs and other Oath Keepers with entering and remaining in a restricted building and grounds pursuant to 18 U.S.C. § 1752(a)(1), *see* Sixth Superseding Indictment at 34 (COUNT FOUR), *United States v. Caldwell*, No. 21-cr-28 (Dec. 1, 2021) (ECF No. 513), the Secret Service vetted and approved Mr. Meggs's entering a restricted area where the President of the United States was to speak. Indeed, we know the Secret Service was aware of the Oath Keepers' planned participation in the events of January 6, 2021. In documents recently obtained and published by Citizens for Responsibility and Ethics in Washington ("CREW"), an email to the Secret Service listed the Oath Keepers, among others as one of the groups expected to be in Washington, DC on January 6. And we know that the Secret Service was compiling information on those groups expected to attend the rally on January 6: Separate internal email correspondence within the Secret Service identifies the Proud Boys as an organization intending to host a demonstration in Washington, DC and describes the Proud Boys as an organization, "of record for numerous demonstrations at the White House and temporarily

protected sites [whose] demonstrations have concluded without arrests." *See* Jordan Libowitz and Sara Wiatrak, The Secret Service Knew About Jan. 6 Threat.  They Dismissed It., *CREW* (Aug. 17, 2022) https://www.citizensforethics.org/reports-investigations/crew-investigations/the-secret-service-knew-about-jan-6-threat-they-dismissed-it/ (last visited Sep. 5, 2022).  That the Secret Service vetted and approved the Oath Keepers participation at the Save America Rally on January 6, 2021, is highly material to Mr. Meggs's defense.  That the Secret Service has assisted the government in prosecuting this (and other January 6 cases) is beyond dispute.  Therefore, Mr. Meggs respectfully asks this Court to order the government's production of all records within the possession custody or control of the Secret Service related to the events of January 6, including all records related to the Save America rally held on January 6.

## CONCLUSION

For the reasons set forth herein, Kelly Meggs respectfully requests an Order compelling the Government to produce the requested discovery materials so that he may prepare a defense to the charges in this matter.

[SIGNATURE ON NEXT PAGE]

Dated: September 5, 2022              Respectfully submitted,

                                      */s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

                                        */s/ Juli Z. Haller*

Juli Z. Haller, (DC 466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Defendant Kelly Meggs*

## <u>CERTIFICATE OF SERVICE</u>

On September 5, 2022, the undersigned hereby certifies that a true and correct copy of

the foregoing was electronically filed and served via the CM/ECF system, which will

automatically send electronic notification of such filing to all registered parties.

*/s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road, Northwest
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com
