IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | * |
| vs. | * Case No.: 22-15 APM |
| THOMAS E. CALDWELL | * |

\* \* \* \* \* \* \* \* \* \* \*

## MOTION IN LIMINE TO ALLOW INTO EVIDENCE CERTAIN INCONSISTENT STATEMENTS MADE BY THE GOVERNMENT

COMES NOW the Defendant, Thomas E. Caldwell, by and through his counsel, David W. Fischer, Esq., and provides this Honorable Court with an outline of anticipated defense arguments and supporting evidence, the purpose of said disclosure to allow the Court ample opportunity to review supporting case law in preparation of the Pretrial Conference scheduled in the above-captioned matter for September 14, 2022.

A. Background

Caldwell and his co-defendants face multiple charges, most notably seditious conspiracy (18 U.S.C. § 2384) and conspiracy to obstruct an official proceeding (18 U.S.C. § 1512, §372). Caldwell was the first "conspiracy" defendant arrested in the January 6, 2021 (hereinafter "J6") riot at the Capitol, but was quickly joined as co-defendants with Jessica Watkins and Donovan Crowl. In the ensuing weeks and months post-J6, multiple co-defendants were added in a series of six superseding indictments wherein Caldwell was the lead defendant. Eventually, the Government obtained a successor, "split-off" indictment naming Oath Keepers founder and president Stewart Rhodes as the leader of a seditious

1

conspiracy that included Caldwell and others. (ECF No. 1). The Court has set a trial date for Rhodes, Watkins, Caldwell, Kelly Meggs, and Kenneth Harrelson for September 27, 2022.

B. <u>Defense Theory of the Case</u>

Caldwell intends to introduce substantial evidence and arguments that the government wrongly accused him (and his co-defendants) of multiple criminal acts in the aftermath of January 6. Additionally, Caldwell believes that the evidence outlined below demonstrates that the government has "changed its story" in relation to the events of J6 as they pertain to Caldwell and others. To support his defense, Caldwell intends to introduce copies (appropriately redacted, of course) of government sentencing memoranda, charging documents, indictments, transcripts of hearings, and other materials wherein government counsel and law enforcement agents made sweeping and demonstrably false allegations against Caldwell and other defendants. Additionally, Caldwell seeks to introduce portions of a *60 Minutes* interview conducted by the former acting U.S. Attorney for the District of Columbia, Michael Sherwin, and may call Mr. Sherwin as a witness.

C. <u>What happened to Caldwell's "plan" to "attack" the Capitol and arrest Members of Congress</u>?

The government, in the legal equivalent of the "Jedi mind-trick," desires that its prior inaccurate and incendiary claims against Caldwell be forgotten. *See* (ECF No. 251 at 11-13) (suggesting that the government does not have to prove a specific plan to attack the Capitol and stop the certification vote: "Caldwell misunderstands the government's case."). These claims, however, are central to the defense theory of the case: That the government, in its zeal to make quick arrests prior to the inauguration of Joe Biden on January 20, 2021 and

2

with scant evidence, wrongly accused Caldwell of plotting and coordinating a forcible attack on the U.S. Capitol Building, which included a plan to arrest Members of Congress.

A quick review of the government's filings and other materials verifies that for several weeks after initiating their case against Caldwell, the government incorrectly claimed that Caldwell and others schemed to develop a D-Day-like, military-style plan to specifically attack the U.S. Capitol Building and effectuate the arrest of Members of Congress. While making these outlandish claims, the acting U.S. Attorney for the District of Columbia declared: "We do have evidence, it's in the public record, where individual militia groups [including the Oath Keepers] did have a plan—*we don't know what the full plan is*—to come to DC, organize *and breach the Capitol* in some manner[.]" (60 Minutes interview with U.S. Attorney Michael Sherwin, March 21, 2021) (emphasis added). The current *Rhodes* indictment, tellingly, makes no such claim of a premeditated plan to attack the Capitol.

