# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELMER STEWART RHODES, et al,<br><br>Defendant. | Criminal No. 22-cr-00015-APM<br><br>**MOTION TO CONTINUE TRIAL AND FOR APPOINTMENT OF SPECIAL MASTER TO ADMINISTER DIGITAL DISCOVERY** |

MOTION TO CONTINUE TRIAL AND FOR APPOINTMENT OF SPECIAL MASTER TO ADMINISTER DIGITAL DISCOVERY

**Evidentiary hearing requested.**

NOW comes Defendant, ELMER STEWART RHODES III ("Rhodes"), by and through his counsel of record, and respectfully moves this Court for an order continuing trial until proper necessary discovery can take place.

This motion incorporates the following memorandum of points and authorities.

Counsel has alerted counsel for the United States of this motion; and the United States objects to the motion.

MEMORANDUM OF POINTS AND AUTHORITIES

At present the U.S. Department of Justice has conceded that January 6 represents the most complicated set of cases in the Department's history. By the Department's admission, discovery in this case surpasses 10 terabytes of data.

Multiple agencies, as well as officials and committees of the U.S. Congress, have simultaneous jurisdiction over the Jan. 6 investigations. Various government officials, including the Chair of the U.S. House of Representatives Select Committee on January 6, have contended and asserted a wide-ranging conspiracy between Defendant Rhodes, Rhodes' codefendants, the Oathkeepers organization, Proud Boys, and President Trump or other elected officials. President Trump was even impeached for his supposed role in directing the events of January 6.

## I.     The Discovery presents a logistical nightmare.

All of this presents a logistical nightmare for Rhodes and other defendants trying to navigate through the many terabytes of digital discovery. Rhodes has been held in four (4) different jails in the short time of his case; and each location has presented its own obstacles for Rhodes to defend himself.

Of the seven months of Rhodes' incarceration, Rhodes has had access to meaningful discovery for just two months. Now he is being forced to face trial of the most complicated facts and issues of any case in American history, while facing potential life imprisonment, with access to discovery that is dated June 2022. It is now September 12, 2022 and Rhodes is being raced to trial in just two weeks.

While Rhodes' codefendants in the D.C. jail have near-constant access to discovery videos, Rhodes is incarcerated in a jail in Alexandria, Virginia where he

gets only two days per week to examine electronic discovery; by being transported to the District Court to use computers. The discovery hard drive Rhodes is allowed to use <u>has not been updated in three months</u>.

### A. PROPOSAL FOR APPOINTMENT OF A SPECIAL MASTER

One of the most cost-effective methods for managing and dispensing discovery of such a massive volume is to engage a special master to help manage discovery. Special masters can promote efficiency in discovery, the phase of litigation that is most likely to break down and cause delays to case resolution.

Discovery in this case is more massive than the discovery in many cases where courts have appointed special masters to help manage discovery. For example, the Whitmer-kidnapping-plot case in the U.S. District of Michigan in 2021, the Bundy prosecutions in the U.S. District of Nevada both used special masters to manage, compile, dispense and compartmentalize discovery that was less massive than the discovery in this case.

Rhodes requests appointment of a special master in this case.

### B. APPOINTMENT ORDER

The appointment order determines the scope of the master's authority, what issues may or may not be considered, the timeframe for addressing those issues, and whether the master can communicate ex parte with the court. How these items are addressed in the appointment order is a critical issue for all parties in the litigation.

### C. ALLOCATION OF PAYMENT

The question of who will pay for the special master is a crucial consideration. Under Federal Rule of Civil Procedure 53, courts may allocate payment responsibility based on a variety of factors including "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master."

### D. STANDARD OF REVIEW

Another key issue is the standard of review in connection with challenges to master rulings and reports and recommendations. FRCP 53 requires courts to review de novo party objections to the special master's factual findings and legal conclusions while using an abuse of discretion standard for rulings on procedural matters. Nevertheless, the parties may opt to modify the de novo standard for factual findings according to the needs of the case.

### E. SPECIAL MASTER'S EXPERIENCE

A final consideration will involve selecting a special master with the right background and experience for the matter. A retired judge or lawyer with technical expertise and specialized knowledge of discovery to manage tricky issues involving search and preservation. Driven's expert consultants have served as court-appointed special masters and ESI experts to manage any number of discovery issues in the cases in which they have served.

To provide greater understanding regarding the considerations for using special masters in discovery, we invite you to watch a recording of Driven, Inc.'s webinar featuring U.S. Magistrate Judge Maria A. Audero (Central District, California), retired Third Circuit Court of Appeals Judge Thomas I. Vanaskie, and Kevin F. Brady (Senior eDiscovery Counsel, Volkswagen Group of America) as they discuss the issues in detail.

