**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES                              *

vs.                                        *    Case No.: 22-15 APM

THOMAS E. CALDWELL                         *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**CALDWELL'S REPLY IN SUPPORT OF MOTION IN LIMINE TO ALLOW INTO**
**EVIDENCE CERTAIN INCONSISTENT STATEMENTS MADE BY THE**
**GOVERNMENT**

The government opposes Caldwell's request to introduce into evidence its multiple

inconsistent and inaccurate factual statements, opinions, and theories set forth in various

court filings, indictments, hearings, and on national television.  As the government's

contentions are without merit, the Court should rule that the government's court filings

contained in Exhibits A through G of his motion, and the statements therein (*see* ECF No.

299 at 3-6, ¶¶1-8), are admissible; that statements (*see* ECF 299 at 6, ¶7) in the February 12,

2021 transcript of Caldwell's detention hearing are admissible; and that the *60 Minutes*

interview of former acting U.S. Attorney Michael Sherwin is admissible.  Additionally, the

Court should order that Caldwell and the government consult for the purpose of making

appropriate redactions consistent with the Court's anticipated ruling at the Pretrial

Conference on September, 14, 2022.

A. **<u>The Defendant chooses which statements to admit as evidence, not the government</u>**.

The government seeks a *quid pro quo* in response to Caldwell's intention to introduce its statements: "The government does not object to admitting, *in toto*, the pleadings and statements made by the government during the course of this litigation." (ECF No. 302 at 1). Caldwell, respectfully, declines the government's demand, as it is without foundation.

Pursuant to Federal Rule 801(d)(2), both sides in litigation are free to admit into evidence "statements of party opponents." Caldwell is entitled to introduce relevant statements made by the government, as "the federal government is a party-opponent . . . in criminal cases." *United States v. Morgan*, 581 F.2d 933, 937 n. 10 (D.C. Cir. 1978). The D.C. Circuit takes a "broad view" on the admissibility of statements by government officials in criminal prosecutions. *United States v. Bagcho*, 151 F. Supp. 3d 60, 69 (D.D.C 2015). "Statements made by federal prosecutors are admissible in federal criminal prosecutions because prosecutors have the authority to bind the United States by their statements." *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1105 (C.D. Cal. 1999). Caldwell is under no obligation to introduce *every* government statement into evidence as a condition precedent to introducing the proffered government statements set forth in his motion. Additionally, Caldwell has no intention of taking the government's prior statements out of context, and fully intends to cooperate with efforts to negotiate appropriate redactions.

B. **<u>The government has made multiple inconsistent and inaccurate claims</u>**.

The government avers that Caldwell's motion "never identifies a prior government statement that is allegedly inconsistent with a later government statement." (ECF No. 302 at

3).  Not so.[1]  Caldwell's motion set forth a documented paper-trail proving that the

government claimed, on multiple occasions, that 1) Caldwell and others engaged in

sophisticated, long-term planning and preparation; 2) that Caldwell and others developed the

"January 6 operation"; that the "January 6 operation" was a military-style plan to "attack" the

U.S. Capitol Building; and that this "plan" was "chillingly clear" in that it targeted Members

of Congress for arrest.  Not only did the government make clear that Caldwell was the ring-

leader—the Commander—of a plot to attack the Capitol, *it simultaneously suggested that co-*

*defendant Stewart Rhodes was not involved in the planning of the J6 operation.*

     In its initial criminal complaint filed against Caldwell, for example, the government

cited a Facebook message wherein Caldwell advised co-defendant Crowl:  "I don't know if

[Stewart Rhodes] has even gotten out his call to arms but it's a little friggin late.  *This is one*

*we are doing on our own*.  We will link up with the North Carolina crew."  *See* (ECF No.

