UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Criminal No. 22-cr-15 (APM) |
| **ELMER STEWART RHODES, III et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

## ORDER

Defendants have asked the court to exclude from evidence portions of a January 6, 2022 Zello chat among Defendant Jessica Watkins and others not indicted in this case, which the government seeks to admit in its case in chief. *See* Jt. Mot. in Limine Regarding Anticipated Trial Evidence re: Zello Communications, ECF No. 280 [hereinafter Defs.' Mot.]. As explained below, Defendants' motion is granted in part and denied in part.

Each of Ms. Watkins' statements on the Zello chat is admissible against her as a statement of a party opponent. FED. R. EVID. 801(d)(2).

With respect to the admissibility of (1) Ms. Watkins' statements and the statements of others against co-defendants and (2) certain statements of others as to Ms. Watkins, the court finds as follows:

1.  1:48 to 1:52 p.m.[1]: Ms. Watkins' statement at 1:49 p.m. ("Right, brother. We're boots . . . .") is admissible as a present sense impression, FED. R. EVID. 803(1): "(1) the statement describes or explains an event or condition, (2) which the declarant perceived firsthand, and (3) the statement was made contemporaneously—while the declarant perceived the event or condition or

---

[1] For ease of reference, the court has divided the Zello transcript in the manner reflected in the United States' opposition brief. Gov't's Opp'n to Defs.' Mot., ECF No. 292, at 19–36.

immediately thereafter." *United States v. Wills*, Criminal No. 18-cr-117 (PLF), 2018 WL 6716096, at *3 (D.D.C. Dec. 21, 2018).

Ms. Watkins' first statement at 1:50 p.m. ("Yeah. We have a good group. . . . We're sticking together and sticking to the plan.") is admissible as a present sense impression and a statement of her then-existing state of mind, FED. R. EVID. 803(3) (identifying as state-of-mind examples "motive, intent, or plan"). Her second statement at 1:50 p.m. ("Roger that, brother. . . .") is not hearsay as it is not being admitted for the truth of the matter asserted, but if it is hearsay it is admissible as a statement of her then-existing state of mind.

All of Ms. Watkins' statements during this time period also are admissible as statements against penal interest. FED. R. EVID. 804(b)(3). An out-of-court statement is admissible under Rule 804(b)(3) "if: (1) the declarant was unavailable, (2) the statement was against the declarant's interest, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement." *United States v. Moore*, 651 F.3d 30, 82 (D.C. Cir. 2011) (internal quotation marks omitted). Each element is met here. *First*, Ms. Watkins is unavailable to the government as a witness, because presumably she would invoke her Fifth Amendment privilege against self-incrimination if called by the prosecution. *See United States v. Stratton,* 779 F.2d 820, 828 (2d Cir. 1985) ("Since [the declarant] was a defendant, he could not be called by the Government as a witness and was therefore 'unavailable.'"); *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980) ("There is no question that [the declarant] was unavailable to testify. He was a defendant, and the government could not call him as a witness."). *Second*, a statement is against a declarant's interest if "a reasonable person in the declarant's position would have made [it] only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability." FED. R. EVID. 804(b)(3)(A). "[W]hether a statement is self-inculpatory or not

can only be determined by viewing it in context. Even statements that are on their face neutral may actually be against the declarant's interest." *Williamson v. United States*, 512 U.S. 594, 603 (1994). Here, Ms. Watkins's statements at 1:49 p.m. and 1:50 p.m. exposed her to criminal liability insofar as they are evidence of concerted activity ("We're sticking together and sticking to the plan.") directed at the Captiol building and the Electoral College certification ("We're moving on the Capitol now," after being told by 1%Watchdog that "Pence is doing his traitorous bullshit, and the election stealing progress . . . ."). A reasonable person in Ms. Watkins's position would have made these statements only if she believed them to be true. *Third*, corroborating circumstances establish the trustworthiness of Ms. Watkins' statement. More than two dozen Oath Keepers are alleged to have both acted in concert on January 6th and entered the Capitol building during the time Congress was scheduled to certify the Electoral College vote. This number of Oath Keepers and their alleged actions are consistent with Ms. Watkins' statements. As Ms. Waktins' statements are admitted under Rule 804(b)(3), they are admissible against her co-defendants, too. *See Ashby v. United States*, 199 A.3d 634, 653–54 (D.C. 2019) ("When statements fall under [Federal 804(b)(3)], they may be properly admitted without redaction against the non-declarant defendants.") (internal quotation marks and citation omitted).

