UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Criminal No. 22-cr-15 (APM) |
| | ) | |
| **ELMER STEWART RHODES, III et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

For the reasons that follow, the court denies Defendants' Joint Motion for Reconsideration of the Court's Order, ECF No. 322, in Part, Re: Zello Communications, ECF No. 340 (sealed) [hereinafter Defs.' Mot.].

Defendants' sole ground for seeking reconsideration is that, as to certain statements of 1%Watchdog and Gnomie, their "probative value is substantially outweighed by the likelihood of unfair prejudice." *Id.* at 3.[1] The court disagrees.

1. The probative value of 1%Watchdog's statement at 1:58 p.m. ("Yeah, guys. Police can't stop you. . . .") is high and is not substantially outweighed by the likelihood of unfair prejudice. This statement immediately follows Ms. Watkins' statement at 1:58 p.m. ("100 percent. It is – it has spread . . .") and is immediately before her statement at 1:59 p.m. ("Trump's been trying . . ."). Without admitting what 1%Watching's said, the context for Ms. Watkins' statements would be lost on the jury.

---

[1] Defendants cite a number of Rules of Evidence in their brief, but those rules are irrelevant as the court did not rely on any of them to admit the statements at issue. Defs.' Mot. at 2 (citing FED. R. EVID. 106, 801(c), 802, 803, 804, and 807).

2. 1%Watchdog's statement at 2:31 p.m. ("All right. Well, whatever. . . .") is admissible as it is a direct response to Ms. Watkins' statement at 2:31 p.m. ("We're on the rear mezzanine . . . ."). Defendants are therefore wrong to suggest that 1%Watchdog's statement is not "next to a communication by Ms. Watkins." Defs.' Mot. at 4. Ms. Watkins had speculated that "there is reports that Antifa was the one who busted out the windows and it was not actual patriots. . . . So, I feel like it's all kind of a set-up really . . ." 1%Watchdog responds and, essentially, tells her to keep going: "All right. Well, whatever. Antifa or whoever, doesn't matter. This shit needs to go down. . . ." This response provides context for Ms. Watkins' later alleged conduct once inside the Capitol building. It also rebuts a possible defense that Ms. Watkins in fact believed Antifa had instigated the breach of the Capitol. The probative value of 1%Watchdog's statement is not substantially outweighed by the danger of unfair prejudice.

3. The court admitted 1% Watchdog's statements at 2:43 p.m. ("That's saying a lot . . .") and Gnomie's statement at 2:43 p.m. ("I hope they understand . . .") as "not hearsay" and for their "effect on the listener." Order, ECF No. 322, at 7. Based on the video evidence, it is more likely than not that Ms. Watkins heard those statements. *See id.* ("Video evidence presented shows Ms. Watkins at 2:44 p.m. pressing the screen on her cellphone and putting it to her ear."). She then spoke at 2:44 p.m. ("We are in the mezzanine. . . ."). Having heard and responded to 1%Watchdog's and Gnomie's statements, they are probative of Ms. Watkins' state of mind, and the risk of unfair prejudice does not substantially outweigh that value. Although the court did not say so explicitly in its Order, 1%Watchdog's statement at 2:42 p.m. ("There's no safe place . . . .") is admissible for the same reason.

Defendants assert that the value of these statements is diminished, and their prejudicial nature increased, because they were not directly responded to nor next to a communication by

Ms. Watkins. Defs.' Mot. at 4–5. But that is not correct. As shown above, Ms. Watkins likely heard and responded to these statements at 2:44 p.m. Also, contrary to Defendants' contention, *see id.* at 7, these statements are not being admitted for the truth of the matter asserted. 1%Watchdog at 2:42 p.m. is not saying, "There's no safe place in the United States . . ." because there is literally no secure place for members of Congress in the country. Similarly, 1%Watchdog's statement at 2:43 p.m.—"That's saying a lot by what he didn't say. He didn't say not to do anything to the Congressman."—is not proof of what the President actually did or did not say. And Gnomie's statement "I hope they understand that we are not joking around" is not being admitted to show that Gnomie and others were not trying to be humorous.

4.   Defendants also argue that context is less important for the Zello chat statements because, unlike text messages, "the statements at issue on this public chat, by analogy, [are] more in kind to Twitter, which also requires a login to comment or like." *Id.* at 5–6. But that is a distinction without a difference in this case. The Zello chat's transcript clearly shows interactive communications between Ms. Watkins and both 1%Watchdog and Gnomie. The communications therefore are like text messages but only in a different electronic medium.

For the foregoing reasons, Defendants' motion for reconsideration is denied.

Date: September 30, 2022

Amit P. Mehta
United States District Court Judge