IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) Criminal No. 1:22-cr-00015-APM |
| v. | ) |
| | ) |
| | ) |
| **KELLY MEGGS,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM IN AID OF SENTENCING**

COMES NOW, Defendant Kelly Meggs, by and through undersigned counsel, and respectfully submits this memorandum in aid of sentencing. For the reasons stated below, Mr. Meggs respectfully requests that the Court sentence him to 28 months of incarceration for each of the offenses for which he has been convicted, to run concurrently, with the application of time served, and a period of supervised release of not more than three years.

**I.    FACTUAL BACKGROUND**

The events of January 6, 2021, are abhorrent. What happened is largely not in dispute and as this Court has had the privilege of overseeing the trials of more than a dozen defendants affiliated with the Oath Keepers, defense counsel will not endeavor to relitigate the facts here and instead will incorporate by reference the Defendants' Motion for Judgment of Acquittal (Dec. 23, 2022) (ECF No. 432). By way of summary, on January 6, 2021, Kelly Meggs attended the "Stop the Steal" rally in the District of Columbia to provide security as a member of the Oath Keepers. In preparation for this security detail, the day before, on January 5, 2021, Mr. Meggs,

his wife, and others affiliated with the Oath Keepers arrived in the District from Florida.[1]  The government disputes that the security detail was legitimate, arguing to the jury in summation that the event the Oath Keepers were going to escort VIPs from the Ellipse to was, "not real," and "was never actually going to happen."  Tr. at 10325:7-14 (Nov. 21, 2022).

Regardless, it is further undisputed that Mr. Meggs, his wife, and others affiliated with the Oath Keepers never reached the stage that had been set up by Stephen Brown for the One Nation Under God event and instead entered the Capitol Building.  Mr. Meggs, his wife, and others affiliated with the Oath Keepers, who were then unable to see what was happening on the East House Portico, ascended the East House Stairs, and ultimately entered – although they were not the first members of the Oath Keepers to enter – the East House Rotunda through doors that had been opened from inside.  Thereafter, Mr. Meggs led a prayer circle, congregated outside the House Speaker Suite,[2] and, after just over twenty (20) minutes, exited the Capitol Building.  Of note, prior to exiting the Capitol Building, Mr. Meggs is observed speaking calmly to police officers and ushering others out of the Building:

---

[1] The Probation Officer's final presentence investigation report falsely alleges that: "[Mr.] Meggs also coordinated with other militia groups and helped gather an arsenal at the Comfort Inn prior to the attack on the U.S. Capitol. [Mr.] Meggs later helped to dispose of guns and gun cases that were used to transport weapons to the Comfort Inn." Final Presentence Investigation Report at 29 (April 27, 2023) (ECF No. 542).  There is no evidence – whether introduced at trial or otherwise – of these allegations.  Mr. Meggs did not coordinate with other militia groups.  Mr. Meggs did not help to dispose of guns or gun cases following the events of January 6, 2021.  Again, in the terabytes of discovery provided by the government, there is no evidence of these allegations and no effort was made to introduce any such evidence at any trial of any Oath Keeper.  And the fact that this discrepancy was highlighted for the Probation Officer and yet nevertheless included in the final report seriously diminishes the credibility of the same.

[2] The government will no doubt again argue that Mr. Meggs, his wife, and those with him congregated outside the Speaker's Suite because they had some nefarious plans as evidenced by Mr. Meggs's unfortunate, but hyperbolic, text messages about Speaker Pelosi.  Mr. Meggs, however, was never charged with any threats to Speaker Pelosi and there is no evidence, whether introduced at trial or otherwise produced in discovery, that Mr. Meggs had any idea he was standing outside the Speaker's Suite entrance that day.  To the contrary, the government stipulated at trial that all signage indicating that the Small House Rotunda was also the entrance to the Speaker's Suite had been removed prior to Mr. Meggs entering the area.



