IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) Criminal No. 1:22-cr-00015-APM |
| | ) |
| **KELLY MEGGS,** | ) |
| | ) |
| **Defendant.** | ) |

## REPLY IN SUPPORT OF MEMORANDUM IN AID OF SENTENCING

Mr. Meggs *is* unlike any of the hundreds of others who have been sentenced for their roles in attack on the Capitol. *See* Sentencing Memo., at 2 (May 5, 2023) (ECF No. 565). To whit, the jury rejected the government's theory that Mr. Meggs joined a conspiracy with the goal, "[t]o use force to prevent, hinder, or delay the execution of any law of the United States." Verdict Form (Nov. 29, 2022) (ECF No. 410). These words, chosen by the government to describe one of two goals of the conspiracy it alleged Defendant Kelly Meggs had joined on January 6, 2021, referred to the "law" requiring the certification of the electoral college on January 6, 2021, and the inauguration of President Biden on January 20, 2021 (as referenced in the jury instructions, these laws included Article II, the Twelfth Amendment, the Twentieth Amendment, and Title 3, Section 15 of the United States Code). Final Jury Instructions, at 24-25 (Nov. 21, 2022) (ECF No. 400). As the Court admonished: "An agreement to merely violate the law is not sufficient."

For its part, the government has long sought the prosecution of the Oath Keepers. Without the benefit of a single message exchanged by Stewart Rhodes or the other members of the Oath Keepers, just weeks after the events of January 6, 2021, the government described the

group as, "a large but loosely-organized collection of militia that believe the federal government has been coopted by a shadowy conspiracy that is trying to strip American citizens of their rights." Complaint, at 6, No. 21-mj-225 (Feb. 11, 2021) (ECF No. 1-1). This characterization persisted in the operative indictment in this case over a year later. Superseding Indictment, at 3 (June 22, 2022) (ECF No. 167). And ultimately, Mr. Meggs was convicted of a conspiracy with the goal, "[t]o oppose by force the authority of the Government of the United States." Just not the certification of the electoral college.

Indeed, despite years of investigation, the trial of Mr. Meggs involved not one single message concerning any plan by Mr. Meggs or the Oath Keepers to attack, let alone to enter, the United States Capitol Building on January 6, 2021. Indeed, the only way to rationalize the jury's conviction of Mr. Meggs for conspiracy to obstruct an official proceeding (pursuant to 18 U.S.C. § 1512(c)(2)), *but not* of a conspiracy with a goal *to use force* to prevent the certification is the recognition that while Mr. Meggs should not have entered the Capitol Building on January 6, 2021, he did so peacefully.[1] *Yes*, Mr. Meggs *is* unlike any of the hundreds of others who have been sentenced for their roles in the *attack* on the Capitol.

I. TERRORISM ENHANCEMENT

This Court has previously rejected the government's attempt to enhance the sentence of a defendant convicted of 18 U.S.C. § 1512(c)(2). [insert cite]. So has every other judge in this District asked to apply the enhancement. [insert cite]. §3A1.4 of the Sentencing Guidelines provides, as a victim-related adjustment, that, "[i]f the offense is a felony, involved, or was

---

[1] In voting to convict the wife of Mr. Meggs, Connie Meggs, of conspiracy to obstruct an official proceeding, one juror remarked after the fact that she believed the crime had been completed once Mrs. Meggs entered the Capitol. *See* Booknotes+ Ep. 107 Oath Keepers Juror, C-SPAN (March 28, 2023), *available at* https://www.c-span.org/podcasts/subpage/?series=booknotesplus&episode=fb743362-ca5e-11ed-a2c8-2f217f9b0291 (last visited May 15 2023).

intended to promote, a federal crime of terrorism," a twelve-level enhancement shall be applied. The government concedes that the crimes with which Mr. Meggs has been convicted do not include a "federal crime of terrorism." *See* 18 U.S.C. § 2332b(g)(5). Rather, under Note 4 of the enhancement, the government relies on the suggestion that, in cases where, "the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," an upward departure from the guidelines is warranted. The government then arbitrarily suggests an enhancement of four (4) levels – arbitrary insofar as the guideline itself provides for a twelve-level enhancement. Why such a suggestion given that the government's own sentencing recommendation already calls for an offense level of thirty-three (33)? The only rationale for the same is the media attention the government anticipates from such a departure – one made based on a finding that Mr. Meggs's conduct is akin to a "federal crime of terrorism."

