IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES                                *

vs.                                          *   Case No.: 22-15 APM

THOMAS E. CALDWELL                           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### CALDWELL'S SUPPLEMENTAL AUTHORITY REGARDING MOTION FOR JUDGMENT OF ACQUITTAL

On May 22, 2023 the Court held oral arguments regarding Caldwell's pending motion for judgment of acquittal. At the conclusion of the hearing, the Court invited the parties to submit any supplemental authority pertinent to the limited issues argued before the Court, which Caldwell has done *infra*.

**I.    Caldwell's Alleged "Corrupt Intent"**

*A.  Having an "improper purpose" is not the standard to establish a corrupt intent.*

The government's argument that Caldwell's alleged "improper purpose" on January 6 ("J6") suffices to satisfy the "corruptly" element in 18 U.S.C. § 1512(c)(2) is incorrect. First, courts that have approved an "improper purpose" standard define that term as requiring, *inter alia*, that the defendant acted "dishonestly." *See, e.g., United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (noting that a "corrupt" action is done "with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct the [official proceeding].") (internal citation omitted); *United States v. Gordon*, 710 F.3d

1

1124, 1151 (10th Cir. 2013) (internal citations omitted) (following *Friske* in finding that "corruptly" as used in § 1512(c)(2) means acting with an "improper purpose and to engage in conduct knowingly and dishonestly[.]"); *United States v. Kay*, 513 F.3d 432, 454 (5th Cir. 2007) (same).

In fact, one overlooked—but important--portion of the Supreme Court's *Arthur Andersen* decision was its finding that the trial court's removal of the word "dishonestly" from the Fifth Circuit's pattern jury instruction, which defined "corruptly" as acting with an "improper purpose," *was itself reversible error*. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706-07 (2005) ("Th[is] change[] [was] significant. No longer was any type of 'dishonest[y]' necessary to a finding of guilt[.]").[1] In short, pursuant to *Andersen*, to prove an "improper purpose," i.e., a "corrupt" intent under § 1512(b), the government must prove that the defendant also acted "dishonestly." Accordingly, if the Court agrees that an "improper purpose" standard applies in the instant case, the government's case was insufficient as it failed to prove that Caldwell acted "dishonestly" on J6.

B. *The "improper purpose" standard is inappropriate in physical obstruction cases*.

The "improper purpose" standard, respectfully, does not apply to the instant case, which is based upon an allegation of physical, coercive obstruction. The gist of the government's case is that Caldwell and others deliberately shut down the Electoral College certification on J6 by

---

[1] The trial court instructed the *Arthur Andersen* jury as follows:

> To "persuade" is to engage in any non-coercive attempt to induce another person to engage in certain conduct. The word "corruptly" means having an improper purpose. An improper purpose, <u>for this case</u>, is an intent to subvert, undermine, or impede the fact-finding ability of an official proceeding.

*United States. v. Andersen*, 374 F.3d 281, 293 (5th Cir. 2004), *rev'd by, Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005).

2

causing members of Congress to flee Capitol Hill.  Notably, the Jury Instruction as to Count 3 (substantive obstruction) advised the Jury that it could convict Caldwell if it found that he corruptly "obstructed" or "impeded" the certification, *but left out* the allegation that Caldwell corruptly "influenced" the proceeding.  (ECF No. 400 at 26).  Unlike "obstruct" and "impede," to "influence"—or, as used in § 1503, to "persuade"—is a purely *non-coercive*, ubiquitous occurrence that is only "corrupt" if done by bribery, fraud, or similar acts of "dishonesty."  It makes no sense, however, to apply an improper purpose/dishonest standard in a physical obstruction case.  In short, physically obstructing or impeding a proceeding is, by definition, "corrupt" when it is accomplished, not by dishonesty, but rather by a separate, felonious physical act of obstruction or impedance.  *Cf.  United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) ("Under all those formulations, "corrupt" intent exists at least when an obstructive action is independently unlawful[.]").

