IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | * |
| vs. | * Case No.: 22-15 APM |
| THOMAS E. CALDWELL | * |

\* \* \* \* \* \* \* \* \* \* \*

**CALDWELL'S SUPPLEMENTAL SENTENCING MEMO**

COMES NOW, Thomas E. Caldwell, by and through counsel, David W. Fischer, Esq., and respectfully sets forth *infra* supplemental information and argument in support of his request for a time-served sentence with supervised release.

A. **Sentences handed down to Caldwell's co-defendants**.

The Court has sentenced numerous co-defendants in the "Oath Keepers case" and, accordingly, has slotted defendants based upon their convictions, conduct, and personal characteristics. Caldwell's "slot" should be determined based upon the outcomes of *all* co-defendants, not the defendants in his specific trial group.[1] With the exception of co-defendant Michael Greene, Caldwell was the only defendant cleared of all three conspiracy counts. Defendants Bennie Parker and Sandra Parker, both convicted under 18 U.S.C. § 1512(k) of conspiracy to obstruct the Electoral College certification (with Mrs. Parker also

---

[1] Because of COVID-19 restrictions, the Court was required to split the Oath Keeper defendants into three trial groups, and the government ultimately obtained bifurcated Grand Jury indictments. The allegations against all defendants, however, were similar in nature, revolving around a claim that the defendants conspired to stop Congress's certification of the Electoral College vote.

1

convicted on the 18 U.S.C. § 372 conspiracy count), were sentenced to 60 months of probation and 6 and 12 months, respectively, of home confinement. To avoid an unwarranted sentencing disparity, Caldwell, should, for multiple reasons, receive a more lenient sentence than the Parkers.

First, defendants convicted of conspiracies are traditionally punished more harshly than those convicted of substantive offenses, as individual offenders pose significantly less risk than criminal combinations. *See* U.S.S.G. (passim). Second, while Caldwell (69) and Mr. and Mrs. Parker (72 & 64) are of similar ages, Caldwell, a 100% service-connected disabled veteran, is in far worse physical shape than the Parkers. Third, unlike Caldwell, the Parkers were members of the Oath Keepers. Fourth, unlike Caldwell, Mrs. Parker actually entered the Capitol, and both Parkers wore intimidating, military-style uniforms. Fifth, unlike Caldwell, the Parkers were members of a "militia" group. Sixth, unlike Caldwell, the Parkers were not doped up on copious amounts of pain killers to remain ambulatory during their conduct in and around Capitol Hill.

Caldwell has already served 53 days of incarceration at the Central Virginia Regional Jail, and an additional 285 days (9.5 months) of residential confinement. A time-served sentence with supervised release, in light of the 53 days credit for time already served in jail and uncredited 285 days of residential confinement, is a harsher sentence than that received by the Parkers.

**B. Caldwell did not lie about being deprived of his medications while in jail.**

The government incorrectly asserts that Caldwell lied to national media outlets about being deprived of his prescribed pain medications while incarcerated at Central Virginia

Regional Jail ("CVRJ"). ECF 580, at 20. Prior to his arrest, Caldwell was prescribed Oxymorphone (Opana), Lansoprazole, Hydrocortisone, Clonidine, Lunesta, Vyvanse, and Relpax. Multiple orthopedic doctors and pain management specialists, over a period of years, fine-tuned this cocktail of prescriptions to enable Caldwell to manage his chronic, excruciating back and neck pain. The day Caldwell was incarcerated, however, the visiting physician at CVRJ, incorrectly assuming that Caldwell was an opiate addict, ordered that Opana—the medication most necessary to block Caldwell's back and neck pain--be withheld. *See* Gov't. Exh.-9.[2] Additionally, Caldwell was not provided with Lunesta, a sleep aid that allows him to sleep through his pain.[3] Relpax, a medication designed to combat Caldwell's chronic, severe migraine headaches, was likewise withheld.[4] Instead of prescription strength Lansoprazole, moreover, CVRJ provided Caldwell with a less potent, over-the-counter substitute (Omeprazole), which was ineffective. Clonidine, a blood pressure medication that Caldwell took daily prior to his incarceration, was only provided on Caldwell's first four and last sixteen days of his incarceration. In fact, the only prescribed medication consistently provided to Caldwell was hydrocortisone, an anti-inflammatory drug, which does little to relieve Caldwell's chronic pain.[5]

