UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD VALLEJO,<br>                *Defendant.* | No. 22-cr-15 (APM) |

**CORRECTED REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR CONDITIONAL RELEASE PENDING APPEAL**

    The defendant, Edward Vallejo, through counsel, respectfully submits the following points and authorities in support of his motion for release pending appeal.

## ARGUMENT

**A.    This Court has already determined that Vallejo is not a danger to the community.**

    The government argues that Mr. Vallejo failed to show he is not a danger to the community based on facts underlying his convictions. ECF 864 at 12. On the contrary, this Court has already determined that standard conditions of release "*will reasonably assure* the appearance of the person as required and *the safety of any other person and the community*." 18 U.S.C. § 3142(g) (emphases added). The Court's ruling has been confirmed by Mr. Vallejo's exemplary performance on pretrial release and his voluntary surrender. The Court's previous determination that he is safe to be in the community should be considered the law of the case because Mr. Vallejo has only requested release on the same conditions as his pretrial release. ECF 863 at 16; *see* ECF 486 (release conditions). The government points to no intervening fact that would alter the Court's pretrial release determination that the safety of the community would not be jeopardized by conditional release.

1

The law of the case doctrine is a prudential bar that "directs a court not to alter a previous judicial determination unless unusual circumstances are present." *United States v. Eilberg*, 553 F. Supp. 1, 3 (D.D.C. 1981). "[T]he *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (emphases in original). While this Court can reconsider its decision that the safety of the community would not be jeopardized by conditional release, the Court should only do so in "extraordinary circumstances." *Eilberg*, 553 F. Supp. at 3. The Court would be evaluating whether the previous decision was "clearly erroneous and would work a manifest injustice." *LaShawn A.*, 87 F.3d at 1093-94.

Here, no such claim has been made by the government, nor could it be. The government's extensive recounting of the events of January 6 — with few references to actual conduct by Mr. Vallejo — were well known to the Court both before trial and certainly after trial and sentencing, when the Court determined that it was safe to permit Mr. Vallejo to return home to Arizona and prepare to self-surrender. Nothing in the factual recitation takes away from this Court's § 3142(g) determination that he can be safely released on the same conditions as his pretrial release. Mr. Vallejo has continuously demonstrated that he is not a danger by his compliance with pretrial release, his voluntary surrender, and his completion of much of the sentence imposed.

**B.      Substantial questions exist that are likely to result in vacatur or a reduced sentence.**

The government's claims regarding the substantial questions on appeal misstate the standard and underestimate the seriousness of the questions raised in this novel context. First, the correct legal standard divides the statutory question into two parts: "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). Instead, throughout its

brief, government conflates two separate aspects of the standard by suggesting Mr. Vallejo must show that the appeal of his case "likely will lead to reversal." ECF 864 at 1; *accord* at 13, 22, 23, 25-26. But the initial question does not require a likelihood of success, only that the question is substantial — that is, a "close question or one that very well could be decided the other way." *Id*. The government's repeated use of "likely" only applies to the potential consequences from prevailing on the substantial issues raised, not the initial question of whether Mr. Vallejo is raising substantial questions on appeal.

Second, the questions raised in this appeal are both substantial and, if Mr. Vallejo prevails, likely to have consequences leading to reversal, a new trial, or a reduced sentence. On the issues related to 18 U.S.C. § 1512, the government asserts that the Court's consideration of the *Fischer* grant of the writ of certiorari is "premature." ECF 864 at 13. But that is not the test for whether an issue is substantial. The grant of the writ demonstrates that the question is substantial. Not until the Supreme Court speaks would we know the scope and potential consequences of a decision favorable to Mr. Vallejo. The claim that other counts would be "unaffected" amounts to a request for an advisory opinion: the serious issues raised in *Fischer* cannot be fully evaluated until issuance of the decision. Further, the government does not even address the potential issues raised by the concurring opinion in the appellate court's decision regarding the definition of "corruptly." ECF 863 at 6-7 (citing *United States v. Fischer*, 64 F.4th 329, 352 (D.C. Cir. 2023) (Walker, J., concurring in part)). Mr. Vallejo's appeal regarding the issues raised in *Fischer* are substantial and warrant release pending appeal.

