IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | * | |
| vs. | * | Case No.: 22-15-APM |
| THOMAS E. CALDWELL | * | |

\* \* \* \* \* \* \* \* \* \* \*

**REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION AS TO MJOA**

COMES NOW, the defendant, Thomas E. Caldwell, by and through counsel, David W. Fischer, Esq., and files the instant reply in support of his Motion for Reconsideration regarding his previously denied Motion for Judgment of Acquittal ("MJOA") as to Counts 3 & 13.

**I.     The Court should grant MJOA as to Count 3 (Obstruction/Official Proceeding).**

As the record is devoid of evidence that Caldwell impaired, aided and abetted the impairment of, or attempted to impair records, documents, objects or witness testimony on January 6, 2021, and in light of the government's acquiescence, the Court should reconsider its prior MJOA ruling and acquit Caldwell as to Count 3, Obstruction of an Official Proceeding pursuant to 18 U.S.C. §1512(c)(2).

Alternatively, if the Court grants the government's request to dismiss Count 3 pursuant to Rule 48 of the Federal Rules of Criminal Procedure, this dismissal should be with prejudice.

**II.     The Court should grant MJOA as to Count 13 (Tampering with Documents).**

*A. Caldwell has presented ample grounds for reconsideration.*

The government disputes that Caldwell has raised arguments meeting the legal

1

"requirements" for reconsideration as to Count 13 (Tampering with Documents). (ECF No. 895 at 3). *Au contraire*, Caldwell has raised substantial issues that satisfy this Court's own criteria for reconsideration: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order[.]" *Cruz v. Fed. Election Comm'n*, No. 19-cv-908 (APM) (TJK) (NJR), 2020 WL 769951, at *1 (D.D.C. Apr. 24, 2020) (cleaned up). Reconsideration motions, moreover, "are committed to the sound discretion of the trial court." *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015) (cleaned up).

Caldwell has presented ample grounds to justify reconsideration. First, there was a "clear error" in the Court's MJOA ruling, as the Court applied an incorrect, substantially lower standard of proof in its "nexus" analysis. The Court, respectfully, clearly relied upon inapposite language from *United States v. Johnson*, 655 F.3d 594 (7th Cir. 2011)[1] as the appropriate "nexus" standard, ruling that, "in a situation like this," the government "simply needed to prove enough evidence the defendant foresaw that the contraband *might* be used in an official proceeding[.]" (MJOA ruling at 31-32) (emphasis added). In fact, the Court twice referenced *Johnson*'s "might" language in determining that the government adduced sufficient proof of a "nexus." *Id*. at 33 (noting that "the evidence," in "the words of the Seventh Circuit," could have established that Caldwell "was concerned that [the deleted/unsent items] might be used in an official proceeding."). The government's response, notably, does not dispute that the correct "nexus" standard requires sufficient proof that Caldwell's "specific intent" was to engage in conduct that he knew "would be likely to affect a pending or foreseeable proceeding." *United*

---

[1] The "might" language in *Johnson* was used in the context of emphasizing that the government was not required to prove a defendant's knowledge of a "particular" official proceeding, i.e., a defendant, under §1512(c)(1), can obstruct a yet to be convened trial or grand jury. *United States v. Johnson*, 655 F.3d 594, 606 (7th Cir. 2011).

2

*States v. Elizondo*, 21 F.4th 453, 472 (7th Cir. 2021); *see also United States v. Aguilar*, 515 U.S. 593, 598-599 (1995).

Second, there was "clear error" in the Court's MJOA ruling as the Court, respectfully, misapplied the test set forth in *United States v. Wellman*, 26 4th 339, 348 (6th Cir. 2022), which the government previously acknowledged was the appropriate test to distinguish between obstructive conduct aimed at a criminal investigation as opposed to grand jury proceedings. *See* (Oral Argument on MJOA, May 22, 2023, Tr. at 18) ("[The government] believe[s] that sentence from *Wellman* is accurate[.]"). *Wellman*'s test requires the Court to determine whether Caldwell knew that he was "the" target of an investigation not, as the Court ruled, that Caldwell knew he could *potentially* become a target.[2]

Third, the Court's most substantial finding of fact in denying Caldwell's MJOA as to Count 13 was indisputably incorrect. The Ford Fischer video, (Gov. Exh. 1051), contrary to the Court's finding, does *not* show Jessica Watkins, Donovan Crowl, or any Oath Keepers inside of the Capitol Building. The government does not contest that this factual finding was incorrect. Accordingly, the Court's finding that "a reasonable juror . . . could have concluded . . . [that] Caldwell was aware that he and his co-conspirators were caught on video entering the Capitol," (MJOA ruling at 32), was unsupported by the record. As such, this flawed factual finding, in light of the "intervening change in the law" caused by *Fischer*, constitutes a third significant ground for reconsideration of the Court's MJOA ruling as to Count 13.

