IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 22-cr-15 (APM) |
| : | |
| THOMAS CALDWELL, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

Defendant Thomas Caldwell is scheduled to be sentenced by this Court on November 18, 2024. Caldwell was convicted at trial of two criminal offenses: obstructing Congress, in violation of 18 U.S.C. § 1512(c)(2), for his conduct at the United States Capitol on January 6, 2021, and obstruction of justice – tampering with documents, in violation of 18 U.S.C. § 1512(c)(1), for destroying evidence of his involvement and the involvement of his co-conspirators in that offense. Following the Supreme Court's decision in *United States v. Fischer*, 603 U.S. ----, 144 S. Ct. 2176 (June 28, 2024), the government withdrew its opposition to Caldwell's motion to set aside his § 1512(c)(2) conviction. The government submits this supplemental sentencing memorandum to amend its allocution in light of these recent developments. This memorandum incorporates by reference the facts, evidence, and arguments made in the government's previously filed sentencing memoranda and pleadings, including but not limited to those filed at ECF Nos. 565, 580, 613, and 895.

The government recommends that the Court sentence Caldwell to 48 months, or four years, of incarceration. Caldwell plotted with other affiliates of the Oath Keepers to forcibly oppose the certification of the 2020 presidential election, and then he joined the mob that attacked the Capitol on January 6, 2021. In his own words, Caldwell "heard that Pence fucked us . . . so I grabbed up my American flag and said let's take the damn capitol" and "let's storm the place and hang the

traitors." Caldwell "climbed the steps after breaking 2 rows of barricades, then got on the parapets" and cheered as "the people in front of me broke through the doors and started duking it out with the pigs who broke and ran," and "Then we started stealing the cops riot shields and throwing fire extinguishers through windows." In Caldwell's view, "It was a great time." But when it became clear, roughly a week later, that law enforcement was investigating Caldwell and his associates, he destroyed evidence of their involvement in these crimes. Caldwell's efforts to obstruct the investigation into the attack on the Capitol, like his participation in the attack itself, show a disdain for the rule of law that merits the government's recommended sentence.

I.      **Amended Sentencing Guidelines Analysis**

The United States Sentencing Guidelines applicable to Defendant Caldwell's § 1512(c)(1) conviction are as follows:

***Count Thirteen*** **(Tampering with Documents or Other Objects, 18 U.S.C. § 1512(c)(1))**

| Base Offense Level: | 14 | §2J1.2(a) |
|---|---|---|
| Specific Offense Characteristic | +3 | §2J1.2(b)(2) (substantial interference with the administration of justice) |
| Specific Offense Characteristic | +2 | §2J1.2(b)(3)(B) (especially probative record) |
| Total | 19 | Recommend Sentence: 30-37 months of incarceration |

Under the commentary to §2J1.2, a defendant's destruction of evidence may constitute "substantial interference with the administration of justice" if it resulted in "the unnecessary expenditure of substantial governmental or court resources." Here, because Caldwell deleted evidence of the underlying offenses from his Facebook account, the government had to expend substantial resources to execute additional search warrants to recover this evidence, including near-simultaneous search warrants on his residence and on the residences/persons/vehicles of co-conspirators Jessica Watkins and Donovan Crowl for their cellular telephones, computers, and

2

other digital devices. 10/03-04/22 Trs. (testimony of Special Agent Michael Palian); 11/02-03/22 Trs. (testimony of Special Agent John Moore).

