**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES                               *

vs.                                         *   Case No.: 22-15-APM

THOMAS E. CALDWELL                          *

   *   *   *   *   *   *   *   *   *   *   *

**CALDWELL'S REPLY TO THE GOVERNMENT'S SUPPLEMENTAL
SENTNECING MEMO**

COMES NOW, the defendant, Thomas E. Caldwell ("Caldwell"), by and through counsel, David W. Fischer, Esq., and files *infra* a reply to the Government's Supplemental Sentencing Memorandum (ECF No. 905).

**I.**     ***Caldwell did not "substantially interfere with the administration of justice."***

The Government lobbies for a 3-level increase in Caldwell's Offense Level pursuant to U.S.S.G. §2J1.2(b)(2) based upon his alleged "substantial interference with the administration of justice."   In support, the Government alleges that "it had to expend substantial resources to execute additional search warrants . . . on [Caldwell's] residence" and the residences and digital devices of co-defendants Crowl and Watkins.   (ECF No. 905 at 2).   The Government's position without merit.

While true that the Government orchestrated an expensive, pre-dawn Waco-style raid on Caldwell's home, complete with a battering-ram tank, a dozen agents wielding machine guns, and laser dots pointed on Mrs. Caldwell's forehead, Caldwell's alleged

1

evidence tampering did not prompt the FBI's actions. In fact, it was the Government's rush to judgment that prompted the outrageous use of force against two harmless senior citizens. The FBI, as noted in previous filings, mistakenly believed that "Commander Tom"—a reference to Caldwell's Navy rank-- was the "Commander" of the Oath Keepers; that Caldwell was scouting an attack on the Capitol via a "pre-strike recce," which turned out to be a quest to determine the number and location of Port-o-Potties near the Ellipse and ended at Camelot D.C.; that Caldwell personally led a group of Oath Keepers inside of the Capitol; that Caldwell physically entered the Capitol based upon a picture of an outdoor construction tunnel; and that Caldwell plotted a pre-planned attack on the Capitol. FBI Special Agent Michael Palian conceded, however, that the Government, in retrospect, *lacked predication to open an investigation on Caldwell in the first place*.

The U.S. Attorney for the District of Columbia at the time, Michael Sherwin, admitted that his office engaged in fast-moving "shock and awe" tactics to dissuade future events like January 6. Sherwin and FBI Director Christopher Wray also indicated that quick arrests were needed to protect government officials before and during Inauguration Day 2021. The Government was obviously in a rush to make January 6-related arrests, which resulted in an unnecessary pre-dawn raid of Caldwell's farm. Caldwell, who does not contest the Government's stated motive for moving at lightning speed in its investigation, nonetheless is not responsible for the raid on his residence. He is also not responsible for investigative costs regarding Watkins and Crowl, who were

2

FBI targets days before Caldwell. Accordingly, Caldwell should not receive a 3-level increase for "substantial interference with the administration of justice."

## II.     *Caldwell qualifies as a Zero-Point Offender*

The Government's claim that Caldwell does not qualify as a Zero-Point Offender pursuant to U.S.S.G. §4C1.1(a) because "he used credible threats of violence in connection with this offense" is also without merit. The Government's definition as to what constitutes the "offense" is overly broad. Caldwell's "offense" was evidence tampering pursuant to 18 U.S.C. §1512(c)(1), which allegedly took place eight days *after* January 6. Obviously, Caldwell did not use "violence" or "credible threats of violence" when he allegedly deleted/unsent social media. By its plain wording, accordingly, Caldwell is not disqualified from receiving a Zero-Point Offender deduction under §4C1.1(a).

The Government, nonetheless, argues that Caldwell is on the hook for "jointly undertaken criminal activity," i.e., what his co-defendants did one week earlier on January 6. In making its argument, however, the Government left out an important sentence, bolded and italicized below, from the U.S.S.G.'s definition as to what constitutes "relevant conduct," which includes

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with

3

others, whether or not charged as a conspiracy), all acts and omissions of others that were—

(i) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity;

*that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense*;

U.S.S.G. §1B1.3(a) (emphasis added).   Contrary to the Government's position, to be "relevant conduct," the "acts and omissions of others" must have taken place during, in preparation for, or to cover up "the offense *of conviction*."   Caldwell's "offense of conviction" was evidence tampering on January 14, 2021, which he allegedly did *by himself*.   None of Caldwell's co-defendants participated in the deletion/unsending of Caldwell's social media as alleged in the Indictment.   Accordingly, Caldwell must receive a 2-level reduction in his Offense Level for being a Zero-Point Offender.

### III. Caldwell should not receive a 2-level increase under U.S.S.G. §2J1.2(b)(3)(B) (especially probative records)

The Government argues that Caldwell qualifies for a 2-level increase in his Offense Level based upon U.S.S.G. §2J1.2(b)(3)(B), which applies "[if] the offense . . . (B) involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter[.]"   U.S.S.G. §2J1.2(b)(3)(B).   Once again, however, the Government recycles the Caldwell-boat narrative, which Caldwell debunked in previous filings, to support its position.   As noted previously, the Government's own

4

exhibit proved that Paul Stamey solicited a boat from Caldwell, not vice-versa. Further, Stamey told the FBI during a full-day interview that it was he, not Caldwell, who solicited the boat. In response to Stamey inquiring about a boat, Caldwell "asked around" to see if anyone had a boat and, thinking out loud, observed that a boat could be used to cross the Potomac in the event that bridges were closed. Caldwell's "musing" was based upon concerns about Antifa attacking Trump supporters. It was never adopted by anyone and a boat was never used. Additionally, no member of the North Carolina Oath Keepers—*the group that solicited the boat*-- has been prosecuted by the Government.

