IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | * |
| vs. | *   Case No.: 22-15-APM |
| THOMAS E. CALDWELL | * |

\* \* \* \* \* \* \* \* \* \* \*

**CALDWELL'S SUPPLEMENTAL REPLY REGARDING HIS RECONSIDERATION REQUEST FOR MOTION FOR JUDGMENT OF ACQUITTAL**

In reply to the Government's Supplemental Response to Defendant's Motion to Reconsider Order Denying Motion for Judgment of Acquittal, Caldwell sets forth additional arguments *infra*.

## I. THE D.C. CIRCUIT RECENTLY ADOPTED CALDWELL'S PROFFERED "NEXUS" STANDARD.

The D.C. Circuit recently adopted Caldwell's proffered "nexus" standard in a Section 1512(c)(1) prosecution. *See United States v. Riley*, 115 F.4th 604, 611 (D.C. Cir. 2024) ("We hold that the indictment adequately alleges that Riley *intentionally acted in a manner he knew had the likely effect of obstructing a reasonably foreseeable grand jury*.") (emphasis added). Accordingly, to win a conviction as to Count 13 (Tampering with Documents), the Government was required to prove that Caldwell knew his conduct *would* obstruct a foreseeable grand jury, not that it *might* do the same.

## II. THE CASES CITED BY THE GOVERNMENT ACTUALLY BOLSTER CALDWELL'S ARGUMENT FOR MJOA.

The Court invited the Government to cite specific cases with factual scenarios analogous to the instant case wherein Section 1512(c)(1) convictions were upheld. Ironically, the Government's proffered cases bolster Caldwell's position and highlight the evidentiary gap in the instant case.

1

A. <u>*United States v. Pepe*</u> **is obviously distinguishable.**

The Government's reliance on *United States v. Pepe*, No. 21-cr-52-TJK, is misplaced. In *Pepe*, the defendant was clearly aware that he was "the target" of a high-profile FBI investigation and that authorities "were building a case against him." *United States v. Wellman*, 26 F.4th 339, 348 (6th Cir. 2022). Contemporaneous to his deletions of social media communications, Pepe self-described himself as a "wanted" man, repeatedly proclaimed that he was "going to jail," and contemplated turning himself in to authorities. *Pepe*, Tr. at 48, 55-56, 60. In one message, Pepe suggested that he "[d]eleted everything" because he faced "jail time." *Id*. 59-60. Before Pepe "deleted everything," he sent his father a link to a *New York Post* article, which prominently featured his picture inside the Capitol Building and characterized Pepe and others depicted as "suspects" and "persons of interest." *Id*. at 60. The *Post* article also noted that the F.B.I. released "wanted photos" for people who participated in the Capitol Riot. *Id*.

Unlike Caldwell, Pepe knew that he was a high-priority target of a large-scale F.B.I. investigation into the events of January 6. Judge Kelly, referencing *Wellman*, ruled that a grand jury was foreseeable to Pepe because he "knew he was a target of an intense and rapidly developing law enforcement investigation[.]" *Id*. at 61. The Government, by contrast, adduced no evidence that Caldwell expressed knowledge or fear of criminal prosecution.[1] Caldwell, in fact, could not have been on notice that he was an investigatory "target" because, at the time of his alleged obstructive acts, he was unknown to the F.B.I. *See*

---

[1] The Government also adduced no evidence that Donovan Crowl himself knew that he was under F.B.I. investigation or was the target of a grand jury probe. Caldwell's alleged unsending/deletion involved prior social media contacts with Crowl.

2

*Wellman*, 26 F.4th at 348 (holding that to prove grand jury obstruction, the Government must set forth specific evidence that the defendant knew he was "the target" of federal authorities).

*Pepe* does not help the Government's case. Instead, *Pepe* confirms that the Government was required to prove that Caldwell was on actual notice that he was the target of a federal investigation and that authorities were building a case against him.

