UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br> )<br>v. )<br> )<br>ELMER STEWART RHODES, III, *et al.*, )<br> )<br>Defendants. )<br> ) | Criminal No. 22-cr-15 (APM) |

## ORDER ON TERMS OF SUPERVISED RELEASE

### I.

In the fall of 2022 and winter of 2023, two juries convicted the following nine Defendants of various crimes relating to the events of January 6, 2021: Stewart Rhodes, Kelly Meggs, Kenneth Harrelson, Thomas Caldwell, Jessica Watkins, Roberto Minuta, Edward Vallejo, David Moerschel, and Joesph Hackett. Each Defendant was a member of, or affiliated with, a militia group known as the Oath Keepers. All but one (Caldwell) were found guilty of seditious conspiracy or conspiracy to prevent members of Congress from discharging their duties. The court sentenced Defendants to various terms of incarceration, ranging from time served (Caldwell) to 18 years in prison (Rhodes). All except Caldwell received a period of supervised release to follow their term of incarceration.

On January 20, 2025, President Trump commuted the sentences of these nine Defendants, alongside pardoning over 1,000 others convicted of January 6-related offenses. According to the "Proclamation" issued by the President, he "commute[d] the sentences" of Defendants "to time served as of January 20, 2025."[1] Defendants then in custody were immediately released.

---

[1] Granting Pardons And Commutation Of Sentences For Certain Offenses Relating To The Events At Or Near The United States Capitol On January 6, 2021 (Jan. 20, 2025), https://www.whitehouse.gov/presidential-

Afterwards, all relevant actors proceeded as if the commutations addressed only the custodial portions of Defendants' sentences but not their terms of supervised release. U.S. Probation Offices began supervising Defendants, defense counsel moved to change conditions of release, the U.S. Department of Justice responded to the modification requests, and the court granted the motions without opposition from the prosecution.[2] Defendant Rhodes publicly declared that he would "report to [his] probation officer."[3]

On January 24, 2025, the court issued an Order amending Defendants' conditions of release (except Caldwell's, who has none) to add two location restrictions. Order, ECF No. 940. The Order provided that Defendants must stay away from (1) the District of Columbia and (2) the U.S. Capitol and its surrounding grounds, absent permission from the court. *Id.* The court did not impose the location restrictions when sentencing Defendants, because at that time it was not the practice of the local Probation Office to recommend them as special conditions of release. That practice later changed, and the judges of this Court began requiring January 6 defendants to stay away from the District and the U.S. Capitol.[4] Soon after the President's Proclamation, this court consulted with the Probation Office about imposing the stay-away conditions and, after receiving confirmation they were appropriate, issued the Order on the morning of January 24, 2025.[5]

---

actions/2025/01/granting-pardons-and-commutation-of-sentences-for-certain-offenses-relating-to-the-events-at-or-near-the-united-states-capitol-on-january-6-2021/ (last visited Jan. 26, 2025).

[2] *See, e.g.,* Def. Minuta's Mot. to Modify Terms & Conditions of Supervised Release, ECF No. 936; Def. Vallejo's Consent Mot. to Modify Conditions of Supervised Release, ECF No. 937.

[3] Associated Press, Oath Keeper Stewart Rhodes thanks Trump for pardon (Jan. 21, 2025) (available at https://newsroom.ap.org/editorial-photos-videos/detail?itemid=748d698a8eed42a8bf27bf3026916033) (last visited Jan. 26, 2025).

[4] *See, e.g.,* Jon Levine, Federal judges allow Jan. 6 rioters to return to Capitol for Trump inauguration, *N.Y. Post* (Jan. 18, 2025) (available at https://nypost.com/2025/01/18/us-news/federal-judges-allow-jan-6-rioters-to-return-to-capitol-for-trump-inauguration/) (last visited Jan. 26, 2025).

[5] The court waited until the morning of January 24 to issue the Order and made it effective as of noon on that day, because the court was aware that Mr. Rhodes was present in the District of Columbia and that the Probation Office had ordered him to report to the federal courthouse in Greenbelt, Maryland, by noon to receive release instructions.

2

Hours later, the U.S. Department of Justice, through the Acting U.S. Attorney for the District of Columbia, moved to vacate the Order and "dismiss" Defendants' terms of supervised release. *See* United States' Mot. to Dismiss Terms of Supervised Release & Probation Pursuant to Executive Order, ECF No. 941 [hereinafter U.S. Mot.]. The Department argues that Defendants "are no longer subject to the terms of supervised release and probation" following President Trump's commutation of their "sentences." *Id.* at 1. According to the Department, the term "sentence" is broadly construed to include both custodial and non-custodial components. *Id.* Thus, when President Trump commuted Defendants' "sentences," his action rendered their terms of supervised release "no longer active." *Id.* The motion concludes not with a request for relief, but with an "indicat[ion] that the Order must be vacated." *Id.* at 2.