D. The Government's allegations circa early 2021

What follows is a list of the government's more colorful accusations against Caldwell and others:

1. *Initial Criminal Complaint*--In an affidavit signed by F.B.I. Special Agent Michael Palian on January 17, 2021, the government alleged that "Caldwell was involved in planning and coordinating the January 6 breach of the U.S. Capitol" and that "Caldwell appears to have a leadership role within the Oath Keepers." (5:21-mj-00004-JCH, ECF 1-2) (*See* Exh. A).

2. Amended criminal complaint—On January 19, 2021, Special Agent Palian alleged that "CALDWELL planned with DONOVAN CROWL, JESSICA WATKINS, and others known and unknown, to forcibly storm the U.S. Capitol" and that "CALDWELL is believed to have a leadership role with the Oath Keepers." (¶¶13-14). Further, the agent alleged "that not only did CALDWELL, CROWL, WATKINS

3

and others conspire to forcibly storm the U.S. Capitol on January 6, 2021—they communicated with one another in advance of the incursion and planned their attack." (¶16). Additionally, the government alleged that "[c]ommunications . . . from CALDWELL and CROWL's Facebook accounts leading up to January 6, 2021, show that CALDWELL, CROWL, and WATKINS planned and organized Oath Keeper activities to challenge the election results[.]" (Case 1:21-cr-00028-APM, ECF 1-1) (*See* Exh. B).

3. Original *U.S. v. Caldwell* indictment--On January 27, 2021 the grand jury alleged that Caldwell "planned with DONOVAN CROWL, JESSICA WATKINS, and others known and unknown to forcibly enter the Capitol on January 6, 2021, and to disrupt the Congressional proceedings occurring that day." (¶13). The "purpose of the conspiracy," according to this indictment, "was to stop, delay, and hinder Congress's certification of the Electoral College vote." (¶18). To accomplish this purpose, the indictment alleged that Caldwell, Crowl, and Watkins "plann[ed] an operation to interfere with the official Congressional proceeding on January 6, 2021 (the "January 6 operation")." (¶19a). The indictment clearly suggested that Watkins and others intended to arrest Members of Congress, noting that an unknown male "directed" Watkins over Zello as follows: "You are executing a citizen's arrest. Arrest this assembly, we have probable cause for acts of treason, election fraud." (¶44a-b). (Case 1:21-cr-00028-APM, ECF No. 3) (*See* Exh. C).

4. *Superseding indictment filed February 19, 2021*--The government added six additional defendants in their superseding indictment, alleging that "CALDWELL, CROWL, WATKINS, SANDRA PARKER, BENNIE PARKER, YOUNG, STEELE, KELLY MEGGS, and CONNIE MEGGS, planned with each other . . . to forcibly enter the Capitol on January 6, 2021, and to [obstruct the Electoral College certification]." (¶22). The conspirators, according to the superseding indictment, "carried out the conspiracy" by, *inter alia*, "entering the Capitol complex in executing the January 6 operation." (¶26j). "While at the Capitol building" on J6, Watkins and others "communicated and coordinated their actions on Zello," which the superseding indictment again suggested was aimed at arresting Members of Congress. (¶74a-b). (*Caldwell*, ECF No. 27) (*See* Exh. D).

5. *The Government's initial detention memo regarding Jessica Watkins*—In seeking detention for Watkins, the Government claimed that Watkins "exhibited a single-minded devotion to obstruct through violence" the Electoral College certification. (ECF No. 15 at 1). Unlike other J6 protestors, the government claimed that "Watkins had trained and plotted" for storming the Capitol. *Id*. "Moments after the Vice-