This massive amount of information—and doubtlessly, much misinformation—presents a logistical nightmare with regard for distribution of discovery, exhibits and evidence.  Significantly, many large-scale federal criminal cases, including the Whitmer-kidnapping allegations in Michigan, the Bundy cases in Nevada, and others have made use of special discovery management firms and masters to equitably and efficiently.

Rhodes and his counsel propose the following discovery proposal:

1. First, the basic categorization of this discovery must be analyzed and reviewed by a data management master who can assess the size, scope, and depth of the data and come up with a categorization plan.
2. This special master, acting as an officer of the Court, will preside over the distribution, storage, and management of the discovery and make recommendations

## II. Facts and Background.

Among other things, Rhodes and other Oathkeepers are charged with seditious conspiracy "by force to prevent, hinder, and delay the execution of any law of the United States" to "oppose the lawful transfer of presidential power by force . . ." Witness Kellye SoRelle, a licensed attorney, was general counsel for the Oathkeepers during the period, and can testify regarding her advice, observations, and communications with Rhodes and the Oathkeepers organization.

SoRelle coauthored and so-signed with Rhodes at least one of the published public letters on the Oathkeeper website to President Donald Trump between election night 2020 and Jan. 6 urging the president to invoke the Insurrection Act, 10 U.S.C. §251-§255, to investigate 2020 election improprieties. It was the Oathkeepers' purpose expressed in these published public letters—advocacy to a public official for redress of grievances, protected under the 1st amendment—that form the foundation for the indictment in this case.

SoRelle is a necessary witness. SoRelle literally provided legal counsel to the Oathkeepers during the period when the indictment claims the Oathkeepers (led by Rhodes) were engaging in a wide-ranging conspiracy to use force to thwart the transfer of power between President Trump and President Biden.

Upon information and belief, SoRellw would testify that, in her observations and professional opinion, Rhodes followed and complied with the law during this period.

 Further, upon information and belief, SoRelle previously testified before the Jan. 6 Committee of Congress that Rhodes and Oathkeepers under her observation complied and followed federal law.  Upon information and belief, SoRelle testified to the Jan. 6 Committee that Rhodes and Oathkeepers— pursuant to her legal advice, direct observation and counsel—are innocent of sedition, conspiracy, and other claims in the indictment.  SoRelle's testimony is thus exculpatory evidence; and Brady material.  To withhold it would be error of an extreme magnitude. Counsel for Mr. Rhodes would like to add additional claims as a further basis for this Court to grant the requested Motion for Continuance. Since Rhodes' incarceration in January of 2022 he has been placed in three different detention facilities, each with a different level of access for Rhodes to his discovery and his legal team. Since being placed in the Alexandria Detention Facility in March of 2022, Rhodes has been virtually unable to view the evidence that all of the other defendants have access to. Up until late June of 2022 Rhodes had no access to any of the digital discovery. Rhodes was only allowed paper copies of what his Counsel could send him in the mail or deliver to him personally.

    As the Court is aware, Rhodes was recently allowed to have a laptop with the discovery in the jail. However, the jail only allows Rhodes to have access to this laptop two hours per week. As the Court is also aware, there are several terabytes of discovery in this case. At the current working arrangement with the Alexandria Detention Center Rhodes would have only had approximately twenty hours of time to view the multiple terabytes of evidence that the government has provided while the other defendants have had virtually unlimited access to the evidence and the ability to process it with their attorneys. His location and lack of access to the evidence continues to put him at a great disadvantage as compared to the other co-defendants.

Dated:   September 12, 2022

                                        Respectfully Submitted,
                                        /s/ Edward L. Tarpley Jr.

                                        _____

                                        Edward L. Tarpley Jr.
                                        A Professional Law Corporation
                                        LA Bar ID: 12657
                                        819 Johnston Street
                                        Alexandria, Louisiana 71301
                                        Telephone: 318-487-1460
                                        Fax: 318-487-1462
                                        Email: edwardtarpley@att.net

                                        Counsel for Defendant,
                                        Elmer Stewart Rhodes III

CERTIFICATE OF SERVICE

      I hereby certify that this document is being filed on this September 12, 2022, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants. From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

Troy A. Edwards, Jr
U.S. ATTORNEY'S OFFICE
555 4th Street, NW
Washington, DC 20001
202-252-7081
troy.edwards@usdoj.gov

Jeffrey S. Nestler
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
jeffrey.nestler@usdoj.gov


Kathryn Leigh Rakoczy
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
kathryn.rakoczy@usdoj.gov

Justin Todd Sher
U.S. DEPARTMENT OF JUSTICE

950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
justin.sher@usdoj.gov

Alexandra Stalimene Hughes
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
Alexandra.Hughes@usdoj.gov


<u>/s/Edward L. Tarpley Jr</u>
Edward L. Tarpley, Jr.