299, Exh. A at 13) (emphasis added).  In a subsequent criminal complaint and in its initial

indictment in *U.S. v. Caldwell*, the government cited the same Facebook message as well as

another message wherein Caldwell, allegedly planning with co-defendant Crowl for the

"January 6 operation," wrote that "[Stewart Rhodes] never contacted me so [my wife] and I

*are going our own way*."  *See* (ECF No. 299, Exh. B at 21-22, Exh. C at 10) (emphasis

added).  In short, the government repeatedly claimed and insinuated that Caldwell, Watkins,

---

[1] To clarify, by "inconsistent statements," Caldwell was not referring to inconsistent statements under FRE 613.  That rule's limitations specifically "[do] not apply to an opposing party's statement under Rule 801(d)(2)."  Fed. R. Evid. 613(b).  That the government's prior statements, opinions, and theories regarding Caldwell and others are "inconsistent" justifies, as one basis, their *relevance* for use at trial.

and others—but *not* Rhodes-- devised the "January 6 operation," which they orchestrated, led, and executed sans Stewart Rhodes.

By contrast, the government's current theory of conspiracy, as evidenced by the instant *Rhodes* indictment and other filings, is that Rhodes *himself* masterminded a plot to stop the lawful transfer of power, which would consummate upon *Rhodes's command*. Tellingly, in the Statement of Offense signed by the government and co-defendant/cooperator Joshua James, the parties acknowledged that "James agreed to take part in a plan *developed by Rhodes* to stop the lawful transfer of presidential power by January 20, 2021, by deploying force to prevent, hinder, and delay the execution of the laws of the United States governing the transfer of presidential power . . . and [James] was prepared to answer *Rhode's call* to take up arms." (ECF No. 60 at ¶4) (J. James, Statement of Offense) (emphasis added). The government's plea agreement with co-defendant Brian Ulrich included a Statement of Offense with the exact same language. (ECF No. 117 at ¶4).

Respectfully, the government not only has offered inconsistent statements and opinions over the course of twenty months, *it has rewritten its entire case against Caldwell*. Caldwell has devolved from an "Oath Keeper" with "a leadership role," masterminding a "sophisticated plan" to train up "a tactical unit of fighters" to launch an "attack" on the U.S. Capitol Building, which he joined in by entering the Capitol himself, in an effort to "arrest" members of Congress to specifically stop the Electoral College certification, to his present status as a "coordinator" of a one-man QRF. Every government claim outlined in Caldwell's motion is *de facto* "inconsistent" with the government's current argument that Rhodes *himself* developed a plan that would be executed upon *his orders*.

4

C. **The government's statements, opinions, and theories are relevant**.

Statements of party opponents are admissible subject only to FRE 401 and FRE 403. The government's statements proffered by Caldwell are relevant and admissible on a number of grounds. First, the government's prior claims cast significant doubt upon the competency, integrity, and reliability of law enforcement's investigation. Based upon only a few hours of investigation, the government quickly, publicly, and *wrongly* alleged that Caldwell entered the U.S. Capitol Building on J6, was a member of the Oath Keepers, held a leadership role within the Oath Keepers, was a fugitive from justice, masterminded a military-style plan to attack the Capitol, was a "key figure who put into motion the violence that overwhelmed the Capitol," trained up a unit of tactical fighters, participated in a plot to arrest Members of Congress, and "organized insurrectionists to occupy the Capitol." The government has abandoned each and every one of these prior statements. A reasonable jury could take an inference from the government's serial incorrect claims that law enforcement's investigation and conclusions regarding Caldwell can't be trusted.

Additionally, the government's incorrect claims also raise issues as to law enforcement's investigative techniques. How, for example, did the government wrongly conclude that Caldwell masterminded a sophisticated plan to attack the Capitol? What was the evidentiary basis for concluding that Caldwell trained up a unit of tactical fighters? On what basis did law enforcement make the claim that Caldwell held a leadership role in the Oath Keepers? What was the basis for law enforcement to wrongly claim that Caldwell stormed his way inside the Capitol Building? These questions are important evidentiary fields that Caldwell needs to plow. Moreover, it appears that the government reached

sweeping but incorrect conclusions regarding Caldwell based upon its interpretation of social media posts.  Accordingly, these interpretive mistakes are relevant to attack the trustworthiness of the government's inculpatory "spin" on other messages.  Respectfully, Caldwell is entitled to challenge the conduct and competency of the investigation by confronting the government with it prior inaccurate claims and theories.[2]