The statements of others from 1:48 p.m. to 1:52 p.m. are admissible to provide context to Ms. Watkins' statements. *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) ("The messages [the defendant] received were admitted not for the truth of the matter asserted but instead to provide context for [the defendant's] own messages." (emphasis omitted)); *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) ("Statements providing context for other admissible statements are not hearsay because they are not offered for their truth.").

2.     1:56 p.m. to 2:00 p.m.: Ms. Watkins' statement at 1:58 p.m. ("100 percent. It is . . . ") is admissible as a present sense impression. Ms. Watkins' statements at 1:59 p.m. are admissible either as a statement of her then-existing state of mind or a present sense impression ("Trump's been trying . . . . We just brought a shop vac."), if they are offered for their truth. Ms. Watkins' statement at 2:00 p.m. is admissible as a present sense impression ("Yeah, we're one block . . . ") and as a statement of her then-existing state of mind ("I'm probably gonna go silent . . ."). These statements also are admissible as statements against penal interest, as they are self-inculpatory and there is evidence to corroborate their trustworthiness. FED. R. EVID. 804(b)(3).

The statements of others from 1:56 p.m. to 2:00 p.m. are admissible to give context to Ms. Watkins' statements.

3.     2:01 p.m. to 2:24 p.m.: The court will not admit the statements made during this 23-minute period, except one, either for context or the effect on the listener. None of the speakers during this time, except one, are alleged to be part of the conspiracy or non-conspiring Oath Keepers. They are not instructing Ms. Watkins on what to do. Nor did Ms. Watkins take any apparent action in response to the statements (contrary to the government's suggestion at last week's hearing that the speakers were acting as "eyes in the sky"). At most, they appear to be expressing their personal views or communicating play-by-play of the events as they unfolded on television or were reported in the media. Notably, Ms. Watkins responds to none of these statements; her next statement is 30 minutes later at 3:31 p.m. Thus, even if she was listening to this chatter, as the government contends, the statements appear to have had no immediate effect on her. The statements therefore have little probative value to show context for Ms. Watkins' actions or bear on her state of mind.

Moreover, the statements' minimal probative value is substantially outweighed by the risk of unfair prejudice. FED. R. EVID. 804(b)(3). Some of the statements are highly inflammatory, particular those uttered by 1%Watchdog at 2:03 p.m. and by SGT E at 2:18 p.m. ("Find out where the tunnels exit and block them too."). These statements, spoken by others, have the potential to be highly prejudicial to Defendants.

The government suggests that 1%Watchdog's statement at 2:03 p.m. ("Citizen's arrest. Arrest this assembly, these fucking treasonous bastards. . . .") provides context for what Ms. Watkins did once inside the Capitol. But the connection between 1%Watchdog's statements and Ms. Watkins' conduct is speculative and attenuated. Ms. Watkins does not respond to any of his statements and she does not enter the Capitol until a half hour later. During this time, she instead connected with other alleged co-conspirators, including Kelly Meggs and Kenneth Harrelson. 1%Watchdog's statement at 2:03 p.m. is sufficiently distant from Ms. Watkins' later actions and, for that reason, does not provide context for them.

The one statement admissible during this time period is from FreedomD0z3r91 at 2:19 p.m. ("From what I'm hearing . . ."). That statement is co-conspirator statement, FED. R. EVID. 801(d)(2)(E), as the government has represented that the speaker is an unindicted co-conspirator and his statement was made during and in furtherance of the conspiracies alleged. Defendants have not argued otherwise.