The government alleges, and ultimately a jury has now concluded, that Mr. Meggs, his wife, and others affiliated with the Oath Keepers entered the Capitol on January 6, 2021, in furtherance of their conspiracy to obstruct an official proceeding. Contrary to the government's long-asserted theory, *United States v. Kelly Meggs*, No. 21-MJ-225 (Feb. 11, 2021) (ECF No. 1), the evidence adduced at the trials in these matters shows that any such conspiracy did not begin, "[i]n the days following the 2020 U.S. Presidential Election." Final Presentence Investigation Report at 21 (April 27, 2023) (ECF No. 542). Rather, as the government argued to the jury in summation, any conspiracy formed only at the base of the East Rotunda Steps: "Let me be clear on behalf of the United States of America, *we do not allege a specific plan to storm the United States Capitol*. We never have and we are not now. *We do not have to prove a plan*." Tr. 10296: 5-8 (Nov. 21, 2022) (emphasis added).

After exiting the Capitol, Mr. Meggs, his wife, and others affiliated with the Oath Keepers gathered before departing the Capitol Grounds, with Mr. Meggs and his wife returning

3

to their hotel where they remained for the night. The following morning, Mr. Meggs left Washington, D.C., stopped at the Comfort Inn in Virginia, and drove back to his residence in Florida. Shortly thereafter, Mr. Meggs resigned as leader of the Florida Chapter of the Oath Keepers and deleted the signal messages from his phone affiliated with his membership in the Oath Keepers.[3]

## II.   APPLICATION OF SECTION 3553(A) FACTORS

Section 3553(a) of Title 18 of the United States Code mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals. In imposing a "sentence that is sufficient, but not greater than necessary," the court looks to the statutory factors listed under Section 3553(a). Each factor is addressed in turn.

*1.   Nature and circumstances of the offense.*

The events of January 6, 2021, are abhorrent. Ultimately, Mr. Meggs, and thousands of others will be sentenced for their individual participation in the events that day, for which, cumulatively, *more than a hundred years* of imprisonment have already been imposed. As the evidence in these trials makes clear, no one person is responsible for the events of that day. And nor should Mr. Meggs be held accountable for the actions of thousands of rioters – some of whom, unlike Mr. Meggs, engaged in deplorable violence and caused the destruction of property.

To that end, on January 6, 2021, Mr. Meggs did not engage in any violence, did engage in any physical altercation with any member of any law enforcement agency, and was *acquitted* of the government's charge of destruction of property. What Mr. Meggs *did* do on January 6 was attend the rallies taking place that day while providing security at the same, and eventually after

---

[3] Again, the Probation Officer strains credulity by asserting in the Final Presentence Investigation Report that Mr. Meggs, "[a]dditionally . . . helped to dispose of the guns and the gun cases that were used to transport weapons to the Comfort Inn" and refused to change the draft report's reference to this fact. *See* Final Presentence Investigation Report at 50 (April 27, 2023) (ECF No. 542).

4

hundreds of others had already climbed the East House Capitol Stairs, and after hundreds of others had entered the Capitol, Mr. Meggs also entered the capitol with his wife and others affiliated with the Oath Keepers. After engaging in no violent or otherwise destructive behavior, he and his wife retired for the night, left the District of Columbia the next morning, and upon returning to Florida, he resigned from the Oath Keepers. He was arrested less than two months after the events of January 6, 2021, and has been detained ever since.

      2.      *History and characteristics of the defendant.*

Mr. Meggs is 54 years old and has been happily married to his wife, Connie, for 24 years. Together they have raised two children, their 24-year-old son and Connie's 33-year-old daughter (from a prior marriage). Their daughter has three children, aged one, three, and twelve, and they all reside at the Meggs's residence. Prior to his arrest, Mr. Meggs was the sole financial provider for his family. He was working at a car dealership as a general manager, a position that he has since lost due to his arrest and detention in this case. To make up for this loss of financial support, the Meggs's son found work, the family sold a rental property, and, unbeknownst to Mr. Meggs, launched a fundraiser with GiveSendGo (the proceeds of which were exhausted by legal fees).

Mr. Meggs first became affiliated with the Oath Keepers in June of 2020 based on his desire to help with hurricane relief and community preparedness teams. In his time as a member of the organization, the local Florida chapter of the Oath Keepers also became involved in providing security details during a number of events, most notably including a book signing by Roger Stone and for local businesses in Louisville, Kentucky during the protests surrounding the death of Breonna Taylor. Of note, at no time prior to January 6, 2021, is Mr. Meggs alleged to have engaged in any illegal or otherwise violent behavior affiliated with his membership in the Oath Keepers.