For §3A1.4 Note 4(A) to apply, a defendant's offense must be "calculated." Citing *United States v. Mohammed*, 693 F.3d 192, 201 (D.C. Cir. 2012) (convicted of narcoterrorism for, *inter alia*, for his role in a plan to attack the Jalalabad airfield, a strategic NATO airbase in eastern Afghanistan), and *United States v. Khatallah*, 314 F. Supp. 3d 179, 199 (D.D.C. 2018) (convicted for his role in the attack on the American diplomatic mission in Benghazi, Libya where U.S. Ambassador J. Christopher Stevens and three other Americans were killed), the government contends an offense is "calculated," "if the offense was specifically intended to have the effect of influencing, affecting, or retaliating against the government by force or threat of force." Govt. Sentencing Memo., at 57 (May 5, 2023) (ECF No. 565). The government's definition thus conveniently closely tracks its own recitation of its first purported goal of its alleged seditious conspiracy: "To oppose by force the authority of the Government of the United

3

States." Verdict Form (Nov. 29, 2022) (ECF No. 410). However, neither *Mohammed*, *Khatallah*, or any other case cited by the government provide such a definition for §3A1.4's reference to "calculated."

Black's Law Dictionary defines "calculated" as, "Undertaken after close consideration of the probable outcome <calculated risks>" or, "Planned so as to achieve a specific purpose; deliberate <a calculated move to replenish the fund>." CALCULATED, Black's Law Dictionary (11th ed. 2019). The government conveniently avoids these straightforward definitions because they contradict the evidence proven at trial. To quote the government: "Let me be clear on behalf of the United States of America, *we do not allege a specific plan to storm the United States Capitol*. We never have and we are not now. *We do not have to prove a plan*." Tr. 10296: 5-8 (Nov. 21, 2022) (emphasis added). Mr. Meggs's conduct on January 6, 2021, was not "calculated" and therefore §3A1.4 does not "warrant" any departure from the sentencing guidelines applicable to Mr. Meggs.

Also problematic for the government is the fact that the departure they recommend pursuant to §3A1.4 would increase Mr. Meggs's sentence beyond the statutory maximum for all of the offenses with which he was convicted, including both seditious conspiracy and § 1512(c)(2), which carry statutorily maximum sentences of twenty (20) years of imprisonment. The Fourteenth Amendment to the Constitution prescribes any deprivation of liberty, "without due process of law," as well as the guarantee that, "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." "[T]ogether, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi v. New Jersey*, 530 U.S. 466, 476-477 (2000) (quoting *United States v. Gaudini*, 515 U.S. 506, 510

4

(1995)). The jury here was not asked to find, let alone find beyond a reasonable doubt, that Mr. Meggs's was "calculated" in his efforts on January 6, 2021. *See United States v. Booker*, 543 U.S. 220, 243-244 (2005) ("We recognize . . . that in some cases jury factfinding may impair the most expedient and efficient sentencing of defendants. But the interests in fairness and reliability protected by the right to a jury trial--a common law right that defendants enjoyed for centuries and that is now enshrined in the Sixth Amendment--has always outweighed the interest in concluding trials swiftly."). Indeed, the jury's finding belays any such argument – the jury did not convict Mr. Meggs of a conspiracy with the goal: "[t]o use force to prevent, hinder, or delay the execution of any law of the United States." And the government has not alleged any other specific goal that Mr. Meggs was "calculated" to effect. This assertion is contrary to longstanding precedent: "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The government did not ask the jury in this case to conclude that Mr. Meggs had engaged in terrorist acts. It did not, because it could not. *See id.* at 482-483 ("The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.").