II.     **Caldwell did not trespass on Capitol grounds**

    A.  *Caldwell did not enter the Capitol grounds illegally.*

At the Rule 29 hearing, the Court raised the issue of whether there was sufficient evidence to support a violation of 18 U.S.C. § 1752 by Caldwell based upon the general atmosphere at the Capitol and Caldwell's statements.  (Tr., 66-67).  While cases involving § 1752 are scant, the consensus among federal appellate courts is that to violate a federal trespassing statute, one must have actual notice that his entry onto restricted grounds is illegal. *See United States v. Madrigal-Valadez*, 561 F.3d 370, 375-76 (4th Cir. 2009) (Agreeing "with our sister circuits that a person cannot be convicted . . . unless . . . provided with notice that entry is prohibited or restricted. Because there was no sign posted at the entry. . . Madrigal did not have notice that he could not enter Fort Lee[.]"); *United States v. Bonilla*, 648 F.2d 1373, 1278-

79 (1st Cir. 1981) ("[A] trespasser . . . who is without notice or knowledge that the [military] reservation has been closed to the public, violates section 1382 only if he reenters after first being warned off. . .[.]  When appellants [entered] they were not confronted by a fence or other visible boundary marking from which to infer the Navy's closing of the installation to outsiders.")  The *Bonilla* Court emphasized that no "signs [were] posted to warn appellants that entry onto the beach was prohibited . . . and there was no evidence that [military police] warned appellants to leave the beach prior to making the arrests." *Id*.

Caldwell's position, accordingly, is that had he been charged with violating 18 U.S.C. § 1752(a)(1), the government's case was insufficient vis-à-vis the actual notice requirement.  The government's evidence showed that Caldwell and his wife walked (slowly) from the Ellipse to Peace Fountain Circle.  Video evidence introduced in the government's case proved that barriers and signs positioned at Caldwell's entry point onto the Capitol grounds had been removed 17 minutes prior to his arrival. *See* Caldwell Ex. 80 (video of Peace Fountain walkway).  Video evidence also showed that, upon Caldwell's arrival to Peace Fountain Circle, thousands of protestors were milling about on the Capitol grounds. *Id*.  Captain Ortega testified that the Capitol grounds are typically open to the public. (Tr., 4029).  Without actual or posted notice that grounds open to the public 99% of the time were off-limits on J6, the government adduced insufficient evidence that Caldwell's *entry* onto Capitol grounds violated § 1752(a)(1).

B.  *Caldwell did not violate § 1752(a)(1) by "remaining" on Capitol grounds*.

Additionally, Caldwell did not violate § 1752(a)(1) by "remaining" on the Capitol grounds without authority.  Respectfully, Caldwell disagrees with the Court's surmise that he was on notice that his presence near the Capitol was unauthorized based upon crowd control measures taken by law enforcement.  Law enforcement commonly uses tear gas and other

4

measures to disburse protests that get out of hand, even when the protestors have an absolute right to be at a particular location. The government adduced no testimony that either Caldwell or the crowd in general on the west side were told to leave the Capitol grounds. This lack of warning distinguishes Caldwell from other protestors, as video evidence in the government's case showed Caldwell responsibly encouraging his wife ("let's go, let's go") to leave the Inaugural balcony, which they did just a few minutes after arriving.

      C. *The government offered no proof that Caldwell's presence was unauthorized*.

The government offered *no specific testimony* in its case-in-chief that Caldwell himself was "unauthorized" to be on Capitol grounds. The government must prove "every element of the crime with which [the defendant] is charged" beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 522 (1995). Section 1752(a)(1) requires proof that an entry or remaining in a restricted area was "without lawful authority to do so." The D.C. Circuit has implicitly held that lack of lawful authority is an essential element of § 1752. *See United States v. Jabr*, 4 F.4th 97, 105 (D.C. Cir. 2021) (finding sufficient evidence in a § 1752 prosecution that defendant lacked "lawful authority" to be on White House grounds as defendant scaled fences, ran with her head down upon seeing a police car, and acknowledged that she knew that "nobody was supposed to go up there.").