---

[2] The CVRJ records show that Caldwell was placed on an "opiate withdrawal protocol" the day he arrived at the jail.
[3] Vyvanse, which is a stimulant simultaneously prescribed with Lunesta to assist Caldwell in waking up in the morning, was likewise not provided to Caldwell.
[4] Caldwell specifically requested—in writing--his prescribed Relpax on February 5th and 13th, 2021 for excruciating migraine headaches. This request was denied by the jail medical staff, which instead provided Caldwell with aspirin. The CVRJ records show that Caldwell complained of a severe migraine headache that lasted over 3 days.
[5] CVRJ did provide Caldwell with Advil, cold medicines, and aspirin as alternatives to his withheld prescriptions.

**C.  The government provided the Court with incomplete, misleading medical records.**

The government's sentencing Exhibit-9 purports to be a complete copy of Caldwell's medical records from CVRJ.  These medical records, according to the government, "cast doubt upon [Caldwell's] current claims" regarding his physical disabilities.  ECF 580, at 20.  Fortunately, the undersigned previously obtained a full copy of Caldwell's CVRJ medical records in 2021, directly from CVRJ.  Interestingly, the undersigned's copy and the government's copy of the CVRJ records are identical with one notable exception:  the government's copy, i.e., Government Exhibit-9, is missing one page--a page that sets forth in detail which medications Caldwell received (and the dates they were administered) while at CVRJ.  This missing page *proves that Caldwell was not provided with six of his seven prescribed medications while at CVRJ.  See* Exhibit A (attached) (missing page of Caldwell's CVRJ medical records).  Respectfully, the government should retract its claim that Caldwell misled the public vis-à-vis not receiving his prescribed medications.

As a result of Caldwell not receiving his prescribed medications at CVRJ, the Court undoubtedly remembers Caldwell writhing in pain at his two detention hearings.  Further, when the undersigned met with Caldwell on several occasions at CVRJ, he was in a wheelchair, shackled, and in obvious agony.  The CVRJ records show that, *without consulting his personal physicians*, Caldwell was forced to go "cold turkey" off of his multiple prescriptions as part of an "opiate withdrawal" protocol.  Caldwell's 53-day stay at

4

CVRJ—49 days of which were spent in solitary confinement[6]—was a harrowing experience.[7]

Respectfully, Caldwell's multiple health issues require unique, consistent care that is not available in the Bureau of Prisons or local detention centers. There are no "pain management clinics" in the B.O.P. Caldwell's medications, if not properly adjusted, can have significant side-effects. Caldwell has a team of doctors that are familiar with his unique medical needs. This type of care cannot be replicated in the B.O.P.

D. **Caldwell did not threaten "death" to Members of Congress.**

The government takes poetic license with Caldwell's First Amendment protected speech, inaccurately claiming that Caldwell threatened death to Members of Congress. A

---

[6] CVRJ records show that Caldwell spent 4 days in the "booking" area of the jail, where multiple inmates were housed. The balance of Caldwell's CVRJ stay was either in "medical segregation," i.e., a solitary confinement cell with sporadic checks by medical personnel, or the Segregated Housing Unit ("SHU"), which inmates non-affectionately refer to as "the Shoe," which is a solitary confinement holding cell area. Caldwell, according to CVRJ records, was placed in solitary confinement for his own protection. Caldwell's intra-jail safety was jeopardized because the earliest government filings alleged that Caldwell orchestrated and planned an "attack" on the U.S. Capitol, among other false and incendiary claims, including that Caldwell "held a leadership role within the Oath Keepers organization."