Similarly, the government argues that the *Brock* appeal does not affect sentencing based on what would be an advisory opinion regarding the outcome of a remand. ECF 864 at 14-22. The

government mischaracterizes the question before the Court: the only question is whether an issue on appeal is substantial and would likely result in a different outcome. Instead, the government devotes pages to speculation about different outcomes depending on potential variances and departures. In doing so, the government utterly ignores the applicable Supreme Court case law regarding the effect of Guidelines errors as requiring remand and reconsideration. ECF 863 at 8-9. In short, the government's request for the Court to consider departures and variances is not ripe until the appellate court has ruled and remanded to return to this Court jurisdiction to consider its sentence (the government in footnote 1 appears to acknowledge that the appeal divests jurisdiction over aspects of the case involved in the appeal).

The government incorrectly claims that the defense believes the invalid specific offense characteristics "automatically" results in a significant sentence reduction. ECF 864 at 14. Not so. The defense cited to the Supreme Court authority indicating that Guidelines errors would result in a substantially lower starting point or anchor for the sentence ultimately imposed, but never claimed the Court at a resentencing "automatically" would do anything except resentence based on the facts before it at the time of resentencing. *See Pepper v. United States*, 562 U.S. 476, 491-93 (2011) (finding that post-sentencing factors help to inform almost every aspect of federal sentencing). The government does not suggest that any of the aggravating facts potentially asserted at the resentencing were not well-known to the Court at the time the downward variance was granted. The Court should not engage in the government's request for a hypothetical resentencing until the case is ripe, and, by remand, jurisdiction is lodged once again in the district court. Until then, the substantial decrease in the starting point for sentencing alone warrants release pending appeal.

The government also asserts that the Court's thoughtful decision on "execution of any law" under the seditious conspiracy statute leaves no room for meaningful appellate review. ECF 864 at 22. Respectfully, the Court's extensive consideration of the statute demonstrates that the defense motion raised substantial issues: if the answer were obvious, no serious analysis would be required. The government does not address the arguments for a limited construction of the statute based on Supreme Court authority in *Bowsher v. Synar*, 478 U.S. 714 (1986), and *Buckley v. Valeo*, 424 U.S. 1 (1976). ECF 863 at 9-10. The defense respectfully suggests that its construction should prevail under the plain language of the statute, raising at least a substantial question.

Further, given both the doctrine of constitutional avoidance and the narrow construction of criminal statutes, the Court's conclusion that the government has the better reading of the statute does not mean that a plausible alternative would not ultimately be accepted by an appellate court. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court."); *United States v. Wiltberger*, 18 U.S. 76, 95 (1820) ("The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself."). The serious questions on appeal should preserve Mr. Vallejo's ability to challenge the district court's rulings while on conditional release.

The defense also presents a substantial issue on appeal regarding the sufficiency of the evidence for the charged conspiracy. ECF 863 at 10-15. Although the government acknowledges that Mr. Vallejo was not present at the Capitol, ECF 864 at 25, the government fails to engage with

5

the significant ramifications of this fact; for example, the defense adduced evidence and argued that:

- Because he was not there when individual Oath Keepers discussed going in to stop the vote, any conviction of Mr. Vallejo for conduct requiring the specific intent to disrupt Congress (as opposed to generally opposing the transfer of power) must uniquely rely on inferences.

- He did not express any desire to interrupt the certification and expressed excitement about anticipated objections in the proceeding.

- He was not a participant in prior Oath Keeper chats or conference calls, coming to Washington independently to "support the process."

- He was wandering around downtown looking for his truck when the certification started and condemned violence at the Capitol as "domestic terrorism."

- From seven miles away from the events at the Capitol, he did not communicate with any other Oath Keepers by phone or text during the events at the Capitol, was never given any weapons to store by any other Oath Keepers and, had never been seen or known by any of the Oath Keepers who entered the Capitol.

- He offered his trucks and assistance well before there was a conspiratorial agreement by those who entered the Capitol.