---

[2] In its MJOA ruling, the Court observed that it was possible for a defendant to obstruct justice on behalf of others. Caldwell agrees. However, the government is bound by the words of the Indictment, which specifically alleged that Caldwell "deleted photographs" which "documented *his participation* in the attack on the Capitol[.]" (ECF No. 167, ¶167) (emphasis added). Accordingly, the deleted photos at issue are those that could inculpate *Caldwell*, not Crowl or Watkins. As such, the Grand Jury charged that Caldwell engaged in evidence obstruction aimed at protecting himself, not others.

3

Accordingly, Caldwell has set forth substantial grounds for reconsideration involving multiple important questions of law and one substantial factual finding for which the government has offered no rebuttal.

B. *A re-application of the facts to the correct legal standards upon reconsideration*.

Contrary to the government's characterization, Caldwell is not "re-present[ing] his own, differing interpretation of the evidence at trial [to the] legal standard the Court applied." (ECF No. 895 at 3). Instead, Caldwell cited multiple appellate-level cases that set forth the correct "nexus" standard to be used in obstruction cases. Caldwell also observed that the Court's use of a lower "might have known" standard or a misapplication of *Wellman*'s test or both resulted in an anomaly. That is, unlike the Court's MJOA ruling in the instant case, every reported, circumstantial grand jury case where obstruction convictions have been affirmed involved defendants who had actual knowledge that an actual grand jury or actual law enforcement investigation was targeting them or their co-conspirators. Without proof of such knowledge, the evidence was insufficient to tie Caldwell's alleged deletions/unsending to anything beyond obstruction of a criminal investigation.[3] Since Caldwell was not on the FBI's radar until three days after the deletions/unsending took place, (Tr., 1628), he *ipso facto* was not aware that he was "the" target of an FBI or grand jury investigation and that the government was building a case against him.[4]

---

[3] Notably, there is a specific federal statute that criminalizes obstruction of a criminal investigation. *See* 18 U.S.C. § 1519. Caldwell was not charged under this statute.

[4] The Court should compare this case to *Johnson*, where the defendant was up to her ears in a major drug conspiracy and who methodically destroyed cocaine after slamming the door shut on a DEA search warrant execution team that was attempting to seize contraband in her residence. Conceding that the evidence was hardly "overwhelmingly," the Seventh Circuit nonetheless upheld the defendant's obstruction conviction under §1512(c)(1). *Johnson*, 655 F.3d at 607.

Additionally, applying *Fischer* to the instant case reifies that the obstruction evidence against Caldwell was insufficient.   The government adduced no evidence that Caldwell was aware that any of his co-defendants actually entered the Capitol or engaged in felonious conduct on January 6.[5]   Moreover, as the Ford Fischer footage does not show Watkins and Crowl entering the Capitol, Caldwell had no awareness of their joint criminal conduct in the Capitol. In light of *Fischer*, the conduct that Caldwell witnessed Watkins and Crowl engage in, per the record, was not conduct one would reasonably anticipate would generate interest from a grand jury investigating felonious conduct.   Moreover, as Caldwell's obstructive acts allegedly

---

*Johnson* highlights multiple layers of differences with Caldwell's case.
   Notably, the *Johnson* indictment alleged that the "official proceeding" targeted for obstruction was a "grand jury *or a proceeding in the United States District Court for the Southern District of Illinois*."   *Id. at* 605 (emphasis added). Caldwell's indictment, by contrast, specified only that a "grand jury" was his specific target for obstruction. (ECF No. 167, ¶167). *Johnson* held that the defendant *generally* "foresaw criminal prosecution" and destroyed evidence to "minimize evidence" in furtherance of that prosecution.   *Id.* at 607-08. Accordingly, it is not clear that the *Johnson* defendant's conviction would have been upheld if she had only been charged, like Caldwell, with specifically obstructing a *specific* grand jury proceeding.
   Next, Caldwell allegedly deleted/unsent run-of-the-mill photos and a publicly available video, items that were not *per se* contraband, the possession of which constitutes a prosecutable offense via a trial, which is an "official proceeding."   Finally, the *Johnson* defendant was clearly placed on notice that the "feds" were targeting her drug operation and she immediately destroyed obvious "evidence" of her crime, whereas Caldwell had no notice of an official action against him and the deleted/unsent items were not contraband or clear-cut "evidence" of a crime.
   Accordingly, no speculation was required by the *Johnson* panel to find that a drug dealer, in illegal possession of cocaine, with her house surrounded by law enforcement on the cusp of seizing inculpatory evidence in her actual or constructive possession, could foresee that she would be prosecuted and that the destroyed evidence was coveted by the government for use at a future trial.   By contrast, it is pure speculation to tie Caldwell's deletions/unsending to a grand jury he had no knowledge of.