The records Caldwell destroyed were especially probative. USSG §2J1.2(b)(3)(B). Through the testimony and evidence at trial, the government established that Caldwell deleted over 175 messages on his Facebook account, including messages he had sent to co-conspirators like Donovan Crowl, in which he discussed their actions on January 6, 2021. *See supra* at pgs. 31-32; *see also* 11/01/22PM Tr. at 6197; Gov. Exhs. 1051.1, 1105, 6734 (Msg. 2002.T.85E), 9079 (Msgs. 22.F.1.30-33). For example, on January 2, about 1.5 hours after co-conspirator Stamey told those on the DC OP: Jan 6 21 chat, "My sources DC working on procuring Boat transport as we speak," Caldwell sent a message, which he unsent on January 14, but which prompted the response, "Damn I wish I did lol. I'd be your captain for sure! And off the top of my head I can't think of anyone with a boat. Smoot has a bass boat. It wouldn't go on the Potomac though." Gov. Exh. 6923 (pages 61-63). Similarly, the government was also able to show through the Facebook records and phone of co-conspirator Crowl that Caldwell also deleted messages referencing photos and videos showing his, Watkins', and Crowl's participation in the attack on the Capitol. Gov. Exhs. 1051.1, 1105, 6734 (Msg. 2002.T.85E), 9079 (Msgs. 22.F.1.30-33); 11/02/22PM Tr. at 6553-54. These records were all highly relevant to the government's investigation into the events of January 6, 2021.

Finally, Caldwell does not meet the criteria at USSG §4C1.1, as he used credible threats of violence in connection with this offense and played a role in transporting firearms in connection with this offense. USSG §§4C1.1(a)(3), (7). The government introduced evidence at trial that Caldwell planned with members and affiliates of the Oath Keepers to oppose the lawful transfer of power following the 2020 presidential election; that Caldwell and his affiliates viewed

3

Congress' certification of the election on January 6, 2021, as a potential day of action for their plans; that Caldwell and his affiliates established an armed "quick reaction force" to support their January 6 operation, for which Caldwell selected the location and to which he contributed one firearm; and that on January 6, Caldwell entered the restricted areas of the Capitol grounds and, in his own words:

> heard that Pence fucked us . . . so I grabbed up my American flag and said let's take the damn capitol so people started surging forward and climbing the scaffolding outside so I said lets storm the place and hang the traitors. Everybody thought that was a good idea so we did. They threw some gas at it but we climbed the steps after breaking 2 rows of barricades, yhen got on the parapets and the people in front of me broke throgh the doors and started duking it out with the pigs who broke and ran. Then we started stealing the cops riot shields a d throwing fire extinguishers through windows. It was a great time.

Photographic and video evidence introduced at trial showed that these words were not mere hyperbole: Caldwell did, in fact, climb up through the scaffolding to join the mob on the lower west terrace of the Capitol.

The obstruction offense for which Caldwell is being sentenced involves the destruction of evidence of these very acts, including messages about the planning of the quick reaction force and references to photos and videos that Caldwell identified as showing the participation by himself, Watkins, and Crowl in the attack on the Capitol. Given this evidence of the use of violence and firearms in connection with the offense of conviction, the downward adjustment for lack of criminal history is not appropriate here.[1]

---

[1] The Guidelines' definition of "offense" is, with exceptions not applicable here, "the offense of conviction *and all relevant conduct under § 1B1.3*." U.S.S.G. § 1B1.1, n.1 (emphasis added). Relevant conduct encompasses "all acts and omissions committed . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(1)(A). And "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," relevant conduct includes "all acts and omissions" that were "within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable

At level 19, the Sentencing Guidelines recommend a sentence of 30-37 months of incarceration.

## II.     Grounds for Upward Departure or Variance

The Guidelines range outlined above does not capture the unprecedented and uniquely harmful nature of Caldwell's crimes, which struck at the heart of our democracy and the rule of law. Accordingly, this Court should apply an upward departure or variance in this case. *See* U.S.S.G. § 1B1.1(a)-(c).

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[2] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

---

in connection with that criminal activity." Here, where the jury found that Caldwell destroyed photographs, videos, and messages showing the involvement of Caldwell and his associates in the attack on the Capitol "with the intent to impair [those items'] integrity or availability for use in an official proceeding" involving the attack on the Capitol, it is hard to see how Caldwell's involvement in the underlying offense of the attack on the Capitol is not relevant conduct for the purposes of sentencing. *Accord United States v. Fields*, 72 Fed. Appx. 361, 363 (6th Cir. 2003) (observing, in the context of discussing when a court should apply the Section 2X3.1 cross reference rather than 2J1.1 as the base offense level for an obstruction offense, "[W]e believe that the Sentencing Commission intended a defendant's obstruction of justice sentence to be determined by the nature of the underlying offense.").