Next, the Government's complaint that "photos and videos showing [Caldwell's], Watkins', and Crowl's participation in the attack on the Capitol" had been deleted is without merit. During the search of Caldwell's residence, FBI agents recovered a Western Digital hard drive and Caldwell's cell phone, which each contained backup copies of all photos and videos that Caldwell took on January 6. Caldwell also gave a lengthy FBI interview upon his arrest wherein he fully and accurately debriefed agents as to his whereabouts and activities on January 6. Ironically, Caldwell *preserved and multiplied* the photographic and video evidence of his activities on January 6 and had them available upon demand for investigators.

At trial, the Government introduced many of the recovered photos and videos into evidence and argued that these items were "probative" of Caldwell's conspiratorial connections with the Oath Keepers. The jury didn't buy the Government's case, and

acquitted him of all conspiracy counts. The Government, moreover, has conceded that these photos and videos did not add up to legally sufficient evidence, post-*Fischer*, to convict Caldwell of a violation of 18 U.S.C. §1512(c)(2). If the jury did not find Caldwell's alleged deletions/unsending "essential" or "especially probative," why, respectfully, should the Court find to the contrary? Accordingly, Caldwell should not receive a 2-level increase pursuant to §2J1.2(b)(3)(B).

### IV.     *Affidavit by Dr. Diane Sommer regarding Caldwell's Medical History.*

Attached as Exhibit A is a lengthy affidavit and *curriculum vitae* from Dr. Diane Sommer, a recently retired physician who most recently served as the Northeast Regional Medical Director for the Bureau of Prisons, where she oversaw 16 BOP medical facilities. The Court, approximately a year ago, requested that Caldwell provide the Court with an Independent Medical Examination and updated medical records.[1] Dr. Sommer reviewed numerous up-to-date medical records in February and has provided a comprehensive outline of Caldwell's health and how his medical conditions will impact his potential placement in the BOP.

---

[1] Because of Caldwell's medical issues, the *Robertson* decision, and the *Fischer* decision, the instant sentencing has been delayed multiple times. Undersigned counsel intended to file Dr. Sommer's affidavit sooner as a part of an updated sentencing memorandum. The undersigned, however, just recently realized that Dr. Sommer's affidavit had not yet been filed with the Court. Undersigned counsel is willing to make Dr. Sommer available to the Government on an expedited basis if necessary. Additionally, undesigned counsel is expecting a letter from Caldwell's neurosurgeon soon, who recently performed a spinal neck fusion. That letter will be forwarded to the Court upon receipt.

Importantly, Dr. Sommer noted that the BOP does not stock certain medications prescribed to Caldwell in its formulary and therefore will "not honor the specific drug regime" currently prescribed to him. (Exhibit A, at 5). As the Court may recall, Caldwell suffered greatly during his 53 days of incarceration at the Central Regional Jail in Virginia because that facility's medical staff sought to substitute and withhold certain medications from Caldwell. Caldwell has been treated by a pain management specialist for many years who has, through trial and error, fine-tuned a cocktail of medicines that provide Caldwell with the maximum quality of life. A BOP sentence will result in Caldwell's carefully crafted prescription diet being upended.

Additionally, Dr. Sommer opined that Caldwell would be designated "Care Level 3" at the BOP. *Id*. at 3. Care Level 3 beds, however, are scarce. Accordingly, Dr. Sommer indicated that Caldwell "would be assigned to whatever bed is available upon his designation," which could be at a "low" or even "medium" BOP prison "far away" from his wife in Virginia. *Id.* Finally, as a Care Level 3 inmate, Caldwell will be housed "in the general population" and will be denied the use of his special bedding and chairs. *Id*. at 4. Dr. Sommer's affidavit should carry great weight, as her "opinion as to the ability of the BOP to adequately treat inmates was solicited dozens of times by the Government" before she retired from BOP in October 2023. *Id*. at 1.

### V.     *Caldwell has earned the benefit of the doubt.*

The instant reply is being filed on Veteran's Day. Thomas Edward Caldwell, in

7

the service of his country in an undeclared war, suffered a combat-related back injury that has gradually decimated his health. He lives in pain every single day of his life. The picture painted of Caldwell by the Government in sentencing filings is clearly inconsistent with the evidence presented at trial. A sentence of 53 days, with credit for time already served, is appropriate under the factors set forth in 18 U.S.C. §3553(a).

                                              Respectfully submitted,

                                              /s/
                                        David W. Fischer, Esq.
                                        Federal Bar No. 023787
                                        Empire Towers, Suite 1007
                                        7310 Ritchie Highway
                                        Glen Burnie, MD 21061
                                        (410) 787-0826
                                        Attorney for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of November, 2024, a copy of the foregoing Caldwell's Reply to the Government's Supplemental Sentencing Memorandum was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:    Kathryn Rakoczy, AUSA
                                           Office of the United States Attorney
                                           555 4th Street, NW
                                           Washington, DC 20001

                                                        /s/
                                           David W. Fischer, Esq.