**B. <u>United States v. Riley</u> also bolsters Caldwell's argument for MJOA.**

Next, the Government cited *United States v. Riley*, 115 F.4th 604 (D.C. Cir. 2024), in support of its "nexus" argument. Like *Pepe*, however, *Riley* bolsters Caldwell's argument in support of his MJOA as to Count 13.

1. *Unlike Caldwell, Riley had knowledge of January 6 mass prosecutions and the grand jury process*.

The obstructive acts engaged in by the defendant in *Riley*, like in *Pepe,* were clearly linked to a foreseeable grand jury. Riley, a Capitol Police officer, specifically alerted a January 6 rioter named Hiles that he (and everyone who entered the Capitol on January 6) would be charged with "felonies." *Id*. at 608. Riley then encouraged Hiles to delete an incriminating Facebook post wherein Hiles acknowledged being inside the Capitol on January 6. *Id*. Subsequent to his arrest, Hiles alerted Officer Riley that the FBI had questioned him regarding Facebook communications between the pair, which prompted Riley to delete his communications related to Hiles from his phone. *Id*.

Riley's conduct highlights the evidentiary gap in the instant case. First, Riley, as a Capitol Police officer, clearly knew that his friend Hiles, like others who entered the Capitol Building, was the target of a wide-ranging federal law enforcement investigation. Second, Riley, through his law enforcement experience, admitted that he had gained intimate knowledge as to how a

grand jury investigation operates and that all felonies, which he admitted that he foresaw, are indicted by a grand jury.[2]  *Id*. at 613.  Third, Riley knew that Hiles was questioned by the FBI about their communications which, accordingly, became material to the grand jury's investigation.  Fourth, Riley admitted that he deleted his communications with Hiles to prevent investigators from obtaining them, which constituted a direct obstruction of the grand jury.  *Id*. at 614 ("A grand jury's investigatory scope foreseeably includes attempts to obstruct its own proceedings.").

The "nexus" between Riley's obstructive acts and a foreseeable grand jury was overwhelming.  Riley knew that certain categories of rioters would be charged with felonies and, "based upon his experience, that a federal grand jury would have to bring those charges." *Id*. at 16.  Riley also knew that the F.B.I. would be questioning him about his communications wherein he advised Hiles to destroy evidence; evidence of grand jury obstruction, of course, is germane to the grand jury that was obstructed.  In fact, Riley's own testimony was damning and supported an inference that he "sought to hide his messages from the grand jury."  Riley's conduct, unlike Caldwell's, was directly tied to a grand jury investigation.[3]

---

[2] Contrary to the Government's claim, Caldwell's brief stint at the F.B.I. processing background checks hardly suggests that he possessed particularized knowledge of the grand jury system. Even law enforcement officers are not presumed to have specialized knowledge of the operation of grand juries.  *See, e.g., United States v. Young*, 916 F.3d 368, 388 (4th Cir. 2019) ("Furthermore, although Young worked in law enforcement, the Government's evidence failed to establish that he was routinely involved in grand jury proceedings—or, for that matter, had ever testified in such a proceeding.").

[3] The Government's reliance on *Binday* is also to no avail, as the defendant in that case obviously knew he was the target of an F.B.I. investigation involving a large insurance fraud in which he was involved before he destroyed evidence.  *United States v. Binday*, 804 F.3d 558, 590 (2d Cir. 2015).