## II.

### A.

Article II of the Constitution vests in the President the power to grant pardons and the adjacent authority to commute sentences to lesser punishments. *See Schick v. Reed*, 419 U.S. 256, 265–66 (1927). "Executive clemency exists to afford relief from undue harshness or evident mistake in the operation or enforcement of the criminal law." *Ex parte Grossman*, 267 U.S. 87, 120–21 (1925). "It is a check entrusted to the executive for special cases." *Id.* at 121.

The President's clemency powers are broad, and the Constitution places few limitations on them. "So long as the President does not use the power to pardon to violate another provision of the Constitution, Congress and the Judiciary have no power to interfere with its exercise." *Andrews v. Warden*, 958 F.3d 1072, 1076 (11th Cir. 2020) (citing *Schick*, 419 U.S. at 264, 266–67); *accord Yelvington v. Presidential Pardon & Parole Att'ys*, 211 F.2d 642, 644 (D.C. Cir. 1954) (observing that the pardon power should be "free of judicial control"); *Rosemond v. Hudgins*,

92 F.4th 518, 525 (4th Cir. 2024) ("The President's authority to grant clemency is 'unlimited,' save for the limits imposed by the Constitution[.]" (quoting *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866))); *United States v. Libby*, 495 F. Supp. 2d 49, 54 (D.D.C. 2007) (recognizing that the only limitation on the President's authority to place conditions on a sentence commutation is that it does not "offend the Constitution" (citing *Schick*, 419 U.S. at 267)).

While a pardon "generally negate[s] the effects of [an] underlying conviction," "a 'commutation' leaves the conviction in place and lessens the sentence in some way." *Rosemond*, 92 F.4th at 525 n.5 (citing *Schick*, 419 U.S. at 266). The commutation does not, however, create an "executive sentence." *Andrews*, 958 F.3d at 1077 (quoting *Dennis v. Terris*, 927 F.3d 955, 959 (6th Cir. 2019)). Rather, "a prisoner who receives a presidential commutation continues to be bound by a judicial sentence. The commutation changes only how the sentence is carried out by switching out a greater punishment for a lesser one." *Dennis*, 927 F.3d at 958 (citations omitted); *see also United States v. Benz*, 282 U.S. 304, 311 (1931) (A commutation "abridges the enforcement of the judgment, but does not alter it *qua* judgment.").

The effect of a presidential commutation is illustrated in *Dennis*. There, the defendant received a mandatory life sentence following his third conviction for a drug-trafficking offense. *Dennis*, 927 F.3d at 957. President Obama commuted his sentence to a 30-year term of prison. *Id.* The defendant nevertheless pursued a habeas petition, arguing that one of his underlying convictions did not qualify as a drug-trafficking offense and therefore at most he was subject to a 20-year mandatory penalty, instead of his now-commuted sentence of 30 years. *Id.* The district court dismissed the habeas petition as moot, but the Sixth Circuit found otherwise. *Id.* at 959–60. It ruled that, notwithstanding the commutation, the judicial power remained to reduce the underlying sentence if unlawfully imposed. *Id.* As the court put it: "Dennis now will serve at

4

most 30 years in prison, not life. But for now he still serves a judicial life sentence, the *execution* of which the President's act of grace has softened. The original judicial sentence remains intact." *Id.* at 960 (emphasis in original).[6]

Applying the foregoing principles here means that Defendants' original sentences, including their terms of supervised release, "remain[] intact." President Trump's commutation does not alter the court's (and the juries') judgments; it affects only their execution. *See Andrews*, 958 F.3d at 1077 ("[T]he Executive commutes the sentence that it executes."). "Dismiss[ing]" their supervised release terms therefore is not appropriate. *See* U.S. Mot. at 1.

**B.**

The question remains whether the Executive Branch must carry out the judicially imposed periods of supervision. The answer turns on the text of President Trump's Proclamation. *See Andrews*, 958 F.3d at 1078 ("The text of President Obama's commutation order governs our review.").