4

    President . . . Senators, and staff" were evacuated from the Capitol, the government asserted the "plan" discussed by Watkins and co-conspirators on Zello was obvious: "[T]hat plan became chillingly clear when an unknown male instructed over [Zello], 'You are executing a citizen's arrest. Arrest this assembly, we have probable cause for acts of treason, election fraud." *Id*. at 2. According to the government, "Watkins's premeditated and coordinated conduct created an unprecedented danger[.]" *Id*. at 3. A subheading in the government's memo stated bluntly: "Watkins Planned and Coordinated with Oath Keeper members to Attack the Capitol on January 6, 2021." *Id*. at 4. Moreover, "Watkins and her co-conspirators formed a subset of the most extreme insurgents that plotted then tried to execute a sophisticated plan to forcibly stop the results of a Presidential Election from taking place." *Id*. at 15. The Government also alleged that Watkins was "a key figure who put into motion the violence that overwhelmed the Capitol." *Id*. Zello recordings, according to the Government, "memorialize[d] her experience of breaching the Capitol as well as her plan to 'execut[e] a citizen's arrest . . . [of] this assembly . . . for acts of treason, election fraud.'" *Id*. at 16. (*See* Exh. E).

6. *The government's reply memo on detention for Watkins*—The government alleged that the "evidence remains irrefutable that the [Watkins] recruited others to join for, planned, and participated in a coordinated effort to, as she put it, 'force entry into the Captiol Builidng[.]" (ECF No. 30 at 1). The government characterized Watkins' "well-chronicled actions" as "an effort to forcibly stop the certification[.]" *Id*. The government, notably, alleged that Watkins conduct was "calculated to influence or affect the conduct of government," i.e., "a federal crime of terrorism." *Id*. at 2. Indeed, the government claimed, in making its "terrorism" argument, that "the purpose of the aforementioned 'plan' that the defendant stated they were 'sticking to' in the Zello app channel became startlingly clear when the command over that same Zello app channel was made that, 'You are executing [a] citizen's arrest. Arrest this assembly, we have probably cause for acts of treason, election fraud.'" *Id*. at 3. (*See* Exh. F).

7. *The government's detention memo regarding Caldwell*—The government alleged that Caldwell helped "to organize and coordinate an attack on the U.S. Capitol . . . by a team of militia members . . . for the express purpose of stopping the U.S. Congress's certification of the results of the 2020 U.S. presidential election." (ECF No. 18 at 1). The "plan became chillingly clear" that the purpose of Caldwell's conspiracy was to "execute[] [a] citizen's arrest." *Id* at 3. The government emphasized Caldwell's "detailed and organized . . . planning" for the J6 "operation and Capitol assault[.]" *Id* at 17. "Specifically, Caldwell helped organize a tactical unit of trained fighters that

stormed and breached the Capitol on January 6, 2021." *Id*. "Far from an ancillary player who became swept up in the moment," the government wrote, "Caldwell was a key figure who put into motion the violence that overwhelmed the Capitol." *Id*. The government suggested that Caldwell, a former Navy "commander," was the leader of the entire J6 breach of the Capitol: "Like any coach on the sideline, Caldwell was just as responsible as his players on the field for achieving what he viewed as victory that day." *Id*. at 18. Additionally, the government claimed that Caldwell "organized insurrectionists to occupy the United States Capitol." *Id*. at 20. Finally, "Caldwell was far from leading the blind . . . [but] was likely familiar with the art of operational tactics and used that skillset to the detriment of [American citizens]." *Id*. at 19. (*See* Exh. G).

8. *Transcript of February 12, 2021 Caldwell detention hearing*—The government alleged that what Caldwell was trying to "stop the certification of the results of the election and the peaceful transfer of power." (Tr. at 20). "Mr. Caldwell coordinated with members of the Oath Keepers like Ms. Watkins and Mr. Crowl in planning this attack." (Tr. at 26). The events at the Capitol, according to the government, "were a planned and very well-coordinated attack on the United States Capitol to interrupt [the Electoral College certification]." (Tr. at 52). "Mr. Caldwell . . . kn[e]w that that was the plan and actively assisted in making that plan." (Tr. at 52).