D. **U.S. Attorney Michael Sherwin**.

On his last day as acting U.S. Attorney for the District of Columbia, Michael Sherwin taped an interview with *60 Minutes*. *See* Scott Pelley, *60 Minutes*, Mar. 23, 2021 (interview with M. Sherwin) (https://www.youtube.com/watch?v=FoAqWnD7NTI).  During this interview, Sherwin was asked by Scott Pelley:  "Was there a premediated plan to breach the Capitol?"  Sherwin answered:  "That's what we are trying to determine right now." *Id*. Sherwin's interview was taped on March 21, 2021[3] *after* the government had serially alleged that Caldwell, Watkins, and others had a premeditated plan to breach the Capitol.  *See* (ECF 299 at 3-6).

Caldwell should be allowed to enter into evidence Sherwin's equivocal *60 Minutes* interview statements regarding whether there was a premeditated plan to breach the Capitol and contrast those with the strident, unequivocal claims made by the government in their arguments in favor of detaining Caldwell and Watkins.  The jury is entitled to know that the government held two positions at one time:  first, that Caldwell and others concocted a plan

---

[2] It should also be noted that the government has effectively charged two different conspiracies, which may entitle the defense to a jury instruction on multiple conspiracies.
[3] This segment aired two days later on March 23, 2021.

to specifically breach the Captiol Building; second, that the government, as stated by Sherwin, really had no idea if there was such a plan but was still investigating that possibility.  Again, such evidence is relevant to the competency, reliability, and integrity of law enforcement's investigation and, additionally, as to the conduct of the investigation.  For example:  What prompted the government to change its strident "Caldwell had a plan to attack the Capitol" position to Sherwin's equivocal statement about law enforcement still trying to "determine right now" whether such a plan existed?

While Caldwell would prefer not to call Sherwin as a witness, his testimony would be necessary, absent an agreement with the government, to authenticate the *60 Minutes* interview and to explain the obvious inconsistencies in the competing government claims circa January through March 2021.  Sherwin was the chief federal law enforcement for the District of Columbia at the time he taped the interview with *60 Minutes*.  His interview was the subject of a court hearing in the instant case and an ethics probe by the Department of Justice, which put the government on notice that his statements may have evidentiary value. His statements were clearly those of a "party opponent" and are relevant to Caldwell's defense and, subject to appropriate redactions, should be admitted in evidence at trial.

### E.  <u>Statements to be offered by Caldwell.</u>

Caldwell filed the instant motion to alert the Court (and government) regarding his intention to make the government's serial inaccurate statements, opinions, and theories a central part of his defense and to brief the Court on the admissibility of the government's prior claims.  These "statements of a party opponent" are contained within Exhibits A through G in Caldwell's filing, a transcript of Caldwell's February 12, 2021 detention

hearing, and a *60 Minutes* interview, and are quoted in Caldwell's filing.  (ECF No. 299 at 3-6).  Caldwell requests that the Court rule that the government's statements outlined in his motion are admissible subject to appropriate redactions of the court filings, transcript, and *60 Minutes* video.

Respectfully Submitted,


_____/s/_____
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite 300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant

## CERTFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of September, 2022, a copy of the foregoing Reply in Support of Motion In Limine To Allow into Evidence Certain Inconsistent Statements Made By the Government was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:    Office of the United States Attorney
Kathryn Rakoczy, AUSA
Jeffrey Nestler, AUSA
Louis Manzo, AUSA
Troy Edwards, AUSA
Ahmed Baset, AUSA
Alexandra Hughes, DOJ T.A. (NSD)
Justin Sher, DOJ T.A. (NSD)
555 4th Street, NW
Washington, DC 20001


/s/
David W. Fischer, Esq.