4. 2:26 p.m. to 2:30 p.m.: FreedomD0z3r91's statement at 2:26 p.m. ("Jess, pull as much intel as you can . . .") is not hearsay, as it is offered not for the truth of the matter asserted but as an instruction to Ms. Watkins by an alleged co-conspirator. Michael H. Graham, 6 Handbook of Fed. Evidence § 801:5 (9th ed.) ("Instructions to an individual to do something are

5

also not hearsay.") (citing cases).  Even if offered for the truth, the statement is admissible as a statement of a co-conspirator.

The statements of others at 2:27 p.m. ("They've called the House back. . . ."), 2:28 p.m. ("Here's the House live. . . ."), and 2:30 p.m. ("F* yeah.  I heard them myself.") are admissible to give context to Ms. Watkins' subsequent statement at 2:31 p.m.

5. 2:30 p.m. to 2:36 p.m.:  Ms. Watkins' statement at 2:31 p.m. ("We're on the rear mezzanine behind the dome. . . .") is admissible as a present sense impression and a statement of her then-existing state of mind.  It is also a statement against penal interest, as it places Ms. Watkins inside the Capitol building during the commission of the alleged offenses. The statements of others at 2:30 p.m. ("Hey.  My girlfriend . . . ."), 2:31 p.m. ("PBS News has them . . . ."), 2:31 p.m. ("All right.  Well, whatever . . . ."), 2:32 p.m. ("Be advised, the livestream . . . ."), 2:33 p.m. ("They're live in C-SPAN . . . ."), and 2:33 p.m. ("Yeah.  It's not a set-up. . . .") are all admissible as providing context for Ms. Watkins' statement.

The court, however, will exclude the statements at 2:33 p.m. ("Patriots, . . . ."), 2:34 p.m. ("Amen."), and 2:34 p.m. ("Yeah guys.  NAP, Non-Aggressive Principal. . . .").  The modest probative value of these statements in providing context is substantially outweighed by the risk of unfair prejudice.  In particular, statements from Badlands such as, "I don't know what will aside from bloodshed . . . ." and 1%Watchdog, "Don't kill anybody unless you're being attacked . . . ." are caustic statements by non-co-conspirators that are sufficiently provocative to create a risk of inflaming the jury.

6. 2:39 p.m. to 2:46 p.m.:  The court will not admit the statement by 1%Watchdog at 2:39 p.m. ("Capitol Police can't do . . . .") to show its effect on the listener because, unlike the

6

statements made at 2:43 p.m. (discussed below), there is no evidence corroborating that Ms. Watkins heard the statement and nothing to suggest that she acted on it.

The court will admit the statement of FreedomD0z3r91 at 2:39 p.m. ("Yeah. Don't worry . . . .") as a co-conspirator statement.

The statements at 2:43 p.m. by Jim Fitzgerald, 1%Watchdog, and Gnomi are not hearsay. The court will admit those statements, except one, for context and their effect on the listener, Ms. Watkins. Video evidence presented shows Ms. Watkins at 2:44 p.m. pressing the screen on her cellphone and putting it to her ear. Ms. Watkins then speaks on the Zello chat at 2:44 p.m. The statements in the preceding minute (at 2:43 p.m.) provide context for Ms. Watkins' statement at 2:44 p.m. The court, however, will exclude 1%Watchdog's statement, "Military principle 105, military principle 105, cave means grave," because its probative value is substantially outweighed by the likelihood of unfair prejudice.

Ms. Watkins' statement at 2:44 p.m. ("We are in the mezzanine. . . .") is a present sense impression and a statement against penal interest. Jim Fitzgerald's statement at 2:44 p.m. ("Be safe, be safe. God bless and God speed and keep going.") is not hearsay and is admissible for its effect on the listener.

FreedomD0z3r91's statement at 2:46 p.m. ("Get it, Jess. Do your . . . .") is not hearsay and is admissible for its effect on the listener. If any portion of the statement is offered for the truth of the matter asserted (i.e., "This is what we f* lived up for. Everything we f* trained for."), it is admissible as a co-conspirator statement made during and in furtherance of the conspiracy.

Dated: September 19, 2022

Amit P. Mehta
United States District Judge