Mr. Meggs is often described by those he knows as a kind, good, hard-working citizen (see Ex 1-4), but of most importance he is known as a family man. Before the events of January 6, Mr. Meggs was the sole provider for his immediate family. He secured a job as the general manager for a car dealership, which required more hours and weekends away from home, but was what it took to provide for his family. He and his family live on a farm in Ocala, Florida, where they keep a small number of livestock, and where his stepdaughter is currently raising his three grandchildren. As is urged in the attached exhibits, without Mr. Meggs as a provider and father figure, the Meggs family is uncertain of what their future holds.

    3.    *Seriousness of the offense, respect for the law, and just punishment.*

The offenses for which Mr. Meggs has now been convicted are serious. But the events of January 6, 2021, do not reflect Mr. Meggs's true character, nor his respect for the law. Mr. Meggs has demonstrated a respect for the law for the entirety of his life. He has not had any previous interactions with the justice system and has never been in any legal trouble before, other than some minor driving infractions. Furthermore, Mr. Meggs has already been detained for 27 months, of which more than a 100 days were served in solitary confinement. As the primary source of financial support for his family, every additional month he remains imprisoned will serve as significant burden on his family. Mr. Meggs has already endured a just punishment in Mr. Meggs case would consist of time served with a term of supervised release.

    4.    *Deterrence to criminal conduct and protection from further crimes.*

As noted above, Mr. Meggs has never been arrested and he has never been in any legal trouble before. In addition, cumulatively more than 100 years of incarceration have now been imposed as against those to have participated in the events of January 6, 2021. The events of January 6, 2021, are unique and unlikely to again occur. But specifically, there is nothing in Mr.

Meggs's history to suggest that he is at risk of again participating in such events or that a lengthy incarceration is necessary to protect society.

     5.     *Need for treatment and training.*

During the past twenty-seven (27) months, Mr. Meggs has not abused alcohol, drugs, or other illegal substances. Prior to his arrest, he has acknowledged his consumption of alcohol and his use of marijuana pursuant to the lawful possession of a Florida medical marijuana card. To that end, Mr. Meggs would welcome any treatment that he is offered during the remainder of his incarceration.

     6.     *Sentences available.*

The first offense of conviction, Seditious Conspiracy, in violation of 18 U.S.C. § 2384, carries a maximum sentence of 20 years of imprisonment and a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b)(3). The second offense of conviction, Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), carries a maximum sentence of 20 years of imprisonment pursuant to 18 U.S.C. 1512(c) and a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b)(3). The third offense of conviction, Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), carries a maximum sentence of 20 years of imprisonment and a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b)(3). The fourth offense of conviction, Conspiracy to Prevent an Officer from Discharging Any Duties, in violation of 18 U.S.C. § 372, carries a maximum sentence of six years of imprisonment and a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b)(3). Finally, the fifth offense of conviction, Tampering with Documents or Proceedings, in violation of 18 U.S.C. § 1512(c)(1), carries a maximum sentence of 20 years of imprisonment and a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b)(3).

Section 2X5.1 of the United States Sentencing Guidelines provides that, "[i]f the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline." However, "[i]f there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control . . . ." Subsection (b)(1) of 18 U.S.C. § 3552 provides that "[i]n the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2)."

As acknowledged by the Probation Officer, Seditious Conspiracy is an offense for which no guideline expressly has been promulgated. However, the most analogous offense would be §2M1.1 (Treason), and this guideline indicates that under §2M1.1(a)(2), if a defendant's conduct was not "tantamount to waging war against the United States," use "the offense level applicable to the most analogous offense." The Probation Officer then recommends USSG §2J1.2 (Obstruction of Justice) as the most analogous offense, for a base offense level of 14.