II. **THE DUE ADMINISTRATION OF JUSTICE**

18 U.S.C. § 1503 provides, in relevant part, that, "[w]hoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, *the due administration of justice*, shall be punished

[by] imprisonment for not more than 10 years, a fine under this title, or both." Thus, Congress was well aware, and in fact did proscribe, interference with the administration of justice. The "due administration of justice" "catchall" provision of § 1503 requires proof beyond a reasonable doubt of, "an intent to influence judicial or grand jury proceedings." *United States v. Aguilar*, 515 U.S. 593, 599 (1995). Indeed, this Court has already acknowledged Congress's ability to employ specifically limiting language with respect to a sister section - § 1505: "Section 1505 thus prohibits obstructive acts directed at a particular type of congressional proceeding: those involving the 'power of inquiry.'" Mem. Op. at 10, *United States v. Caldwell*, No. 21-cr-28 (Dec. 20, 2021) (ECF No. 558). Congress did so with respect to § 2J1.2 as well. The phrase "administration of justice" cannot reasonably be defined differently when an element of a criminal offense and when applied as the basis for a potential enhancement to a criminal offense.

To hold otherwise, would take an offense with a base level offense of fourteen (14) and ratchet it up by more than 50% to twenty-five (25). In fact, interference with congressional proceedings, such as the certification of the electoral college, was never contemplated as the, "due administration of justice." That is because, congressional proceedings necessarily do not involve the administration of justice: "[I]f Congress exercised the judicial power, it would be impossible 'to guard the Constitution and the rights of individuals from . . . serious oppressions.'" *Patchak v. Zinke*, 138 S. Ct. 897, 922 (2018) (Roberts, C.J., dissenting) (quoting The Federalist No. 78, at 469 (A. Hamilton)).

Similarly, more than one-hundred-fifty years ago, the Supreme Court recognized that congressional proceedings lack the judicial powers requisite of the administration of justice: "It is unquestionable that the Constitution has invested in Congress with no judicial powers; it cannot be doubted that a legislative direction to a court to find a judgment in a certain way would

6

be little less than a judgment rendered directly by Congress." *Nock v. United States*, 2 Ct. Cl. 451 (1867), quoted in *United States v. Sioux Nation of Indians*, 448 U.S. 371, 398 (1980). *See also Plaut v. Spendthrift Farm*, 1 F.3d 1487, 1492-93 (6th Cir. 1993) ("It is a principle important to freedom, that in government, the judicial should be distinct from, and independent of, the legislative department. . . . [The people] have placed their judicial power not in Congress, but in 'courts.'" (quoting Hayburn's Case, 2 U.S. (2 Dall.) 409 (1792)).

As Judge McFadden concluded, the certification of the electoral college vote is, "largely a ceremonial proceeding where Members and staff open, read, list, and announce electoral votes. It takes place within the deliberative branch of government—Congress—note the branches that typically exercise judgment (the judiciary) or force (the Executive). Memo. Op., at 5, No. 21-cr-619 (Dec. 29, 2022) (ECF No. 77-5).

## CONCLUSION

For the foregoing reasons, Mr. Meggs respectfully request this Court adopt an offense level of 14 and sentence Mr. Meggs to not more than twenty-eight (28) months of imprisomment.

**[SIGNATURE ON NEXT PAGE]**

Dated: May 15, 2023  Respectfully submitted,

                                                 */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Kelly Meggs*

## **Certificate of Electronic Service**

I hereby certify that on May 15, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

> Respectfully submitted,
>
> _/s/ Stanley E. Woodward, Jr._
> Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
> BRAND WOODWARD LAW, LP
> 1808 Park Road NW
> Washington, DC  20010
> 202-996-7447 (telephone)
> 202-996-0113 (facsimile)
> Stanley@BrandWoodwardLaw.com
>
> *Counsel for Defendant Kelly Meggs*