When asked who could enter the Capitol *grounds* on January 6, Captain Ortega testified: "Only authorized individuals, which would *include* members of the United States Capitol Police, staffers, [and] members of Congress." (Tr., 3934) (emphasis added). "Include" means part of a whole, i.e., a non-exhaustive list. MERRIAM WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/include ("to take in or comprise as a part of a whole group."); CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/include

5

(defining "include" to mean "to contain something as a part of something else."). Respectfully, the Court's analysis is constrained by the record regarding issues such as whether Caldwell's presence on Capitol grounds was "unauthorized." *See Bonilla*, 648 F.2d at 1382-83 ("[W]hatever the propriety of taking judicial notice of newspaper articles and the like for purposes of demonstrating a critical element of the government's case, this was not actually attempted here. The parties never moved that the court notice particular newspaper articles, nor did the court inform the parties that it intended to take such notice on its own motion."). Accordingly, Caldwell's alleged trespassing cannot be the independent crime necessary to prove that he acted "corruptly" under § 1512(c)(2).

> *D. Caldwell was tacitly acquitted of "aiding and abetting a conspiracy."*

The government's argument that Caldwell's "corrupt," independent criminal act as to Count Three could have been "aiding and abetting the conspiracy" is without merit. Aiding and abetting is not a separate crime but, rather, an alternative charge available to the government in every substantive count. *See United States v. McKnight*, 799 F.2d 443, 445 (8th Cir. 1986) (observing that 18 U.S.C. § 2 "does not create a separate offense, it simply makes those who aid and abet in a crime punishable as principals."); *United States v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980) (noting that "18 U.S.C. § 2 does not define a crime" but, rather, "is an alternative charge in every count, whether explicit or implicit[.]"); *United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir. 1984) (noting that aiding and abetting is not a "separate offense"). Accordingly, as Caldwell was acquitted of all conspiracy counts, he was contemporaneously acquitted of aiding and abetting those same conspiracies. Finally, aiding and abetting itself is not an independent crime but, rather, a theory of accomplice liability vis-a-vis a substantive crime.

E. *Aiding and abetting a conspiracy is not a cognizable crime*.

There is a split of authority as to whether it is *possible* to aid and abet a conspiracy. The cases cited *supra* determined that such a theory is viable. However, other courts have ruled that aiding and abetting a conspiracy is not a cognizable crime. *See United States v. Perry*, 643 F.2d 38, 46-47 (2d Cir. 1981) (observing that "aiding and abetting a conspiracy," in contrast to "conspiracy to aid and abet," is not a crime); *United States v. Boldin*, 818 F.2d 771, 775 n.3 (11th Cir. 1987) ("Standing alone, proof that a defendant may have intentionally aided or participated in a criminal act is not sufficient to establish a conspiracy."); *United States v. Middlebrooks*, 618 F.2d 273, 278 (5th Cir. 1980) ("[P]roof that a defendant may have intentionally aided a criminal act or that he may have intended to do so in the future is not sufficient; the government must show the defendant agreed with others that together they would accomplish the object of the unlawful conspiracy."); *United States v. Ulbrich,* 2015 U.S. Dist. LEXIS 11938, at *16 (S.D.N.Y. 2015) (*"*Defendant is correct that 'aiding and abetting a conspiracy' is not a valid theory of liability."); *United States v. Sanchez*, 925 F. Supp. 991, 995 n.3 (S.D.N.Y. 1996) ("In my view, a defendant cannot aid and abet a conspiracy."); *United States v. De Jesus Moreno*, 710 F. Supp. 1136, 1137 (E.D. Mich. 1989) (noting that "references to 'aided and abetted' [in the U.S. Sentencing Guidelines] were omitted because one cannot aid and abet a conspiracy.").

The Supreme Court, notably, ruled that *res judicata* barred a prosecution for uttering false invoices based upon an aiding and abetting theory *after* the defendant was acquitted of conspiracy to defraud the government based upon the same invoices and conduct. *See United States v. Sealfon*, 332 U.S. 575, 579-80 (1948). Accordingly, as a matter of law, the jury could not have determined that Caldwell's independent crime was aiding and abetting *any* conduct charged in the Indictment.

7

F. *The Indictment excludes Caldwell's co-defendants as potential principals*.

The Indictment, moreover, plainly excluded the *Rhodes* defendants as potential "principals" for Caldwell to "aid and abet." *See* ECF 167 at 34 (Count Three) (alleging that Caldwell and his co-defendants "did aid and abet *other persons* known and unknown[.]") (emphasis added).² The jury instructions, likewise, stated that "the government further alleges that the defendants aided and abetted others[.]" (ECF 400 at 29). In short, Caldwell's alleged "corrupt," independent crime cannot be aiding and abetting the substantive § 1512(c)(2) count as alleged in Count 3, as his co-defendants are excluded as potential principals by the plain language of the Indictment.