[7] CVRJ's Major Hoffman wrote a "synopsis" of Caldwell's records which, charitably, can be described as biased and incorrect. For example, Hoffman wrote that Caldwell's request for reading materials was granted, but didn't mention that it took the intervention of the undersigned, weeks into Caldwell's incarceration, to secure Caldwell reading privileges. Additionally, Caldwell never "refused" to attend meetings that would allow him to potentially have looser restrictions in the jail. Moreover, the "recreation" that Caldwell allegedly refused would have allowed him to be moved to a television room for one hour per day but, as an inmate in administrative segregation, would have required that his arms and legs be shackled. Undersigned counsel spoke with Major Hoffman at length regarding Caldwell in late February 2021. He made clear that Caldwell's "max" confinement and super-tight restrictions were the result of the government's (inaccurate) characterizations of Caldwell's role in January 6.

quick review of the video cited by the government as evidencing this "death threat," however, ironically proves that no such threat was ever made. Caldwell, in fact, muttered something on camera about hoping that politicians would be taken to Guantanamo Bay, a military holding facility off the coast of Cuba. No serious, objective person would interpret Caldwell's "Tom being Tom" rhetorical flourishes as "death threats."

Nonetheless, if the government desires to go down such a rabbit hole, the undersigned will be prepared at sentencing to present hundreds of examples wherein (Democrat, Republican, and Independent) self-styled "mainstream" commentators—including law professors, retired judges, former federal prosecutors, current and former elected officials, cable television hosts, media members, etc.—have uttered far more outlandish statements than anything Caldwell said on January 6. And whereas Caldwell's statements were sent *privately* to a close circle of friends—most of whom were elderly, disabled pensioners familiar with his sense of humor and physical handicaps--the outlandish statements made by prominent commentators were published to millions. Simply put, in America, citizens should not be punished for their political speech.

### E. Predictably, the North Carolina Oath Keepers have not been charged.

Despite government claims during Caldwell's trial that "Ranger" Doug Smith, Paul Stamey, and other North Carolina "co-conspirators" were "still under investigation" as potential criminal targets, these individuals have not been charged with any crimes. By claiming that the North Carolina contingent was under investigation, the government deprived Caldwell of critical, exculpatory witnesses at trial as these individuals "lawyered up." Respectfully, the Court may infer from the lack of charges against the North Carolina

"co-conspirators" that the government concluded that bogeymen Doug Smith and Paul Stamey committed no crime in having a QRF—which was essentially a telephone tree--stationed outside of the District on January 6. As the Court may recall, Caldwell specifically made clear that he was "aligning himself" with North Carolinians, and had zero communications with Stewart Rhodes after mid-November.

### F. The government took Paul Stamey's statements out of context.

The government averred: "When the government confronted Stamey with the facts that he and his co-conspirators drove across the country, gathered rifles, distributed maps of 'landing areas' and roads into D.C., and then waited in hotel rooms with the weapons, he simply replied, 'I know that looks bad.'" ECF 580 at 20. Stamey, however, as the government's own exhibit shows, was not "confronted" with evidence regarding "maps of landing areas," "hotel rooms with weapons," etc. before he stated "I know that looks bad." Govt. Ex. Sent-Caldwell-10 at 118-25. Instead, while true that Stamey stated "I know that looks bad," this comment was *clearly* in reference to Stamey's activities during the November 14th "Million MAGA March," which involved Stamey and John Zimmerman, who acted as a QRF in Zimmerman's van, not in "hotel rooms." *See* Govt. Sent-Caldwell Ex.-10 at 118-124. Zimmerman has not been charged and, in fact, was presented by the government as the perfect, law-abiding Oath Keeper.

The government also inaccurately claimed that Stamey "wrote to Caldwell on January 7, 'We need to link up across the country. The gauntlet was thrown down yesterday.'" ECF 580 at 20. Stamey, in fact, wrote this message to the "Old Leadership Chat" group on Signal, which Caldwell was *not* a party to. *See* Govt. Ex. 6733 (Msg 1.S.696.18574). Stamey's

7

message itself, moreover, was also taken out of context, as the "We need to link up across the country" phrase was Stamey's complaint that numerous contributors to the message board were posting anonymous comments, which meant that "intel"—in relation to *Antifa*—that was provided was of little use.[8]  *See* Stamey Interview at 104-08 (explaining "link up" message to government).  Contrary to the government's suggestion, Stamey was obviously not calling for "linking up" *against the government*.