*See generally* ECF 477-1, 536. The government argues that Mr. Vallejo "manifested his assent [to interrupt Congress] from the messages he sent while serving as the quick reaction force" and "offering to activate the QRF … to transport weapons into the hands of his co-conspirators on the ground." ECF 864 at 25. Because he did not expressly state a willingness to bring weapons into

6

the District of Columbia, the government's conclusion requires stacking inferences: (1) that he meant an armed quick reaction force, although the truck was not armed; (2) that the quick reaction force was to join in an attack, rather than to extract individuals from danger, as Mr. Vallejo discussed the rest of the afternoon; and (3) that he knew co-conspirators would decide to enter the Capitol and stop the certification, even though the decision was made on the steps of the Capitol without his participation.

While this Court reached the conclusion that such inferences were reasonable for the jury to make, a reviewing Court could take a different view. On appellate review, three "layer[s] of inference" was insufficient even under the far-more forgiving standard of "probable cause." *United States v. Griffith*, 867 F.3d 1265, 1273, 1278 (D.C. Cir. 2017); *see also Ingram v. United States*, 360 U.S. 672, 680 (1959) ("charges of conspiracy are not to be made out by piling inference upon inference."). It is at least a close question whether the combined inferences required here for someone seven miles away veer too far into "conjecture and surmise regarding what a defendant may have intended or known," which "is insufficient to support a conviction in a conspiracy case." *United States v. Stone*, No. 10-20123, 2012 WL 1034937, at *10 (E.D. Mich. Mar. 27, 2012) (citation and quotation marks omitted). There are legitimate reasons to question how many chains of inferences can be put together before falling below the very high beyond-a-reasonable-doubt standard.

Significantly, the evaluation of sufficiency must also occur in the context protecting speech and narrowly construing criminal liability. ECF 863 at 13-14 *see United States v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972) (stating that, when an alleged conspiracy implicates First Amendment protections such as freedom of speech and freedom of association, the court must make a

"specially meticulous inquiry" into the government's evidence so there is not "an unfair imputation of the intent or acts of some participants to all others"); *Stone*, 2012 WL 1034937 at *3 (holding that the Court must take "particular care to analyze the evidence against each defendant to determine whether it is capable of convincing beyond a reasonable doubt" when the proof involves political speech and association). While the government scoffs at the notion that Mr. Vallejo was engaged in "political hyperbole," ECF 864 at 25, the fact remains that many if not most of the words that form the basis for the government's arguments are on a par with protected political expressions that fill the news cycle today, certainly within the scope of the words of "war" that filled the trial record in *Stone*, where the court found the evidence of seditious conspiracy insufficient in light of the need to protect political speech.

Although the Court found *Stone* distinguishable, there is at least a substantial question that an appellate court could come to a different conclusion. Given the government's reliance on the breadth of the indictment and a mere "implicit agreement," the reviewing court could apply the strong precedent protecting general expressions of willingness to take unlawful actions and require a level of specificity related to the agreement that was not established in this case. The Court's reliance on reasonable foreseeability is fairly debatable when Mr. Vallejo's statements referenced violence after the certification.

Mr. Vallejo is neither a flight risk nor a danger to the community. He only asks for release on the same conditions as his pretrial conditional release and post-verdict release pending his self-surrender, which is consistent with the restrictive conditions the Court ordered for the first year of supervised release. He raises real issues that have merit and that at least pass the standard for allowing the full punishment to be suspended while the appellate court considers the case and

while any decisions are addressed by this Court on remand based on the undisputed sentencing errors.

                                                Respectfully submitted,

                                                *s/ Stephen R. Sady*
                                                Stephen R. Sady
                                                Chief Deputy Defender for the
                                                District of Oregon
                                                101 SW Main Street, Suite 1700
                                                Portland, OR 97204
                                                (503) 326-2123

                                                Kurt D. Hermansen
                                                Supervisory Assistant Federal Defender
                                                859 Willamette Street, Suite 200
                                                Eugene, OR 97401
                                                (541) 465-6937