[5] The government's claim that Caldwell's January 7, 2021 Facebook message to Crowl--"We stormed the gates of corruption together"--supports an inference that Caldwell knew Crowl entered the Capitol is unavailing.   First, Caldwell himself did not enter the Capitol; accordingly, as it is implicit in this message that Crowl engaged in similar conduct, the inference to be drawn is that Crowl, like Caldwell, did not enter the Capitol.   Second, Caldwell's message referred to "the *gates* of corruption," which suggests that Crowl entered gated grounds, not a building.

5

involved Crowl, the "nexus" connecting these acts to a grand jury was insufficient.

Respectfully, upon a reconsideration of the instant facts using the correct legal standards, the government's case comes up short. The government failed to meet its evidentiary burden to prove that Caldwell, at the time he allegedly swiped his phone and pushed the unsend button, was specifically intending to keep the subsequently deleted/unsent items from the consideration of "the Grand Jury investigation into the attack on the Capitol on January 6, 2021." (ECF No. 167, ¶168). The government adduced no evidence that Caldwell knew that an actual grand jury had been empaneled or that an actual law enforcement investigation was targeting him or his co-defendants. *See Aguilar*, 515 U.S. at 599 (A person who acts without "notice" that his conduct will affect an official proceeding "lacks the requisite intent to obstruct."). In short, the government adduced no evidence that, at the time of the deletions/unsending, Caldwell was aware that government officials were investigating his conduct on January 6 or, for that matter, the conduct of his co-defendants.

    C. *Caldwell was an accidental FBI target.*

Finally, the Court should recall that Special Agent Palian admitted that the FBI lacked "predication" to open up an investigation of Caldwell in the first place. (Tr., 1631-32). According to Palian, "predication for an investigation is the standard by which we need to have facts and circumstances which justify the FBI opening an investigation into a U.S. citizen[.]" (Tr., 1629). Palian acknowledged that his superiors authorized an investigation into Caldwell because he allegedly "had a leadership role in the Oath Keepers" and "stormed into the United States Capitol." (Tr., 1631). Palian conceded that the FBI got it wrong: Caldwell ("Commander Tom") was not an Oath Keeper, let alone a leader in that organization, and he did not enter the Capitol. (Tr., 1632). Accordingly, not only was Caldwell unaware of a grand jury-

level investigation coming his way, he could not "foresee" that an understandably rushed FBI investigation would accidentally target him based upon the mistaken belief that his retired Navy "Commander" status and a photo taken inside of an outdoor construction tunnel[6] were proof positive in the eyes of the government that he led a military-style attack on the U.S. Capitol.

### III.     CONCLUSION

The defendant, Thomas E. Caldwell, for the reasons stated above and in numerous prior filings regarding his properly preserved MJOA, respectfully requests that the Court reconsider its previous denial of his MJOA as to Counts 3 & 13 and, accordingly, grant his MJOA and find him not guilty as a matter of law pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

Respectfully submitted,

      /s/
David W. Fischer, Esq.
Federal Bar No. 023787
Empire Towers, Suite 1007
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for the Defendant

---

[6] Special Agent Palian acknowledged that a photo recovered from Facebook records taken by Caldwell inside of a construction tunnel far outside the Capitol was a significant basis for the FBI's mistaken belief that Caldwell entered the Capitol. (Tr., 1637-38).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of September, 2024, a copy of the foregoing Reply in Support of Motion for Reconsideration as to MJOA was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:    Kathryn Rakoczy, AUSA
Office of the United States Attorney
555 4th Street, NW
Washington, DC 20001

_____/s/_____
David W. Fischer, Esq.