[2] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

5

Moreover, U.S.S.G. § 5K2.21 provides that "[t]he court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." Here, a jury found Caldwell guilty of obstructing Congress' certification of the Electoral College vote, but that conviction likely will be set aside because the jury instructions did not reflect the full elements of the offense as clarified by the Supreme Court in *Fischer*.

Caldwell was an avid and willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. His conduct targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Caldwell "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024).

And Caldwell's participation in the attack on the Capitol was not spontaneous. It followed weeks of plotting with his associates different ways to oppose the certification of the election. This included Caldwell's efforts to establish the armed "quick reaction force" to support this operation. As this Court has observed, engaging in "a series of acts in which you and others committed to use force, including potentially with weapons, against the government of the United States as it transitioned from one President to the other," is "among the most serious crimes an individual American can commit." *United States v. Rhodes, et al.*, No. 22-cr-15, 5/25/23AM Tr. at 113. "It is

6

an offense against the government to use force. It is an offense against the people of the country." *Id.*

But nothing in this defendant's Guidelines calculation reflects these facts. Defendant would face the same offense level if his crime had not endangered the democratic process or interfered with the peaceful transfer of power.[3] In other words, a sentence within the defendant's Guidelines range here would not fully "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Several judges of this Court have upwardly departed in January 6 cases because, in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

Recently, in *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly

---

[3] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, -- S.Ct. -- (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr., at 87-88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. The court also found an upward departure appropriate under

8

U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

Likewise, in *United States v. Dunfee*, 23-CR-36-RBW, Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(a)(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36-RBW, ECF No. 90, at 2. From an advisory range of 18-24 months, the court sentenced Dunfee to 30 months of imprisonment.

Most recently, in *United States v. Oliveras*, 21-CR-738-BAH, Judge Howell sentenced a defendant on a § 231(a)(3) conviction, a § 111(a)(1) conviction, and four misdemeanors, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Howell found an upward departure was warranted under U.S.S.G. § 5K2.7 (Disruption of Governmental Function) because

> after Fischer, with the dismissal of [the defendant's] 1512(c)(2) conviction, none of the conduct that goes into determining defendant's sentencing guidelines reflect his intent to engage in political violence that poses such a threat to our American democracy… His intent to obstruct Congress in the Electoral College certification by violence, if necessary, go above and beyond what any of his current convictions now take into account.

*Oliveras*, 21-cr-738 (BAH), Sentencing Tr. at p. 49. The court noted that "[i]n assessing the extent of the departure, review of how the guidelines for obstruction of an official proceeding at [U.S.S.G.

9

§] 2J1.2 would have applied to defendant [pre-*Brock*] provide a general guide… [and] an upward departure within that range is appropriate." *Id.* at 49-50. The court also noted that it "would impose the same sentence with… an upward variance for the same reasons that are outlined in 5K2.7 and consideration of the 3553(a) factors." *Id.* at 97. From an advisory Guidelines range of 37-46 months' imprisonment, the court sentenced Oliveras to 60 months of imprisonment.

Because the seriousness of defendant's crime is not adequately captured by the applicable Guidelines here, an upward departure is appropriate. If the Court declines to depart, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up).

Several judges in this district have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day; this Court should do no less. *See United States v. Reffitt,* 21-CR-32-DLF, Mem. Op. and Order 4/10/24 at 10-11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-638-TJK, Sent. Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37-TNM, Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow

rioters require additional punishment beyond what my [guideline] calculation allows.").[4]

For all these reasons, the government submits that an upward departure or variance would be warranted to reach an appropriate sentence in this case. To avoid unnecessary litigation, if the court applies either an upward departure or variance, the government requests that the Court make clear at sentencing that it would have imposed the same sentence regardless of whether it had applied that departure or variance, as an appropriate sentence considering the 3553(a) factors.

### III.    Application of the 3553(a) Factors

Caldwell purposefully destroyed evidence of his involvement in the attack on the Capitol and cavalierly suggested his associates do the same. To deter others from engaging in similarly obstructive conduct, and to promote respect for the rule of law, a significant sentence of incarceration is needed in this case.