C. *The evidence against Caldwell is weaker than the evidence in <u>United States v. Young</u>.*

In response to the Court's inquiry, Caldwell's position is that the evidence in the instant case is far weaker than the evidence that the Fourth Circuit found insufficient in *Young*. In *Young*, the defendant knew that he was on the F.B.I.'s radar, was likely under surveillance, and that some of his acquaintances had been arrested. *United States v. Young*, 916 F.3d 368, 387-88 (4th Cir. 2019). "[A]n F.B.I. investigation," moreover, was "foreseeable to [Young]." *Id*. at 387. The *Young* defendant anticipated that "the F.B.I. would investigate him after becoming aware that Mo had joined ISIL and that they knew one another." *Id*. While Young's conduct was "design[ed] . . . to obstruct *an F.B.I. inquiry*—which he did foresee," this conduct was insufficient to establish that Young "foresaw a specific grand jury investigation." *Id*. (emphasis added). "Under the plain reasoning of *Young*," evidence alone that a defendant "destroy[ed] evidence of a possible crime . . . is not sufficient to convict him under §1512(c)." *United States v. Wysinger*, 2019 U.S. Dist. LEXIS 106320, at *15 (W.D. Va. 2019). Instead, to prove a nexus to a foreseeable grand jury, the Government was required to show that Caldwell knew that authorities were building a case against him. *See Id*. at *21 (granting MJOA in a Section 1512(c)(1) prosecution based on *Young*: "But no one was waiting at the door with a warrant; no law enforcement agent was asking questions.").

In contrast to *Young*, the Government's evidence was insufficient to establish the foreseeability to Caldwell of an F.B.I. investigation *itself*, let alone a grand jury investigation. Caldwell never once expressed concern that he was being investigated by law enforcement. Crowl, likewise, never expressed any such concerns. And Watkins, after expressing a brief concern that she could potentially be "wanted" because of the misleading placement of her photograph next to a "title" referencing dead police officers, ultimately, after some back-and-

5

forth, told Caldwell that she no longer harbored such worries. The Government adduced no evidence that Caldwell knew that either himself, Crowl or Watkins were *actually* being investigated by *actual* law enforcement or a grand jury at the time of his unsending/deletion. As Caldwell noted in a previous filing, not one of the scores of reported appellate-level cases involving Section 1512 convictions has found a "nexus" between obstructive conduct and a grand jury without the defendant, at a minimum, having *actual knowledge* of some *official* action by the government directed at him or his co-conspirators.

### III. THE GOVERNMENT'S EVIDENCE WAS INSUFFICIENT.

#### A. *The CNN article.*

The Government referenced a January 8, 2021 CNN article that Caldwell forwarded two days later to a Facebook friend as substantial proof of Caldwell's state of mind. The specific contents of the CNN article, however, are unknown as the news article itself is not in evidence. Instead, in evidence is the link to the article: URL: https:/www.cnn.com/2021/01/08/politics/us-capitol-riots-arrest-pelosi-desk/index.html. Gov. Exh. 2001.T.1 at 89. The Government further observed that Caldwell forwarded this same link to Crowl with a message that read: "Read down, past the read more part. They are READING OUR EMAILS AND JUST LOCKED UP A GUY WE [sic] IN A PERSONAL TEXT MSG SAID HE WANTED TO KILL PELOSI. WATCH WHAT YOU SAY IN TEXTS." ECF No. 928 at 5-6, *citing* Gov. Exh. 2002.T.61 at 32.

Several objective, rational inferences can be gleaned from this evidence, none of which support the Government's claim that Caldwell was on actual notice that he (or Crowl and Watkins) was the target of a grand jury investigation. First, the verbiage of the link itself ("capitol-riots-***arrest***") suggests that the CNN article focused on the arrest of *one* person. Second, this arrest had something to do with conduct directly targeting House Speaker Pelosi's

desk or threats made against her or both. Third, Caldwell's advisement to Crowl was to eschew polemic or provocative statements in his *future* private communications as they may be read by others.

The CNN evidence does not, as the Government stridently claims, prove that "Caldwell was aware of the *massive law enforcement investigation* into the attack on the Capitol and that *arrests* had been made" of those similarly situated to Caldwell. First, *one* arrest for conduct *specifically aimed at the Speaker of the House* would hardly put Caldwell, who engaged in no acts of violence while remaining outside of the Capitol, on notice of a "massive law enforcement investigation" or that his relatively benign conduct would make him a criminal target. Second, it is not clear from the link who made the arrest (Seargeant-at-Arms for the House, Capitol Police, D.C. Metro Police, or the F.B.I.?) and whether the person was charged with a felony or misdemeanor, which would not require a grand jury.[4] Third, it is clear that neither Caldwell nor Crowl personally knew the individual who was arrested ("JUST LOCKED UP *A GUY*"). As such, the CNN evidence does not establish that Caldwell was a aware of the F.B.I.'s investigation, felony arrests of similarly situated protestors, or a grand jury investigation.