The court has found no decision from the D.C. Circuit addressing how courts should interpret a presidential act of clemency. The Eleventh Circuit in *Andrews* has offered guidance, which this court finds persuasive. In that case, the court observed that the "Supreme Court has ruled that deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering." 958 F.3d at 1078 (citations omitted). It found it "sensible" to extend that principle to an executive agency's interpretation of a commutation order, so long as

---

[6] The court recognizes that there is not an absolute division of labor between the Executive and the Judiciary in the enforcement of terms of supervised release. U.S. Probation and Pretrial Services falls under the auspices of the judicial branch, and its role includes post-conviction supervision. Probation officers honorably occupy the front line, ensuring that the courts' conditions of release are carried out and followed by their supervisees. They also may recommend revocation of supervision and the reimposition of a custodial sentence, in the event of violations. Although probation officers perform these functions under the auspices of the Judiciary, the court must adhere to the line drawn by the Supreme Court between the judicial function of rendering judgment and the executive one of enforcing it. *See Benz*, 282 U.S. at 311 ("The judicial power and the executive power over sentences are readily distinguishable. To render judgment is a judicial function. To carry the judgment into effect is an executive function.").

5

the interpretation is reasonable. *Id.* That approach is consistent with the D.C. Circuit's admonition that the clemency process must be "free of judicial control," *Yelvington*, 211 F.2d at 644, and the presumption of regularity that attaches to executive orders, *see Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989). Ultimately, the court's interpretive task is neither to "enlarge nor cabin the commutation order." *Andrews*, 958 F.3d at 1078.

The court finds that the Department of Justice's reading of the Proclamation as both reducing Defendants' custodial sentences *and* doing away with their terms of supervised release is reasonable. The Proclamation states that President Trump "commutes[s] the *sentences* [of Defendants] to time served as of January 20, 2025." *See supra* n.1 (emphasis added). "A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *Pepper v. United States*, 562 U.S. 476, 507 (2011) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)). It includes "all sanctions imposed for a crime," including "imprisonment, supervised release, and fines." *Andrews*, 958 F.3d at 1080 (citations omitted); *see also United States v. Haymond*, 588 U.S. 634, 648 (2019) ("acknowledg[ing] that an accused's final sentence includes any supervised release sentence he may receive" following a violation of terms). The court must presume that the President understood this established meaning of "sentence," and that he "[spoke] in terminology that subordinate officials would understand." *Andrews*, 958 F.3d at 1081. The Department of Justice's understanding that the Proclamation reaches the supervised release component of Defendants' sentences is thus reasonable.

The Department's reading is further supported by the fact that President Trump's commutation order is unconditional. *See Dennis*, 927 F.3d at 958 (recognizing the possibility of "unconditional commutations"). Defendants are required to take no further action to receive its benefit. An unconditional commutation stands in contrast to recent clemency practices. Presidents

6

have been explicit when they intend to commute only the custodial portion of a sentence but not the term of supervised release. President Trump did so during his first term. *See, e.g., Rosemond*, 92 F.4th at 531 (citing example of President Trump's commutation of Alice Marie Johnson, "leav[ing] intact and in effect the five-year term of supervised release" (alteration in original)); *United States v. Harder*, 552 F. Supp. 3d 1144, 1150 (D. Or. 2021) (same). So, too, did President Obama. *See, e.g., Andrews*, 958 F.3d at 1075. And President Biden did so most recently. *See* Executive Grant of Clemency (Jan. 17, 2025) (commuting the sentences of hundreds of individuals but leaving "intact and in effect the term of supervised release imposed by the court with all its conditions and all other components of the sentence").[7] The unconditional quality of President Trump's Proclamation thus can reasonably be read to extinguish enforcement of Defendants' terms of supervised release.

### III.

It is not for this court to divine why President Trump commuted Defendants' sentences, or to assess whether it was sensible to do so. *See United Staes v. Rosemond*, 10-cr-431 (LAK), 2024 WL 4043696, at *1 (S.D.N.Y. Sept. 4, 2024) (stating that "the judicial branch has no insight into the reasoning behind the clemency decision, the motivations of the president, or the politics that may be involved"). The court's sole task is to determine the act's effect. Insofar as the U.S. Department of Justice seeks to "dismiss" Defendants' supervised release terms, the request is denied. The President's act of clemency did not alter this court's original sentences, which remain "intact." The court, however, will vacate its Order of January 24, 2025, adding location restrictions, ECF No. 940, because it would be improper for the court post-commutation to modify

---

[7] Available at https://www.justice.gov/pardon/media/1385601/dl?inline (last visited Jan. 26, 2025).

7

the original sentences. Further, by virtue of the President's commutation order, the court acknowledges that its conditions of supervision will not be enforced.

Accordingly, the U.S. Department of Justice's motion is granted in part and denied in part. The court will not "dismiss" the non-custodial portion of Defendants' sentences, but Defendants are no longer bound by the judicially imposed conditions of supervised release.

Date: January 27, 2025

Amit P. Mehta
United States District Judge