9. *60 Minutes interview*—On March 23, 2021, acting U.S. Attorney Michael Sherwin gave a lengthy interview on the news program 60 Minutes wherein he stated: "We do have evidence, it's in the public record, where individual militia groups [including the Oath Keepers] did have a plan—we don't know what the full plan is—to come to DC, organize and breach the Capitol in some manner[.]" (60 Minutes interview with U.S. Attorney Michael Sherwin, March 23, 2021).

To summarize, the government repeatedly claimed that Caldwell and others engaged in sophisticated, long-term planning for a "January 6 operation." The government unmistakably claimed that the "January 6 operation" was aimed specifically at stopping the Electoral College certification by "forcibly" entering the Capitol. Additionally, the government claimed that Caldwell, Watkins, and others were "key" figures in planning and coordinating the "January 6 operation." According to the government, moreover, the "January 6 operation" specifically included a pre-planned "attack" on the U.S. Capitol

Building in preparation for which Caldwell "organized a tactical unit of trained fighters that stormed and breached the Capitol[.]" The government further alleged that Caldwell "organized insurrectionists to occupy the United States Capitol." According to the government, Caldwell was the "coach" of the "players" who breached the Capitol. Finally, the government unmistakably claimed that Caldwell, Watkins and others, as a goal of the "January 6 operation," were utilizing Zello to execute a "citizen's arrest" upon Members of Congress.

E. <u>The Government's prior statements are inconsistent</u>

The government recently answered Caldwell's repeated "challenges" to "provide evidence of the defendant's specific plan to attack the Capitol" by claiming that "Caldwell misunderstands the government's case." (ECF No. 251 at 11). Citing paper-thin evidence of a pre-meditated plan to attack the Capitol,[1] the government nonetheless suggests that it need not prove that Caldwell and others conspired to specifically breach the Capitol with the intent of stopping the Electoral College certification. *Id*. at 11. Respectfully, Caldwell does not "misunderstand the government's case"; rather, Caldwell recognizes that the Government

---

[1] Interestingly, in setting out its "evidence" that Caldwell and others engaged in a lengthy, pre-meditated plan to attack the Capitol, stop the certification, and arrest Members of Congress, the government cited a video made by a Serbian national, circulated by co-defendant Rhodes, which recommended that Americans engage in "civil disobedience," "swarming the streets and confronting opponents," "gathering in our capital," and "storming the Parliament." This video, however, was circulated by Rhodes approximately 40 days before the J6 Trump protest in Washington, D.C. *was even announced*. A handful of out-of-context and inapposite social media postings round out the government's extensive "evidence" of a pre-meditated plot by Caldwell and others to attack the Capitol pursuant to a military-style plan, stop the certification, and arrest Members of Congress. ECF No. 251 at 11-13.

has quietly backed off of multiple inaccurate and incendiary claims it made against Caldwell and others.

The government's retreat to a vague indictment that charges that Caldwell and others plotted to "stop the lawful transfer of power" is entirely inconsistent with their previous, detailed allegations. Twenty months ago, Caldwell, according to the government, was training up tactical fighters as an Oath Keeper "commander," engaged in substantial planning to launch a military-style attack on the Capitol Building, and intended to arrest Members of Congress. The "plan" was not some vague whim to stop the transfer of presidential power but, rather, a specific "January 6 operation" plotted and planned for weeks to specifically attack the U.S. Capitol. Caldwell's position is clear: reliable investigations are supposed to start with general allegations which, through proper investigation, become more specific as evidence is developed against suspects. The opposite happened in the instant investigation.

F. <u>The Government's Inconsistent Theory and Inaccurate Claims are Admissible as Statements of a Party Opponent</u>.

Federal Rule of Evidence 801(d)(2) sets forth guidelines for admitting out-of-court statements of party opponents:

> **(d) Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay:
> . . .
> **(2)** *An Opposing Party's Statement*. The statement is offered against an opposing party and:
> **(A)** was made by the party in an individual or representative capacity;
> **(B)** is one the party manifested that it adopted or believed to be true;
> **(C)** was made by a person whom the party authorized to make a statement on the subject; [or]
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]
> . . . .