7. *Need to avoid sentencing disparities.*

The government has created a sentencing chart for individuals that have been convicted and sentenced in relation to the events of January 6. Of those who have been convicted of 18 U.S.C. 1512(c)(2), the longest term of incarceration that has been imposed is 90 months. Notably, this defendant was convicted of assaulting an officer and engaging in physical violence, and so certain enhancements clearly applied to the offense conduct that do not apply here. *See United States v. McCaughey*, 21-CR-00040-TNM (D.D.C. 2022). However, defendants convicted of 1512(c)(2) most commonly have been sentenced to a term of incarceration between 21 and 48 months. Here, the Probation Officer has recommended a sentence of between 135 months to 168 months in reliance upon the application of certain enhancements that have been misapplied. Ultimately, a term of incarceration even at the lowest range recommended (135

8

months or 11 years and 3 months) would result in severe disparity of treatment as against Mr. Meggs as compared to other individuals who have been convicted of similar conduct.

    8.    *Need to provide restitution.*

Mr. Meggs agrees to voluntarily pay the restitution recommended by the Probation Officer, or $2,000.00

### III. STATUTORY AND GUIDELINE ANALYSIS

Section 3553(a)(4) of Title 18 requires a sentencing judge to refer to the "kinds of sentence and sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ." However, section (b) provides that "the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." At the outset, it bears noting that the application of either the Seditious Conspiracy or Interference with an Official Proceeding Statutes to the events of January 6, 2021, has, and will continue to be, heavily litigated. *See United States v. Fischer*, 64 F.4th 329, 45-68 (D.C. Cir. 2023) (Walker, J., concurring) (reversing trial court's dismissal of 18 U.S.C. § 1512(c)(2), but leaving open the question of whether the government is required to prove that a defendant acted with the "corrupt" intent to, "procure an unlawful benefit either for himself or for some other person"). It is beyond dispute that when Congress enacted § 1512(c)(2), it did not comprehend the possibility of the events of January 6, 2021. No one did.

Whether seditious conspiracy or § 1512(c)(2) were the proper statutory offenses with which to charge these defendants is not now the question before the Court. Rather, the question is, given that it is the statutory offense chosen by the government, may the government avail

9

itself of the enhancements applicable to traditional "Obstruction of Justice" offenses.  This Court should not indulge the government's attempt to shoehorn these statutory offenses into Guidelines with significant enhancements the Sentencing Commission never contemplated applying to the events of January 6, 2021.  The Court can end its analysis where the Probation Officer and the government begin – by concluding that a base offense level of 14 applies, and that, absent any downward departure for good time and/or acceptance of responsibility, a sentence of between fifteen (15) and twenty-one (21) months is appropriate.

1. *Section 2J1.2(b)(1)(B) Does Not Apply.*

The Probation Officer recommends a eight (8) level enhancement pursuant to § 2J1.2(b)(1)(B), which calls for such an enhancement where: "[T]he offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice."  Taking the conditions in reverse order, although the government charged Mr. Meggs with destruction of government property, 18 U.S.C. § 1361, he was acquitted of that count.  Moreover, as the commentary[4] to § 2J1.2 makes clear:  "The inclusion of 'property damage' under subsection (b)(1)(B) is designed to address cases in which property damage is caused or threatened as a means of intimidation or retaliation (e.g., to intimidate a witness from, or retaliate against a witness for, testifying)."  Similarly, Mr. Meggs is not alleged to have injured anyone on January 6, 2021.

Thus, for this enhancement to apply, Mr. Meggs must have, "threaten[ed] to cause physical injury to a person."  Pursuant to § 1B1.3, the Probation Officer suggests the "relevant conduct" for which Mr. Meggs should be held accountable include the actions of, "the . . . mob

---

[4] In *Stinson v. United States*, the Supreme Court held that the commentary should "be treated as an agency's interpretation of its own legislative rule."  508 U.S. 36, 44-45 (1993).  Furthermore, the Court explained that commentary which "interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Id.* at 38.

10

of rioters" that day.  Final Presentence Investigation Report at 50 (April 27, 2023) (ECF No. 542).  Because those who participated in the riot, *inter alia*, "chanted threatening and intimidating words regarding those Members of Congress who were supposed to be inside the Capitol building performing their constitutional duties to meet and certify the election results," the Probation Officer submits, Mr. Meggs "threaten[ed] to cause physical injury to a person."