## III. Evidence Tampering (Count 13)

A. *The government's reliance on <u>United States v. Johnson</u> is misplaced*.

At the Rule 29 hearing, the government cited *United States v. Johnson*, 655 F.3d 594 (7th Cir. 2011) in support of upholding Caldwell's evidence tampering count. Respectfully, *Johnson* is not similar to Caldwell's case. The *Johnson* defendant, who was indicted as part of a drug conspiracy, was aware 1) that she was the target of an investigation; 2) that agents surrounding her residence were attempting to recover evidence to potentially build a case against her; and 3) that agents were concerned she may destroy evidence. *Id*. at 599, 605-06. Most damning, the *Johnson* defendant was aware that a *judicial officer* had authorized a search warrant for the seizure of the incriminating items she flushed down the toilet. *Id*. at 599. Accordingly, she was aware that her conduct could impact her foreseeable criminal trial or a grand jury proceeding as

---

² By comparison, Count 2 alleges that Caldwell and his co-defendants conspired "with *each other* and other persons known and unknown[.]" (ECF No. 167 at 33) (emphasis added).

8

opposed to simply thwarting a law enforcement investigation. *Johnson* is distinguishable because "at the time the defendant was destroying evidence, the defendant could not deny that [she] had *actual knowledge* of an *actual investigation* into [her] illegal activities and the evidence [she] destroyed was *evidence of that illegal activity*." *United States v. Wysinger*, 2019 U.S. Dist. LEXIS 106320, at *21 (W.D. Va. 2019) (emphasis added).[3]

Simply put, general awareness of one's wrong-doing or a potential criminal investigation will not suffice. Under *Aguilar,* the necessary "nexus" requires "knowledge" that a defendant's actions are "likely" to affect a *specific* official proceeding. *United States v. Friske*, 640 F.3d 1288, 1293 (11th Cir. 2011) ("Specifically, the government had to prove . . . that Friske knew that the natural and probable result of his actions would be the obstruction of Erickson's *forfeiture proceeding*.") (emphasis added).

B. *The Evidence Tampering Count is limited by the Indictment*.

At the Rule 29 hearing, the government tweaked its position on evidence tampering from emphasizing Caldwell's alleged cover up of *his own* J6 conduct to Caldwell trying to protect Crowl and Watkins.[4] The government's position is without merit, as Paragraph 167 of the

---

[3] Likewise, the government's reliance on *United States v. Matthews*, 505 F. 3d 698 (7th Cir. 2007), is misplaced, as the defendant-Police Chief in that case had actual knowledge that federal "judicial proceedings were likely" if he did not "dispose" of a firearm seized by agency. *Id*. at 711 (observing that the defendant "was recorded telling McIntosh that ICE was pursuing federal firearms charges against [his friend]" and that they needed to keep ICE from getting "the damn weapon" to head off federal charges). Essentially, the defendant-Police Chief in *Matthews* 1) knew that ICE fully intended on pursuing federal firearms charges against his "friend"; 2) knew that ICE was demanding that the defendant turn over the incriminating gun to facilitate the filing of federal charges; and 3) devised a scheme to "lose" the gun to prevent his "friend" from being federally prosecuted.

[4] As Caldwell was not a target of the FBI until *after* his alleged tampering and he never expressed a belief that he was under investigation, the evidence was insufficient to convict under § 1512(c)(1). *United States v. Wellman*, 26 F.4th 339, 348 (6th Cir. 2022) (holding that the nexus requirement is satisfied only if the defendant "acted with awareness that he was the target

Indictment alleges that Caldwell "deleted *photographs* . . . that documented *his* participation in the attack on the Capitol on January 6, 2021." ECF No. 167 at 44 (Count 13) (emphasis added).[5] The "deleted" 11 photos located in the Caldwell-Crowl thread, which are the subject of Paragraph 167, depicted Mr. and Mrs. Caldwell, but not Crowl or Watkins. The government's argument that Caldwell's intent was to assist Crowl and Watkins does not square with the facts or the Indictment.[6]