### G.  Caldwell did not manage the "QRF hotel."

The government's most compelling evidence that Caldwell managed the "QRF hotel" is their repeated, self-serving claim that Caldwell managed the "QRF hotel."  The evidence at trial, however, told a different story.  First, on December 30, 2020, Caldwell, in an instant message to Watkins, specifically suggested that Watkins and Crowl, who were travelling from Ohio, stay at a hotel in Manassas, Virginia on January 5th and take the Metro into D.C. the following day.  *See* Caldwell Ex. 48.  Second, when Watkins inquired, on January 4th, of Meggs: "Where can we drop off weapons to the QRF team?," Meggs replied: "Hilton Garden Inn," not Caldwell's Comfort Inn.  *See* Gov. Ex. 6913, 85.S.SH (OK FL OP Jan 6 Chat).[9] Third, overwhelming evidence—both at trial and through an FBI interview with Paul

---

[8] Stamey's full message read: "Good afternoon, Patriots.  I'm Paul Stamey NCOK'S.  Been in this group awhile.  Lots of good intel comes out here.  We need to link up across the Nation.  The gauntlet was thrown down yesterday.  It would be nice to know [w]ho I was communicating with.  God Bless you and yours[.]" Govt. Exh. 6733 (Msg. 1.S.696.18574). In context, Stamey was encouraging those on the Old Leadership Chat to make an effort to better share "intel" about Antifa and other topics that had been discussed for years on Oath Keeper chats.  He was not suggesting "linking up" against the government.  Most importantly, this message *was not sent to Caldwell*.
[9] Caldwell was not on this—or any—Oath Keeper chat groups.  Notably, when seeking "QRF information," Watkins contacted Meggs, *not* Caldwell.

Stamey—exists that Stamey was *the* (unarmed) QRF for North Carolina's contingent, which was effectively a telephone tree. Fourth, Caldwell had no connection whatsoever to Edward Vallejo or Kelly Meggs. Fifth, Caldwell left the Comfort Inn at approximately 6 a.m. on the morning of January 6th and did not return until after the riot at the U.S. Capitol unfolded, while engaging in no activities or communications consistent with managing a QRF. In short, Caldwell did not manage a QRF, participate in a QRF, or choose a hotel for a QRF.

**H. Caldwell is entitled to a 2-level reduction (Zero Point Offender).**

Under a change in the United States Sentencing Guidelines effective November 1, 2023, certain "zero point offenders" are entitled to a 2-level reduction in their guidelines. U.S.S.G. §4C1.1(a). As Caldwell did not engage in violence on January 6, did not make credible threats of violence, and did not possess a firearm at the U.S. Capitol, he qualifies for a 2-level reduction in his guidelines.

**I. Conclusion.**

A time-served sentence followed by a short period of supervised release is, respectfully, the appropriate sentence for Caldwell.

                                                Respectfully Submitted,

                                                /s/
                                            David W. Fischer, Esq.
                                            Federal Bar No. 023787
                                            Law Offices of Fischer & Putzi, P.A.
                                            Empire Towers, Suite 300
                                            7310 Ritchie Highway
                                            Glen Burnie, MD 21061
                                            (410) 787-0826

## CERTFICATE OF SERVICE

      I HEREBY CERTIFY that on this 15th day of December, 2023, a copy of the foregoing Supplemental Sentencing Memorandum was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:      Kathryn Rakoczy, AUSA
      Troy Edwards, AUSA
      Jeffrey Nestler, AUSA
      Louis Manzo, AUSA
      Alexandra Hughes, AUSA
      Office of the United States Attorney
      555 4th Street, NW
      Washington, DC 20001

      /s/
      _____
      David W. Fischer, Esq.