As discussed above, the jury found Caldwell guilty of obstructing justice for deleting from his Facebook account 175 messages, as well as photographs and video, that documented his and his associates' involvement in the attack on the Capitol. The evidence at trial showed he also encouraged his co-conspirators to hide evidence of their involvement in the attack on the Capitol and to lie to law enforcement. In mid-January 2021, when Watkins and Crowl traveled to

---

[4] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that the Court make specific findings that this defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

Caldwell's residence to hide from the media and possibly law enforcement who had learned of their involvement in these offenses, Caldwell encouraged them to bring their "battle rattle" to "stash" at his home. Gov. Exh. 9079. Caldwell also told Watkins on January 9, 2021, not to worry about her face being associated with the riot in the media because, "If shit should ever come down, you were with me all the time and I'll swear to it." *Id.* Even Watkins knew better, responding, "There's too much evidence contrary. Perjury bad, lol." *Id.*

Additionally, Caldwell lied under oath during his trial testimony. Most notably, Caldwell denied observing any violence on January 6, which video evidence and his own statements belied. *Compare* 11/15/22PM Tr. at 8861 (claiming repeatedly that there were no "barriers"), 9001 (claiming he did not observe violence or know he was participating in a riot), 9006 (claiming he did not learn of any violence until "many days later" after January 6), *with* Gov. Ex. 6923 (Msg. 22.T.26.3) (Caldwell's January 6 message were he describes climbing through scaffolding "meant to stop us"); Gov. Ex. 1500 (video of Caldwell and his wife detailing the "tear gas," "barriers," and "rubber bullets" they fought through), Gov. Ex. 6734 (Msgs. 22.T.6.1, 22.T.27.2883) (Caldwell's January 6 message about "assault[ing] the Capitol" and having a "great time"); Gov. Ex. 6734 (Msg. 2002.T.79B) (Caldwell's January 6 where he recounts watching Proud Boys leading violence against law enforcement). Caldwell also denied meeting with Oath Keepers on the morning of January 6, when video recorded from his own phones shows that he did. *Compare* 11/15/22PM Tr. at 8996 ("Q: So the morning of the 6th, you weren't near any Oath Keepers at all? A: No."), *with* Gov. Ex. 22.V.3 (video from Caldwell's phone showing him and his spouse with numerous Oath Keepers co-conspirators).

Defendant Caldwell's destruction of evidence reflects the disrespect for the rule of law that he showed on January 6, 2021. In his own words, "storm[ing]" the Capitol and participating in a

mob that "[broke] 2 rows of barricades, [t]hen got on the parapets and . . . broke thro[u]gh the doors and started duking it out with the pigs who broke and ran" was "a great time." Caldwell has shown no remorse since his arrest and convictions. Far from accepting responsibility for participating in the attack on the Capitol and its impact on the lawful transfer of power, he has claimed in media appearances that he was "falsely arrested" and being persecuted by a government akin to "Nazi Germany." ECF No. 565 at 162-163 (quoting Gov. Ex. Sent-Caldwell-3 at 15 and Ex. Sent-Caldwell-5).

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. *See United States v. Perkins*, 21-CR-147-CJN, Sent. Tr. at 53 ("January 6th wasn't an ordinary violent riot but one that interfered with the counting of electoral votes and the peaceful transition of power, which is one of the bedrocks of our democracy."); *United States v. Fitzsimons*, 21-CR-158-RC, Sent. Tr., at 85-86 ("The security breach forced lawmakers to hide inside the House gallery until they could be evacuated to undisclosed locations. In short, the rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's

democracy.").

It is critically important for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. Here, defendant not only participated in the attack on the Capitol but also sought to destroy evidence of his involvement. Thus, the need for a significant sentence of incarceration is even more important for an offender like Caldwell, in order to promote respect for the rule of law.

### IV. Conclusion

January 6, 2021 was an incredibly dark day for our democracy, because it showed the fragility of the rule of law in this country. The defendant participated in this attack, bragged about it, and then tried to cover it up. For these actions, Caldwell deserves a significant sentence of incarceration.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:      /s/
Kathryn L. Rakoczy
D.C. Bar No. 994559
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530