 B. *Watkins and Crowl.*

The messages among Caldwell, Watkins and Crowl are insufficient to show a nexus to a foreseeable grand jury proceeding.

 1. *Watkins and Crowl went to Caldwell's farm to avoid the media, not law enforcement.*

---

[4] In *Riley,* the D.C. Circuit strongly suggested that a defendant's knowledge that he potentially faced misdemeanor charges, which do not require a grand jury, is not enough to prove grand jury foreseeability. *Riley,* 115 F. 4th at 613.

7

The Government's claim that Watkins and Crowl traveled to Caldwell's farm to flee law enforcement is unsupported by the evidence. On January 14, 2021 at 9:10 a.m., Watkins messaged a contact that "the Washington Post reposted The Guardians' story about Zello." Govt. Exh. 192.T.1772. Importantly, that same morning at 11:55 a.m., Watkins messaged Crowl: "I have half a mind to spend a week with Commander Tom until *the media vultures* find a new carcass to pick clean." Govt. Exh. 2003.T.284.F (emphasis added). Approximately 35 minutes later, Crowl messaged Caldwell: "We will be leaving here at 1430. That will put us at your place between 2030 and 2100." Govt. Exh. 200.T.3.5.

Accordingly, the only objective, rational inference to be drawn from this evidence is that Watkins and Crowl went to Caldwell's farm to avoid the media. No messages were sent among the trio suggesting that evading law enforcement was the purpose for the trip to Caldwell's farm.[5] Respectfully, the Court cannot simply ignore the *stated reason* for the visit to Caldwell's farm--to avoid the media--and replace it with the Government's hypothesis that Watkins and Crowl were hiding out from law enforcement. Finally, a logical inference from this evidence is that Caldwell was aware that the pair came to his farm to avoid the media, not law enforcement.[6]

2.  *Caldwell did not offer to "hide" evidence.*

The Government observed that Caldwell messaged Crowl and Watkins that they could "Bring full battle rattle to stash here if you want." ECF No. 928 at 8, *citing* Gov. Exh. 9079 at 45. According to the Government, it "is difficult to imagine from whom Crowl and Watkins

---

[5] In fact, upon learning of the F.B.I.'s raid of Watkins' residence on January 17, both Crowl and Watkins turned themselves in *that same day* in Ohio. Tr. at 2490, 2568 (testimony of F.B.I. Special Agent Eller). Promptly driving themselves back to Ohio to surrender to authorities undercuts the Government's claim that Crowl and Watkins were running from the law.

[6] Avoiding the media explains why Caldwell advised Crowl to make sure that he wasn't being followed as the pair got closer to his residence.

would have needed *to hide* their battle rattle other than law enforcement." *Id*. at 9 (emphasis added).  Contrary to the Government's claim, Caldwell was not offering to "hide" anything.

Caldwell understands why federal prosecutors would reflexively assume that the word "stash" has criminal overtones (e.g., drug stash).  By contrast, non-lawyers typically use the word "stash" to simply mean "store" or "put away" in a non-secret manner.[7]  Watkins and Crowl evinced an intent to be away from Ohio for at least a week to avoid the media.  Trial evidence showed that Oath Keeper members routinely traveled around the country with their military-style gear.  Caldwell essentially stated that he had no opposition to the pair bringing their Oath Keepers gear to his farm.[8]  Notably, Watkins did not bring to Virginia her "battle rattle," which the F.B.I. recovered during the search of her residence.[9]

---

[7] *Merriam Webster's Dictionary* lists the following examples of "stash" being used as a verb to simply mean "store":

--"The pack is small enough to stash in your glove box and not take up a ton of room."