Fed. R. Evid. 801(d)(2).  To determine whether a statement should be admitted, the Court must first determine whether the government is an "opposing party" for purposes of Rule 801(d)(2).  The D.C. Circuit has answered this question:  "[T]he Federal Rules clearly contemplate that the federal government is a party-opponent of the defendant in criminal cases." *United States v. Morgan*, 581 F.2d 933, 937 n.10 (D.C. Cir. 1978).  *See also United States v. Warren*, 42 F.3d 647, 655-56 (D.C. Cir. 1994) (admitting statements of police officers under Rule 801(d)(2)); *Morgan*, 581 F.2d at 937 n.11 (admitting an out-of-court statement by a police informant); *U.S. v. American Tel. & Tel. Co.*. 498 F. Supp. 353, 358 (D.D.C. 1980) (holding that statements made by government agents outside the DOJ are also those of a party opponent).  The "Defendant is correct that prior statements by the government may be considered admissions of a party-opponent, and so may sometimes be admitted into evidence under Rule 801(d)(2)(B) of the Federal Rules of Evidence." *United States v. Bailey*, 1998 U.S. App. LEXIS 9760, at *3-4 (D.C. Cir. 1998).  *See also United States v. Marshall*, 935 F.2d 1298, 1300 (D.C. Cir. 1991) ("There is some authority supporting [the defendant's] position that a trial court must admit extrinsic evidence of prior inconsistent statements regarding material issues.").  Government counsel can bind the government with their in-court statements, *see United States v. Salerno*, 937 F.2d 797, 810-12 (2d Cir. 1991), and filings.  *See United States v. GAF Corp.*, 928 F.2d 1253, 1258-62 (2d Cir. 1991).

Rule 801 "specifically provide[s] that certain categories of out-of-court statements offered to show the truth of the matter asserted shall not be regarded as hearsay." *Morgan*,

581 F.2d at 937.  Inconsistent factual representations and arguments can be used by party opponents in criminal trials:

> A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.

*United States v. McKeon*, 738 F.2d 26, 31-32 (2d Cir. 1984).  Citing prior precedent, the *McKeon* court further noted that amended and withdrawn pleadings are admissible against a party opponent:

> A further objection was based upon the fact that the complaint had been superseded by an amended pleading. This objection is likewise unavailing. When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; *but it still remains as a statement once seriously made by an authorized agent*, and as such it is competent evidence of the facts stated, though controvertible, like any other extra-judicial admission made by a party or his agent.

*United States v. McKeon*, 738 F.2d 26, 31-32 (2d Cir. 1984) (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929)) (emphasis added).  The Second Circuit subsequently expanded *McKeon*, which involved defense attorney statements, to prosecutorial statements.  See *Salerno*, 937 F.2d at 811-12.  Additionally, it is well-settled that "opinions" of party opponents are also admissible in evidence against government prosecutors:  "While the government claims that the statement should be excluded because it was not 'evidence,' opinions are freely admissible when made by a party-opponent."  *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1109 (C.D. Cal. 1999).  *See also Washington Public Power v. Pittsburgh-Des Moines Corp.*, 876 F.2d 690, 696-97 (9th Cir. 1989); *Owens v. Atchison, Topeka & Santa Fe R. Co.*, 393 F.2d 77, 79 (5th Cir. 1968) ("It is well settled that the opinion rule does not apply to a party's admissions.").

In addition to inconsistent facts and opinions, inconsistent theories floated by the government are also admissible as statements of a party opponent. In *Salerno*, co-defendant Auletta was convicted of violating the mail fraud statute, 18 U.S.C. § 1341. The trial court rejected the defendant's request to introduce into evidence the opening and closing arguments that the government made at the trial of related defendants wherein the government presented an inconsistent theory of the defendant's culpability:

> Apparently, the government has taken *the same evidentiary clay* that they used in the commission case and, for purposes of this trial, resculpted Auletta from a "puppet on a string" to a bid-rigger. The government was free to choose, for tactical or other reasons, not to join Auletta in the commission case, and to postpone his prosecution until they brought the club case. Even so, *the jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims*.