Were the Court to adopt this interpretation, any defendant convicted of § 1512(c)(2) would automatically qualify for the eight (8) level enhancement and be subjected to an effective base offense level of twenty-two (22), with a minimum recommended imprisonment of 41-51 months.  Again, this Court should not indulge the government's attempt to shoehorn these statutory offenses into Guidelines with significant enhancements the Sentencing Commission never contemplated applying to the events of January 6, 2021.  Thus, the only conduct for which Mr. Meggs should be held responsible is the conduct for which the jury found him responsible and not for the thousands of rioters who convened on January 6, 2021.

With respect to Mr. Meggs's conduct, a plain reading of the Guideline confirms that its intent is not to apply to, "threatening to cause physical injury to [*any*] person."  Rather, the Guideline is clearly intended to apply *only* to those persons who serve also as participants in the administration of justice, such as witnesses or judicial officers.  As the commentary to § 2J1.2 makes clear, reference to "property damage" was added to subsection (b)(1)(B) to include cases where, for example, a witness's property is destroyed, or threatened to be destroyed, for the purpose of intimidation.  Consider, for example, the 1991 Amendment to the Guideline which, "clarifies the types of circumstances to which §§ 2J1.2(b)(1) and 2J1.2(c)(1) apply" and for which each of the amendments clearly apply to participants in the proceeding.  As the government has acknowledged, neither Mr. Meggs nor any of his codefendants had a plan to stop

11

the certification of the electoral college, let alone threaten its participants. "Let me be clear on behalf of the United States of America, *we do not allege a specific plan to storm the United States Capitol*. We never have and we are not now. *We do not have to prove a plan*." Tr. 10296: 5-8 (Nov. 21, 2022) (emphasis added). Rather, the only person the government could conceivably argue Mr. Meggs threatened was Speaker Pelosi. Mr. Meggs's hyperbolic text message to his wife, however, was not in fact threatening to her insofar as it was a private communication not disseminated for public consumption.

Finally, even were the Court to conclude that the offenses for which Mr. Meggs was convicted, "involved . . . threatening to cause physical injury to a person . . . in order to obstruct the administration of justice," because the certification of the electoral college vote is not "the administration of justice," this enhancement may not be applied.

The "administration of justice" is in fact a legal term of art, so much so that it is defined within *Black's Law Dictionary*: "The maintenance of right within a political community by means of the physical force of the state" and "the state's application of the sanction of force to the rule of right." Administration of Justice, Black's Law Dictionary (11th ed. 2019), *quoted in United States v. Seefried*, 2022 U.S. Dist. LEXIS 196980, at *5 (D.D.C. Oct. 29, 2022). Similarly, "due administration of justice" is defined as "[t]he proper functioning and integrity of a court or other tribunal and the proceedings before it in accordance with the rights guaranteed to the parties." *Id*. Therefore, a plain reading of § 2J1.2(b)(1)(B) suggests that the enhancement applies only where the obstruction of a judicial or quasi-judicial tribunal has occurred.[5]

---

[5] Similarly, the District of Columbia Court of Appeals has previously held that "[t]he phrase 'due administration of justice' is used primarily, if not exclusively, to describe the proper functioning and integrity of a court or hearing." *Wynn v. United States*, 48 A.3d 181, 191 (D.C. 2012).

As the Court is aware, this was the conclusion reached by Judge McFadden in this District when the issue was similarly presented at sentencing. *See Seefried*, 2022 U.S. Dist. LEXIS 196980, at *31-32 ("If the Sentencing Commission had foreseen the Capitol breach, it may well have included 'official proceeding' in the text of § 2J1.2. But the Commission did not. Given that the Court should interpret the Guidelines using traditional tools of statutory interpretation, this Court declines to rewrite § 2J1.2 to say what it does not. If the Commission wishes to expand the text of the Guideline to include official proceedings such as the electoral certification, 'it may seek to amend the language of the guidelines by submitting the change for congressional review.'" (*quoting United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018)).