C. *The government's attempt to distinguish Caldwell's conduct from <u>Aguilar</u> is unavailing.*

In an attempt to distinguish the instant case from *United States v. Aguilar*, 515 U.S. 593 (1995), the government argued that a lie to an FBI agent is less likely to affect a grand jury than Caldwell's alleged deletion of messages and that the evidence that Caldwell foresaw a grand jury proceeding is stronger. Not so. First, a lie to an FBI agent who, during his interview with Judge Aguilar confirmed that a grand jury had been empaneled to look into, *inter alia*, the Judge's conduct, was far more likely to make its way to a grand jury than Caldwell's *private* Facebook messages. Second, Judge Aguilar was, 1) based on his dishonest statement to the FBI and his legal background, aware that he had committed a felony; 2) on actual notice that an FBI investigation into his conduct and that of his associates was underway; 3) on actual notice that a grand jury had been empaneled; and 4) as a federal judge, had a unique expertise as to federal

---

of an investigation and that the government might be trying to build a case against [him]." ) (internal quotations omitted).

[5] The co-defendants were, likewise, charged with evidence tampering for the purpose of hiding their individual involvement in J6. *See* ECF 167 at 38-43 ("his involvement"). Rhodes was separately charged with encouraging his co-defendants to delete evidence to hide "their participation" in J6. *Id*. at 38.

[6] The Court should also note that the unsent "video" to Crowl—which turned out to be a link to the Ford Fischer News2Share segment--was recovered from Caldwell's Facebook records in messages with others. *See, e.g.,* Govt. Ex. 2001.T.1 at 223. Accordingly, the Ford Fischer link was continuously available to the grand jury in Caldwell's Facebook records.

10

grand juries and their nexus to FBI investigations. By contrast, there is little to no evidence that Caldwell 1) knew that the FBI was specifically investigating him, Crowl, or Watkins; 2) that a federal felony case was being built; 3) that a grand jury was empaneled; or 4) that he possessed any special knowledge of the workings of a federal grand jury. Moreover, the *felonies* charged in the instant case involve two 19th century statutes and one Enron-related statute that have rarely been used and *never before charged* in the context of a political protest. It is speculation, not an inference, to claim based upon the instant record that Caldwell anticipated that the "feds" were building a felony conspiracy case against him or anyone else. Finally, Caldwell took no steps to unsend, delete, or destroy his treasure trove of rhetorical flourishes or physical evidence in the 36 hours leading up to his arrest *after* he was on notice that the FBI wanted to speak with Jessica Watkins.

D.  *The record doesn't match the government's rhetoric.*

The government incorrectly stated certain aspects of the evidentiary record. First, in relation to the *New Yorker* article, which was *not* introduced in the government's case, Special Agent Palian testified that he did not know if that article was published on or before January 14, 2021, the day Caldwell's alleged deletions took place: "I don't know if [January 14th] was the date of the [New Yorker] article, but it was around that time[.]" (Tr., 1626-27). Second, while Caldwell's arrest generated "massive publicity," there was no evidence in the record as to "massive publicity" related to J6-related arrests in general. Third, there was no evidence in the record that Caldwell "push[ed] his way through" hundreds "if not a thousand people" to get the Capitol steps. (Tr., 57) (J. Nestler, AUSA).

## IV. Conclusion

WHEREFORE, Caldwell respectfully submits this supplemental authority in support of arguments advanced during the May 22, 2023 hearing and respectfully requests that his Rule 29 motion for judgment of acquittal be granted.

Respectfully Submitted,

_____/s/_____
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant

**CERTFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 10th day of June, 2023, a copy of the foregoing Caldwell's Supplemental Authority Regarding Motion for Judgment of Acquittal was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:        Office of the United States Attorney
Kathryn Rakoczy, AUSA
Jeffrey Nestler, AUSA
Louis Manzo, AUSA
Troy Edwards, AUSA
Alexandra Hughes, DOJ T.A. (NSD)
Justin Sher, DOJ T.A. (NSD)
555 4th Street, NW
Washington, DC 20001

                                          _____/s/_____
                                          David W. Fischer, Esq.