--"The FoodSaver System helps stash your grub in the freezer and stretch your dollar."

--"Roughly a quarter of their income is automatically stashed in investment accounts."

--"There are many cubbies in the front and rear for stashing bottles and other stray stuff, and space up front is generous for [tall] passengers."

MERRIAM'S WEBSTER'S DICTIONARY, https://merriam-webster-com/dictionary/stash.

[8] It would seem odd that Caldwell would unsend/delete Facebook messages for the purpose of distancing himself from Crowl and Watkins, and then turn around and tell them to bring their incriminating gear with them to his farm.

[9] The F.B.I. recovered a helmet, goggles, radio, knuckle-gloves, plate carrier, and pepper spray in Watkins' residence.  Tr. at 2488-2494 (testimony of Special Agent Eller).  Special Agent Eller testified that these items appeared to be the same items Watkins carried on January 6.  Tr. at 2495-96.  As Crowl was not in Caldwell's trial group, there was no testimony regarding his gear.

9

## IV. CALDWELL IS CHARGED WITH OBSTRUCTING A GRAND JURY, NOT A "COURT PROCEEDING."

Latching on to Judge Kelly's ruling in *Pepe*, the Government argues that Caldwell knew his conduct would obstruct the potential arrest of himself, Crowl or Watkins, which in turn would obstruct future "court proceedings." According to the Government, Caldwell's obstructive acts were "related to a foreseeable *court proceeding* that he anticipated would result from the criminal charges that . . . *might* soon be brought against [Crowl, Watkins and himself]." ECF No. 928 at 9 (emphasis added). Further, the Government urged that Caldwell's deletions were "motivated by a desire to avoid having those messages used to support *the arrest* (and subsequent *court proceedings*) of himself, Watkins, or Crowl." *Id*. at 12 (emphasis added).

The Government's "court proceedings" and "arrest" argument, ECF No. 928 at 12-14, however, is based upon a complete misunderstanding of Judge Kelly's findings in *Pepe*. Notably, the indictment in *Pepe* is worded differently than Caldwell's indictment[10] in that it alleged obstruction of ***two*** separate official proceedings: 1) the "grand jury investigation into the attack on the U.S. Capitol on January 6"; and, 2) "the federal criminal prosecution of Pepe in the United States District Court for the District of Columbia." *See Pepe*, ECF No. 157 at 3 (Count 5 of the Second Superseding Indictment).[11] In other words, the Government had to prove that Pepe obstructed *either* a foreseeable grand jury *or* a foreseeable federal trial or both. Judge Kelly found that the Government had proved obstruction of both official proceedings.

---

[10] Caldwell was indicted with obstructing solely "the Grand Jury investigation into the attack on the Capitol on January 6, 2021." ECF No. 167, ¶168 (Indictment).

[11] Judge Kelly noted that the parties jointly agreed to the following proposed instruction of law as to Pepe's evidence tampering count: "that 'official proceeding' means the grand jury's investigation into the attack on the United States Capitol on January 6, 2021 and the federal criminal prosecution of the defendant." *Id*. at 57 (emphasis added).

Judge Kelly's finding, relied upon by the Government, that "prosecution in court was thus foreseeable" to Pepe dealt exclusively with the Government's burden to prove obstruction of Pepe's "federal criminal prosecution in the United States District Court for the District of Columbia." *Id*. at 61-62. In his separate finding on *grand jury* foreseeability, Judge Kelly opined: "But given the overwhelming evidence *that the defendant knew he was the target of an intense and rapidly developing law enforcement investigation* . . . I find that the convening of a grand jury to investigate the defendant . . . was foreseeable." *Id.* at 61 (emphasis added). Judge Kelly certainly wasn't suggesting that obstructive acts for the purpose of preventing one's arrest—and, thus, one's prosecution in a "court proceeding" -- is equivalent to the foreseeability of a grand jury investigation. *See Young*, 916 F.3d at 387 (holding that defendant's obstructive acts "designed to thwart an FBI inquiry" are not enough to prove a violation of Section 1512(c)(1)).