*Salerno*, 937 F.2d at 812 (emphasis added). *See also GAF Corp.*, 928 F.2d at 1260-61 ("Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts.").

G. <u>The government's inconsistent claims are relevant as to the "reliability of the investigation."</u>

The introduction into evidence of the multiple inaccurate facts, opinions, and theories of the government is highly relevant in the instant case. Most notably, the government's inconsistent claims and statements are relevant as to the competency, integrity, and reliability of the investigation into Caldwell and his co-defendants. In *Kyles v. Whitley*, the Supreme Court determined that undisclosed incriminating statements of a cooperating source named "Beanie" were *Brady* material as they were relevant to, *inter alia*, "the reliability of the investigation":

11

> By demonstrating the detectives' knowledge of Beanie's affirmatively self-incriminating statements, the defense could have laid the foundation *for a vigorous argument that the police had been guilty of negligence*. . . . Since the police admittedly never treated Beanie as a suspect, the defense could thus have used his statements *to throw the reliability of the investigation into doubt* and to sully the credibility of Detective Dillman, who testified that Beanie was never a suspect[.]

*Kyles v. Whitley*, 514 U.S. 419, 447 (1995) (emphasis added). *See also United States v. Quinn*, 537 F. Supp. 2d 99, 115 (D.D.C. 2008) (In finding a *Brady* violation, Judge Bates observed: "The impeachment of Douglas would highlight a theme Quinn could have pursued had he been timely provided with the information regarding Tatum: attacking the integrity of the government's investigation."); *Bagcho*, 151 F. Supp. 3d at 69 ("Impeachment evidence can be damaging when it allows defense counsel to attack the reliability of an investigation."); *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant[.]").

The multiple inaccurate, unfounded and dubious claims outlined above in this motion cast significant doubt as to the competency, integrity, and reliability of law enforcement's investigation into Caldwell and his co-defendants. The statements outlined above were not "slips of the tongue," inadvertent misstatements, or quickly-corrected mistakes. The government, for weeks, alleged in court filings, indictments and hearings that Caldwell and others premeditated, since early November 2020, a specific "plan" to specifically "attack" the U.S. Capitol Building for the specific purpose of "arresting" Members of Congress and to specifically stop the Electoral College certification. The jury to be seated in the instant case

must be made aware of the government's prior claims and representations to ensure a fair trial for the defendants.

The defense theory outlined above is particularly important to Caldwell's defense. The government has already conceded that multiple factual claims it made against Caldwell are incorrect. The government incorrectly alleged that Caldwell was not only a member of the Oath Keepers, but also held a leadership role in that organization. Caldwell, moreover, did not enter the U.S. Capitol Building on J6 as initially alleged by the government. And Caldwell, who has no prior criminal record, was not a fugitive from justice as alleged by the government at Caldwell's initial detention hearing in the Western District of Virginia.

That the government wrongly accused Caldwell of engaging for weeks in a sophisticated plot to train up a "tactical band of fighters" and to be their "coach" to guide them in a plan to mount a military-style attack on the Capitol, which included a plan to arrest Members of Congress that was specifically aimed at stopping the Electoral College certification, is entirely inconsistent with the government's more vaguely-styled theory of its case today.

H. Conclusion

Caldwell respectfully requests that the Court admit into evidence, with appropriate redactions, the aforementioned charging documents, affidavits, indictments, sentencing memoranda, and *60 Minutes* video clip and other similar evidence of inconsistent claims outlined above in this motion.

Respectfully Submitted,

/s/
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite 300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant

**CERTFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of September, 2022, a copy of the foregoing Motion In Limine To Allow into Evidence Certain Inconsistent Statements Made By the Government was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:        Office of the United States Attorney
                                   555 4th Street, NW
                                   Washington, DC 20001


                                   _____/s/_____
                                   David W. Fischer, Esq.