Rather than reiterate the basis for Judge McFadden's finding that § 2J1.2(b)(1)(B)'s eight-level enhancement does not apply to convictions arising from the events of January 6, 2021, Mr. Meggs respectfully requests that rationale be incorporated herein by reference. Instead, Mr. Meggs addresses the points articulated by this Court in declining to adopt Judge McFadden's rationale. *See* Tr. at 35-39 (Nov. 28, 2022), *United States v. Wood*, No. 21-cr-223 (Jan. 20, 2023) (ECF No. 64).

First, the Court observed, Judge McFadden's focus on the definition of the legal term "administration of justice" ignores the fact that "obstructing the administration of justice" has its own entry, which refers to "perverting the administration of justice." That phrase, in turn, is defined as: "The skewing of legal proceedings, as by fabricating or destroying evidence, witness-tampering, or threatening or intimidating a judge." Black's Law Dictionary (11th ed. 2019). Yet here too, the plain definition of the term of art referenced by the Court is limited to a legal proceeding – a judicial or quasi-judicial proceeding. In its reasoning, however, the Court

13

articulated that such a narrow definition of the phrase ought not be adopted given that § 2J1.2 is titled, "Obstruction of Justice" and encompasses guidelines for offenses pursuant to, for example, § 1001, which do not involve the interference of an official proceeding. Tr. at 36 (Nov. 28, 2022), *United States v. Wood*, No. 21-cr-223 (Jan. 20, 2023) (ECF No. 64).

With respect, simply because some of § 2J1.2's enhancements may be limited to offenses involving judicial or quasi-judicial proceedings does not mean all of § 2J1.2 is so-limited.[6] As the Court notes, its reference to § 1001 offenses means that it clearly is not. Indeed, the Background to § 2J1.2 provides:

> This section addresses offenses involving the obstruction of justice generally prosecuted under the above-referenced statutory provisions. Numerous offenses of varying seriousness may constitute obstruction of justice: using threats or force to intimidate or influence a juror or federal officer; obstructing a civil or administrative proceeding; stealing or altering court records; unlawfully intercepting grand jury deliberations; obstructing a criminal investigation; obstructing a state or local investigation of illegal gambling; using intimidation or force to influence testimony, alter evidence, evade legal process, or obstruct the communication of a judge or law enforcement officer; or causing a witness bodily injury or property damage in retaliation for providing testimony, information or evidence in a federal proceeding. The conduct that gives rise to the violation may, therefore, range from a mere threat to an act of extreme violence.

Specifically, there are five potential enhancements under § 2J1.2, only two of which reference the "administration of justice." Thus concluding that the "administration of justice" involves a judicial or quasi-judicial proceeding would not impact application of the majority of enhancements available under the Guideline. Moreover, several of the enhancements have their own unique conditions – both §§ 2J1.2(b)(1)(A) and (C) require convictions under §§ 1001 or

---

[6] Judge McFadden conducted an exhaustive review of the legal usage of the phrase and concluded: "[T]here is essentially no evidence that either judges, lawyers, or speakers more generally used the term 'administration of justice' to refer to legislative proceedings like the certification of the electoral count. Instead, both professional and lay speakers overwhelmingly used this term to reference judicial proceedings or activities closely related to them." *Seefried*, 2022 U.S. Dist. LEXIS 196980, at *20.

14

1505. Indeed, this Court has already acknowledged Congress's ability to employ specifically limiting language with respect to § 1505: "Section 1505 thus prohibits obstructive acts directed at a particular type of congressional proceeding: those involving the 'power of inquiry.'" Mem. Op. at 10, *United States v. Caldwell*, No. 21-cr-28 (Dec. 20, 2021) (ECF No. 558). Congress did so with respect to § 2J1.2 as well.

    2.    *Section 2J1.2(b)(2) Does Not Apply*

Nor does the three (3) level enhancement pursuant to § 2J1.2(b)(2) apply insofar as the certification of the electoral college is not a proceeding the interference of which constitutes the interference with the administration of justice.