V.     **CALDWELL DID NOT DESTROY "CONTRABAND."**

Next, the Government attempts to distinguish the instant case from *Aguilar* and *Young* on the grounds that those cases involved lying to federal agents, whereas Caldwell allegedly deprived the government of physical evidence. The Government's argument is without merit. The Government's reliance on *Johnson* is misplaced, as that case involved the methodical destruction of *contraband* (illegal narcotics) prior to a search warrant execution, and the defendant's indictment, like Pepe's, charged her with obstructing *either* a grand jury *or* "a proceeding in the U.S. District Court for the Southern District of Illinois." *United States v. Johnson,* 655 F.3d 594, 605 (7th Cir. 2011). The *Johnson* Court ruled: "But why else would Lamb aggressively destroy contraband while authorities were attempting to exercise a search warrant, other than to . . . eliminate the evidence . . . against her and Johnson *at their eventual*

11

*criminal prosecution.*" *Id*. at 606 (emphasis added).[12]  In contrast, Caldwell did not unsend/delete "contraband," which *ipso facto* makes the possessor guilty of a crime.  And Caldwell's indictment specifically identifies the grand jury investigating January 6 as the singular, particular "official proceeding" that he intended to obstruct.  Finally, the *Johnson* defendant was obviously on notice that she was under investigation, as the police were surrounding her house armed with a search warrant.

### VI.   CALDWELL DID NOT OFFER TO PROVIDE FALSE TESTIMONY.

The Government clings to Caldwell's off-hand joke to Watkins: "Fear not . . . If any shit should ever come down, you were with me the whole time and I'll swear to it."  Watkins, who noted that she was laughing out loud at Caldwell's quip, replied "Perjury bad. Lots of evidence to the contrary."  Assuming, *arguendo*, that Caldwell was not obviously joking, the Government's claim that Caldwell was offering to provide "false testimony" is dubious.  First, the word "swear" does not automatically connote: "I will take the witness stand in a court of law."[13]  Individuals frequently use the term "swear" to simply emphasize—outside of a courtroom--a statement or claim.  Second, just because Watkins used the word "perjury" does not mean Caldwell literally meant swearing an oath on a Bible in court.  Taken literally, Caldwell could have meant that he would "swear" to the media, the police, or others that Watkins was with him.

---

[12] The *Johnson* Court characterized the evidence against the defendant as "not . . . overwhelming." *Id*. at 607.  Moreover, it is doubtful that the Court would have upheld the defendant's Section 1512(c)(1) conviction had the indictment been limited to obstructing a grand jury investigation.

[13] Merriam Webster's Dictionary, in addition to noting that "swear" means to make a statement under oath, also defines the word to mean: "to assert or promise emphatically or earnestly" and "to state or promise strongly or sincerely."  MERRIAM'S WEBSTER'S DICTIONARY, https://merriam-webster-com/dictionary/swear.

## VII. CONCLUSION

As the Government has failed to meet its evidentiary burden as to Counts 3 and 13 of the Indictment, Caldwell respectfully requests that his Motion for Judgment of Acquittal be granted as to both counts.

Respectfully submitted,

/s/
David W. Fischer, Esq.
Federal Bar No. 023787
Empire Towers, Suite 1007
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for the Defendant

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 8th day of January, 2025, a copy of the foregoing Caldwell's Supplemental Reply Regarding his Reconsideration Request as to MJOA was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:        Kathryn Rakoczy, AUSA
                                                  Office of the United States Attorney
                                                  555 4th Street, NW
                                                  Washington, DC 20001

                                                  _____/s/_____

                                                  David W. Fischer, Esq.