    3.    *Section 2J1.2(b)(3) Does Not Apply*

The Probation Officer recommends a two-level enhancement pursuant to § 2J1.2(b)(3) because the offenses with which Mr. Meggs has been convicted were, "otherwise extensive in scope, planning, or preparation." Final Presentence Investigation Report at 33 (April 27, 2023) (ECF No. 542). The government has conceded, however, that the conduct with which Mr. Meggs was ultimately convicted – entering the Capitol Building – was not something Mr. Meggs or his coconspirators had planned in advance. "Let me be clear on behalf of the United States of America, *we do not allege a specific plan to storm the United States Capitol*. We never have and we are not now. *We do not have to prove a plan*." Tr. 10296: 5-8 (Nov. 21, 2022) (emphasis added). Indeed, as early as March 10, 2021, government counsel advised defense counsel that, "[w]e are disclosing these [Signal] messages to you because you will see that, prior to January 6, 2021, this chat does not contain any explicit references to a plan to forcibly enter the U.S. Capitol on January 6, 2021."

4.  *Section 3B1.1(a) Does Not Apply.*

Mr. Meggs further argues that his role in the offense, as calculated by §3B1.1, only amounted to that of an "organizer, leader, manager, or supervisor" under subsection (c) and that he was not "an organizer or leader" nor "a manager or supervisor" of a "criminal activity [that] involved five or more participants or was otherwise extensive" as defined by subsections (a) and (b). While it is true that Mr. Meggs was the leader of the Florida chapter of the Oath Keepers for approximately one month – including on January 6, 2021 – the Oath Keepers as an organization was not on trial. For this reason, Mr. Meggs should not receive an enhancement solely because he held a leadership role within the Oath Keepers.

Nor does the fact that Mr. Meggs was at the head of the line of individuals affiliated with the Oath Keepers that ascended the East House Stairs warrant application of this enhancement. When Mr. Meggs began his ascent, multiple Oath Keepers were already at or about the East House Portico. And after he completed his ascent, Mr. Meggs was not the first Oath Keeper to enter the Capitol.

5.  *Section 3C1.1 Does Not Apply*

§ 3C1.1 of the Guidelines provides: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct . . . increase the offense level by 2 levels." Mr. Meggs acknowledges that he has been convicted of Tampering with Documents or Proceedings. However, Mr. Meggs did not dispose of any weapons or weapons cases and no evidence to support this allegation. To grant an increase based on this unfounded allegation would therefore be clearly erroneous. Furthermore, Mr. Meggs contends that he did

not intend to obstruct the administration of justice when he removed messages from his device – he deleted his Oath Keepers signal messages when he resigned from the organization.

      6.      *Section 3E1.1 Does Apply*

Although the Probation Officer submits that § 3E1.1 does not apply insofar as Mr. Meggs proceeded to trial, Mr. Meggs never received any plea offer in this case and therefore never had the opportunity to "accept" a plea prior to trial.  Absent any plea offer from the government, all Mr. Meggs did was exercise his constitutional right to trial in this case and held the government to its burden of proof.  In doing so, Mr. Meggs challenged the facts that the government was alleging against himself and his codefendants, and he required the government to prove its case, not to burden the justice system, but to require the government to prove that the charges against him were legally sufficient.  Indeed, as a result of trial, the jury did not find that the government had met its burden for every count brought against Mr. Meggs.  Furthermore, following the events of January 6, Mr. Meggs voluntarily resigned from his position within the Oath Keepers and did not wish to take part in any further discussion that were being held.  Mr. Meggs undoubtedly accepts responsibility for his actions and has spent every day while detained regretting any involvement he had with the Oath Keepers and the events of January 6.  Thus, pursuant to section 3E1.1 of the Guidelines, Mr. Meggs should receive a decrease of 2 levels.

## CONCLUSION

For the foregoing reasons, Mr. Meggs respectfully request this Court adopt an offense level of 14 and sentence Mr. Meggs to not more than twenty-eight (28) months of imprisonment, after taking into consideration the fact that his pretrial detention will not qualify as "good time" – roughly four (4) additional months – and the fact that Mr. Meggs was detained for more than 100 days in solitary confinement.

**[SIGNATURE ON NEXT PAGE]**

Dated: May 5, 2023                                Respectfully submitted,

                                                       */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Kelly Meggs*

18

**Certificate of Electronic Service**

I hereby certify that on May 5, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Kelly Meggs*